non-discriminatory reason for its decision. Once the employer has done that, any inference of discrimination raised by the prima facie case drops out of the analysis and the burden of production shifts back to the employee. The employee must then prove both that the employer's explanation is a pretext and that the actual reason for the employment decision was discriminatory. See Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1981); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).

Summary judgment should be granted in SNET's favor on a claim that plaintiff was discriminated against by being treated differently because of her gender. Plaintiff simply cannot establish a prima facie case of disparate treatment on the record of this case.

In order to make out a prima facie case of employment discrimination, plaintiff must demonstrate: "(1) that [s]he belongs to a protected class; (2) that [s]he was qualified for the position; (3) that [s]he was subject to an adverse employment action; and (4) that the adverse employment decision occurred in circumstances giving rise to an inference of discrimination on the basis of [her] membership in that class." Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir.1998).

In this case, plaintiff cannot make out a prima facie case of discrimination because she cannot show that she suffered an adverse employment action or that the circumstances of her resignation give rise to an inference of discrimination on the basis of gender.

a. Plaintiff Cannot Show That She Suffered an Adverse Employment Action.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). "To be 'materially adverse' a change in working conditions must be

23

'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Id. (citation omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (citation omitted).

In this case, it is beyond dispute that plaintiff did not suffer an adverse employment action. Plaintiff admits that she was never demoted, her pay was never decreased, her title was never changed, no benefits were ever taken away from her, she was not terminated, and she was not transferred. Pl. Dep. Vol. I at 184.

The actions about which she complains do not constitute adverse employment actions for purposes of Title VII. The first complaint plaintiff makes is that SNET did not establish a "satellite office" for her in North Madison. See Complaint at ¶ 12(a). As discussed above, the Court may not consider this allegation because plaintiff's Complaint is untimely as to that allegation. Even if the Court were to consider the allegation, however, this allegation would be covered by the well-settled principle that a decision to not transfer someone[11] is not an "adverse employment action" where the decision[12] has no effect on the material terms and conditions of the person's employment. As one Court has explained:

> [A] plaintiff who is . . . denied a lateral transfer – that is, one in which she suffers no

---

[11]     Here, it is hard to identify what plaintiff's claim actually is with respect to creating a new office in North Madison for her. It is not really a "failure to transfer claim," as it is undisputed that there was never a North Madison office during the period in question, much less a position available in North Madison for which she was not selected. See Cordner Aff. ¶ 24.

[12]     Here, there was no real "decision" with respect to the plaintiff, as there was no office there.

24

diminution in pay or benefits – does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncracies of personal preference are not sufficient to state an injury.

Brown v. Brody, 199 F.3d 446, 457 (D. C. Cir. 1999); see also Smith v. Alabama Department of Corrections, 145 F. Supp.2d 1291 (M.D. Ala. 2001) (no adverse employment action where employee was denied transfer request because there was no difference in the "pay, benefits, job duties, or responsibilities as between his current job and the job to which he sought to transfer"); Craven v. Texas Dept. of Criminal Justice-Institutional Div., 151 F. Supp. 2d 757, 766 (N.D. Tex. 2001) ("Most cases addressing whether a lateral transfer (or denial thereof) constitutes an adverse employment action for purposes of a Title VII discrimination claim have concluded that it does not. . . ."); Burger v. Central Apartment Management, Inc., 168 F.3d 875, 879 (5th Cir. 1999) (refusal to transfer was not an adverse employment action where only material difference would have been a shorter commute); LePique v. Hove, 217 F.3d 1012, 1011 (8th Cir. 2000) (refusal to transfer employee is not an adverse employment action).

In this case, it is undisputed that SNET's failure to agree to open a new satellite office in North Madison so that plaintiff might try to be assigned there had no effect on the material terms and conditions of plaintiff's employment. In fact, the only effect it might have had, had she been the bargaining unit employee with the most seniority to apply for it – which is entirely speculative – might have been to shorten her commute by ten to fifteen minutes.

Plaintiff's remaining allegations – each of which amounts to a complaint that plaintiff was counseled or disciplined – likewise fall far short of adverse employment actions for purposes of Title

25

VII. The seminal decision on this issue is <u>Smart v. Ball State Univ.</u>, 89 F.3d 437 (7th Cir. 1996). In <u>Smart</u>, the Seventh Circuit noted there was "little support for the argument that negative performance evaluations[13] alone can constitute an adverse employment action," and affirmed the grant of summary judgment for an employer on the ground that the plaintiff – who had complained about having been disciplined by her employer – had failed to state a prima facie case of discrimination. <u>Id.</u> at 442.

The Second Circuit relied on <u>Smart</u> in <u>Richardson v. New York State Dept. of Correctional Serv.</u>, 180 F. 3d 426 (2d Cir. 1999), to affirm a District Court's grant of summary judgment on the ground that the plaintiff, who had complained about her performance evaluations, had failed to establish a prima facie case of discrimination. <u>Id.</u> at 443-44. Similarly, numerous other courts have held that minor discipline cannot constitute adverse employment actions. <u>See, e.g.</u>, <u>Valentine v. Standard & Poor's</u>, 50 F. Supp. 2d 262, 283 (S.D.N.Y. 1999) ("Negative evaluations alone, without any accompanying adverse result, . . . are not cognizable.") (collecting cases); <u>Gaynor v. Martin</u>, 77 F. Supp. 2d 272, 277-78 (D. Conn. 1999) (Goettel, J. ) (Plaintiff's allegation that he received "intentional and fallacious written warnings and critical evaluations" because of his race and gender was insufficient to state a claim under Title VII); <u>Oest v. Illinois Dept of Corrections</u>, 85 FEP Cases 586, 592 (7th Cir. Feb. 14, 2001) (oral and written reprimands were not adverse employment actions because there were no immediate consequences of the reprimands "such as ineligibility for job benefits, promotion, transfer to a favorable location, or any advantageous increase in

---

[13]    Here, bargaining unit employees do not receive formal performance evaluations and plaintiff does not even claim she received a negative evaluation. Instead, plaintiff complains that her supervisor counseled her about several aspects of her performance, and that this counseling rose to the level of unlawful discrimination. <u>See</u> Complaint.

responsibilities"); Scusa v. Nestle USA Co., 181 F.3d 958, 969 (8th Cir. 1999) ("Ostracism and disrespect by supervisors [does] not rise to the level of an adverse employment action."); Cellini v. Harcourt Brace & Co., 51 F. Supp 2d 1028, 1038 (S.D. Cal. 1999) (two written warnings and an e-mail that was critical of the plaintiff's job performance did not constitute adverse employment actions); Johnson v. LaSalle Partners, 82 FEP Cases 1746, 1747-48 (N.D. Ill. May 23, 2000) (neither issuing poor performance evaluations nor putting an employee on probation constitutes an adverse employment action).

The above principles apply especially here, where there is a progressive discipline schedule in place, because the progressive discipline makes it clear that the initial discipline carries no further consequence. See, e.g., Oest v. Illinois Dept of Corrections, 85 FEP Cases 586, 592 (7th Cir. Feb. 14, 2001). See Cordner Aff. ¶ 5; Exh. 13.

Even if the Court were to consider all of plaintiff's allegations together, they would not constitute an adverse employment action. See Castro v. New York City Bd. of Educ. Personnel, No. 96 CV 6314, 1998 WL 108004 (S.D.N.Y. Mar. 12, 1998). In Castro, the plaintiff alleged that her employer had given her an undesirable work assignment, given her unsatisfactory ratings, reprimanded her, and closely monitored her performance. Id. at *6-7. Relying on Smart as well as a number of other cases, the court held that the plaintiff had failed to state a prima facie case of discrimination and granted summary judgment for the employer. In doing so, the District Court stated:

> Courts have held that negative evaluations . . . that are unattended by a demotion, diminution of wages or other tangible loss do not materially alter employment conditions. . . . Moreover, although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.

27

Id. at *7. The court noted that the rule "operates with particular force" where, as here, the plaintiff admits that no one had ever made a discriminatory comment. Id. at *7.

Likewise, in Grube v. Lau Indus., Inc., 86 FEP Cases 374, 379 (7th Cir. July 19, 2001), the Seventh Circuit held that a plaintiff's allegations that her supervisor had called her doctor's office without her permission, had failed to notify her of a meeting, had singled her out for discussions about her absenteeism, had reassigned her to the second shift, and had refused to provide a letter of reference after she resigned were insufficient to establish a prima facie case of unlawful discrimination. Using a similar analysis, in Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016-17 (8th Cir. 1999), the Eighth Circuit held that the plaintiff's complaints about increased supervision of her work and numerous written criticisms of her work were insufficient.

        b.    **There are No Facts to Support An Inference of Gender Discrimination.**

Even if plaintiff had suffered an adverse employment action -- which is denied -- summary judgment is still appropriate because plaintiff cannot show that any action about which she complains occurred under circumstances giving rise to an inference of discrimination. It is undisputed that Mr. Cordner never made a discriminatory remark of any sort to the plaintiff, and there is nothing about the alleged conduct itself that is gender-related.

Moreover, there is substantial evidence to refute an inference of gender discrimination, i.e., evidence to suggest that Mr. Cordner's actions were not motivated by gender.

*Verbal warning for unlocked truck.* Plaintiff was given the mildest step of discipline, a documented verbal warning, for leaving her vehicle unlocked in violation of company policy for at least the fourth time after prior counseling. Two other male employees who left their trucks unlocked

28

with plaintiff the first time were similarly counseled. Cordner Aff. ¶ 12. Between 1996 and 1998, Mr. Cordner also gave verbal warnings to two other male technicians ans one Formal Written Warning (a more severe step in the discipline process) to a male technician for an unlocked company vehicle. Cordner Aff. ¶ 15. He did not treat plaintiff any differently with respect to the need to lock her vehicle.

*Cell phone taken away.* Plaintiff claims that her cell phone was taken away, while she believes the cell phones of male technicians were not. First, her unsupported and conclusory assertion is factually incorrect. As attested to by Matt Cordner, and as supported by the cell phone usage records attached as Exh. 4, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Cordner Aff. ¶ 23. ████████ cell phone usage had exceeded 300 minutes in several months in 1996 and again in March, May, and June, 1997. Exh. 4. Plaintiff's had been 422 minutes in February 1996, 390 minutes in March 1996, 517 minutes in May 1996, 323 minutes in June 1996, 347 minutes in August 1996, 367 minutes in November 1996, 366 minutes in January 1997, 334 minutes in February 1997, and 378 minutes in May 1997. Exh. 4. No other technicians' cell phone usage matched the excessive usage of these individuals. Again, at her deposition, plaintiff only referred to records which she believes "SNET would have" and was unable to identify any male service technician who was actually treated more favorably by Mr. Cordner than she was with respect to excessive cell phone usage. Pl. Dep. Vol. II at 53-54.

*Accuracy of time sheets.* Plaintiff claims she was "spoken to" about her time recorded on her time sheets. She implies that male technicians were not spoken to about time sheets. However, she admits that she was not present when Mr. Cordner discussed performance matters with other

29

technicians, Pl. Dep. Vol. II at 54-55, and thus she would not have personal knowledge about any such conversations. In fact, Mr. Cordner counseled a male service technician concerning his time sheets in August, 1996. Corder Aff. ¶ 18. That employee improved his performance thereafter. Cordner Aff. ¶ 18.

*Minutes per trouble, i.e., productivity.* Plaintiff seems to assert speculatively that she was "questioned"[14] about her minutes per trouble whereas male technicians had high minutes per trouble and were not "questioned." However, when asked at her deposition specifics about which male employees had higher minutes per trouble but were not questioned, plaintiff admitted she cannot identify any such male technicians. Pl. Dep. Vol. II at 52-53.

*Satellite office in North Madison.* As set forth above, any claim regarding a potential new satellite office in North Madison is time-barred. Even if it were not, plaintiff admits that there was no coin office in North Madison and therefore no position for a coin technician to transfer there; she further has no reason to believe that any male employee of the coin group has ever been allowed to satellite out of North Madison. Pl. Dep. Vol. II at 88. She admits that the only reason she believes Mr. Cordner's actions with respect to a satellite office were discriminatory is that she believed the two prior supervisors had approved such an office (but admittedly never set it up during the years they were her supervisor), and because she had "discussed it" with them. Pl. Dep. Vol. I at 68. This is not evidence of gender discrimination. Plaintiff's speculative belief is far too slender a reed on which to base a claim of unlawful discrimination. Under the undisputed facts of this case, any claim of disparate treatment based on failing to be transferred to a non-existent satellite office in North

---

[14] Of course, "questioning" someone about productivity cannot be an adverse employment action under Second Circuit standards for Title VII.

30

Madison fails as a matter of law.

Moreover, it is undisputed, and plaintiff has acknowledged, that her prior supervisor, Pat Kinsella (who plaintiff does not believe discriminated against her), did not allow her to make such a move for the more than six years that she asserts he was her supervisor before Matt Cordner. Pl. Dep. Vol. I at 31; Pl. Dep. Vol. II at 81. Mr. Cordner was plaintiff's supervisor only from July 1996 to May 1997, and plaintiff was out on a leave of absence for two months of that period. Plaintiff admits that Mr. Cordner gave plaintiff the alternative opportunity to work out of Guilford in 1996, but she turned it down and continued to report to the New Haven garage. Pl. Dep. Vol. I at 66-67.

In essence, all plaintiff has to rely on is her subjective and speculative belief that she was discriminated against because of her gender. It is well settled, however, that this is not enough to avoid summary judgment.

> Mere unsupported speculation . . . is not enough to defeat a summary judgment motion. At bottom, [plaintiff] imputes to [the employer] a discriminatory motive, without factual support. Although courts must carefully consider summary judgment when intent is an issue, . . . "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Since [plaintiff] cannot point to any circumstance surrounding her discharge that credibly raises an inference of unlawful discrimination, she failed to make an adequate showing on an essential element of her case.

Ennis v. National Assoc. of Business and Educational Radio, Inc., 53 F.3d 55, 62 (1995) (citations omitted) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

### c.    Plaintiff Cannot Rebut SNET's Legitimate, Non-Discriminatory Reason for its Actions.

Even if plaintiff could establish a prima facie case, the Court should still grant summary judgment because plaintiff cannot rebut SNET's legitimate, non-discriminatory explanation for its actions, as described in the factual background above.

31

As to plaintiff's request that SNET establish a satellite office, Mr. Cordner has explained that after analyzing the situation he determined that there was not sufficient business in the North Madison area to justify opening a special office there. Cordner Aff. ¶ 24. Plaintiff has not provided in discovery any documents or other evidence that would refute Mr. Cordner's position.

As to the decision to remove plaintiff's cell phone for using her cell-phone for more than 300 minutes a month, Mr. Cordner has explained that the coin group at SNET had a policy limiting the use of the cell-phone and that he took the same action with respect to a male employee, ▆▆▆▆▆ ▆▆▆▆. Cordner Aff. ¶ 23.

As to the decision to discipline plaintiff for leaving her truck unlocked, Mr. Cordner has explained that SNET has a policy against leaving trucks unlocked and that two male employees received verbal warnings just like plaintiff did. Cordner Aff. ¶ 15.

As to the decision to counsel plaintiff about her record-keeping, Mr. Cordner has explained that plaintiff's time sheets were riddled with cross-outs and entries that were out of order and/or inaccurate and that he was simply trying to get plaintiff to record her time in a more accurate and neater fashion. Cordner Aff. ¶¶ 16-17.

Plaintiff cannot point to any evidence that calls the legitimacy of any of these explanations into doubt.

B.    **Plaintiff's Hostile Environment Claim Fails as a Matter of Law.**

To recover under Title VII for hostile work environment harassment, a plaintiff must prove (1) that he or she experienced a hostile work environment within the meaning of the Act and "(2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 436 (2d Cir. 1999)

32

(internal citations omitted).

In this case, plaintiff cannot establish either element of the claim. She cannot establish that she experienced a hostile work environment within the meaning of the Act, because the conduct about which she complains was not severe or pervasive and because there is no evidence to even suggest that plaintiff was harassed because of her gender. Likewise, she cannot impute liability to SNET because SNET can show that plaintiff unreasonably failed to take advantage of reasonable remedial procedures that were in place.

1.    **The Facts Alleged in the Record of This Case Do Not Rise to the Level of a Hostile Work Environment.**

To establish that there was a hostile work environment within the meaning of Title VII, a plaintiff must prove that (1) objectively, "the workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of [a reasonable person's] employment,'" (2) subjectively, the harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment, and (3) that plaintiff was subjected to the hostility because of her membership in a protected class. Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999); see also Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001).

a.    **The Court May Not Consider Any Allegations Occurring Prior to January 21, 1997.**

As set forth above, in considering whether plaintiff experienced a hostile work environment, the Court should not consider a Title VII hostile environment claim on any incident that occurred or is alleged to have occurred more than 300 days prior to the date on which plaintiff filed her charge of discrimination with the CHRO. For this reason, plaintiff's claim that Mr. Cordner did not establish a "satellite" office for her in North Madison is precluded from consideration. See, supra, p. 20-22.

33

b.  The Court May Not Consider Any Allegations for Which
There Is No Evidence That Plaintiff's Gender Was a
Motivating Factor.

Likewise, on plaintiff's hostile work environment claim, the Court may not consider any

incident for which the plaintiff cannot produce probative evidence of a gender-based motivation. "If

the nature of an employee's environment, however unpleasant, is not due to her gender, she has not

been the victim of sex discrimination as a result of that environment." Penry v. Federal Home Loan

Bank of Topeka, 155 F.3d 1257, 1263 (10th Cir. 1998) (copy attached) (internal citations omitted);

see also Scusa v. Nestle U.S.A.Co., 181 F.3d 958 (8th Cir. 1999) (granting summary judgment

because there was no evidence that the plaintiff had been harassed because of her gender).

In this case, there is no evidence in the record of this case -- or elsewhere -- that any of the

actions about which plaintiff complains was motivated by the fact that plaintiff is a woman.  All of

the incidents are gender-neutral on their face and plaintiff has failed to identify any evidence that they

were gender-based. Courts routinely grant summary judgment in cases lacking substantially probative

evidence that the conduct complained of was motivated by the employee's protected trait.  By way

of example, in Gearhart v. Sears, Robuck & Co. Inc., 27 F. Supp. 2d 1263, 1271 (D. Kan. 1998), the

court would not consider allegations that employees told jokes with a sexual connotation, that one

manager used nonsexual profanity, and that the plaintiff's supervisor badgered two employees because

they did not have college degrees, because there was no evidence that any of that alleged conduct was

motivated by plaintiff's gender.  In Sink v. Knox County Hosp., 900 F. Supp. 1065 (S.D. Ind. 1995),

the Court refused to consider fourteen incidents of alleged harassment because they had no apparent

connection to the plaintiff's gender.  Similarly, in Penry v. Federal Home Loan Bank, 970 F. Supp.

833, 839 (D. Kan. 1997), the District Court held that telling employee to "just sit down and shut up

34

a minute" could not be an act of unlawful harassment because it did not appear on its face to be motivated by the plaintiff's gender. See also Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772 (4th Cir. 1997) ("An insulting or demeaning remark does not create a federal cause of action for sexual harassment merely because the 'victim' of the remark happens to belong to a class protected by Title VII.").

For the reasons set forth above, the Court should not consider any of the allegations on which plaintiff's claim is based because there is no evidence that they occurred because plaintiff is a woman.

c.    The Conduct Alleged Does not Rise to the Level of a Hostile Work Environment.

Even if the Court were to consider the allegations, however, it should still grant summary judgment because as alleged in plaintiff's Complaint and at her deposition, they were not sufficiently severe or pervasive to constitute a hostile work environment as a matter of law.

As noted above, in order for harassment to be actionable under Title VII, the conduct must be sufficiently "severe or pervasive." See Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001) ("A work environment is 'abusive' when harassment has reached a certain qualitative level that is 'sufficiently severe or pervasive [so as] to alter the conditions of the victim's employment.'"). The Supreme Court has expressly held that "[c]onduct that is merely offensive" does not violate Title VII, Harris v. Fork Lift Sys., Inc., 510 U.S. 17, 23 (1993), and has commented that "simple teasing, off-hand comments, and isolated incidents (unless extremely serious)" do not constitute harassment within the meaning of the Act. Faragher v. City of Boca Raton, 524 U.S. 775 (1998) (internal quotation and citation omitted).

35

Likewise, the Second Circuit has instructed that "[i]solated, minor acts or occasional episodes do not warrant relief. A plaintiff need not present a list of specific acts[, but] a plaintiff must still prove that the incidents were 'sufficiently continuous and concerted' to be considered pervasive, or that a single episode is 'severe enough' to establish a hostile working environment." Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999) (citations omitted).

Most gender-based claims of hostile work environment are based on offensive sexual conduct, which is not even alleged here. Here, plaintiff claims essentially that her supervisor unfairly criticized her work. However, the cases involving allegations of offensive sexual conduct are extremely instructive about the severity and frequency of conduct that is required, as a matter of law, to rise to the level of a hostile work environment under Title VII. On a hostile work environment claim under Title VII, a plaintiff must show that her workplace was permeated with "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). When analyzing the pervasiveness of the alleged harassment, "isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably termed pervasive.'" Quinn, 159 F.3d, 759, 768 (2d Cir. 1998) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995)); see also Carrero v. New York City Hous. Auth., 890 F.2d 569, 577-78 (2d Cir. 1989) (stating that in order to be deemed pervasive, the alleged incidents "must be more than episodic; they must be sufficiently continuous and concerted"); Harris, 510 U.S. at 21 ("[The] mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII."). "'Simple teasing,' . . . offhand

36

comments, and isolated incidents (unless extremely serious), will not amount to discriminatory changes in the `terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Services, Inc. 523 U.S. 75, 82 (1998)). In other words, Title VII is not to be used as "a general civility code," Oncale, 523 U.S. at 80. Rather, alleged discriminatory conduct must be "extreme to amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788 (emphasis added).

Circuit Courts of Appeals have regularly upheld the grant of summary judgment in cases where defendants' alleged conduct was substantially more severe than anything alleged here, on the ground that the conduct was not sufficiently severe and pervasive. For example, in Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998), the plaintiff's supervisor told her that she had been voted the "sleekest ass" in the office, and deliberately touched her breasts with some papers he was holding. The Second Circuit held that those incidents "are sufficiently isolated and discrete that a trier of fact could not reasonably conclude that they pervaded [the plaintiff's] work environment," and that they were not "of sufficient severity to alter the conditions of [the plaintiff's] employment." In Shepherd v. Comptroller of Public Accounts of Texas, 168 F.3d 871, 872-74 (5th Cir. 1999), the plaintiff's supervisor (1) said to the plaintiff, "Your elbows are the same color as your nipples"; (2) told her, "You have big thighs" while pretending to look under her dress; (3) on several occasions, tried to look down her clothing; (4) on several occasions, rubbed one of his hands down her arm from the shoulder to the wrist; and (5) on one or two occasions when she was looking for a place to sit, patted his lap and said "Here's your seat." The Fifth Circuit affirmed summary judgment for the employer, emphasizing that "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." Id. at 874

(quoting Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996), cert. denied, 519 U.S. 1055 (1997)).

Similarly, in Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1260-63 (10th Cir. 1998), a case with two plaintiffs, the plaintiffs' supervisor (1) frequently and needlessly touched the plaintiffs; (2) often snuck up behind them and grabbed their shoulders to startle them; (3) once tried to look down one plaintiff's blouse; (4) insisted that one plaintiff work with him in his hotel room during a business trip; (5) took one plaintiff to a Hooters restaurant during a business trip; (6) told one plaintiff that one of her bra straps was showing but that he liked it that way; (7) asked one plaintiff what she was wearing under her dress; (8) made an anatomical remark to each plaintiff about the shape of a mall; (9) made a pun in one plaintiff's hearing about a female assistant allowing him into her "drawers"; (10) called a female assistant over in the plaintiffs' hearing by saying, "Bring your buns over here"; and (11) frequently stared at one plaintiff while she was working. The Tenth Circuit held that these incidents "were too few and far between to be considered sufficiently severe or pervasive to alter the conditions of the victims' employment." Id. at 1263 (internal quotation marks omitted).

District Courts in this circuit have also regularly granted summary judgment against hostile work environment claims on the grounds that the conduct alleged was not sufficiently severe and pervasive. In Cioffi v. The Allen Products Co., Case No. 3:98cv857(DJS), 2000 WL 33180448, at *9-12 (D. Conn. Sept. 29, 2000) (copy attached), (1) the president of the company allegedly spread rumors about an alleged affair between the plaintiff and a co-worker to a manager and others; (2) a co-worker waved a page with sketches of intimate male body parts on it in front of the plaintiff; (3) a supervisor and co-workers told off-color jokes in the plaintiff's presence at work; (4) a co-worker often read the newspaper while leaning against a wall behind the plaintiff's cubicle, and (5) a

38

co-worker made a statement to the plaintiff that had a sexual connotation/double meaning, at which another co-worker laughed. These events involved different employees and were spread over a period of several years. The District Court granted summary judgment for the employer finding that on these facts no reasonable jury could conclude that plaintiff was subjected to hostile work environment sexual harassment.

Similarly, in Parisi v. Buffalo Municipal Housing Authority, No. 01-CV-0171E, 2003 WL 21382893, at *4 (W.D.N.Y. Feb. 14, 2003) (copy attached), a supervisor (1) joked to another employee that he was going to get Viagra so he could "be with [the plaintiff]"; (2) repeatedly asked the plaintiff to go out with him on a date; (3) repeatedly commented on the plaintiff's appearance; (4) whispered in the plaintiff's ear; and (5) once stood in front of the plaintiff, blocking her way. In Feliciano v. Alpha Sector, Inc., No. 00-CIV-9309, 2002 WL 1492139, at *2, 8 (S.D.N.Y. July 12, 2002) (copy attached), the plaintiff's supervisor (1) said he wanted to date the plaintiff; (2) tried to hug her; (3) insisted on driving her home from a restaurant and, reaching her home, kissed her on the mouth; and (4) invited her to his house and asked if she would "lie down next to him." In O'Dell v. Trans World Entertainment Corp., 153 F.Supp.2d 378, 382-383, 386 (S.D.N.Y. 2001) (copy attached), the plaintiff's supervisor (1) repeatedly professed his love for the plaintiff, calling her at work and at home and visiting her at work; (2) said that the plaintiff's outfits were sexy; (3) told the plaintiff that he had "a thing for girls with glasses"; (4) played for the plaintiff a CD of a song that alluded to an extramarital affair; and (5) gave her cooking supplies for Christmas. In Parisi, Feliciano, and O'Dell, the Court granted summary judgment because the conduct alleged was not sufficiently severe and pervasive.

39

Another Circuit Court has observed that, "[t]here perhaps ought to be a law against puerile and repulsive workplace behavior . . . in order to protect the victims against its indignities and debilitations, but . . . Title VII is not that law." Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 752 (4th Cir. 1996) (internal quotation and citation omitted). While there are no "puerile" or "repulsive" acts alleged in this case, even that level of indignity does not support a Title VII hostile work environment claim. Here, the only allegations are of performance counseling which the plaintiff believed to be unfair. As the Fifth Circuit has aptly explained,

> [a] hostile environment claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy the equal opportunity in the workplace. . . . a less onerous standard of liability would attempt to insulate women from everyday insults as if they remained models of Victorian Reticence. A lesser standard of liability would mandate not equality but preference for women: it would create incentives for employers to bend over backwards in women's favor for fear of lawsuits.

DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir. 1995) (emphasis added).

Taking all circumstances into consideration, especially those highlighted by the Supreme Court, this Court should conclude that plaintiff has failed to show that she experienced a hostile work environment. Many courts have held that, as a matter of law, plaintiffs who had made allegations analogous to those in this case had failed to state a claim for hostile work environment. See, e.g., Klein v. McGowan, 198 F.3d 705, 710 (8th Cir. 1999) (plaintiff who complained that his supervisor had not given him business cards when he had given them to all of his co-workers, had told him that his performance was worthy of discipline, had given him unjustifiably low performance ratings, had assigned him menial tasks, and had periodically threatened him with dismissal had failed to state a claim for hostile work environment); Osier v. Broome County, 47 F. Supp 2d 311, 323-24 (N.D.N.Y. 1999) (plaintiff who complained that she had been "more closely scrutinized and criticized than male

40

employees" and had been unfairly disciplined on eight occasions had failed to state a claim for hostile work environment); Maddin v. GTE of Florida, Inc., 33 F. Supp. 2d 1027, 1032 (M.D. Fla. 1999) (plaintiff who complained that her supervisor had reviewed her work more closely than the work of other employees had failed to state a claim for hostile work environment).

## 2.    There Is No Basis for Imputing Liability to SNET.

Where an employee complains that she has been harassed by a supervisor but no tangible job action was involved, the employer will be liable unless "(a) . . . the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, or (b) . . . the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 294 (2d Cir. 1999) (citing Faragher); see also Lee v. Glessing, 140 F. Supp. 2d 215, 224 (N.D.N.Y. 2001) ("[E]mployers are liable for a hostile work environment created by a supervisor with immediate authority over an employee. However, such liability can be avoided in cases where the supervisor's harassment does not result in a tangible employment action against the plaintiff-employee.").

In this case, SNET "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities . . . or to avoid harm otherwise."

### a.    SNET Exercised Reasonable Care to Prevent and Correct Promptly Any Sexually Harassing Behavior.

An employer satisfies the first prong of the defense if (i) the employer had an anti-harassment policy as well as a procedure for filing complaints and (ii) the employer "endeavors to investigate and remedy problems reported by its employees." Caridad v. Metro-North Commuter R.R., 191 F.3d

41

283, 295 (2d Cir. 1999); see also Casiano v. AT&T Corp., 213 F.3d 278, 286-87 (5th Cir. 2000) (employer had policies forbidding sexual harassment and encouraging both those who believe they are being harassed and those who witness harassment to notify management, supervisors reviewed the policies with staff, plaintiff was familiar with the policies but did not complain about sexual harassment); Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 266-67 (4th Cir. 2001) (summary judgment appropriate where employer had and distributed sexual harassment policy and employee failed to complain); Montero v. Agco Corp., 192 F.3d 856, 862-63 (9th Cir. 1999) (affirmative defense established where employer had and distributed a policy and employee failed to complain); Hill v. American General Finance, Inc., 218 F.3d 639, 643-44 (7th Cir. 2000) (same).

In this case, it is undisputed that SNET had a broad policy against discrimination and harassment, which contained complaint procedures. Exh. 10. The policy appears in the employee Code of Conduct. Plaintiff did not make a complaint of discrimination until after she resigned from employment with the Company.

> **b.** **Plaintiff Unreasonably Failed to Take Advantage of The Preventive or Corrective Opportunities SNET Provided or to Avoid Harm Otherwise.**

To satisfy the second prong of the affirmative defense, all the employer need do is show that the employee failed to complain. See Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999) (affirming summary judgment because the plaintiff did not complain).

It is undisputed that plaintiff never complained to anyone that she felt that she was being sexually harassed and only complained after she resigned. Exh. 9. Accordingly, summary judgment is appropriate. Casiano v. AT&T Corp., 213 F.3d 278, 286-87 (5th Cir. 2000) (summary judgment appropriate because although plaintiff complained informally to both management and her union, she

never complained about sexual harassment specifically).

## VI.    CONCLUSION

For all of the above reasons, the Court should grant summary judgment for SNET on

plaintiff's single-count Complaint in this matter.

THE DEFENDANT,
SOUTHERN NEW ENGLAND TELEPHONE, INC.


By _____
    Lori B. Alexander
    Federal Bar No. CT08970
    Tyler Cooper & Alcorn, LLP
    205 Church Street
    New Haven, Connecticut  06509
    Tel. (203) 784-8200
    Fax No. (203) 789-2133
    E-Mail: alexander@tylercooper.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent via first-class mail, postage prepaid to all counsel and *pro se* parties of record on this 20th day of June, 2005, as follows: Karen Lee Torre, Esquire, Law Offices of Karen Lee Torre, 51 Elm Street, Suite 307, New Haven, Connecticut 06510.

Lori B. Alexander
Federal Bar No. CT08970