Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21382893
**(Cite as: Not Reported in F.Supp.2d)**

C

Not Reported in F.Supp.2d, 2003 WL 21382893
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,W.D. New York.
Concetta PARISI, Plaintiff,
v.
BUFFALO MUNICIPAL HOUSING
AUTHORITY, Defendant.
No. 01-CV-0171E(SR).

Feb. 14, 2003.

Retired female employee sued municipal housing authority, alleging sexual harassment, hostile work environment, retaliation for filing of harassment complaint, and constructive discharge. Authority moved for summary judgment. The District Court , Elfvin, J., held that: (1) alleged sexual harassment by supervisor was not sufficiently egregious to establish hostile work environment; (2) authority did not retaliate when memoranda were sent critical of her job performance and addition was made to evaluation to reflect 17 absences; and (3) employee failed to establish intolerable environment necessary to support constructive discharge claim.

Motion granted.

West Headnotes

[1] Civil Rights 78 🖝 1185
78k1185 Most Cited Cases
    (Formerly 78k167)
Female clerical employee of municipal housing authority failed to establish existence of sexual harassment hostile work environment, in violation of Title VII and New York Human Relations Law, or under § 1983, when she alleged that supervisor said he was buying erectile dysfunction medication in order to be with employee, once blocked her passage down hallway, asked her to date him, and whispered in her ear; incidents were not sufficiently frequent or egregious to establish hostile environment, especially given informal atmosphere of office. Civil Rights Act of 1964, § 703(a)(1), 2000e-2(a)(1); 42 U.S.C.A. § 1983 ; McKinney's Executive Law § 296.

[2] Civil Rights 78 🖝 1249(1)
78k1249(1) Most Cited Cases

Municipal Corporations 268 🖝 192
268k192 Most Cited Cases
Employer, a municipal housing authority, did not retaliate against female clerical employee, in violation of Title VII, after she filed sexual harassment complaint against her supervisor, when she was sent three memoranda critical or her job performance, and supervisor ordered amendment of her "good" performance appraisal to indicate 17 absences; necessary adverse employment action was not taken, as there was no demotion, reduction of responsibilities, salary or benefits cuts. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[3] Civil Rights 78 🖝 1123
78k1123 Most Cited Cases
    (Formerly 78k145)
Female clerical employee of municipal housing authority failed to establish constructive discharge, in violation of Title VII and New York Human Relations Law, or under § 1983, when she alleged that sexual harassment by supervisor and memoranda critical of her work created such an intolerable environment she was forced into early retirement; harassment had ceased, and year had elapsed since issuance of memoranda, before retirement decision was made. Civil Rights Act of 1964, § 703(a)(1), 2000e-2(a)(1); 42 U.S.C.A. § 1983 ; McKinney's Executive Law § 296.

MEMORANDUM and ORDER FN1

FN1. This decision may be cited in whole or in any part.

ELFVIN, J.
Plaintiff commenced this employment discrimination action March 12, 2001 against the Buffalo Municipal Housing Authority ("BMHA") and has alleged, *inter alia*, violations of 42 U.S.C. § 1983 , Title VII of the Civil Rights Act of 1964 and New York's Human Rights Law ("NYHRL") § 296. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCvP") dismissing all of plaintiff's claims.

Plaintiff has asserted nine causes of action based on alleged discriminatory conduct that occurred during her time as an employee with BMHA. Plaintiff's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

causes of action are essentially based on her three claims that (1) she had been subjected to sexual harassment and a hostile working environment, (2) she was retaliated against after she complained to BMHA about the sexual harassment and (3) the retaliation led to her being constructively discharged. The following facts are undisputed and will be discussed as they pertain to each such claim.

Plaintiff had been employed by BMHA as a Contract Specification Clerk from 1988 until 1999. Plaintiff's allegations of sexual harassment center around the conduct of another BMHA employee, Stanley Klocek. FN2 Plaintiff contends that Klocek "made improper sexual comments and propositions to [her] over a period of nine years prior to June 5, 1998." Compl. ¶ 13. As examples of such comments, plaintiff contends that Klocek once asked her to have sex with him and that plaintiff heard him joke with another employee about how he was going to obtain a prescription for Viagra in order to "be with Connie [Parisi]." Parisi Aff. ¶¶ 6-7. Such conduct led to a June 5, 1998 meeting among Parisi -who was accompanied by her Union representative, Molly Balducci - and representatives from defendant's personnel department - Theresa Spagna, Deputy Executive Director for Personnel, and Luis Irene, Administrator of Personnel. At the meeting, Parisi discussed her allegations regarding Klocek's conduct, including the fact that she had previously complained about Klocek's behavior in 1996 to her former supervisor, Albert Young. Parisi Aff., Ex. 4, at 3-4. FN3 Parisi subsequently memorialized her allegations in a formal complaint and filed it with BMHA. FN4 Spagna and Irene also interviewed Klocek on June 5, 1998 with regard to Parisi's allegations. FN5 Klocek did not specifically deny Parisi's allegations but characterized such as the probable result of a working environment where the employees joked with one another and that such jokes sometimes carried sexual connotations. FN6 See Spagna Aff., Ex. G, pp. 8-20. Following the interviews, Spagna sent a June 11, 1998 memorandum to Parisi and indicated that the BMHA was investigating her complaint. Spagna Aff., Ex. H. Thereafter, Spagna advised Paul Palladino - Parisi's and Klocek's supervisor - of Parisi's complaint and of the BMHA's policy against sexual harassment FN7 and also directed him to ensure compliance with such. Id., Ex. I. Plaintiff sent a June 24, 1998 memorandum to Spagna wherein she stated that there had been no further harassment

since the June 5, 1998 meeting. FN8 Id., Ex. J. The investigation continued and, in addition to interviewing fifteen named witnesses, Irene and Spagna reinterviewed both Klocek and Parisi. Significantly, at her second interview -on October 13, 1998 - Parisi reaffirmed the fact that Klocek had not harassed her since June 5, 1998. Id., Ex. L, pp. 1-5. Spagna found that Klocek's testimony had been corroborated by the witnesses and, further, that the "BMHA could not conclude that Mr. Klocek had violated its sexual harassment policy." Id. at ¶ 32. Consequently, Klocek received a December 18, 1998 letter from BMHA's Executive Director, Sharon West, indicating that, although he had been cleared of sexually harassing anyone, he should refrain from contributing to an "informal office atmosphere where employees and/or supervisors swear and crack dirty jokes." Id., Ex. N. West also indicated to Klocek that such conduct "creates an undesirable work environment" and admonished him for allowing such conduct inasmuch as he was one of their "upper management level employees." Ibid. West then informed Parisi, by way of a January 8, 1998 letter, that BMHA's investigation had not substantiated her claims of sexual harassment. Id., Ex. O.

FN2. Although the parties disagree whether Klocek was plaintiff's supervisor or merely a co-worker, the evidence shows that he was indeed her supervisor. In 1998 Klocek held the title Acting Deputy Director of Technical Operations and as such he was considered an "upper management level" employee who supervised the office where Parisi had worked. See Affidavit of Theresa Spagna, Ex. N.

FN3. Spagna and Irene interviewed Young on December 8, 1998 as part of their investigation into Parisi's allegations against Klocek. During the interview, Young confirmed that Parisi had previously complained - albeit informally - about Klocek's offensive language. When asked if Parisi had ever complained to him about Klocek, Young stated, "Nothing formal. * * * I think she did mention one time that she didn't like the language that he was using." Parisi Aff., Ex. 4, p. 3. Young also said that "[t]he word Fuck was part of Stanley's day to day vocabulary." Id. at 4. Further, Young declared that he could not recall any instances or incidents in which Klocek "made sexual advances" toward Parisi and that Parisi's sole complaint concerned Klocek's offensive language. Id. at 3-8.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

FN4. The complaint described the two incidents mentioned above - the incidents involving Klocek's sexual proposition and the "Viagra joke" - and also contained, *inter alia*, allegations that Klocek had kept asking Parisi "go out with him." Spagna Aff., Ex. F. Parisi also stated in her complaint that, "[Klocek] follows me around the office telling everyone how pretty I am." *Ibid*.

FN5. Irene and Spagna also questioned Klocek about allegations of sexual harassment made by another BMHA employee, Veronica Johnson.

FN6. All of the interviews conducted by BMHA had been recorded and references to such meetings are found in transcripts that have been submitted by the parties.

FN7. The BMHA has had a sexual harassment policy since November 18, 1993. The policy advises employees to come forward with their complaints to the BMHA's executive director, deputy director, or the personnel or legal departments. Plaintiff has received written materials and attended training regarding the BMHA's sexual harassment policy. Def.'s Statement Undisputed Material Facts, p. 1-2.

FN8. Parisi subsequently reaffirmed, during a January 6, 1999 conversation between Parisi and Irene, that Klocek had not harassed her since her June 5, 1998 complaint. Spagna Aff. ¶ 33; Ex. O.

Plaintiff has also asserted that, after her June 5, 1998 complaint, she was retaliated against based on a performance evaluation that she characterizes as accusing her of "excessive absences and poor work performance" and three memoranda that she received from Palladino. The three memoranda all pertained to Parisi's job performance and questioned her as to why she had not been abiding by BMHA policy with regard to certain accounting procedures. The first such memorandum, dated August 25, 1998, requested that Parisi submit a written report as to why she had not complied with BMHA policy regarding the deposit of checks. Palladino Aff., Ex. E. The second, dated August 31, 1998, stressed the need for Parisi to comply with BMHA procedures regarding the deposit of certain checks and further stated that "this memo shall be considered a verbal warning that all Board approved procedures need to be followed." *Id.*, Ex. A. The third memorandum, also dated August 31, 1998, admonished Parisi for

not following BMHA policies and further stated: "This professional conduct will not be accepted in the future. If such conduct does, in fact continue, disciplinary action shall follow." *Id.*, Ex. G. To bolster her contention that the three memoranda were retaliatory, plaintiff has submitted the affidavit of Amy L. Smardz who had been Palladino's secretary from 1997 to 1999 and had typed the three memoranda at issue under the direction of Palladino. Smardz avers, *inter alia*, that the "documenting" of Parisi's conduct in the memoranda was "not something that had ever been done to Ms. Parisi before she filed [her June 5, 1998 complaint]." Smardz Aff. ¶ 10. In addition, Smardz opines that the memoranda were intended to "fabricate a justification for firing, demoting, or disciplining Ms. Parisi." *Id.* at ¶ 9.

Parisi also cites her December 1998 Performance Appraisal ("Appraisal") as evidence of retaliation. Parisi received ratings of "Good" with regard to her overall job performance and attendance. FN9 Spagna Aff., Ex. T. In addition, her evaluator, Dennis Chapman, noted the following next to Parisi's attendance rating, "Attendance is ok." *Ibid.* However, the Appraisal was apparently incomplete when it was delivered to Spagna because Chapman had failed to record the total "number of days" that Parisi had been absent that year. Upon receiving the Appraisal, Spagna sent it to Parisi's department "with attendance information for completion by that department." FN10 A fully completed form was returned to Spagna and indicated that Parisi had been absent seventeen days in 1998. However, the notation "Attendance is ok" had not been changed. Parisi argues that Spagna's directive to have Parisi's department record her absenteeism and the Appraisal as a whole is evidence of retaliation.

FN9. The Appraisal has five different possible ratings of job performance: Unsatisfactory, Improvement Needed, Good, Very Good and Outstanding. Spagna Aff., Ex. T.

FN10. Spagna does not indicate to whom she sent the Appraisal; she merely states that she sent to Parisi's department in order to record the number of days that Parisi had been absent in 1998.

Finally, Parisi argues that the retaliatory memoranda and her Appraisal led to her constructive discharge. On August 24, 1999 BMHA's personnel department

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

 

Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

sent a memorandum to "Employees At Least 50 years of Age" and outlined the details of a Retirement Incentive Program ("Program"). Spagna Aff., Ex. V. On September 3, 1999 plaintiff returned a form to the BMHA indicating her interest in the Program. Plaintiff sent a November 29, 1999 letter to Spagna wherein she stated that she wished to participate in the Program and that she would be retiring on December 27, 1999. Although Parisi admits such participation, she contends that the allegedly retaliatory conduct forced her to take such an election.

Plaintiff filed a charge of gender discrimination and retaliation on November 20, 1998 with the Equal Employment Opportunity Commission ("EEOC"). The EEOC sent an August 24, 2000 letter to defendant, wherein the EEOC had determined that Stanley Klocek had made "improper comments and propositions to [Parisi] over a period of several years prior to June 5, 1998" and that "no appropriate action was taken against the alleged harasser, who was later promoted." Parisi June 7, 2002 Aff., Ex. 14. The EEOC issued Parisi a Notice of Right to Sue on December 29, 2000.

FRCvP 56(c) provides that summary judgment shall be entered where the movant demonstrates that there is "no genuine issue as to any material fact" and that "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether summary judgment is appropriate this Court must draw all factual inferences in favor of the non-moving party. FN11 *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

FN11. Nevertheless, the non-moving party must rebut the motion for summary judgment with more than conclusory allegations and general denials. FRCvP 56(e); see also *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998) ("Conclusory allegations, conjecture and speculation * * * are insufficient to create a genuine issue of fact."). Furthermore, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, at 322.

[1] Defendant first argues in support of its summary judgment motion that plaintiff has not presented sufficient evidence to support either a Title VII or a section 1983 claim. FN12 The Court agrees.

FN12. Defendant initially argues that plaintiff cannot maintain her section 1983 claim because she relies on the same set of indistinguishable facts for that claim as she does for her Title VII claim. *See* Def.'s Mem. Law Supp. Mot., pp. 8-9. The Court declines to address defendant's argument inasmuch as its motion will be granted on other grounds.

A plaintiff asserting a claim pursuant to Title VII must file a charge with the EEOC within 300 days of the alleged discriminatory conduct. *See* 42 U.S.C. § 2000e-5(e)(1). However, the statutory period of limitations for plaintiff's section 1983 claim and her NYHRL claims is three years. *See BD v. DeBuono*, 130 F.Supp.2d 401, 423-424 (S.D.N.Y.2001) (section 1983) ; *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997) (N.Y.HRL). Parisi filed her EEOC claim on November 20, 1998 and she filed her complaint on March 12, 2001. Therefore, any conduct relied upon by Parisi for her Title VII claims must have occurred after January 24, 1998 and any conduct relied upon by Parisi for her section 1983 claim and NYHRL claims must have occurred after March 12, 1998. Plaintiff has not shown sufficient harassing conduct within such period of time to raise a genuine issue of material fact whether she was subjected to a hostile working environment.

Title VII states that "[i]t shall be an unlawful employment practice for an employer * * * to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII claims are analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which requires that plaintiff first establish a *prima facie* case of discrimination. FN13

FN13. This Court notes that plaintiff's claims of a




Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

hostile working environment pursuant to NYHRL are analyzed under the same framework as a Title VII claim. *Torres v. Pisano*, 116 F.3d 625, 629 n. 1 (2d Cir.1997) ("We have repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."). In addition, for plaintiff to succeed in showing an equal protection violation under section 1983, she must show not only a hostile working environment but also harassment that was intentional. *See Cohen v. Litt*, 906 F.Supp. 957, 964 (S.D.N.Y.1995) ("[A] violation under § 1983 occurs when (1) the plaintiff was subjected to intentional harassment, (2) based on sex, (3) under color of state law, and (4) sufficiently extensive to render the work environment hostile to a plaintiff.")

For plaintiff to establish a Title VII violation based on a hostile work environment claim, she must show "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or persuasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Richardson v. N.Y. Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir.1999) (quotations and citations omitted). The discriminatory intimidation alleged by plaintiff must be "offensive or pervasive enough that a reasonable person would find it hostile or abusive and must have been actually perceived by plaintiff as abusive." *Horsford v. Salvation Army*, 2001 WL 1335005, at *9 (S.D.N.Y.2001) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, at 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In determining whether an environment is hostile, this Court must look at the totality of the circumstances of the alleged conduct including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, at 23. "To withstand summary judgment, a 'plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were [*sic* ] sufficiently continuous or concerted to have altered the conditions of her working environment.' " *Horsford*, at *9 (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir.2000). Isolated incidents of discriminatory comments or conduct - unless extremely serious - are not sufficient to establish a

hostile working environment. *See Horsford*, at *9 (citing numerous cases in support of such a proposition).

Initially, the Court notes that the only conduct relevant to plaintiff's hostile work environment claim is conduct that occurred between January 24, 1998 and June 5, 1998. FN14 This is so because plaintiff had stated three separate times - on June 24, 1998, on October 13, 1998 and on January 6, 1999 - that Klocek's alleged harassing conduct had ceased after she had filed her June 5, 1998 complaint with the BMHA. Most of plaintiff's allegations are conclusory in nature inasmuch as she fails to articulate specific instances of harassing conduct. In fact, the only instances of harassment by Klocek that she can articulate with any specificity that may have occurred in 1998 are that (1) Klocek joked to another employee that he was going to obtain a prescription for Viagra so he could "be with Connie," (2) Klocek stood in front of her and blocked her from walking through an office hallway, FN15 (3) Klocek repeatedly asked Parisi to go out with him on a date and (4) Klocek whispered in her ear  FN16 and (5) Klocek repeatedly commented on plaintiff's appearance. *See* Parisi Dep., Disare Aff., Ex. E, pp. 34-49. Such allegations, viewed in totality and favorably toward plaintiff, are insufficient to raise triable issues of fact whether she suffered an objectively hostile work environment. The evidence shows that plaintiff worked in an office with an informal atmosphere and where both supervisors and fellow employees had occasionally used offensive language. However, plaintiff has not shown that Klocek's conduct, within such informal atmosphere, occurred with a sufficient degree of frequency to be considered pervasive. Also plaintiff has not shown offensive conduct that could be considered severe. Plaintiff has not alleged, and the evidence does not show, that Klocek ever physically touched or threatened her, FN17 or that Klocek's conduct unreasonably interfered with her work performance. In fact, even though she had already been subjected to Klocek's allegedly harassing conduct, Parisi rejected the defendant's offer, on June 24, 1998, to transfer to an office away from him. In rejecting the offer, Parisi indicated that she "prefer[ed] to stay at [her] present location at 38 Tower Street." Spagna Aff., Ex. J. Such does not indicate that Parisi subjectively perceived her work environment as hostile or abusive and it does not suggest that she somehow

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                         Page   6
(Cite as: Not Reported in F.Supp.2d)

felt that her work performance had been unreasonably interfered with. Therefore, in addition to failing to show an objectively hostile work environment, plaintiff has failed to show that she subjectively perceived a hostile working environment. In sum, Klocek's conduct can best be described as occasional and flirtatious attempts to win plaintiff's affections. While plaintiff might have found such conduct to be "unwelcome" or that her work environment had been unpleasant, Klocek's conduct did not rise to the level of offensive conduct that is actionable under Title VII. *See Sales v. YM & YWHA of Washington Heights and Inwood,* 2003 WL 164276, at *2-6 (S.D.N.Y.2003) (granting summary judgment to defendant with regard to plaintiff's Title VII claim where plaintiff's evidence consisted of eight incidents including sexual advances, an attempted hug and a marriage proposal by a co-worker); *O'Dell v. Trans World Entertainment Corp.,* 153 F.Supp.2d 378, 385-386 (S.D.N.Y.2001) (granting summary judgment to defendant where plaintiff's evidence comprised repeated requests for a date, comments about plaintiff's appearance, declarations of love, gifts and a song played by a co-worker that offended plaintiff); *Feliciano v. Alpha Sector, Inc.,* 2002 WL 1492139, at *8 (S.D.N.Y.2002) (granting summary judgment to defendant where plaintiff's evidence consisted of compliments, repeated requests to date, an attempted hug, a kiss and a stated desire to "lay with" plaintiff by her supervisor). Therefore, plaintiff's claims based on a hostile working environment - which include her first, third, fourth, sixth and seventh causes of action - will be dismissed.

FN14. For her NYHRL and section 1983 claims, the only relevant conduct is such that occurred between March 12, 1998 and June 5, 1998.

FN15. Plaintiff testified at her deposition that Klocek would stand in front of her and block her from walking through the hallway. Disare Aff., Ex. E, p. 34. However, when later asked if Klocek had eventually moved, plaintiff answered, "No. I had to walk around him ." *Id.* at 38.

FN16. Plaintiff does not state what words were whispered to her; she merely testified that Klocek would sometimes "come up and whisper to me." *Id.* at 39.

FN17. Plaintiff submitted an affidavit in opposition to defendant's motion for summary judgment and included several additional allegations. One such allegation is that "Klocek touched her face with his face." However, because such an allegation contradicts her earlier deposition testimony that he never touched her in 1998, it will be disregarded. *See* Disare Aff., Ex. E, p. 34; *see also Trans-Orient Marine Corp. v. Star Trading & Marine,* 925 F.2d 566, 572 (2d Cir.1991) ("The rule is well-settled in this Circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony.")

[2]   Plaintiff also fails to show issues of material fact regarding her retaliation claim. For plaintiff to establish a *prima facie* case of retaliation, she must show that (1) she was engaged in a protected activity, (2) her employer was aware of the activity, (3) she suffered an adverse employment action and (4) there is a causal connection between the protected activity and the adverse employment action. *Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 113 (2d Cir.2000). Defendant concedes the first two prongs but contends that plaintiff cannot show either the third or the fourth prong.

To constitute an "adverse employment action" within the context of a Title VII claim, plaintiff must demonstrate that an employment action was one that resulted in a "materially adverse change in terms and conditions of [her] employment." *Richardson,* at 446. "To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices * * * unique to a particular situation." *Galabya v. N .Y. Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (quotation marks and citations omitted).

Plaintiff points to the three Palladino memoranda and her Appraisal as evidence of retaliation for her June 5, 1998 complaint about Klocek. However, neither the Appraisal nor the three memoranda constitute adverse employment actions under Title VII because none of them resulted in a materially

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

adverse change in Parisi's working conditions. Significantly, plaintiff fails to rebut defendant's claims that the memoranda were "provided for the purpose of clarification and performance improvement, not discipline," and that such memoranda were neither placed nor maintained in plaintiff's personnel file. Spagna Aff. ¶ 40. While plaintiff characterizes the memoranda and the Appraisal as "accusations" or criticism, such is not sufficient to show that she suffered an adverse employment action. "It hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action." *Weeks v. N.Y. Dep't of Corr.*, 273 F.3d 76, 86 (2d Cir.2001); *see also Hines v. Hillside Children's Center*, 73 F.Supp.2d 308, 324-325 (W.D.N.Y.1999) (holding that plaintiff's evidence consisting of poor reviews and letters of admonishment were not enough to show an adverse employment action); *Shabat v. Blue Cross Blue Shield of Rochester Area*, 925 F.Supp. 977, 989 (W.D.N.Y.1996), *aff'd* 108 F.3d 1370 (2d Cir.1997) (finding no adverse employment action based on plaintiff's claim that he had been "written up"). Thus, because plaintiff has not shown that she suffered an adverse employment action, she cannot raise a triable issue of fact with regard to her retaliation claim. Her second and fifth causes of action will therefore be dismissed. Having failed to show that she was retaliated against, the Court also finds that Parisi has failed to demonstrate that she was constructively discharged.

[3]   Although Parisi has not alleged a separate and distinct cause of action based upon a constructive discharge, she has alleged that as a result of the conduct outlined in her Complaint she was, "constructively terminated by the BMHA on December 27, 1999." Compl. ¶ 20. While somewhat ambiguous, the Court will assume that plaintiff is arguing that the alleged harassment by Klocek and the three Palladino memoranda and the performance evaluation resulted in a constructive discharge.

In order to maintain her claim, she must show that the BMHA made her working conditions so intolerable that she was forced into a resignation. *See Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir.1993). In addition, plaintiff must also show that such working conditions were "so difficult

or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir.1993) (quotations and citations omitted). "[M]ere dissatisfaction with work assignments, unfair criticism, or working conditions that can be characterized as unpleasant, do not constitute a constructive discharge." *O'Dell*, at 393 (citing *Spence*, at 1156).

The record shows that plaintiff was transferred to another department in January of 1999. In August of 1999, defendant offered the early retirement incentive program to various qualified employees. In September of 1999, plaintiff informed defendant of her interest in the program and, by a November 29, 1999 letter, indicated that she desired "to take advantage of the N.Y.S. Retirement Incentive." Spagna Aff., Ex. Y. Such circumstances do not indicate that plaintiff felt compelled to resign. Plaintiff had no contact with Klocek after her transfer in January of 1999 and she chose the early retirement election more than one year after the alleged harassment had ceased and after the last Palladino Memorandum. The lapse in time between any alleged harassment or retaliatory conduct and her election to participate in BMHA's early retirement program indicates that she did not feel compelled to resign. Moreover, even if she subjectively felt compelled to retire early, she has failed to show that her working conditions were so difficult that a reasonable person would find them intolerable. As discussed above, plaintiff was subjected to neither a hostile working environment nor retaliatory conduct. FN18

FN18. Plaintiff's eighth and ninth causes of action - based on a theory of defendant's "per se" liability - also will be dismissed as each such claim is without merit.

Accordingly, it is *ORDERED* that defendant's motion for summary judgment is granted and that the clerk of this Court shall close this case.

W.D.N.Y.,2003.
Parisi v. Buffalo Mun. Housing Authority
Not Reported in F.Supp.2d, 2003 WL 21382893

Briefs and Other Related Documents (Back to top)

. 1:01CV00171 (Docket) (Mar. 12, 2001)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

