# EXHIBIT A

*Law Offices of*
# KAREN LEE TORRE

*51 Elm Street - Suite 307*
*New Haven, Connecticut 06510*
*Telephone - (203) 865-5541*
*Facsimile - (203) 865-4844*

*99 Whitfield Street*
*Guilford, Connecticut 06437*
*Telephone - (203) 453-7720*
*Facsimile - (203) 453-7721*
**Reply to New Haven Only**

June 21, 2005

Lori B. Alexander, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
P.O. Box 1936
New Haven, CT 06509-1910

      **Re:    Evarts v. SNET**

Dear Attorney Alexander:

You returned my last two telephone calls by leaving a message at my office after 6:00 p.m. last night to the effect that you were filing a Motion for Summary Judgment today. I am surprised and disappointed that you proceeded with such a time-consuming and expensive maneuver in light of our earlier discussions wherein I urged you to resolve this case. You never got back to me with either a clear response to plaintiff's offer or a response to the issue whether we would make use of Joe Garrison or other method to mediate a settlement. It is evident that you instead merely decided to prepare and file a motion for summary judgment.

In light of this, please advise SNET/SBC that the plaintiff's offer to settle is hereby withdrawn.

Given Judge Garfinkel's previously expressed views regarding the wisdom of filing a motion for summary judgement (after thoroughly familiarizing himself with the case), I interpret your motion to be an irresponsible act designed for no other purpose than to generate fees for your firm. This motion follows years of activity from you in defense of this case which has been wildly excessive and disputatious at every turn which has caused the expenses and fees, and the consequent exposure to your client because of the fee-shifting provision, to increase to an extent I have never seen in 18 years of practice.

I have communicated to you throughout this litigation my concern over your behavior which I believe to have been highly irresponsible and contrary to the interest of the parties and the court. In the face of a reasonable demand, you instead over the past month avoided contact with my office while busily generating

June 21, 2005
Lori B. Alexander, Esq.
Page Two

fees for your firm with an unnecessary motion. In frankness, I should state that I am aware that your firm's revenue record (and consequently the compensation to partners) is weak compared to the other major state firms and perhaps for this reason I see that your firm, unlike its competitors, has taken to erecting neon advertising signs at Bradley Airport in an effort to attract business. Whatever shortcomings your firm is facing, however, in no way justify your continuing to exploit the Evarts case for revenue-churning purposes. You have driven up the parties' fees and costs in this case to nearly one-half million dollars despite the fact that you could have settled this case at the CHRO level for $50,000 before the CHRO issued its final Finding of Reasonable Cause in Evart's favor.. I have said all along that I believed you were using this case as a gravy train.

It will be a time-consuming and expensive effort to prepare an opposition to the motion but I am confident the motion will be denied based on case authority with which I am familiar and which I expect will not be cited in your brief.

Please also be advised that in the event the motion is denied, the plaintiff will proceed to trial and will seek the full extent of recovery available to her is she prevails, including what no doubt would be a massive attorney fee award.

I am satisfied that I made every attempt possible to settle this matter and I find this turn of event unfortunate as in dealing with other partners of your firm on prior cases, I have experienced a much more rational and reasonable approach. Accordingly, I will not revisit the issue of settlement if this motion is denied. I will also not revisit the issue of settlement before the motion is decided unless your firm appoints another lawyer to take control of the issue. I trust you will share this will your client.

Very truly yours,

Karen Lee Torre

KLT:map
XC:
George E. O'Brien, Esq.
William S. Fish, Jr., Esq.

# EXHIBIT B

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

SOUTHERN NEW ENGLAND TELEPHONE
227 CHURCH STREET
NEW HAVEN, CT 06510

PERSON FILING CHARGE

Evarts, Denise

THIS PERSON (check one)

[X] CLAIMS TO BE AGGRIEVED
[ ] IS FILING ON BEHALF OF ANOTHER

DATE OF ALLEGED VIOLATION

| Earliest | Most Recent |
|---|---|
| 05/30/97 | 05/30/97 |

PLACE OF ALLEGED VIOLATION

NEW HAVEN, CT

EEOC CHARGE NUMBER

16A983056

FEPA CHARGE NUMBER

9830248

## NOTICE OF CHARGE OF DISCRIMINATION  IN JURISDICTIONS WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See attached information sheet for additional information)*

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[X] Title VII of the Civil Rights Act of 1964
[ ] The Age Discrimination in Employment Act of 1967 (ADEA)
[ ] The Americans with Disabilities Act

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____ .
                                                                *(FEP Agency)*

[X] The CT Commission for Human Rights  and sent to the EEOC for dual filing purposes.
        *(FEP Agency)*

While EEOC has jurisdiction (upon the expiration of any deferral requirement if this is a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This likelihood is increased by your active cooperation with the Agency.

[X] As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained in the "EEOC Rules and Regulations" apply.

For further correspondence on this matter, please use the charge number(s) shown.

[ ] An Equal Pay Act investigation (29 U.S.C. 206(d)) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

[X] Enclosure: Copy of Charge

BASIS OF DISCRIMINATION

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NAT. ORIGIN  [ ] AGE  [ ] DISABILITY  [ ] RETALIATION  [ ] OTHER

CIRCUMSTANCES OF ALLEGED VIOLATION

See enclosed copy of the Charge of Discrimination (or EEOC Form 5).

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| 01/05/98 | Robert L. Sanders, Director | |

EEOC  FORM 131-A  (Rev. 06/92)

RESPONDENT'S COPY

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

ENTER CHARGE NUMBER

- [ ] FEPA
- [ ] EEOC    164 983056
                9830248

## Commission on Human Rights & Opportunities West Central Region and EEOC
### (State or local Agency, if any)

NAME (Indicate Mr., Ms., or Mrs.)
Mrs Denise Evarts

HOME TELEPHONE NO. (Include Area Code)
(860) 526-1416

STREET ADDRESS: 57-2 Cedar Lake Rd

CITY, STATE AND ZIP CODE: Chester CT 06412

COUNTY: Middlesex

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

NAME: SNET

NO. OF EMPLOYEES/MEMBERS: 9,000

TELEPHONE NUMBER (Include Area Code): 771-5200

STREET ADDRESS: 227 Church St New Haven CT

CITY, STATE AND ZIP CODE: 06510 (Corporate offices)

NAME:

TELEPHONE NUMBER (Include Area Code):

STREET ADDRESS:

CITY, STATE AND ZIP CODE:

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

- [ ] RACE
- [ ] COLOR
- [x] SEX
- [ ] RELIGION
- [ ] NATIONAL ORIGIN
- [ ] AGE
- [ ] RETALIATION
- [ ] OTHER (Specify)

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE. (Month, day, year)
5/30/97

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s)):

The particulars of this charge of discrimination are set forth in my complaint # 9830248 which I filed with the Connecticut Commission on Human Rights and Opportunities on 11/17/97 which is attached hereto and incorporated as if fully set forth herein.

RECEIVED DEC 17 1997 E.E.O.C. BOSTON AREA OFFICE

RECEIVED STATE OF CONNECTICUT NOV 17 1997 COMM. ON HUMAN RIGHTS & OPPORTUNITIES WEST CENTRAL REGION

- [ ] I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of any charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date

Charging Party (Signature)
x Denise Evarts

NOTARY (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT
x Denise Evarts

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)
11/17/97

MCE 9/34/99

EOC FORM 5 MAR 84

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED



RECEIVED
DEC 1 7 1997
E.E.O.C.
BOSTON AREA OFFICE

Denise Evarts
57-2 Cedar Lake Rd
Chester Ct 06412
November 13th 1997

1. There are approximately 9,000 employees at Southern New England Telephone Company, throughout the state of Connecticut.

2. I left SNET on May 30, due to harassment from my supervisor Matt Cordner. The harassment had become so unrelenting, unwarranted and abusive that I became very depressed, and my home life was adversely effected. For my own health reasons I no other alternative but to quit. I had tried to transfer out of the department, and I went to the Union with regards to the harassment, but neither avenue had offered an alternative. I worked for the company for 10 years and had very good relationships with my previous supervisors. I had been promised the next promotion from the 2nd line supervisor Ed Dillman, and I always volunteered for task groups and work teams. My repair time was almost always above average. I was the only female supervised by Matt Cordner.

3. Summer of 96 Matt Cordner became my supervisor. Approximately two months after his assignment to my department I discussed my transfer to a satellite office that my previous supervisor had been in the process of arranging. Matt Cordner intervened and reversed the prior approval, he believed that there was insufficient work to justify a satellite office, although the previous supervisor had already established that there was.

4. November of 96. I was out on a Family Medical Leave Act, because I was informed by my sister's doctor that she would not live much longer with her cancer.

5. January 12, 1997 my sister passed away. I came back to work 2 weeks after, the last week in January.

6. January Rick Delevollpe received a new company truck. I had been told by Ed Dillman the 2nd line supervisor that I would be getting a new truck. As of May, I still had not received a new one. I went to the mechanics in the motor-vehicle dept and asked them if I was on a list for a new truck. They said that a new truck had not come in for me, and that it was common practice for a supervisor to change the names on the paperwork if they didn't like a particular employee.

7. February 6, 1997 Matt Cordner came to me in the morning and informed me he would be riding with me to evaluate my work. I felt that one week after returning back to work from a devastating loss was inappropriate bad timing to choose to evaluate someone's work. In addition, I had 9 years experience on the job, and there were two new technicians with less that a year on the job. He had never ridden with any technician since he came to the department. As of May 1997, he still had not ridden with any of the other technicians.

8. February    Matt physically took my cellular phone out of my company vehicle because he claims I went over the 300-minute limit the department had set. There was never any notices sent to the employees as to what the limit was. I offered to pay for any amount over the limit, he said no.

9. February 17, 1997 Matt Cordner gave me a written warning for leaving my truck unlocked. I showed him a note from the mechanics saying that the lock was broken. He began to scream at me at the top of his lungs saying that he didn't care what kind of note I had from the mechanics and that he was still writing me up. He showed me a policy saying that the vehicles needed to be locked. The company vehicles are inside a locked garage, which is inside a locked fence.    At the meeting in which I was given a warning Gerry Nuzzo the union steward was present. He asked Matt if anyone else had ever been written up for leaving their trucks unlocked, Matt said "no".
    When Matt had ridden with me on February 6th my computer was not working properly on a particular phone that I was on. He said to open another pay phone and try to dial on that line. I let him know that security personal had come to our garage and informed us that it was against the employee code of conduct

to open up pay phones other that the ones, which we were working on. He said he didn't' necessarily believe in that policy and told me to open up the pay phone. I was upset that he could arbitrarily pick and choose which policies he wants to adhere to, when and with whom. None of the other guys in the work group had ever been written up for leaving their truck unlocked

10. April 9th he questions me regarding a particular job and why it had taken so long. I asked everyone else in my crew if they had ever been questioned with regard to length of time they had ever spent on a job, they all said no.

11. April I called the EAP office and set up an appointment with a counselor. I had begun to feel sick to at the thought of going to work and I would begin shaking. The counselor said that I was depressed

12. April 29th. Following the chain of command, I asked Matt Cordner to ask his supervisor Ed Dillman for a Transfer or for a pink slip

13. May 2nd I had a meeting with Ed Dillman and Matt Cordner. The union representative was also at the meeting. Ed Dillman said he couldn't justify giving a pink slip and that there were not any job openings. The company had just given thousands of pink slips to employees in November of 1996. Ed Dillman and Matt Cordner then proceeded to pull out computerized sheet of my days work (DCWS) and match them to my written time sheets. They then asked me to account minute by minute my jobs on Friday 4/25/97. I was asked to go over the day 3 times. The union representative asked if anyone else had ever been questioned in this manner. No one ever had. I let him know I would be as accurate as I could be with my time sheets

14. May 6  Matt questioned me again about my time sheets matching up with the DCWS. I had done several jobs that day and he question why one job had 15 minutes more on one and 15 minutes more on another. The total time on the time sheets was the same. I told him it was a mistake and that I was trying to be as accurate as possible with my time reporting. I asked him if he checked any of the other guy's time sheets with the DCWS. He said "no but he would just so I couldn't say that". At the time of my notice on May 16th , he still had not checked any one elses time sheets with the DCWS.

15. Dave Ianello my (co-worker and union representative) had a meeting in the morning with me and the other guys in the crew. He asked if Matt had checked anyone's time sheets with the DCWS and everyone said no. He said that it was harassment what Matt was doing. I asked Dave the union representative to tell Matt that he should stop harassing me. He never did.. He said to wait for him to harass me again and to collect more evidence.

16.  May 8th  Matt spoke with me again about my time sheet, this time to give me a compliment on a "job well done". I thought this was very nice but he was still checking my time sheets and no one else's.

17.  May 16th Friday I decided that Matt's harassment wouldn't stop and I saw no other alternative but to quit. I gave him 2 weeks notice. One of my co-workers Rick Dellevolpe had said, "you know he is going to keep harassing you until you quit. I gave him my notice on Friday.  On Monday he started to write my co-workers up for various things

18.  May 19th, 1997 AM Matt writes Dave Ianello up for leaving his truck unlocked.
19  May 19th 1997. PM. Lou informs me that Matt has shown up at his first job.
20  May 20th, 1997 Matt questions Robert Bock about his time sheets.



RECEIVED
DEC 17 1997
E.E.O.C.
BOSTON AREA OFFICE

21  May 20th Matt left an ace message asking for volunteers to work the holiday. If he doesn't get a volunteer he will pick a name out of a hat. Prior to me giving him my notice, whenever he needed someone to work overtime he would always threaten to force the lowest person on overtime when we were in our reporting room in the morning. He would always do this when we were in our reporting room in the mornings, and he would always look over to me. He did this often enough that it became harassing. I was always the lowest on the overtime list, due to my obligations at home. A very sick sister and a very young baby. Prior to these obligations I had always been near the top of the overtime list and had volunteered whenever I could for overtime.

22. May 30th Last Day of work. Matt refused to give me my exit paperwork, which is SNET policy. I received the paperwork in the mail 3 days later. Matt Cordner had stated on the exit papers "I would not rehire Denise Evarts due to high absenteeism". The high absenteeism occurred during the time of my sister's death. Prior to this tragedy, my sick time had been minimal. In addition , he started searching my truck and pulling out every piece of equipment. To the best of my knowledge this has never been done when someone leaves.



RECEIVED
DEC 1 7 1997
E.E.O.C.
BOSTON AREA OFFICE

# EXHIBIT C

*Law Offices o,*
# KAREN LEE TORRE

*51 ELM STREET - SUITE 307*
*NEW HAVEN, CONNECTICUT 06,*

**KAREN LEE TORRE**
**MICHELLE HOLMES**

*TELEPHONE - 865-5541*
*TELECOPIER - 865-4844*

January 31, 2000

VIA FACSIMILE 596-4241 AND FIRST-CLASS MAIL

Richard C. Gordon, Esq.
State of Connecticut
Commission on Human Rights
    and Opportunities
50 Linden Street
Waterbury, CT 06702

Re:  Denise Evarts v. Southern New England Telephone Company
     CHRO No.: 9830248

Dear Mr. Gordon:

Enclosed please find a Withdrawal of Complaint form with respect to
the above-entitled action.  At this time, the complainant would
like the Commission to cease its handling of this matter and to
issue a release of jurisdiction to file in the Superior Court.

Thank you for your assistance in this matter.

Very truly yours,

Michelle Holmes
Michelle Holmes

MH/np
Enclosure

cc:  Lori B. Alexander, Esq.

Commission on Human Rights & Opportunities

## WITHDRAWAL OF COMPLAINT

COMPLAINANT: DENISE EVARTS

· vs.

CHRO NO.: 9830248
EEOC NO.: 16A983056

RESPONDENT: SOUTHERN NEW ENGLAND TELEPHONE COMPANY

I, Denise Evarts     , the complainant in the above case, hereby
request withdrawal of my complaint. I also request withdrawal of
any companion charge filed with the Equal Employment Opportunity
Commission, charge number above.

Neither the respondent, co-employees, or any other person has
threatened, attacked, intimidated, or inflicted bodily harm upon
me, or threatened me with loss of my job or other benefits as a
result of the filing of this complaint. I am aware that the
Commission on Human Rights and Opportunities protects my rights
to file a complaint. I have been advised that it is unlawful to
discriminate against me because I filed a complaint, acted as a
witness or assisted a representative of the Commission on Human
Rights and Opportunities.

The reason for my withdrawal is as follows:

    ( X )  I am raising the issue in another forum, i.e. federal
           court.
    ( )    I am no longer interested in the opportunity in
           question.
    ( )    I have accepted a satisfactory offer from the
           respondent. The offer included the following:

    _____

    (  ) Other

I am requesting this WITHDRAWAL OF COMPLAINT of my own free will
and without duress or undue influence by the Commission, any
Commissioner or member of its staff, nor by the respondent or any
of its employees. I understand that I may not be able to file
another complaint regarding the issues raised in this complaint.

| Denise Evarts | January 31, 2000 |
|---|---|
| Complainant's Signature as on Complaint | Date |
| *Michelle Holmes* Michelle Holmes | January 31, 2000 |
| BY (his/her Attorney/xxxxxxxxx) | Date |

F503

Issued 4/94
Revised 1/1/96

# EXHIBIT D

CONNECTICUT COMMISSION on HUMAN RIGHTS & OPPORTUNITIES

October 6th, 1998

Denise Evarts
57-2 Cedar Lake Rd.
Chester CT, 06412
Cert. Mail: P316 729 217

Law Offices
Attn: Karen Torre Esq.,
51 elm St.
New Haven CT, 06510

SNET
227 Church St.
New Haven CT, 06510
Cert. Mail: P316 729 218

Tyler, Cooper & Alcorn LLP.,
Attn. Lori Alexander Esq.,
205 Church St.
P.O. Box. 1936
New Haven CT, 06509-1910

RE:    NOTICE OF MANDATORY MEDIATION CONFERENCE AND PENALTY
       FOR FAILURE TO ATTEND
       CHRO No.: 9830248
       EEOC No.: 16a983056.


Dear Parties:

Notice is hereby given to the above-named parties that in accordance with Section 46a-54-69 of
the Regulations of Connecticut State Agencies, the Commission has scheduled a fact finding
conference for the purpose of:  (a) finding facts pertinent to the issues raised in the complaint; and
(b) promoting voluntary resolution of the complaint through settlement or other administrative
processes.

The Fact Finding Conference has been scheduled to convene at 10.00 a.m. on the 6th day of
November, 1998 in the Waterbury Regional Office located at 50 Linden Street, Waterbury, CT
06702.

FL301(2)


Issued 4/94
Revised 1/95

1

*Affirmative Action / Equal Opportunity Employer*

Each party should present to the Commission all facts, testimonial, documentary or otherwise, of any type and/or of whatever source, deemed relevant by the party wishing to have the information considered by the investigator.

Similarly, both Complainant and Respondent are hereby notified that the Commission will assist both parties in securing the testimony of any person as a witness deemed by the Commission to have personal knowledge of the facts relevant to this investigation or compel the production of any documents deemed to be relevant by the Commission in the possession of the opposing party, provided that any such request(s) are made at least fifteen (15) working days prior to the date scheduled for the conference.

Notice is further given that each party has a right to be represented by Counsel of the party's choice. Either party electing to be represented by counsel shall notify the Commission of said election and the name of the attorney(s) at least twenty four (24) hours prior to the Conference.

Notice is further given that this process will be used in order to encourage the parties to settle the complaint pursuant to the Commission's predetermination conciliation process. Therefore, this conference must be attended by individuals, whether complainant, respondent or their representatives, who have the authority to make and accept offer(s) settling the complaint.

**FURTHER BE ADVISED THAT THIS FACT FINDING CONFERENCE IS IN FURTHERANCE OF THE COMMISSION'S MANDATORY MEDIATION PREDETERMINATION CONCILIATION PROCESS AND AS SUCH THE PARTIES' PARTICIPATION IS SUBJECT TO THE COMMISSION'S AUTHORITY TO DISMISS THE COMPLAINANT'S COMPLAINT OR DEFAULT THE RESPONDENT IF EITHER OF YOU FAIL TO ATTEND THE CONFERENCE, WITHOUT GOOD CAUSE, UPON RECEIPT OF THIS NOTICE. SEE THE ENCLOSED NOTICE OF MANDATORY MEDIATION, FOR A FURTHER EXPLANATION OF THE PARTIES' RIGHTS, DUTIES AND RESPONSIBILITIES.**

Either party may raise any concerns pertinent to this complaint, with the HRO Investigator whose name appears below, between 8:30 a.m. and 5:00 p.m. Monday through Friday.

Sincerely

Richard C. Gordon
CHRO Representative.

Enclosure:    GENERAL NOTICE - FACT FINDING CONFERENCES AND WITNESS
              INTERVIEWS, CHRO Form 301

FL301(2)

Issued 4/94
Revised 1/1/96

2

# EXHIBIT E



CONNECTICUT COMMISSION *on* HUMAN RIGHTS & OPPORTUNITIES

**FORM LETTER 402(1)**

## FINAL NOTICE:  REASONABLE CAUSE FINDING AND SCHEDULING OF CONCILIATION CONFERENCE

December 29, 1999

Lori Alexander
Tyler, Cooper, Alcorn, LLP
205 Church St.
New Haven, CT  06509

SUBJECT:     REASONABLE CAUSE FINDING
CHRO NO./NAME:  9830248 Evarts vs. SNET
EEOC NO:          16a983056

Dear (Parties):

Investigation of the above-entitled complaint pursuant to <u>Conn. Gen. Stat.</u> 46a-83 has led me to determine that there is reasonable cause for believing that a discriminatory practice had been or is being committed as alleged in the complaint. I enclose a copy of my reasonable cause determination dated            December 29, 1999    . I must now endeavor to eliminate the discriminatory practice. I have scheduled a conciliation conference at the Commission's office for  __January 27, 2000__    at  __11:00 a.m.__  Failure to attend the conference without notice to me will be deemed failure of conciliation; public hearing will follow.

Under the provision of <u>Conn. Gen. Stat.</u>, Section 46a-84, I must endeavor to eliminate the discriminatory practice by conciliation within fifty (50) days of the date of my reasonable cause finding or certify the complaint for public hearing within ten days. The fiftieth day from my reasonable cause finding is  _February 17, 2000._    . Under the provisions of <u>Conn. Gen. Stat.</u> Sec. 46a-84(b), upon certification, a hearing officer will be appointed and a public hearing shall be held not later than forty five (45) days after the certification of the complaint. The forty fifth day after the certification is  ___April 4, 2000.___   .

FL402(1)

Issued
Revised 1/



50 LINDEN STREET, WATERBURY  CONNECTICUT 06702 (203) 596-4237  FAX (203) 596-4241

*Affirmative Action / Equal Opportunity Employer*

I look forward to meeting with you or a respondent representative who has the authority to sign the conciliation agreement at the conference.

Thank you for your cooperation.

Richard Gordon,
Commission Representative
Enclosures: Case Summary
                General Notice - Post R/C Conciliation #403


cc:

Denise Evarts
Michelle Holmes
SNET

2

FL402(1)

Issued 4/94
Revised 1/1/96