# EXHIBIT H

## AFFIDAVIT OF CONNIE ROGERS

I, Connie Rogers, being duly sworn, hereby depose and say:

1. I am over the age of eighteen and I believe in the obligations of an oath.

2. I have personal knowledge of the facts set forth in this affidavit, and they are true and accurate to the best of my knowledge and belief.

3. I currently hold the position of Manager, Equal Employment Opportunity/Affirmative Action for SNET and have worked for the company for 27 years.

4. Shortly before Denise Evarts resigned from SNET, she came to me and complained that Matt Cordner was harassing her about her job performance at work. I interviewed her and also interviewed Matt Cordner.

5. As a result of my investigation, I concluded that Mr. Cordner's performance actions were based on legitimate business reasons, and I found no evidence of harassment by Mr. Cordner. When I communicated this to Ms. Evarts, she seemed not to care and appeared to be only "going through the motions" with respect to the complaint she had made.

6. Before she resigned, Ms. Evarts told me that she wanted to stay home to spend more time with her son.

_____
Connie Rogers

STATE OF CONNECTICUT)
                    )  ss.:  New Haven, Connecticut
COUNTY OF NEW HAVEN )        January 13, 1998

Personally appeared, Connie Rogers, who swore to and subscribed the above affidavit before me, this 13th day of January, 1998.

_____
~~Notary Public~~
Commissioner of the Superior Court

f:\alexande\misc\rogers.aff

2.

# UNPUBLISHED AUTHORITY

Not Reported in F.Supp.2d                                                                                            Page 1
Not Reported in F.Supp.2d, 2000 WL 274195 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

C

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Jerald BUCKVAR, Plaintiff,
v.
CITY OF NEW YORK and Department of
Transportation of the City of New York, et al.,
Defendants.
No. 98 CIV. 3106(RWS).

March 13, 2000.

Kantrowitz, Goldhamer & Graifman, Chestnut Ridge, By William T. Schiffman, Esq., Gary S. Graifman, Esq., Of Counsel, for Plaintiff.
Honorable Michael D. Hess, Corporation Counsel of the City of New York, New York, By Daniel T. Driesen, Esq., Assistant Corporation Counsel, Of Counsel, for Defendants.

OPINION

SWEET, D.J.

*1 Defendants the City of New York, the Department of Transportation of the City of New York ("DOT"), the Department of Personnel of the City of New York, and the Civil Service Commission of the City of New York (collectively, the "City" or "Defendants") have moved, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss certain of the claims of discrimination of plaintiff Jerald Buckvar ("Buckvar"). The City has also moved, pursuant to Rule 26(c), for a protective order with respect to certain of Buckvar's discovery demands. As set forth below, the motions are granted in part.

*Prior Proceedings*

After requesting and receiving an early retirement buyout package, Buckvar, a former Citywide Night Supervisor with DOT, filed claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), with the New York State Division of Human Rights ("NYSDHR") on April 9, 1996. Buckvar, who at that time was acting *pro se,* alleged one specific instance where he was denied a promotion in August 1995, and that he was compelled to retire in December 1995. Buckvar's Title VII/ADEA charge stated as follows:
1. I am Jewish, 55 years of age, and have opposed unlawful discriminatory practices in that I acted as a witness in a co-worker's race discrimination complaint.
2. I began working for the respondent in 1974, most recently as a Supervisor of Mechanics ME Class II.
3. Throughout my employment I have been subjected to disparate treatment relating to promotions, and other terms and conditions of employment, because of my creed, and more recently, age.
4. Over the course of a couple of years, I acted as a witness in discrimination complaints on behalf of Black employee Simpson Bailey.
5. In August 1995, I was denied a promotion in favor of a much younger and less experienced White, Christian male. Also ignored for this promotion were an Hispanic with similar experience to my own, and Mr. Bailey who had 11 years service, and who the respondent had already terminated.
6. In December 1995, I was compelled to retire because the respondent was threatening to transfer me to a location where my commute would have been much longer and more expensive, and because I was also threatened with a loss of all overtime, which, if I remained at the unaugmented salary, would have reduced my pension salary credits.
7. Based on the foregoing, I charge the above-named respondent with unlawful discriminatory practices related to employment, by denying me equal terms, conditions and privileges of employment, and by forcing me into retirement, because of my age, creed, and opposition to unlawful discriminatory practices, in violation of the New York State Human Rights Law.

On May 1, 1998, Buckvar filed his complaint in the instant action, alleging discrimination pursuant to Title VII, the ADEA, and the New York State Human Rights Law, § 296 *et seq.* ("NYSHRL"). His amended complaint was filed on August 30, 1999.

*2 In his amended complaint, Buckvar has alleged that Defendants committed several specific discriminatory acts other than those contained in his NYSDHR charge, and that a general pattern of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d  
(Cite as: Not Reported in F.Supp.2d)

Page 2

discrimination existed against older and/or non-Caucasian and non-Christian men, since his employment began in 1974.

The City's motion to dismiss all claims which were not alleged in the NYSDHR charge and for a protective order relative to Buckvar's discovery was heard on November 24, 1999 and marked fully submitted at that time.

*The Facts*

The following facts are as alleged in the amended complaint and do not constitute findings of the court.

Buckvar commenced his employment with DOT as an auto mechanic in 1974. Prior to his promotion to the position of Supervisor of Mechanics in 1980, Buckvar was harassed and retaliated against based upon his age and religion. This retaliation consisted of improper forced transfers, unfounded criticism, and denial of promotions.

After Buckvar received his promotion in 1980, he was further retaliated against as a result of his successful union grievance by the denial of overtime and promotions, unfounded criticism, and undesirable transfers.

The promotions which Buckvar was denied were disproportionately granted to younger, less-qualified, less senior white Christian males. Buckvar was also denied the opportunity to apply for several promotions that were granted to Caucasian Christians without the required announcement of a position opening to DOT employees generally. Moreover, Buckvar was denied overtime in retaliation for his success in a union grievance regarding backpay, and he was denied promotion to posted positions in June 1992 and January 1995 in favor of younger Caucasian Christian males.

Buckvar has alleged that on March 6, 1995 he was one of six persons promoted to the position of Assistant Supervisor Class II, and that of the six promoted, the three persons over age 40 did not receive retroactive backpay for a period prior to March 6, 1995, while the younger employees did.

In August 1995, Buckvar applied for promotion to a vacant Chief of Field Operations position and was told by his union steward that Buckvar's supervisors did not want him to apply. At that time, Buckvar complained to Fleet Maintenance Director Herb Graetz ("Graetz") about improper denial of his overtime which was instead being given to his subordinate. Graetz stated that Buckvar would not receive any additional overtime in 1995 and 1996, and threatened to transfer him to Staten Island. At that time Buckvar learned that other supervisors were being called in to work in his stead and some of his subordinates were improperly and unusually being permitted to work in an unsupervised situation.

As a result of the alleged threats, denial of overtime, and unusual events in August 1995, Buckvar feared he was being targeted for an improper or unjustified dismissal and was forced to accept early retirement rather than risk losing his pension.

*3 Buckvar has alleged that the discrimination he suffered was due to his age, race, and religion, and that the discrimination was part of a pervasive pattern existing at DOT's vehicle maintenance facilities, including discrimination in training, assignment of jobs, hours and shifts, and promotional opportunities, and reliance upon subjective and arbitrary criteria in making employment decisions.

Buckvar has also alleged retaliation because of his testimony in connection with a similar discrimination case brought by a co-worker.

On or about February 12, 1998, the EEOC issued Buckvar a right to sue letter, concluding that the evidence presented did not establish a violation of the statutes.

*Discussion*

*The Claim Is Limited To The 1995 Failure To Promote And The Constructive Discharge*

The statute of limitations applicable in an ADEA case is identical to that in an action brought under Title VII. *See Long v.. Frank,* 22 F.3d 54, 58 (2d Cir.1994). Title VII and ADEA actions may not lie unless the plaintiff has filed a timely charge of discrimination with the EEOC. *Miller v. ITT Corp.,* 755 F.2d 20, 23 (2d Cir.1985); *see also Petrelli v. City of Mount Vernon,* 9 F.3d 250, 254 (2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

Page 3

Cir.1993) (citing *Economu v. Borg-Warner Corp.,* 829 F.2d 311, 316 (2d Cir.1987)). To be timely, a claimant has 180 days from the act complained of to file an administrative charge with the EEOC. Where the claimant first filed with a local or state equal employment agency, the period is extended to 300 days of the alleged discriminatory action. *See* 42 U.S.C. § 2000e-5(e)(1); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996); *Gomes v. Avco Corp.,* 964 F.2d 1330, 1332-33 (2d Cir.1992). This statutory requirement is analogous to a statute of limitations. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394 (1982); *Van Zant,* 80 F.3d at 712.

If a plaintiff's claims fall outside of the appropriate limitations period, those claims are barred unless there is evidence of a continuing violation or there is a waiver, estoppel, or tolling of the limitations period. *See Delaware State College v. Ricks,* 449 U.S. 250, 257 (1980); *Zipes,* 455 U.S. at 393; *accord, Mays v. New York City Police Dep't.,* 701 F.Supp. 80, 83 (S.D.N.Y.1988). "It remains an open question whether failure to timely file an administrative charge presents a challenge to subject matter jurisdiction or highlights a failure to state a claim." *Martin v. Reno,* 1999 U.S. Dist. LEXIS 11104, at *4 (S.D.N.Y. July 22, 1999); *Dillard v. Runyon,* 928 F.Supp. 1316, 1321-22 (S.D.N.Y.1996), *aff'd,* 108 F.3d 1369 (2d Cir.1997).

Buckvar seeks to avoid this time-bar by his allegations of a continuing violation. The continuing violation doctrine is most commonly applied "when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests." *Van Zant,* 80 F.3d at 713; *Nweke v. Prudential Ins. Co.,* 25 F.Supp.2d 203, 217 (S.D.N.Y.1998); *Graaf v. North Shore Univ. Hosp.,* 1 F.Supp.2d 318, 322 (S.D.N.Y.1998). Additionally, a continuing violation may be found " 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.' " *Id.* (quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994)). However, "discrete acts of discrimination that are not shown to be the product of a policy or practice do not constitute a continuing violation." *Dixit v. City of New York Dep't of Gen. Servs.,* 972 F.Supp. 730, 735 (S.D.N.Y.1997); *see Van Zant,* 80 F.3d at 713; *Cornwell,* 23 F.3d at 704; *Nweke,* 25 F.Supp.2d at 217.

*4 Moreover, "the continuing violation doctrine is disfavored in this Circuit and will be applied only upon a showing of compelling circumstances." *McKnight v. Dormitory Auth. of the State of N.Y.,* 1998 U.S. Dist. LEXIS 1902, at *19 (N.D.N.Y. Feb. 19, 1998) (quoting *Lloyd v. WABC-TV,* 879 F.Supp. 394, 399 (S.D.N.Y.1995).

In *Johnson v. Nyack Hospital,* 891 F.Supp. 155 (S.D.N.Y.1995), *aff'd,* 86 F.3d 8 (2d Cir.1996), the court identified three factors for consideration in determining whether alleged discriminatory acts are discrete, independent events or elements in a continuing violation. These factors are: (1) whether the alleged acts involve the same type of discrimination, (2) whether they recur frequently or are more in the nature of isolated employment decisions, and (3) whether they exhibited a degree of permanence that should trigger the employee's duty to assert his rights. *See Johnson,* 891 F.Supp. at 163. Moreover, the continuing violation theory is available only if circumstances are such that a reasonable person in the plaintiff's position would not have sued earlier. *See Morris v. Amalgamated Lithographers of Am., Local One,* 994 F.Supp. 161, 164 (S.D.N.Y.1998); *see also Nicholas v. Nynex, Inc.,* 974 F.Supp. 261, 269 (S.D.N.Y.1997) (finding that alleged interrelatedness of denial of fair evaluations, promotions, and awards did not produce an ongoing violation so as to extend the statute of limitations).

The amended complaint does not contain allegations of discriminatory actions sufficient to invoke the continuing violation doctrine. The allegations do not state any facts in support of an ongoing discriminatory policy or practice on the part of the City, but, on the contrary, are general and conclusory. There are no allegations of specific practices, such as the use of seniority lists or employment tests mentioned by the *Van Zant* court, *see* 80 F.3d at 713.

In addition, the allegations in the amended complaint are insufficient under the *Johnson* test. The alleged acts do not involve the "same type of discrimination," *see Johnson,* 891 F.Supp. at 163, but include discrimination on the basis of age, sex, and religion. Because the amended complaint alleges

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

Page 4

no facts with regard to the alleged continuing discrimination of anyone other than Buckvar, it is impossible to determine whether the alleged violations recur frequently or are isolated employment decisions. Finally, with regard to the only specific violations alleged-those relating to Buckvar-such violations exhibit the degree of permanence that should have triggered Buckvar's duty to assert his rights. Indeed, he did assert those rights on repeated occasions, as the amended complaint acknowledges, through union grievances and arbitration.

The amended complaint has alleged the failure to promote in June 1992 and January 1994, denial of overtime in August 1992, and denial of backpay on March 6, 1995. However, these acts cannot properly be considered part of a continuing violation when compared with the specific acts that are timely pled in the NYSDHR charge, *i.e.,* the failure to promote in August 1995 and the forced resignation of December 1995. The claims in the amended complaint are completed, isolated acts which, as stated above, were sufficiently permanent to trigger Buckvar's duty to assert his rights.

*5 These pre-June 1995 claims, both the specific acts and general pattern alleged, cannot be maintained because Buckvar failed to state them in his NYSDHR charge, thereby denying both the City and the EEOC timely notice and the ability to investigate, mediate, and take remedial action. *See Stewart v. U.S. Immigration and Naturalization Serv.,* 762 F.2d 193, 198 (2d Cir.1985). As a general rule, Title VII claims may only be maintained in federal court if they are raised in, or reasonably related to, the allegations brought before the EEOC or equivalent state agency.

To state a continuing violation, a plaintiff must clearly plead the existence of an ongoing violation in both the administrative charge and the federal court complaint. *See Miller,* 755 F.2d at 25; *Scott v. Federal Reserve Bank,* 704 F.Supp. 441, 450 (S.D.N.Y.1989). As held by this Court in *Gilliard v. Goodman, et al.,* 597 F.Supp. 1069 (S.D.N.Y.1984), allegations of a general pattern of discrimination in a complaint fall outside the scope of the EEOC charge where that charge merely alleges a specific act of discrimination and that the employee was "denied equal terms, conditions and privileges of employment." *Id.* at 1079. Even giving plaintiff the benefit of a broad reading of the EEOC complaint, the Court in *Gilliard* dismissed the Title VII claim as to the allegations of a general pattern of discrimination in wages, benefits and training, finding that insufficient notice thereof was provided to defendant. *Id.; see also Butts v. City of New York Dep't of Housing Preservation and Development,* 990 F.2d 1397, 1403 (2d Cir.1993) (finding that, if permitted, such allegations would become "routine boilerplate" and would defeat Title VII's investigatory and mediation goals).

Buckvar's NYSDHR filing alleged only two specific acts of discrimination, a failure to promote in August 1995 and forced retirement in December 1995. It did not allege, either directly or indirectly, the existence of either a continuing violation or a general pattern of discrimination. The NYSDHR charge merely contains the "routine boilerplate" allegations that throughout Buckvar's employment he was the subject of disparate treatment related to promotions and other terms and conditions of employment, and that he was denied the equal terms, conditions, and privileges of employment based upon age, creed, and opposition to discriminatory practices. Allegations of a general pattern of discrimination, failure to promote in June 1992 and January 1995, denial of overtime in August 1992, and denial of backpay on March 6, 1995, are not reasonably related to charges in the NYSDHR complaint in the absence of a charge of a continuing violation.

*Defendants Are Entitled To A Protective Order*

Since only the 1995 failure to promote and the constructive discharge claims survive, discovery will be limited. Because previous failures to promote may be relevant as to intent, discovery will be limited to the five-year period prior to 1995. Discovery will also be limited initially to the criteria and personnel history relating to the thirty named individuals and their positions. Any additional discovery issues will be made the subject of future applications.

*The State Pendant Claims Are Not Barred By The Failure To File A Notice Of Claim*

*6 This Court has held that the notice of claim requirement does not bar pendant state and city discrimination claims. The reasoning set forth in *Klein v. London Star Ltd.,* 26 F.Supp.2d 689, 696

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.   Westlaw.

Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

(S.D.N.Y.1998), is hereby adopted.

*Conclusion*

Buckvar is limited to the claims for failure to promote in 1995 and constructive discharge. Discovery will be limited initially as set forth above. Discovery will be completed within ninety (90) days of the filing of this opinion and the pretrial order filed two weeks thereafter.

It is so ordered.

S.D.N.Y.,2000.
Buckvar v. City of New York
Not Reported in F.Supp.2d, 2000 WL 274195 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

. 1:98cv03106 (Docket) (May. 01, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




210 F.3d 355  
210 F.3d 355, 2000 WL 354223 (C.A.2 (N.Y.))  
**(Cite as: 210 F.3d 355)**  
C

Page 1

Briefs and Other Related Documents  
NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA2 s 0.23 for rules regarding the citation of unpublished opinions.)  
United States Court of Appeals, Second Circuit.  
Kelly RUTKOWSKI, Plaintiff-Appellant,  
v.  
SEARS ROEBUCK CORP., Defendant-Appellee.  
No. 99-9219.

April 6, 2000.

Appeal from the United States District Court for the Southern District of New York, Charles L. Brieant, Judge.

Stephen Bergstein, Law Offices of Michael H. Sussman, Goshen, NY, for appellant.  
E. Johan Lubbe, Jackson Lewis Schnitzler & Krupman, White Plains, NY, for appellee.

Present FEINBERG, CALABRESI and KEITH, FN* Circuit Judges.

FN* Honorable Damon J. Keith, U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

*1 UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be and it hereby is AFFIRMED in part, VACATED in part and REMANDED for further proceedings consistent with this order.

Plaintiff-appellant Kelly Rutkowski appeals from a final order of the United States District Court for the Southern District of New York (Charles L. Brieant, J.), granting summary judgment to defendant-appellee Sears, Roebuck & Co. FN1 ("Sears") on Rutkowski's claims of sexual harassment and constructive discharge in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. The district court's judgment did not address Rutkowski's parallel claims under the New York Human Rights Law, N.Y. Exec. Law § 296, but dismissed the complaint in its entirety. We affirm the district court's dismissal of Rutkowski's claims under Title VII, but vacate and remand for a reconsideration of her state-law claims.

FN1. Sears, Roebuck & Co. is misidentified in the official caption as "Sears Roebuck Corp."

BACKGROUND

From October 1996 until her resignation on June 3, 1997, Kelly Rutkowski was employed by Sears as a salesperson in Sears' Newburgh, New York store, selling home appliances and electronics in the "Brand Central" department. Rutkowski's immediate supervisor was Deborah Smith, the manager of the Brand Central department; Smith in turn reported to John Finley, the store manager.

Rutkowski alleges that, throughout her employment with Sears, she was sexually harassed by male supervisors and coworkers. The bulk of the incidents of which Rutkowski complains involved a coworker in the Brand Central Department, Wayne Ewings, who was hired shortly after Rutkowski. Rutkowski claims that Ewings repeatedly asked her out, ignoring her refusals. In January 1997, Ewings opened Rutkowski's wraparound skirt while she was standing in the middle of the selling floor, and in February 1997, he opened her blouse. On each occasion, Rutkowski pushed Ewings away and told him to stop. On February 26, 1997, Rutkowski left the store late in the evening, after her shift, and found Ewings, who had not worked that evening, sitting in his car, parked next to hers. When Rutkowski asked Ewings what he was doing, he responded that he was waiting for her. Rutkowski was frightened by the incident. The following day, Rutkowski was eating lunch with her two children in a restaurant in the mall where the Sears store was located, when Ewings approached her and asked her to go to a hotel room with him.

During the first week of March 1997, while Rutkowski was absent on sick leave, two messages appeared on a computer monitor in the electronics department: "Kelly gives good blow jobs," and, a few days later, "Has it changed your life yet?" When Rutkowski complained of the messages, Sears management created passwords to limit access to the computers. The same month, Ewings gave Rutkowski an unwanted birthday present, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



210 F.3d 355 Page 2
(Cite as: 210 F.3d 355)

continued to make advances to her. On March 28, Rutkowski complained about Ewings' conduct to Mark Grant, the head of security at the store. The following day, Rutkowski went to the police, and Ewings was charged with criminal harassment. In response, Sears suspended both Rutkowski and Ewings. After an investigation, Rutkowski was allowed to return to work; Ewings remained suspended. During his suspension, Ewings came to the Sears store on one occasion and spoke with another employee in the department where Rutkowski worked. After this incident, Rutkowski obtained a restraining order against Ewings. On April 21, 1997, Ewings was terminated.

*2 Rutkowski also alleges several incidents of harassment by employees other than Ewings: (1) in January 1997, Hardware Manager Jack Krohn made a comment at a sales meeting to the effect that Rutkowski was the top salesperson and that the other salespeople had been "beat[en] by a blonde"; (2) at another meeting in March 1997, Krohn said, "Put Kelly on the tractor[s] and they'll go blowing out of the store"; (3) Krohn and other coworkers, including her supervisor Deborah Smith, were in the habit of calling her "Barbie"; (4) store manager John Finley, on being told that Rutkowski had won a safety contest, asked, "[T]he tasty contest?"; (5) in January 1997, a coworker named Carlos said to her, "No wonder you are top producer, just look at you, you can sell anything"; (6) a coworker named Alex from the auto department came to her department several times between January and May 1997, stared at her, and tried to strike up a conversation, and on one occasion asked her to go out for a drink; (7) following Rutkowski's suspension, her supervisor, Deborah Smith, behaved coldly toward her; and (8) on June 1, 1997, a coworker named Rosemary told Rutkowski that Ewings' wife "carries a gun and she is not afraid to use it especially when it comes to her family," a comment Rutkowski perceived as a threat.

Sears had a written sexual harassment policy, which defined sexual harassment, stated that it was unacceptable, and contained a telephone number that employees could call to report harassment. After Rutkowski's complaints to store management in early March, store manager John Finley also conducted a sexual harassment training session, lasting about an hour, during a quarterly store-wide meeting. (Attendance was not mandatory.)

On June 3, 1997, Rutkowski resigned, telling "some[one in a] management position" that she was doing so due to "family difficulties" "pertaining to the stress I'm having from Sears." On March 4, 1998, Rutkowski filed a charge of sex discrimination with the EEOC, alleging that Sears had subjected her to a hostile environment and had constructively discharged her, and on December 14, 1998, she brought the instant suit, claiming violations of Title VII and of the New York Human Rights Law, N.Y. Exec. Law § 296.

Sears moved for summary judgment, and the district court granted Sears's motion, holding that (1) Rutkowski's claims of hostile environment sexual harassment under Title VII were time-barred because the last claimed act of sexual harassment by a coworker occurred in April 1997, and Rutkowski did not file her EEOC charge until March 4, 1998, more than 300 days later; and (2) Rutkowski had failed to make out a prima facie case of constructive discharge, because at the time of her resignation, Ewings had been terminated, and she had not shown that "conditions after [his] removal were so intolerable as to constitute a constructive discharge." The district court acknowledged that Rutkowski had also raised claims under the New York Human Rights Law, but did not address those claims when it dismissed the complaint.

*3 This appeal followed.

### DISCUSSION

On appeal, Rutkowski contends (1) that the district court erred in holding that her claim of sexual harassment under Title VII was time-barred, because the hostile environment fostered by Sears was a continuing violation that lasted until her resignation on June 3, 1997, making her EEOC charge on March 4, 1998 timely, and (2) that the district court erred in holding that she had not made out a prima facie case of constructive discharge. We conclude that these arguments are without merit, and therefore affirm the district court's judgment insofar as it dismissed Rutkowski's Title VII claims, but remand for that court to dispose of her claims under New York law.

*A. Timeliness of Rutkowski's Claim of Sexual Harassment under Title VII*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



210 F.3d 355            Page 3
(Cite as: 210 F.3d 355)

Title VII and its implementing regulations required Rutkowski to file her discrimination charge with the EEOC or the appropriate state agency within 300 days of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1) (1994); 29 C.F.R. §§ 1601.13(a)(4)(ii)(A), 1601.74 (1999). Accordingly, because Rutkowski did not file her EEOC charge until March 4, 1998, her Title VII cause of action would normally be barred for any discriminatory acts that occurred prior to May 8, 1997, as did almost all the incidents Rutkowski alleges. Rutkowski contends that her EEOC complaint was nevertheless timely for all of the discriminatory acts that occurred during her employment at Sears because the hostile environment fostered by Sears was a continuing violation that lasted until her resignation.

"[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994). Where such a continuing violation is shown, "the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Id.* But the scope of the continuing violation doctrine is limited. "Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993)) (internal quotation marks omitted).

We conclude that Rutkowski has not shown a continuing violation. Almost all the incidents Rutkowski alleges-including all the harassment by Ewings, which involved by far the most serious conduct-occurred prior to May 8, 1997. After May 8, Rutkowski can point to only four events in support of her claim of a hostile environment: (1) on one occasion, Alex from the auto department approached her and said, "I haven't seen you in a while, what are you doing?"; (2) coworkers continued to refer to her as "Barbie"; (3) her supervisor, Deborah Smith, behaved coldly toward her; and (4) a coworker told Rutkowski of a rumor that Ewings' wife "carries a gun and she is not afraid to use it especially when it comes to her family."

*4 These disparate incidents are not sufficiently closely related to the harassment that Rutkowski alleges occurred prior to May 8 to justify invocation of the continuing violation doctrine. Nor has Rutkowski shown that Sears permitted her harassment to continue unremedied for a long enough time to amount to a discriminatory policy. While we express no view as to whether Sears did all that Title VII required with respect to the events that occurred before the May 8, 1997 cutoff date, we conclude that Rutkowski has not alleged sufficient harassment attributable to Sears after that date to show a continuing violation. Moreover, the post-May 8 incidents to which Rutkowski points are not by themselves sufficiently "severe or pervasive" to constitute actionable harassment under Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Accordingly, her claim of hostile environment sexual harassment in violation of Title VII is time-barred.

B. *Constructive Discharge*

Because Rutkowski's resignation occurred on June 3, 1997, less than 300 days before she filed her EEOC charge, her constructive discharge claim is timely.

A constructive discharge occurs when an employer "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir.1993) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983) (quoting *Young v. Southwestern Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975)) (internal quotation marks omitted). "Difficult or unpleasant" working conditions are not enough to support a claim of constructive discharge. *Id.* Under this standard, Rutkowski has failed to raise any genuine question of fact such that a reasonable jury could find that Sears constructively discharged her. When she resigned, Ewings had already been terminated, and the harassment by him had stopped. And Rutkowski has not shown that a reasonable jury could find either that her working conditions after Ewings's departure were so intolerable as to compel her to resign or that Sears had, through deliberate action or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



deliberate inaction, caused those conditions. Accordingly, the district court did not err in granting summary judgment to Sears on Rutkowski's constructive discharge claim.

*C. Rutkowski's State Law Claims*

The district court did not explicitly address Rutkowski's claims under New York law. It did, however, dismiss her complaint *in toto*. To be timely, a suit under the New York Human Rights Law must be filed within three years of the discriminatory action challenged. *See* N.Y. C.P.L.R. § 214(2) (McKinney 1990); N.Y. Exec. Law § 297(9) (McKinney Supp.1999); *Quinn*, 159 F.3d at 765. As Rutkowski filed the instant action on December 14, 1998, her state-law claims are timely for any discriminatory behavior that occurred during her employment at Sears in 1996 and 1997. Because a different statute of limitations applies to those claims, they must be addressed and disposed of separately from Rutkowski's Title VII claims. Since the district court did not do this, we vacate its judgment insofar as it dealt with Rutkowski's state claims and remand those claims. On remand, the district court may decide them on the merits, or it may decline to exercise supplemental jurisdiction over them.

\* \* \*

**\*5** We AFFIRM the judgment of the district court insofar as it dismissed Rutkowski's claims under Title VII, but VACATE and REMAND its judgment with respect to her claims under New York state law.

C.A.2 (N.Y.),2000.
Rutkowski v. Sears Roebuck Corp.
210 F.3d 355, 2000 WL 354223 (C.A.2 (N.Y.))

Briefs and Other Related Documents (Back to top)

. 2000 WL 34003216 (Appellate Brief) Appellant's Reply Brief (Feb. 16, 2000) Original Image of this Document (PDF)
. 2000 WL 34003215 (Appellate Brief) Defendant-Appellee's Brief (Feb. 02, 2000) Original Image of this Document (PDF)
. 1999 WL 33630576 (Appellate Brief) Appellant's Brief (Dec. 30, 1999) Original Image of this Document (PDF)
. 99-9219 (Docket) (Oct. 14, 1999)

END OF DOCUMENT


© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

