Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21801222 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

H

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Bonnie BUTTRON, Laverne Williams, and Loretta McClure, Plaintiffs,
v.
Michael F. SHEEHAN, James Kelly John Maul, and Marcus Lyles, Defendants.
No. 00 C 4451.

Aug. 4, 2003.

MEMORANDUM OPINION AND ORDER

ST. EVE, J.
*1 Plaintiffs brought a twenty-two count complaint against Defendants, alleging various forms of sexual harassment, sexual discrimination and retaliation under Title VII and Section 1983. Defendants move for summary judgment. For the reasons stated herein, Defendants' motion is granted.

BACKGROUND

It is evident from the parties' filings that they need a refresher in both the Local Rules and Federal Rules of Civil Procedure. The parties propounded and responded to an overwhelming one-thousand sixteen statements of fact in this relatively simple Title VII case. Defendants initially filed a daunting four-hundred thirty-nine Statements of Uncontested Facts. Plaintiffs, not to be outdone, submitted five-hundred seventy-seven additional statements of fact. FN1 Obviously, the Court had its work cut out to determine whether a genuine issue of fact existed for trial.

FN1. In their reply memorandum, Defendants rely upon only eight facts. This initially gave the Court hope that the briefing process had worked to significantly narrow the issues. This, however, turned out to be a false hope. Defendants, evidently feeling as though the previous one-thousand sixteen statements of fact were either not material or incomplete, instead cited to eight new pieces of evidence. This was inappropriate, of course, as the Court may not grant summary judgment based on evidence first submitted in a movant's reply. *See Edwards v. Honeywell, Inc.,* 960 F.2d 673, 674 (7th Cir.1992). The Court therefore strikes those facts.

The Court quickly realized, however, that the speed of justice would be further reined in by the substance of the parties' statements of fact and responses. In the end, the parties failed in hundreds of their statements and responses to heed the Federal Rules of Civil Procedure and the Local Rules. With this realization and the record before it, the Court ordered the parties to file a chronology of events. (*See* R. 106-1, July 16, 2003 Order.) Plaintiffs failed to comply with this Order. (*See* R. 109-1.) Before proceeding with the merits, the Court will address the parties' errors. FN2

FN2. The parties should not interpret the Court's decisions to strike certain statements and responses and not to strike others to be a determination of materiality. The Court has chosen instead to disregard those statements that are simply immaterial in the Undisputed Facts Section.

I. Federal Rule Of Civil Procedure 56 And Local Rule 56.1

The Federal Rules of Civil Procedure require the Court to render a decision based on "the pleadings, depositions, answers to interrogatories, and admissions *on file,* together with the affidavits, if any." Fed.R.Civ.P. 56 (emphasis added). In responding to a motion for summary judgment, a party "must set forth specific facts showing that there is a genuine issue for trial ." *Id.*

The Local Rules provide parties with specific details as to how litigants in the Northern District of Illinois should approach summary judgment motions and responses. Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." A party opposing a motion for summary judgment must file, *inter alia,* "a concise response to the movant's statement" that includes:
(A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting material relied upon, and
(B) a statement, consisting of short numbered

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page   2
(Cite as: Not Reported in F.Supp.2d)

paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting material relied upon.

Local Rule 56.1(b)(3). The movant may oppose a respondent's additional facts with a "concise reply." Local Rule 56.1(a).

### A. Conciseness

**\*2** As just seen, the Local Rules twice emphasize that parties' filings shall be concise. FN3 The Court has already discussed the number of statements propounded by both parties. Even the shear number, however, does not convey how bloated the filing are. Defendants' Statement of Facts is a relatively terse thirty-seven pages. Plaintiffs' Response weighs in at one-hundred one pages. Plaintiffs simultaneously filed a one-hundred nineteen page Counterstatement of Facts. Defendants' Reply to Defendant's Counterstatement was a back-breaking three-hundred pages. Needless to say, these last three filings do not meet the Local Rules' requirement that the responses and reply be concise. *Schrag v. Dinges,* 150 F.R.D. 664, 679 (D.Kan.1993) (statements of material facts were "by no definition 'concise' " where they were "rambling, repetitive, and comprise[d][of] as many as ninety pages.")

FN3. The Northern District of Illinois felt no need to define "concise" within the Local Rules. The parties obviously would benefit, however, from a definition of the term. Concise means "marked by brevity of expression or statement: free from all elaboration and superfluous detail" or "cut short: BRIEF." Merriam-Webster's Collegiate Dictionary 239 (10th ed.1999).

### B. Defendants' Statements of Uncontested Facts and Plaintiffs' Counterstatements

#### 1. Failure to attach supporting material

As stated by Federal Rule of Civil Procedure 56, the evidence in support of or opposing summary judgment must be "on file" with the Court. Defendants fail to attach evidence supporting Statement of Fact No. 23. This statement is therefore stricken.

#### 2. Failure to properly cite to supporting evidence

In addition to needing to attach evidence, movants and respondents must adequately cite to the appropriate part of the record that supports their position. *See United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ( "Judges are not like pigs, hunting for truffles buried" in the record). *See also Greer v. Board of Educ. of City of Chicago, Ill.,* 267 F.3d 723, 727 (7 th Cir.2001) ("a lawsuit is not a game of hunt the peanut."). Defendants have not cited to any evidence in their Statement Nos. 5-8. These Statements are therefore stricken. Similarly, Plaintiffs have not complied with this rule with respect to several of their exhibits.

#### a. Exhibit 8

Plaintiffs' Exhibit 8 is a one-hundred twenty-six page transcript of Marcus Lyles' deposition testimony. Plaintiffs rely on Lyles' testimony in twenty-seven of their Counterstatements. Remarkably, Plaintiffs have cited to a wrong portion of the transcript in each instance. The referenced page has nothing to do with the underlying Counterstatement. Further, the correct page is not evident to the Court. Two instances of Plaintiffs' erroneous citations are saved by other evidence that is properly before the Court that supports the Counterstatements. The others, however, have no other support. FN4 Accordingly, the Court strikes Plaintiffs' Counterstatement Nos. 31, 35-36, 40-47, 50, 59-60, 339-340, 343, 448, 452-455 and 534-536.

FN4. In Counterstatement Nos. 59 and 452 Plaintiffs purportedly cite to the Cook County Policy on Sexual Harassment in Exhibit 19 to provide an additional reference. In these Counterstatements, however, Plaintiffs do not inform the Court where to find the support within Exhibit 19. Plaintiffs' failure to provide the specific paragraph or page where the support can be found is fatal to the Counterssstatements themselves. *Dunkel,* 927 F.2d at 956.

#### b. Exhibit 13

Plaintiffs claim that Exhibit 13 supports their Counterstatement Nos. 330, 343, 506, 508-509, 539 and 542. Plaintiffs describe Exhibit 13 as McNamara's deposition transcript. Exhibit 13,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d                                                                      Page 3
(Cite as: Not Reported in F.Supp.2d)

however, is a one-page mocked-up weight-loss advertisement. It provides no support to the underlying Counterstatements. Accordingly, the Court strikes Plaintiffs' Counterstatement Nos. 330, 343, 506, 508-509, 539 and 542.

c. Exhibit 50

*3 Plaintiffs' Exhibit 50 is approximately three-hundred pages long. Plaintiffs routinely cite to tabs that do not exist within this exhibit. The Court has made a good-faith, but ultimately futile, effort to determine what portion of Exhibit 50 purportedly supports Plaintiffs' statements. Accordingly, the Court must strike Plaintiffs' Response Nos. 189 and 361, as well as Counterstatement Nos. 131, 462-68, 472-76, 493, 510-512 and 524-529. FN5

FN5. In Counterstatement Nos. 131 and 462-466, Plaintiffs also cite to other portions of the record. These additional citations, however, either do not support the statements or fail to provide specific paragraph or page numbers for that support.

d. Other Counterstatements not in compliance

The Court also strikes Plaintiffs' Counterstatement Nos. 136, 148-149, 190, 288, 333, 336, 351, 353, 401, 407, 457, 469-471, 548 and 551-552 because Plaintiffs have failed to provide proper and specific references or have mischaracterized the evidence.

3. Lack of specificity and conclusory statements

Plaintiffs attempt to put forth general, conclusory statements in their Counterstatements and Responses. They are inadequate. For example, in Statement No. 189, Defendants proffer an assertion that "Buttron does not believe that she has been subjected to retaliation for filing this lawsuit." In support, Defendants reference Buttron's deposition testimony. Plaintiffs' denial in their response cites, *inter alia*, to a declaration by Buttron that simply says, "I was subjected to extreme and pervasive retaliation following the filing of my complaint." Buttron provides no other details or specifics as to how Defendants manifested this retaliation.

Rule 56 requires a responding party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Conclusory statements of fact should be afforded no weight at the summary judgment stage. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990) (summary judgment is not a place "to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Instead, "the non-movant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations." *Gabrielle M. v. Park-Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir.2003) (emphasis in original). The specificity needed in sexual harassment cases includes an identification of the harassing party, along with the "when, where, or how often this alleged conduct occurred.... Those details are necessary to evaluate the severity and pervasiveness of the conduct." *Id.* In many instances, Plaintiffs fail to provide any level of detail needed to create an issue of material fact. Accordingly, the Court strikes Plaintiffs' Response No. 189, as well as Plaintiffs' Counterstatement Nos. 71, 73-75, 91-92, 115, 122-129, 131, 135, 137, 164, 174, 224, 260, 271, 276, 280, 287, 291, 477-479 and 490-492.

4. Beliefs, speculation and lack of personal knowledge

Plaintiffs attempt to support many Counterstatements through deposition testimony where that witness has no personal knowledge of the subject matter of her statements. Such references cannot be used to establish the existence of a genuine issue of material fact. *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir.1986). Similarly, Plaintiffs' Counterstatements include testimony as to witnesses' beliefs and inferences from others' statements and conduct. This strategy also fails to create a genuine issue of material fact. *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir.1989). Accordingly, the Court strikes Plaintiffs' Counterstatement Nos. 69-71, 82-84, 125, 134, 155-156, 158, 173, 176, 223, 313, 320, 338, 344, 514, 519-20, 523 and 559, as well as the last sixteen words in Counterstatement No. 97.

5. Comments and conduct outside of Plaintiffs' presence or not affecting Plaintiffs

*4 Plaintiffs seek to create an issue of fact by relying on inappropriate employee statements or conduct where there is no evidence that Plaintiffs

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




overheard these statements, observed this conduct, or were affected by this conduct. While these facts may be relevant to show the employer's animus towards Plaintiffs' gender, *Sutton v. Ill. Dep't. of Transp.*, No. 99 C 0265, 2003 WL 1719996, at *9 (N.D. Ill. Mar 31, 2003), Plaintiffs must have known of these statements and this conduct during the time they experienced the purported harassment for the evidence to be probative of a hostile work environment. *Carter v. Chrysler Corp.*, 173 F.3d 693, 701 n. 7 (8th Cir.1999). Although Plaintiffs put forth many statements concerning these types of statements and this kind of conduct, there is nothing in the record to show that they knew about them. Further, the facts have absolutely no probative value for this summary judgment motion, since Defendants do not argue whether the Cook County Sheriff's Office had animus toward women. Therefore, the statements uttered and the acts engaged in outside of Plaintiffs' presence are immaterial to the issues before the Court. Accordingly, the Court strikes Plaintiffs' Counterstatements Nos. 71, 76, 86, 98-110, 132, 135, 137-139, 145-146, 148-49, 150-154, 159-163, 165-166, 181-184, 186, 190-192, 195-198, 200-203, 214-222, 242, 247-248, 251, 263, 356-360, 365-386, and 408-409.

6. Reliance on hearsay

Plaintiffs rely on inadmissable hearsay in an attempt to show that summary judgment is not appropriate. This is improper. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir.1994) (hearsay incapable of creating a genuine issue of material fact). Therefore, the Court strikes Plaintiffs' Response Nos. 173, 199, 200, 310 and 316, as well as Plaintiffs' Counterstatement Nos. 77, 136, 140, 149, 177, 187, 204, 206-207, 236-239, 281, 284, 300-301, 307-309, 390 and 503.

7. Duplicative statements

Plaintiffs submitted repetitive Counterstatements on multiple occasions. Accordingly, the Court strikes Counterstatement Nos. 401-403, 418, 420, 428-432, 434 and 445-446. FN6

FN6. For the purposes of this section, the Court focused on those Counterstatements that were identical to other Counterstatements. Plaintiffs actually submitted many more Counterstatements that were duplicative of Defendants' Statements of Uncontested Fact. This practice is improper and significantly burdens the Court in its attempts to determine which facts are actually in dispute. *Cf. Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 238 F.Supp.2d 1024, 1029 (N.D.Ill.2003).

C. Improper Responses

1. No citation to opposing evidence

Under Rule 56.1, a party may not simply deny a statement of fact in a response. Instead, the party must provide "specific references" to the material that shows that a factual disagreement exists. Local Rule 56.1(b)(3)(A). Accordingly, the Court strikes Plaintiffs' Response No. 313 and Defendants' Response Nos. 11, 34, 38, 450, 479, 490-491, 500 and 502 for failure to provide a citation to facts that evidence a dispute. The Court deems the underlying statements of fact uncontested.

2. Contradiction in declaration

On one occasion, Plaintiffs attempt to create a genuine issue of material fact by submitting an affidavit by Buttron that directly contradicts her deposition testimony. The Seventh Circuit has stated that under these circumstances the affidavit generally is entitled to "zero weight." *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir.2002). The only exception to this general rule is where "the affiant gives a plausible explanation for the discrepancy." *Id.* Plaintiffs have not even attempted to provide an explanation for the discrepancy here. Accordingly, the Court strikes Plaintiffs' Response No. 189.

3. Inclusion of additional information in responses

*5 Plaintiffs admit many of Defendants' Statements, but provide further information in their responses. This is inappropriate. *McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir.1998). Instead, a responding party must submit such facts that it wishes the Court to consider in a separate document. *See* Local Rule 56.1(b). Plaintiffs obviously understand this theory, since they correctly accomplished the task five-hundred seventy-seven times. Accordingly, the Court strikes Plaintiffs' Responses Nos. 37, 44, 50-52, 57, 67, 73-74, 76, 85, 87, 90, 92, 94, 99, 101-104, 112-113, 133,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d  
(Cite as: Not Reported in F.Supp.2d)

Page 5

163, 165, 188, 196, 202-03, 230, 234, 237, 239, 244-245, 247, 259, 275, 279, 285, 302, 305, 307, 309, 315, 325, 326, 335, 337, 340, 346, 355, 356-357, 363, 371, 373, 383, 397-398, 403, 430 and 436, and deems the underlying statements uncontested.

4. Mischaracterization of the propounded statement

Plaintiffs' responses often mischaracterize Defendants' statements in an attempt to gain a tactical advantage. For example, in Defendants' Statement No. 144, Defendants allege that "Buttron testified that Lyles was silent after she told him about her complaints and she left the hearing a few minutes later." Plaintiffs respond that they "admit that after Buttron complained to Lyles, Lyles did nothing in response." Such responses do Plaintiffs absolutely no good. First, they result in an admission of the entire statement, as phrased initially by the Defendants. Second, the Court ignores any additional facts that are stated in the responses. *McGuire,* 152 F.3d at 675. Accordingly, the Court strikes Plaintiffs' Responses Nos. 34, 45, 48, 55, 75, 78, 95, 109-110, 135, 138, 144, 180, 236, 254, 286, 318, 331, 332, 359-360, 364, 374, 377, 395-396, 409, 412, 415 and 434-435, and deems the underlying statements uncontested.

5. Denial of a statement that is clearly not in dispute

Plaintiffs attempt to create an issue of fact by denying some of Defendants' statements where there is no dispute. For example, Defendants assert in Statement No. 42 that "Buttron never complained to Lieutenant Kelly about sexual harassment." The support for this Statement comes straight from Buttron's deposition:
Q. Did you ever complain to Lieutenant Kelly about sexual harassment?
A. No.

(Buttron Dep. at 293.) Plaintiffs deny Statement No. 42, claiming that "Buttron complained to Kelly about behavior that is legally sexual harassment/ discrimination." (R. 98, Pls.' Response ¶ 42.) The material purportedly supporting this denial comes from another part of Buttron's deposition, where she testifies that she complained to Kelly about two events. First, she told Kelly that an officer would not give her a ride in a truck. Second, she informed Kelly that she felt subordinates were "leapfrogging"

her by going directly to the lieutenant for orders. These two complaints do not amount to informing Kelly that there was sexual harassment or discrimination going on in the workplace. Accordingly, the denial is inappropriate.

*6 Another example of such an improper response relates to Defendants' Statements 171 and 172. Defendants there discuss a general order on sexual harassment. Plaintiffs respond by claiming that Buttron never received a copy of the general order. This simply mischaracterizes her testimony. Although Buttron at first did not recall receiving the general order, she later recanted this statement upon seeing the document, and admitted to receiving it. (See Buttron Dep. at 311-315.) The Court strikes Plaintiffs' Response Nos. 42, 96, 108, 145-146, 161-162, 171-172, 177, 186-187, 198-200, 205, 213, 218-219, 224, 228-229, 253, 255, 260, 278, 284, 295, 297, 311, 313, 314, 330, 350, 358, 361, 366, 386, 391, 393-394, 400-401, 405-406 and 439 because Defendants have put forth facts in their respective Statements that Plaintiffs have not sufficiently contested.

6. "Defendants Lack Sufficient Knowledge to Admit or Deny"

Defendants attempt to deny many of Plaintiffs' Counterstatements by claiming only that they do not have enough information to "admit or deny." This is improper. *McGuire,* 152 F.3d at 675. Instead, a responding party must "deny the allegations in the numbered paragraph with citations to supporting evidence in the record." *Id.* The failure to do so results in an admission. *Id.* Therefore, the Court strikes Defendants Response Nos. 39, 292, 335, 349, 387-389, 414-415, 449, 460, 497, 518, 521 and 569-571, and deems the respective Counterstatements admitted.

7. Improper Objections

a. Statements that are neither "legal conclusions" nor "argumentative"

The parties object to hundreds of statements by claiming that they are legal conclusions or argumentative. Many of the statements themselves, however, are simply factual assertions. For example, Defendants' Statement No. 128 claims that "McNamara never engaged in any harassing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  Page 6
(Cite as: Not Reported in F.Supp.2d)

behavior towards Buttron." Plaintiffs offer a denial, stating only that "Paragraph 128 is a legal conclusion, not a statement of fact, and therefore, it is improper in a Local Rule 56.1 statement."

Whether someone engaged in harassing behavior, however, is a question of fact normally reserved for the jury. It is not a legal conclusion. This should be apparent to the parties who, in briefing summary judgment here, are addressing whether there is an issue of triable fact as to whether sexual harassment or discrimination occurred. An appropriate denial under these circumstances is to cite to some evidence that shows that McNamara did, in fact, engage in harassing behavior towards Buttron. Accordingly, the Court strikes Plaintiffs' Response Nos. 128-129, 137, 147, 150, 166, 169, as well as Defendants' Response Nos. 16-17, 30, 37,-38, 43, 78, 193, 210, 213, 235-240, 243, 245, 249, 255, 258, 259, 262, 266-271, 277-279, 290-291, 293, 295, 297, 310, 314, 323-328, 330-332, 334, 337, 347, 350, 352, 361, 364-365, 393, 395-400, 404-406, 410-414, 417-419, 421-422, 436-439, 441-443, 456, 458-460, 513 and 515. FN7

FN7. Defendants also object to countless of Plaintiffs' Counterstatements as "improper statement[s] of fact, speculative, argumentative and irrelevant and immaterial to the issues." These objections are generally baseless, except as otherwise noted by the Court.

b. "During the relevant time period" versus "at the time in question" or "at all relevant times"

*7 Defendants object to numerous additional statements for Plaintiffs' use of the term "during the relevant time period." Defendants claim that the phrase "the relevant time period" was vague and overbroad. Defendants eliminated the argument's persuasiveness by using a similar categorization. In its 56.1 Statements of Fact, Defendants used the phrases "at the time in question" and "at all relevant times." (*See, e.g.,* R. 97-1, Defs.' Statements of Fact ¶¶ 5-8, 31.) Defendants cannot object to Plaintiffs' use of a generalized time period where they have done the same. Accordingly, Defendants' responses to Plaintiffs' Counterstatements Nos. 2, 5 and 8 are stricken. Plaintiffs' respective Counterstatements are therefore deemed admitted.

c. Jurisdiction and venue statements are not "irrelevant and immaterial"

The Local Rules require the party moving for summary judgment to provide "all facts supporting venue and jurisdiction in this Court." Local Rule 56.1(a)(3)(B). Defendants failed to provide these facts. Plaintiffs, however, did submit additional facts showing that the Court has jurisdiction in this matter and that proper venue exists in the Northern District of Illinois. Amazingly, Defendants objected to these statements as "irrelevant and immaterial." ( *See* R. 105-1, Defs' Response to Pls.' Counterstatement at ¶¶ 15-18.) These facts not only are relevant and material, but the failure to submit them "constitutes grounds for denial of the motion." Defendants' objections are patently improper. This Court's ability to decide Defendants' motion for summary judgment was potentially saved by Plaintiffs' decision to include jurisdiction and venue statements. Accordingly, the Court strikes Defendants' Response Nos. 15-18 and deems Plaintiffs' respective Counterstatements admitted.

II. Undisputed Facts

A. The Parties

1. Plaintiffs

Each Plaintiff worked in the sanitation department for the Sheriff of Cook County at the Department of Corrections. Bonnie Buttron and Laverne Williams were both sergeants. (R. 86-1, Pls.' Counterstatement ¶¶ 2, 5-6.) Buttron worked as a sergeant in sanitation from August 1998 to January 2003, while Williams held the same title in the department from 1995 to March 2000. (*Id.* ¶¶ 3, 6.) Loretta McClure was a corrections officer working in the sanitation department from October 1997 to November 30, 2002. (*Id.* ¶¶ 8-9.) McClure was on disability leave from March 1999 to May 2001. (*Id.* ¶ 10.)

2. Defendants

Michael Sheehan, sued only in his official capacity, is the Sheriff of Cook County. (R. 86-1, Pls.' Counterstatement ¶ 11.) The other three Defendants all work in the Department of Corrections within the Sheriff of Cook County's Office. John Maul and Marcus Lyles have acted as assistant executive directors at all relevant times. (*Id.* ¶¶ 13, 14.) James

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                            Page 7
(Cite as: Not Reported in F.Supp.2d)

Kelly has held the rank of lieutenant since 1997. (*Id.* ¶ 13.)

*8 From 1997 to 1999, Lieutenant Kelly was in charge of both the sanitation and kitchen departments. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 22.) While Kelly was in charge of sanitation, he was responsible for assignments and other supervisory activities. (*Id.* ¶ 46.) Beginning on September 1, 1999, Kelly became solely responsible for the kitchen department. (*Id.* ¶ 39-41.)

B. Facts Relevant to Buttron's Purported Sexual Harassment and Discrimination

1. Officers bypassing Buttron

From August 1998 until her early retirement on January 6, 2003, Buttron worked as a sergeant in sanitation. (R. 86-1, Pls.' Counterstatement ¶¶ 3, 562.) One of Buttron's duties during this time was to supervise officers. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 36.) Buttron believes that some officers under her supervision bypassed her by going directly to Lieutenant Kelly. (*Id.* ¶ 54.) On one occasion, some officers snickered when Kelly gave Officer Bunn an assignment. (*Id.* ¶ 47.) Buttron verbally reprimanded the officers who snickered. (*Id.* ¶ 48.) Buttron did not write up any of the officers that bypassed her. (*Id.* ¶ 57.)

2. Staffing and expenditure information

Buttron once asked Lieutenant Kelly if there was room in the budget for her to order additional supplies or equipment. (*Id.* ¶ 62.) Kelly did not respond to her question. (*Id.*) A week later, Buttron saw an officer making a shopping list from a catalog of supplies. (*Id.* ¶ 63.)

3. Disciplinary support

While in sanitation, Buttron wrote-up only two officers. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 67.) Buttron returned one of the write-ups to the officer because she did not wish to discipline the officer. (*Id.* ¶¶ 78-84.)

The other write-up occurred in early 1999. (*Id.* ¶ 68.) Buttron ordered Officer Blankenship to pull logbooks out of the trucks. (*Id.* ¶ 69.) The officer refused Buttron's order. (*Id.* ¶ 71.) Buttron then wrote-up the officer in a disciplinary report. (*Id.* ¶ 72.) Buttron, Lieutenant Kelly, Superintendent Lunk, and Blankenship met to discuss the incident and write-up. (*Id.* ¶ 73.) Kelly and Lunk found that Blankenship was merely following a previous order given by Kelly and was not guilty of insubordination. (*Id.* ¶ 74.) Buttron walked out of the meeting and tore up the write-up.

4. Keys

Buttron asked Lieutenant Kelly for a key to his truck in 1998. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 85.) Kelly told Buttron he would get the keys for her when he had time. (*Id.* ¶ 86.) Buttron later saw other officers driving the truck. (*Id.* ¶ 88.) Buttron, who had keys to two other trucks, never again asked Kelly for a key to his truck. (*Id.* ¶¶ 90-91.)

Buttron asked Kelly for a key to the trailer and the padlocks in September or October 1998. (*Id.* ¶ 93.) Kelly told Buttron that the area was not being used but that she could get a copy made from one of the officers, just as she had done with other keys. (*Id.* ¶ 94.) Buttron subsequently asked an officer for, and received, a copy of the key to the trailer. (*Id.* ¶ 95.) Although Buttron claims that she "constantly" complained to Kelly about not having keys, she only asked him for a set of keys on one occasion. (*Id.* ¶ 96.)

5. Radio calls

*9 On twenty or thirty occasions, Lieutenant Kelly did not respond to Buttron when she radioed him. (R. 86-1, Pls.' Counterstatement ¶ 303; R. 97-1, Defs.' Statement of Uncontested Facts ¶ 111.) When Buttron later would ask Kelly why he had not responded, he would tell her that he was in a location where the radio transmissions would not work. (R. 86-1, Pls.' Counterstatement ¶ 305.) Buttron heard male officers, however, radio Kelly soon after she attempted to do so, and he would respond the them. (*Id.* ¶ 304.) Additionally, Buttron once sent an officer to one location where Kelly said he could not receive transmissions. She was able to reach that officer on the radio. (Buttron Dep. p. 240-242.)

6. Employees' statements and displays

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  
(Cite as: Not Reported in F.Supp.2d)

Page 8

In October 1998, Buttron heard an officer under her command state that "women have no business working in sanitation." (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 102.) Buttron once heard McNamara, while an officer, state that one woman was wide enough that she could not get through the door. (Id. ¶ 132.) Buttron did not hear McNamara mention any names. (Id. ¶ 132.) Buttron never saw any offensive or derogatory materials, pictures or drawings about women displayed on the walls. (Id. ¶ 204.)

7. McNamara takes charge of sanitation

From August to November 1998, Buttron supervised McNamara while he was an officer in sanitation. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 114.) On September 1, 1999, McNamara was selected to be in charge of sanitation. (Id. ¶¶ 115-118.) After McNamara took over, Buttron no longer had the responsibility of making assignments. (R. 86-1, Pls.' Counterstatement ¶ 347.)

8. Buttron charged with falsifying document

Sometime after filing her EEOC charge on March 14, 2000, Buttron was charged with falsifying a document. (Id. ¶ 459.)

9. Buttron's complaints

a. Complaints to Defendant Kelly

The last time that Buttron reported to Kelly that the officers were bypassing her was in May 1999. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 55.) Buttron complained to Kelly once about his failure to instruct the officers to report to her that he had changed their orders. (Id. ¶ 51.)

On one occasion, Buttron told Kelly about an incident in which she and Officer Bunn had a verbal exchange. Buttron considered this officer's conduct to be upsetting, but not insubordinate. (Id. ¶ 98.) Buttron never complained to Kelly about sexual harassment, sexual discrimination, sexual jokes, or suggestive cartoons. (Id. ¶¶ 42, 108-110, 177.)

b. Complaints to Defendant Maul

Buttron first spoke to Assistant Executive Director Maul about the sanitation department in January or February 1999. (Id. ¶ 156.) During that conversation, Buttron presented Maul with a hypothetical situation and asked Maul what action he recommended. (Id. ¶ 157.) Maul suggested following the Cook County Sheriff's Office's general orders and writing up the officers as appropriate. (Id.)

*10 Buttron had another conversation with Maul in March or April 1999. (Id. ¶ 158.) In that discussion, Buttron told Maul that she was a victim of discrimination. (Id. ¶ 159.) Buttron commented that there was "something subliminal" involving "favoritism" and "sexism" going on in sanitation. (Id. ¶ 161.) Buttron did not give Maul any examples of how the atmosphere in sanitation was unsatisfactory. (Id. ¶ 162.) Maul responded that he would investigation that matter, and that Buttron should report to him directly if she had any other complaints. (Id. ¶ 163.) Buttron did not complain to Maul again about harassment or discrimination, or inform Maul of any sexual jokes or suggestive cartoons. (Id. ¶¶ 164-65.)

c. Complaints to Defendant Lyles

Buttron had two conversations with Assistant Executive Director Lyles regarding problems in sanitation. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 139.) Buttron's first conversation with Lyles occurred sometime in the late Spring or early Summer of 1999. (R. 86-1, Pls.' Counterstatement ¶ 325.) In that conversation, Buttron told Lyles that there was "confusion" with the officers because they bypassed Buttron and dealt directly with Lieutenant Kelly. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 141.)

The second conversation also occurred in 1999 during a grievance hearing regarding charges that Buttron had forged Superintendent Lunk's signature. (Id. ¶ 142.) At that grievance hearing, Buttron told Lyles that Lunk, Kelly and other officers in sanitation were all liars. (Id. ¶ 143.) Buttron never complained to Lyles about sexual harassment. (Id. ¶ 150.)

d. Complaints to third-party employees

On December 19, 1999, Buttron complained to Superintendent Lunk about the "favoritism, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d                                                                    Page 9
(Cite as: Not Reported in F.Supp.2d)

sexism, blatant behavior that was going on in the unit." (*Id.* ¶ 350.)

### C. Facts Relevant to Williams' Purported Sexual Harassment and Discrimination

Williams went on disability leave the day after McNamara took charge of sanitation in September 1999. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 233.) She accepted early retirement on November 30, 2001. (R. 86-1, Pls.' Counterstatement ¶ 550.)

#### 1. Conduct by inferiors

In 1997, McNamara, while an officer, hid Williams' truck, moved her truck and failed to respond to her radio calls. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 230.) Also that year, another officer moved her truck, failed to obey orders and refused to attend roll call. (*Id.* ¶ 234.) At another time, Officer Bunn failed to follow Williams' directions. (*Id.* ¶ 224.)

#### 2. Purportedly offensive statements

After Kelly learned that Buttron was going to work in sanitation beginning August 1997, he stated in front of Williams, "[t]he last thing I need is a female sergeant." (*Id.* ¶ 239.) Williams overheard some radio transmissions stating, "don't let her sit on you." (*Id.* ¶ 272.)

#### 3. Cartoons

*11 Williams saw three different cartoons that she felt were offensive in 1997 or 1998. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 226.) One was a depiction of a person with a dog. (*Id.* ¶ 228.) Williams only saw this cartoon in 1997. (*Id.* ¶ 229.)

The second cartoon was titled "gutless" and depicted a person in sergeant's stripes. (*Id.* ¶ 228.) The third cartoon referred to Officer Dotson's son, who was incarcerated. (*Id.* ¶ 228.)

#### 4. Williams' complaints

##### a. Complaints to Defendant Kelly

Before going on disability leave, Williams had numerous conversations with Lieutenant Kelly about sexual harassment. (*Id.* ¶ 249.)

##### b. Complaints to third-party employees

On July 27, 1999, Williams wrote a memorandum to Superintendent Lunk regarding Officer Bunn's failure to report to her or to follow her orders. (R. 86-1, Pls.' Counterstatement ¶ 327.)

### D. Facts Relevant to McClure's Purported Sexual Harassment and Discrimination

McClure worked as an officer in sanitation from October 1997 until her early retirement on November 30, 2002. When McClure first joined sanitation, Williams was her direct supervisor. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 280.)

#### 1. Duties

As an officer, McClure's responsibilities included care and maintenance of the grounds, as well as supervision of inmates who would clean, shovel snow, recycle paper and cut grass. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 290.) McClure does not believe that any of the work associated with these responsibilities is difficult. (*Id.* ¶ 291.) She therefore has no preference as to her job assignment. (*Id.* ¶¶ 311.) McClure would rather be busy than idle. (*Id.* ¶ 329.)

McClure took a disability leave from March 1999 until May 2001. (R. 86-1, Pls.' Counterstatement ¶ 572.) On August 3, 2001, McNamara gave McClure the responsibility of supervising inmates' cleaning assignments. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 326.) This was the first time since 1997 that McClure had to supervise these tasks. (*Id.*) Sergeant Williams previously had these assignments. (R. 86-1, Pls.' Counterstatement ¶ 482.) McClure's new assignments included supervising inmates cleaning the washrooms and the locker room. (*Id.* ¶ 481.)

McNamara also gave McClure more assignments than he gave the male officers. (R. 86-1, Pls.' Counterstatement ¶ 483.) Each day, McNamara assigned McClure to complete multiple tasks, while he gave the male officers only one assignment. (*Id.* at ¶ 484.) This schedule left the male officers time to socialize when they were finished or on break. (*Id.* at ¶ 485.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

Page 10

### 2. Hangman's noose

McClure saw a hangman's noose in the workplace in late 1997. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 415.) She saw Officer Peterson make a noose before she went on disability leave in March 1999. (*Id.* at ¶ 417.) The next time McClure saw a hangman's noose was on October 12, 2001. (McClure Dep. at 301.)

### 3. Training

**\*12** McClure requested training for a Commercial Drivers License from the Cook County Sheriff's Academy on May 1, 1998. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 318.) She never received that training nor renewed her request. (*Id.*)

Although inmates generally cut the grass, they are not allowed to drive the SCAG truck, which is a riding mower. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 308.) Instead, officers generally drive it. McClure wanted to learn how to ride the SCAG truck in order to decrease her time spent supervising inmates. (*Id.* ¶ 309.)

### 4. Return from disability leave

While McClure was on disability leave from March 1999 to May 2001, the sanitation department moved to new offices. (R. 97-1, Defs .' Statement of Uncontested Facts ¶ 347.) When she returned from her disability leave, McClure found most of her property had been moved to a secure area in the new offices. (*Id.* ¶ 350.) McNamara admitted to McClure that he had taken her coffee pot. (R. 86-1, Pls.' Counterstatement ¶ 498.)

### 5. Leaving early and overtime

McClure asked for permission to leave work one hour early after working through lunch on June 17, 2001. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 338.) McNamara denied her request. (*Id.* ¶ 339.) McClure did not request overtime pay for the time that she worked through lunch. (*Id.* ¶ 340.) Although McClure believes that four officers have all received permission to leave early on occasions, she, however, does not know the circumstances surrounding their requests to leave early. (*Id.* ¶ 342-343.)

### 6. Poison ivy

McClure came into contact with poison ivy in the Spring of 2001. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 292.) She sought and received treatment for poison ivy reaction. (*Id.* ¶ 293.) After coming into work for part of the next day, she was off-duty for two-and-a-half weeks. (*Id.* ¶¶ 294, 299.) On August 2, 2001, McNamara gave McClure a written reprimand for failing to call into work that she would be absent on July 17, 2001, due to her poison ivy contact. (R. 86-1, Pls.' Counterstatement ¶ 499.) In the past, McClure did not have to call in absent when she received a duty injury. (*Id.* ¶ 500.) While she was on injury duty, officers came to her home. (*Id.* ¶ 501.)

### 7. McClure's complaints to Superintendent Lunk

McClure complained to Superintendent Lunk that McNamara had retaliated against her by assigning her more and less desirable work. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 382.) Lunk reviewed each of McClure's complaints and told her to fill out a three-part form. (*Id.* ¶ 388.) In subsequent meetings, McClure informed Lunk that she McNamara had stopped the retaliation and that things were getting better so she did not want to file the charges. (*Id.* ¶ 394.) Later, she completed the form, gave it to Maul and Lyles, and provided Lunk with a carbon copy. (*Id.* ¶ 399.)

### E. Plaintiffs' EEOC Charges and Complaint

**\*13** Buttron and Williams filed EEOC charges on March 14, 2000, while McClure filed her EEOC charge on July 19, 2000. The EEOC issued each Plaintiff a right to sue letter on September 22, 2000. Plaintiffs then filed their Complaint in this Court on October 23, 2000. FN8

FN8. Judge Hibbler initially presided over this case until it was transferred to this Court as part of a mass reassignment on August 30, 2002.

### STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

Page 11

a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir.2000). The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v.. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir.2002). The Court accepts the non-moving party's version of any disputed facts but only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996).

ANALYSIS

Each Plaintiff brings relatively the same causes of action against Defendants. The only difference is that Buttron and Williams allege that Defendants Kelly, Lyles and Maul intentionally and willfully violated their right to equal protection, in violation of 42 U.S.C. § 1983 (Counts 1-3 and 9-11). McClure brings that claim only against Defendant Kelly (Count 17). Otherwise, Plaintiffs' claims are identical. Each alleges that the Cook County Sheriff's Office had a discriminatory custom or usage in violation of Section 1983 (Counts 4, 12 and 18); that they were denied equal protection under the law in violation of Section 1983 (Counts 5, 13 and 19); that they were subjected to sexual discrimination and a hostile work environment in violation of Title VII (Counts 6, 14 and 20); that they were the victims of retaliation in violation of Title VII (Counts 7, 15 and 21); and the Cook County Sheriff's Office is required to indemnify Kelly, Lyles and Maul (Counts 8, 16 and 22). Defendants argue they are entitled to summary judgment on each cause of action.

I. Defendants Are Entitled To Judgment As A Matter Of Law On Plaintiffs' Sexual Discrimination And Harassment Claims Under Title VII And Section 1983 FN9

FN9. Because Plaintiffs have not established sexual discrimination or harassment, the Court analyzes their Title VII and Section 1983 claims together. Under Section 1983, however, Plaintiffs are also required to show that the Cook County Sheriff's Office violated their rights by means of: (1) an express policy; (2) a widespread custom or practice; or (3) a constitutional injury caused or ratified by a person of final policy making authority. *Kujawski v. Bd. of Comm'rs of Bartholomew County, Ind.,* 183 F.3d 734, 737 (7th Cir.1999).

A. Plaintiffs' Claims Are Untimely

**\*14** Title VII and Section 1983 cases provide for different standards of timeliness. Title VII requires a plaintiff to file an EEOC charge within 300 days of the discrimination or harassment. 42 U.S.C. § 2000e-5; *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002). Many of the acts Plaintiffs rely on fall outside of that 300 day period. Plaintiffs claim that even discriminatory acts occurring outside of this window are timely because of the "continuing violation theory." They contend that under this doctrine, "a plaintiff may seek relief for discriminatory acts that occurred outside the limitations period by linking them to acts within the period." This is a bold statement considering that the Supreme Court rejected the application of this doctrine to discrete acts of discrimination in *Morgan:* FN10

FN10. Plaintiffs' statement surprisingly comes two sentences after they cite to *Morgan.*

The Court of Appeals applied the continuing violations doctrine to what it termed "serial violations," holding that so long as one act falls within the charge filing period, discriminatory and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

Page 12

retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability.... [W]e reverse.... Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." [A plaintiff] can only file a charge to cover discrete acts that "occurred" within the appropriate time period. *Id.* at 114, 122 S.Ct. at 2072-73. The discrete acts outside of the 300 day window do not become timely merely by arguing that they are related to an act within that period. *Id.*

The Supreme Court applies a different standard in hostile work environment cases. If any part of the hostile work environment occurred within 300 days of the EEOC charge, Plaintiffs' claims are timely. *Id.* at 117, 122 S.Ct. at 2074. *See Shields v. Fort James Corp.*, 305 F.3d 1280, 1283 (11th Cir.2002) (action could be maintained "in its entirety if any part" of hostile work environment fell within statute of limitations period). With both discrete acts and hostile work environment claims, therefore, the analysis begins with determining what acts occurred within 300 days of Plaintiffs' filing EEOC charges.

Since McClure filed her EEOC charge on July 19, 2000, her grievance would have to rest on some act of harassment or discrimination that occurred after September 22, 1999 to sustain a claim under Title VII. McClure, however, was on disability leave this entire time. Her leave began in March 1999 and ended May 2001. (R. 86-1, Pls.' Counterstatement ¶ 572.) She therefore was not subjected to a hostile work environment during this time. Additionally, she has presented no evidence of an adverse employment action that occurred while she was on disability leave. Her Title VII claim for sexual discrimination and harassment are therefore untimely.

Since Buttron and Williams filed their EEOC charges on March 14, 2000, those charges must be based on acts occurring after May 18, 1999. Neither Buttron nor Williams submit competent evidence that any of the acts they complain about occurred after that date. They have some evidence that they complained to their supervisors during the time frame about certain conduct, but there is no evidence as to when or if that underlying conduct occurred.

*15 Plaintiffs' Section 1983 claims fare no better. Section 1983 claims are subject to a two-year statute of limitations in Illinois. *Licari v. City of Chicago*, 298 F.3d 664, 667-68 (7th Cir.2002). Plaintiffs filed their Complaint on October 23, 2000. Therefore, their Section 1983 causes of action are timely if the actionable conduct occurred on or after October 23, 1998. Plaintiffs, however, have offered no competent evidence of any discrimination or harassment that occurred after that date. Accordingly, their Section 1983 claims cannot survive.

B. Plaintiffs' Discrimination Claims also Fail because They have not Presented Evidence that they Suffered an Adverse Employment Action

Separate from Plaintiffs' problems with timing, they cannot show that they were subjected to any employment discrimination under federal law. Federal employment discrimination statutes are "not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 653 (7th Cir.2000) (emphasis in original). Title VII only forbids an employer's act of discrimination related to the employee's "compensation, terms conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court requires the discrimination to result in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

The Seventh Circuit has recently categorized the cases where the requisite act of discrimination existed into three categories: (1) those where "the employee's compensation, fringe benefits, or other financial terms of employment are diminished;" (2) those where a "nominally lateral transfer" or job change "significantly reduces the employee's career prospects" by stunting her career because of skill-set inactivity; and (3) those where the employer changes the conditions of her employment "in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment." *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir.2002). This latter category includes cases of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d                                                          Page  13
(Cite as: Not Reported in F.Supp.2d)

harassment, so long as the change is "sufficiently severe to worse substantially [her] conditions of employment as they would be perceived by a reasonable person in the position of the employee." *Id.* at 745.

Plaintiffs first claim that they suffered from a denial of overtime. Plaintiffs argue that male *officers* had the right of first refusal when it came to overtime. This argument does not apply to Buttron and Williams, since they are *sergeants*. FN11 Plaintiffs have presented no evidence showing that the male officers worked overtime to the exclusion of the sergeants. In addition, McClure has failed to provide any specifics as to when such denials occurred or how much overtime she lost. FN12 Plaintiffs' argument concerning overtime is meritless.

FN11. Further, Buttron has admitted that she has no complaints about overtime scheduling for herself. (R. 97-1, Defs.' Statement of Uncontested Facts ¶ 186.)

FN12. Plaintiffs do submit evidence that McClure did not receive overtime pay on one day that she worked through her lunch hour. This conduct, however, occurred well after she filed her EEOC charge and this Complaint. Further, even in this instance, she did not request an overtime payment. This evidence cannot support a claim that she suffered an adverse employment action.

*16 Next, each Plaintiff contends that she lost income benefits due to her disability leave. FN13 Buttron provides no competent evidence that she even took a disability leave. FN14 Further, there is no competent evidence that shows a causal connection between the leave taken by Williams and McClure and any alleged act of discrimination or harassment. Therefore, Plaintiffs cannot show that they were the subjects of an adverse employment action. FN15 Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiffs' sexual discrimination claims.

FN13. Plaintiffs combined their sexual discrimination and harassment claims into one analysis. They maintain that they suffered from "substantially worse working conditions due to severe mistreatment by co-workers and supervisors." This is actually the basis for their hostile work environment claims. The Court will therefore analyze the merits of this argument in the next section.

FN14. The Court makes no finding as to whether there are any circumstances where an employee taking a disability leave because of a hostile work environment can show that she suffered from a adverse employment action.

FN15. Although not argued, Plaintiffs elsewhere attempt to bring forth facts regarding the Cook County Sheriff's Office's failure to train them. Even if argued, Plaintiffs would not succeed. A failure to train is only actionable if it resulted in a materially adverse employment action. *Cf. Hoffman v. Caterpillar,* 256 F.3d 568, 575 (7th Cir.2001); *see also Spencer v. AT & T Network Sys.,* No. 94 C 7788, 1998 WL 397843, at *5 (N.D.Ill. July 13, 1998). Plaintiffs do not make this showing.

C. There is no Dispute of Material Fact as to whether Plaintiffs were Subjected to a Hostile Work Environment under Title VII

Even if their claims were not time-barred, Plaintiffs could not establish that a hostile work environment existed as a matter of law. To establish a *prima facie* case of a hostile work environment through sexual harassment, Plaintiffs must show that (1) they were harassed, (2) that they were harassed because of their sex, and (3) that the conduct was severe or pervasive enough to create a subjectively and objectively hostile work environment. *Haugerud v. Amery Sch. Dist.,* 259 F.3d 678, 693 (7th Cir.2001). Hostile work environment claims require courts to look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993).

Defendant argues correctly that Plaintiffs cannot, as they must, establish that the work environment was objectively hostile. *Haugerud,* 259 F.3d at 691. The conduct Plaintiffs complain about has very little to do with their gender. None of the conduct that Plaintiffs complain about was sexual in nature in nature. *See Cowan v. Prudential Insur. Co. of Am.,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
(Cite as: Not Reported in F.Supp.2d)

Page 14

141 F.3d 751, 758 (7th Cir.1998). Even the gender-related comments were rarely directed at Plaintiffs. *Gleason v. Mesirow Fin., Inc.,* 118 F.3d 1134, 1144 (7th Cir.1997) ("the impact of 'second-hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff."). Additionally, Plaintiffs were not subjected to any physical threats or humiliation.

The most objectively offensive conduct relates to something other than Plaintiffs' gender. Plaintiffs submitted evidence of two depictions of heavy women, as well as evidence that some officers joked about Williams' weight. Additionally, Plaintiffs provided evidence that an officer displayed nooses on occasion in the office. FN16 Without somehow showing that this conduct also related to Plaintiffs' gender, the weight references and noose displays are insufficient to show sexual harassment. *Derrico v. Pinkerton's, Inc.,* No. 97 C 5851, 1999 WL 311757, at *4 (N.D.Ill. May 12, 1999) ("comment that plaintiff and a male co-worker were 'fat,' while tasteless, was not sexual in nature either."). While the officers' conduct might, at times, amount to being "crude, sometimes offensive, and inappropriate," this type of behavior was not objectively severe or pervasive enough to rise to the level of hostile. *Cowan,* 141 F.3d at 758.

FN16. Whether the noose displays were racially offensive is not before this Court. Plaintiffs, who have not brought racial discrimination or harassment claims, have not presented any evidence of their race. Further, rather than relating to race, or even gender, there is undisputed evidence that the officer who created the nooses actually used them to intimidate inmates.

II. Defendants Are Entitled To Judgment As A Matter Of Law On Plaintiffs' Retaliation Claims Under Title VII

*17 The Seventh Circuit recently enunciated a new standard for establishing *prima facie* cases of retaliation. *See Stone v. City of Indianapolis Pub. Utils. Div,* 281 F.3d 640 (7th Cir.2002). Under the *Stone,* a plaintiff must show that: (1) she was subjected to an adverse employment action, (2) no similarly situated employee who did not file a charge was subjected to that adverse employment action; and (3) she was performing her job in a satisfactory manner. *Id.* at 644. Defendants argue once again that Plaintiffs suffered no adverse employment actions. Plaintiffs counter that their decisions to accept early retirement amounted to constructive discharges.

The constructive discharge doctrine gives "protection to a plaintiff who decides to quit rather than wait around to be fired." *Bragg v. Navistar Int'l Transp. Co.,* 164 F.3d 373, 377 (7th Cir.1998). To show a constructive discharge, a plaintiff must establish that: (1) the conditions at work were so intolerable that a reasonable person would have been compelled to resign; and (2) the working conditions must be intolerable in a discriminatory way. *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 705 (7th Cir.1993). A plaintiff claiming that the discriminatory work environment led to her to resign must show that the discriminatory environment was "even more egregious than the high standard for hostile work environment." *Tutman v. WBBM-TV, Inc.,* 209 F.3d 1044, 1050 (7th Cir.2000), *cert. denied,* 531 U.S. 1078, 121 S.Ct. 777, 148 L.Ed.2d 675 (2001).

The undisputed facts show that Plaintiffs were not constructively discharged. Plaintiffs have not presented sufficient evidence showing that the conditions at work were intolerable or that they were intolerable in a discriminatory way.

There is nothing in the record suggesting that any Plaintiff suffered an adverse employment action due to retaliation. The only evidence of anything happening to Buttron after she filed her EEOC charge is that the Cook County Sheriff's Office charged her with falsifying Superintendent Lunk's signature on a document. Plaintiffs do not argue, however, that this was a form of retaliation against Buttron. (R. 92-1, Plaintiffs' Response at 20.) Buttron does not even contest the falsification charges themselves. Buttron has failed to present evidence as to the extent of the discipline she suffered from this falsification charge. Without more, this one instance of discipline cannot serve as the basis for a retaliation claim.

Plaintiffs submit no competent evidence of Williams being subjected to any hostility or retribution after filing her EEOC charge or complaint. Williams argues that she was transferred to another division in retaliation for her EEOC charge. The evidence of Williams' transfer, however, is not properly before

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                          Page 15
(Cite as: Not Reported in F.Supp.2d)

the Court. The Court struck the corresponding statements. Even if it were properly before the Court, it would be unhelpful. "A *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996). Williams' self-serving statement that her new division was not as appealing as the old one is not sufficient to create a genuine issue of material fact. *See Hall v. Bodice Elec. Co.,* 276 F.3d 345, 354 (7th Cir.2002) (noting that "[i]t is well settled that conclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact."). The undisputed facts show that Williams was not the victim of retaliation because did not suffer an adverse employment action.

*18 McClure has only presented evidence that she had an increased workload and new responsibilities after filing her EEOC charge and this Complaint. Plaintiffs correctly do not argue that this increase amounts to an adverse employment action. Indeed, the Seventh Circuit only recognizes a decrease in workload as actionable. *See Herrnreiter,* 315 F.3d at 744. Even then, it must be associated with a loss of responsibility in such a way to stunt her career. *Id.* A simple increase in workload is not enough to show an adverse employment action. *Utomi v. Cook County,* No. 98 C 3722, 2001 WL 914465, at *6 (N.D.Ill. Aug.14, 2001). McClure even admits that she would rather be busier at work.

In sum, Plaintiffs have simply made no showing that they were constructively discharged or that they suffered any other adverse employment action. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiffs' retaliation claims.

### V. Defendants' Are Entitled To Judgment As A Matter Of Law On Plaintiffs' Indemnification Claims

Plaintiffs' indemnification causes of action are wholly dependent on the viability of the underlying claims. Because Plaintiffs' underlying claims cannot survive, Defendants are entitled to judgment as a matter of law on Plaintiffs' indemnification claims.

### CONCLUSION

The evidence that is properly before the Court shows that Defendants are entitled to judgment as a matter of law on all claims. Plaintiffs have not followed the Court's Orders, the Federal Rules of Civil Procedure and the Local Rules. They have also failed to create a genuine issue of material fact with respect to any of their causes of action. Accordingly, the Court enters summary judgment in favor of Defendants.

N.D.Ill.,2003.
Buttron v. Sheehan
Not Reported in F.Supp.2d, 2003 WL 21801222 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

. 2003 WL 23831953 (Trial Motion, Memorandum and Affidavit) Response to Defendants' Bill of Costs (Sep. 05, 2003)
. 2003 WL 23419539 (Trial Motion, Memorandum and Affidavit) Defendants' Rule 54(d)(1) Motion for Costs (Sep. 03, 2003)
. 2003 WL 23419538 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Vacate or Alter Judgment and to Reconsider Entry of Summary Judgment (Aug. 18, 2003)
. 2003 WL 23419533 (Trial Motion, Memorandum and Affidavit) Motion for Leave to File Amended Table of Events Instanter (Aug. 01, 2003)
. 2003 WL 23831952 (Trial Motion, Memorandum and Affidavit) Response of Defendants to Plaintiff's LR56.1 (b) Counterstatement of Facts Supporting Defendants' Motion for Summary Judgment (Jun. 06, 2003)
. 2003 WL 23419531 (Trial Motion, Memorandum and Affidavit) Motion for Extension of Time (May. 21, 2003)
. 2003 WL 23831947 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendants' Amended Statement of Uncontested Facts Pursuant to Local Rule 56.1 (Apr. 23, 2003)
. 2003 WL 23419537 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Strike (Mar. 25, 2003)
. 2003 WL 23419540 (Trial Motion, Memorandum and Affidavit) Agreed Motion for an Extension of Time (Mar. 14, 2003)
. 2003 WL 23419530 (Trial Motion, Memorandum and Affidavit) Motion for an Extension of Time (Feb. 13, 2003)
. 2003 WL 23419541 (Trial Motion, Memorandum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Not Reported in F.Supp.2d                       Page 16
(Cite as: Not Reported in F.Supp.2d)

and Affidavit) Motion for an Extension of Time (Jan. 06, 2003)
. 2002 WL 32453108 (Trial Motion, Memorandum and Affidavit) Defendant's Motion for Leave to File Motion for Summary Judgment Instanter (Dec. 24, 2002)
. 2002 WL 32693254 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Dec. 11, 2002)
. 2002 WL 32453111 (Trial Motion, Memorandum and Affidavit) Agreed Emergency Motion for Extension of Time (Dec. 10, 2002)
. 2002 WL 32453116 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction (Oct. 11, 2002)
. 2002 WL 32453117 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Oct. 11, 2002)
. 2002 WL 32453115 (Trial Motion, Memorandum and Affidavit) Defendants' Agreed Motion to Enlarge the Time to File Their Motion for Summary Judgment (Oct. 01, 2002)
. 2002 WL 32453112 (Trial Motion, Memorandum and Affidavit) Motion to Withdraw (Jun. 17, 2002)
. 2002 WL 32453094 (Trial Motion, Memorandum and Affidavit) Motion for Leave to Extend the Deadline to Take Dr. John Conlin's Deposition (Apr. 12, 2002)
. 2002 WL 32453110 (Trial Motion, Memorandum and Affidavit) Motion to Compel Doctor Conlin's Fee Payment (Apr. 04, 2002)
. 2002 WL 32453088 (Trial Motion, Memorandum and Affidavit) Motion to Bar or, in the Alternative, to Extend Time (Feb. 22, 2002)
. 2002 WL 32693245 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiff's Response to Defendants' Motion to Compel Production (Jan. 04, 2002)
. 2002 WL 32693249 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiff's Response to Defendants' Motion to Bar Plaintiff Buttron's Expert (Jan. 04, 2002)
. 2002 WL 32453287 (Trial Motion, Memorandum and Affidavit) James McNamara's Motion for Sanctions and Protective Order (Jan. 02, 2002)
. 2001 WL 34670768 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendants Motion to Bar Buttron's Expert (Dec. 21, 2001)
. 2001 WL 34670772 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendants' Motion to Compel Production (Dec. 20, 2001)
. 2000 WL 34304732 (Trial Pleading) Complaint (Jul. 24, 2000)
. 2000 WL 34443254 (Trial Pleading) Complaint (Jul. 24, 2000)
. 1:00CV04451 (Docket) (Jul. 24, 2000)
. 2000 WL 34443318 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of their Motion for Summary Judgment (2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


