usual.[2] It suggests that ADS could not obtain a contractor's bond without the backing of its parent corporation, and that Symetrics elected to act as surety rather than obtain a bond on its subsidiary's behalf. If ADS could not obtain a contractor's bond from an independent bonding company, it most likely could not obtain the "unusual" funding bond described in the October 2 letter. And it would have been pointless for Symetrics to act as surety for ADS on a funding bond, when Symetrics had already guaranteed the repurchase obligation in the October 2 letter. In these circumstances, a reasonable jury could infer that ADS was not able to obtain a funding bond, the condition precedent to TSFL's guaranty liability. Therefore, the district court properly denied the motion for judgment as a matter of law.

The judgment of the district court is affirmed.



Diana DUNCAN, Appellee,

v.

GENERAL MOTORS CORPORATION, Appellant.

Nos. 00–3544, 02–1411.

United States Court of Appeals, Eighth Circuit.

Submitted: Jan. 17, 2002.

Filed: Aug. 22, 2002.

Worker assigned to provide in-house technical training for automobile manufacturing corporation sued corporation under Title VII for sexual harassment. Following jury trial, the United States District Court for the Eastern District of Missouri, Carol E. Jackson, Chief District Judge, entered judgment in favor of worker. Corporation appealed. The Court of Appeals, Hansen, Circuit Judge, held that: (1) training coordinator's alleged actions, if proven, were not so severe or pervasive as to alter term, condition, or privilege of employment, and (2) worker was not constructively discharged.

Reversed.

Arnold, Circuit Judge, dissented and filed opinion.

1. Civil Rights ⚖141

Court of Appeals would analyze claims under Title VII and Missouri Human Rights Act (MHRA) using same legal principles. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; V.A.M.S. §§ 213.010–213.137.

2. Federal Courts ⚖776

The Court of Appeals reviews a district court's denial of a motion for judgment as a matter of law de novo, using the same standard as the district court.

3. Federal Civil Procedure ⚖2608.1

Judgment as a matter of law is proper when all the evidence points in one direction and is susceptible to no reasonable interpretation supporting the jury verdict.

4. Civil Rights ⚖167

To succeed on a Title VII claim of hostile work environment sexual harass-

---

2. The Equipment Contract was on forms prescribed for contracts funded by the Rural Utilities Service (formerly the Rural Electrification Administration) under the Rural Electrification Act of 1936. See 7 U.S.C. § 6942(a) and (c)(1)(A). The Contract required a contractor's bond "in conformance with the requirements of 7 CFR Part 1788, Subpart C." The ADS bond did not conform because Symetrics was not a surety listed in Department of Treasury Circular 570. However, as no REA funds were involved in this project, Three River could waive that nonconformity.

**DUNCAN v. GENERAL MOTORS CORP.**    929
Cite as 300 F.3d 928 (8th Cir. 2002)

ment, an employee is required to prove that she is a member of a protected group, that she was subjected to unwelcome sexual harassment, that the harassment was based on sex, and that the harassment affected a term, condition, or privilege of her employment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**5. Civil Rights ⇐389**

Issue whether alleged workplace harassment was based on sex, as required for prima facie case under Title VII, was for jury, even though there was evidence that alleged harasser's behavior was directed at both male and female employees, where there was evidence of ten incidents when alleged behavior was directed at plaintiff alone, including proposition for "relationship," touching of plaintiff's hand, and creation of "Man Hater's Club" poster. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**6. Civil Rights ⇐167**

Under Title VII, an offensive workplace atmosphere does not amount to unlawful discrimination unless one gender is treated differently than the other. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**7. Civil Rights ⇐167**

The fundamental issue in determining whether an offensive workplace atmosphere amounts to discrimination in violation of Title VII is whether members of one sex are subjected to unfavorable conditions of employment that the members of the opposite sex are not. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**8. Civil Rights ⇐167**

Training coordinator's alleged actions, including touching of worker's hand, telling her he wanted to have relationship with her, requesting that she make sketch with sexual implications, putting up poster portraying worker as president of "Man Ha- ter's Club of America," and asking her to type draft of beliefs of "He–Men Women Hater's Club," if proven, were not so severe or pervasive as to alter term, condition, or privilege of employment, and thus did not constitute sexual harassment under Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**9. Civil Rights ⇐167**

To clear the high threshold of actionable harm, a Title VII sexual harassment plaintiff has to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**10. Civil Rights ⇐145**

The fourth part of a Title VII hostile environment claim, that is, that the harassment affected a term, condition, or privilege of employment, includes both objective and subjective components: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**11. Civil Rights ⇐167**

In determining whether conduct is sufficiently severe or pervasive to constitute sexual harassment under Title VII, the Court of Appeals looks to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**12. Civil Rights ⇐145**

Title VII is not designed to purge the workplace of vulgarity. Civil Rights Act

of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**13. Civil Rights ⇐167**

The standards for a hostile environment sexual harassment action under Title VII are designed to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**14. Civil Rights ⇐145**

An employee is constructively discharged for purposes of Title VII if an employer renders the employee's working conditions so intolerable that the employee is forced to quit. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**15. Civil Rights ⇐145**

An employee's dissatisfaction with working conditions does not establish a constructive discharge under Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**16. Civil Rights ⇐145**

To be liable under Title VII pursuant to constructive discharge theory, employer was required to have intended to force employee to quit or at least have reasonably foreseen her resignation as a consequence of the employer's working conditions. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**17. Civil Rights ⇐145**

Worker was not constructively discharged for purposes of Title VII, inasmuch as conditions she allegedly endured, including being touched and propositioned, were offensive and disrespectful, but not so intolerable as to cause reasonable person to resign, and worker could have taken steps short of resignation to improve her working conditions, but chose not to do so. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

---

Elizabeth C. Carver, argued, St. Louis, MO (Thomas C. Walsh, Jerry M. Hunter and Charles B. Jellinek, on the brief), for appellant.

Michael A. Gross, argued, St. Louis, MO (Stephen M. Ryals, on the brief), for appellee.

Before: WOLLMAN,[1] Chief Judge, RICHARD S. ARNOLD and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

[1] The Junior College District of St. Louis (the College) arranged for Diana Duncan to provide in-house technical training at General Motors Corporation's (GMC) manufacturing facility in Wentzville, Missouri. Throughout her tenure at GMC, Duncan was subjected to unwelcome attention by a GMC employee, James Booth, which culminated in Duncan's resignation. Duncan subsequently filed this suit under Title VII of the Civil Rights Act and the Missouri Human Rights Act, see 42 U.S.C. §§ 2000e–2000e–17; Mo.Rev. Stat. §§ 213.010–213.137,[2] alleging that she was sexually harassed and constructively discharged. A jury found in favor of Duncan and awarded her $4600 in back pay,

---

1. The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the author of this opinion.

2. We analyze Duncan's claims under Title VII and the Missouri Human Rights Act using the same legal principles. See Gipson v. KAS Snacktime Co., 171 F.3d 574, 578 (8th Cir. 1999); Swyers v. Thermal Science, Inc., 887 S.W.2d 655, 656 (Mo.Ct.App.1994).

