tops, leered at her breasts, and touched her arm, fingers, or buttocks on four occasions), *cert. denied*, 528 U.S. 988, 120 S.Ct. 450, 145 L.Ed.2d 367 (1999); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823–24, 826 (6th Cir.) (reversing jury verdict and holding behavior merely offensive and insufficient to support hostile environment claim when employee reached across plaintiff, stating "[n]othing I like more in the morning than sticky buns" while staring at her suggestively; suggested to plaintiff that parcel of land be named "Hootersville," "Titsville," or "Twin Peaks"; and asked "weren't you there Saturday night dancing on the tables?" while discussing property near a biker bar), *cert. denied*, 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997); *Weiss v. Coca–Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir.1993) (holding no sexual harassment when plaintiff's supervisor asked plaintiff for dates, asked about her personal life, called her a "dumb blond," put his hand on her shoulder several times, placed "I love you" signs at her work station, and attempted to kiss her twice at work and once in a bar).

Booth's actions were boorish, chauvinistic, and decidedly immature, but we cannot say they created an objectively hostile work environment permeated with sexual harassment. Construing the evidence in the light most favorable to Duncan, she presented evidence of four categories of harassing conduct based on her sex: a single request for a relationship, which was not repeated when she rebuffed it, four or five isolated incidents of Booth briefly touching her hand, a request to draw a planter, and teasing in the form of a poster and beliefs for an imaginary club. It is apparent that these incidents made Duncan uncomfortable, but they do not meet the standard necessary for actionable sexual harassment. It is worth noting that Duncan fails to even address this component of her prima facie case in her brief. We conclude as a matter of law that she did not show a sexually harassing hostile environment sufficiently severe or pervasive so as to alter the conditions of her employment, a failure that dooms Duncan's hostile work environment claim. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

B. Constructive Discharge

[14–17] GMC also challenges the jury's finding that Duncan was constructively discharged. An employee is constructively discharged if an employer renders the employee's working conditions so intolerable that the employee is forced to quit. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 617 (8th Cir.2000). An employee's dissatisfaction with working conditions does not establish a constructive discharge. *See Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 496 (8th Cir.1996). To be reasonable "an employee has an obligation not to assume the worst and not to jump to conclusions too quickly. An employee who quits without giving [her] employer a reasonable chance to work out a problem has not been constructively discharged." *Summit v. S–B Power Tool*, 121 F.3d 416, 421 (8th Cir.1997) (internal quotations omitted), *cert. denied*, 523 U.S. 1004, 118 S.Ct. 1185, 140 L.Ed.2d 316 (1998). To be liable, GMC must have intended to force Duncan to quit or at least have reasonably foreseen Duncan's resignation as a consequence of the working conditions at GMC. *See Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir.1998). Duncan contends that she faced over two years of harassment by Booth, which ultimately forced her to resign in May 1997. When viewed in the light most favorable to her, Duncan's working conditions were certainly not ideal and in many instances the environment that Duncan endured at GMC was offensive and disrespectful; however, these conditions were not so intolerable as

to cause a reasonable person to resign and cannot support the jury's findings to the contrary. "Constructive discharge requires considerably more proof than an unpleasant and unprofessional environment." *Jones v. Fitzgerald*, 285 F.3d 705, 716 (8th Cir.2002).

In addition, Duncan did not give GMC a reasonable opportunity to work out the problem with Booth prior to submitting her resignation. After the April 1 meeting with Pilkington, Boatwright, and Belue, Pilkington immediately removed the planter from Booth's office and requested that EEO Coordinator Moellenhoff begin an investigation. That April 1 meeting was the first time that Duncan had complained to GMC's management officials who had the responsibility to take action on her complaint. Moellenhoff asked Duncan to prepare a written summary of her allegations, she agreed to do so, but she never followed through and had not submitted any written allegations at the time of her resignation. Given that the "policies underlying Title VII will be best served … [when] unlawful discrimination is attacked within the context of existing employment relationships," we conclude that Duncan failed to provide GMC with a reasonable time to investigate her unwritten allegations and to implement significant changes to her workplace environment. *See Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1247 (8th Cir.1998) (internal quotations omitted); *see also Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir.1997) ("[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress."). We also conclude that Duncan could have taken steps short of resignation to improve her working conditions, but she declined to do so: Duncan rejected the College's offer to transfer her to an alternative work location. *See Jones*, 285 F.3d at 716 (discussing alternatives to resignation of which plaintiff did not avail herself). Duncan's constructive discharge claim fails as a matter of law.

Because we hold that Duncan fails to set forth sufficient evidence to establish a prima facie case that she was subjected to either a hostile work environment or that she was constructively discharged, we assume, without deciding, for purposes of this appeal that Duncan was GMC's employee. In addition, because we conclude that Duncan's claims fail as a matter of law and judgment must be entered in favor of GMC, we need not address the other arguments advanced by GMC.

III.

For the foregoing reasons, we reverse the district court's denial of judgment as a matter of law. Because GMC should have prevailed on its posttrial motion, the award of attorneys' fees is likewise vacated.

RICHARD S. ARNOLD, Circuit Judge, dissenting.

The Court concludes that the harassment suffered by Ms. Duncan was not so severe or pervasive as to alter a term, condition, or privilege of her employment, and that, therefore, GMC is entitled to judgment as a matter of law on her hostile-work-environment and constructive-discharge claims. I respectfully disagree.

Ms. Duncan was subjected to a long series of incidents of sexual harassment in her workplace, going far beyond "gender-related jokes and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation omitted). When the evidence is considered in the light most favorable to her, and she is given the benefit of all reasonable inferences, there is "substantial evidence to sustain the cause of action." *Stockmen's Livestock Market, Inc. v. Norwest Bank of Sioux City*, 135 F.3d 1236, 1240 (8th Cir.1998) (citation

omitted). In Ms. Duncan's case, a jury reached the conclusion that Mr. Booth's offensive behavior created a hostile work environment. I believe this determination was reasonable and supported by ample evidence.

Ms. Duncan was subjected to a sexual advance by her supervisor within days of beginning her job. This proposition occurred during work hours and was a direct request for a sexual relationship. The Court characterizes this incident as a "single request," *ante* at 935. This description minimizes the effect of the sexual advance on Ms. Duncan's working conditions. During the months immediately following this incident, Mr. Booth became hostile to Ms. Duncan, increased his criticism of her work, and degraded her professional capabilities in front of her peers. Significantly, there is no suggestion that this hostile behavior occurred *before* Ms. Duncan refused his request for sex. From this evidence, a jury could easily draw the inference that Mr. Booth changed his attitude about Ms. Duncan's work because she rejected his sexual advance.

Further, this sexual overture was not an isolated incident. It was only the beginning of a string of degrading actions that Mr. Booth directed toward Ms. Duncan based on her sex. This inappropriate behavior took many forms, from physical touching to social humiliation to emotional intimidation. For example, Mr. Booth repeatedly touched Ms. Duncan inappropriately on her hand. He publicly singled her out before her colleagues as a "Man Hater" who "must always be in control of" sex. He required her to choose between drawing a vulgar planter displayed in his office or not being considered for a promotion, an unfair choice that would likely intimidate a reasonable person from seeking further career advancement.

The Court cites cases in which our sister Circuits have rejected hostile-work-environment claims premised upon facts that the Court determines to be "equally or more egregious" than the conduct at issue here. I do not agree that Ms. Duncan experienced less severe harassment than those plaintiffs. For example, in *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333 (7th Cir.1993), the plaintiff did not allege that her work duties or evaluations were different because of her sex. This is not the situation Ms. Duncan faced. She was given specific tasks of a sexually charged nature, such as typing up the minutes of the "He-Man Women Hater's Club." Performing this "function" was presented to her as a required duty of her job.

Also Ms. Duncan was subjected to allegations that she was professionally "incompetent because of her sex." *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874–75 (5th Cir.), *cert. denied*, 528 U.S. 963, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999) (relying on the lack of such allegations in affirming grant of summary judgment for employer). She adduced evidence of this factor when she testified that after she rejected his sexual advance, Mr. Booth became more critical of her work. With the request for her to draw the planter for a promotion, Ms. Duncan also faced "conduct that would prevent her from succeeding in the workplace," a fact that Ms. Shepherd could not point to in her case. Additionally, Ms. Duncan was "propositioned" to sleep with her employer, *id.* at 872, a claim not made by Ms. Shepherd.

Finally, we note that in Ms. Duncan's case the harassing acts were directed specifically at her. The Court in *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir.), *cert. denied*, 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997), stated that the lack of specific comments to the plaintiff supported the conclusion that the defendant's conduct was not severe enough to create actionable harm. By contrast, in

the present case, a jury could reasonably conclude that Ms. Duncan felt particularly humiliated and degraded by Mr. Booth's behavior because she alone was singled out for this harassment.

Our own Court's Title VII jurisprudence suggests that Ms. Duncan experienced enough offensive conduct to constitute sexual harassment. For example, in *Breeding v. Arthur J. Gallagher and Co.* we reversed a grant of summary judgment to an employer, stating that a supervisor who "fondled his genitals in front of" a female employee and "used lewd and sexually inappropriate language" could create an environment severe enough to be actionable under Title VII. 164 F.3d 1151, 1159 (8th Cir.1999). In *Rorie v. United Parcel Service*, we concluded that a work environment in which "a supervisor [ ] pats a female employee on the back, brushes up against her, and tells her she smells good" could be found by a jury to be a hostile work environment. 151 F.3d 757, 762 (8th Cir.1998). Is it clear that the women in these cases suffered harassment greater than Ms. Duncan? I think not.

We have acknowledged that "[t]here is no bright line between sexual harassment and merely unpleasant conduct, so a jury's decision must generally stand unless there is trial error." *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir.1998). We have also ruled that "[o]nce there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998). The Court admits that Ms. Duncan took subjective offense to Mr. Booth's behavior and characterizes Mr. Booth's behavior as "boorish, chauvinistic, and decidedly immature." *Ante* at 935. Thus, the Court appears to agree that Mr. Booth's behavior was "improper conduct." I believe the Court errs in deciding as a matter of law that the jury did not act reasonably in concluding that Ms. Duncan faced severe or pervasive harassment that created a hostile work environment.

Therefore, I dissent from the Court's conclusion that Ms. Duncan did not present sufficient evidence to survive judgment as a matter of law on her hostile-work-environment and constructive-discharge claims.



Shawn C. JEANES; Wayne Mains, Plaintiffs–Appellees,

v.

ALLIED LIFE INSURANCE COMPANY, Defendant–Appellant.

No. 01–3443.

United States Court of Appeals, Eighth Circuit.

Submitted: May 14, 2002.

Filed: Aug. 23, 2002.

Insurance agents sued life insurer for breach of contract and violations of Iowa Wage Payment Collection Law. Following bench trial, the United States District Court for the Southern District of Iowa, Robert W. Pratt, J., 168 F.Supp.2d 958, entered judgment for agents. Insurer appealed. The Court of Appeals, Loken, Circuit Judge, held that: (1) Iowa doctrine of constructive discharge would not be extended to justify post-termination damages for prior unrelated breach of agency contracts; (2) even if doctrine could be so extended, agents were not constructively