lants repeat their argument that because the Home Day Care Endorsement listed separate exclusions, an ambiguity was created between the Home Day Care Endorsement exclusions and the Homeowners Policy exclusions. We find no merit in this argument for the reasons discussed above.

### III. Conclusion

In summary, we find that the language in the intentional acts exclusion of the policy is unambiguous and excludes claims based on the underlying intentional conduct of any one of the "insureds." The policy unambiguously defines John Diedrich as an "insured." M.S. and R.S.'s claim filed in state court directly spawns from John's intentional acts of sexual molestation. None of the provisions in the Home Day Care Endorsement changes this analysis. Therefore, the plain language of the policy relieves EMCASCO from the duty to defend Edith Diedrich in the state court action and from any obligation to indemnify the Diedrichs as a result of that claim. Accordingly, we affirm the well-reasoned opinion of the district court.




**Rodrick LeGRAND, Appellant,**

**v.**

**AREA RESOURCES FOR COMMUNITY AND HUMAN SERVICES, Appellee.**

**No. 04–1284.**

United States Court of Appeals, Eighth Circuit.

Submitted: Nov. 15, 2004.

Filed: Jan. 20, 2005.

**Background:** Employee, a neighborhood facilitator for nonprofit organization, filed sexual harassment claims against employer under Title VII and Missouri Human Rights Act (MHRA). The United States District Court for the Eastern District of Missouri, Stephen Nathaniel Limbaugh, J., granted summary judgment for employer on both quid pro quo and hostile work environment claims. Employee appealed as to hostile work environment claim.

**Holding:** The Court of Appeals, Riley, Circuit Judge, held that harasser's behavior did not rise to level of actionable hostile work environment sexual harassment.

Affirmed.

**1. Federal Courts ⚷776**

Court of Appeals reviews de novo district court's grant of summary judgment. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**2. Civil Rights ⚷1147**

Hostile work environment claims under both Title VII and Missouri Human Rights Act (MHRA) are analyzed in the same manner. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; V.A.M.S. § 213.010 et seq.

**3. Civil Rights ⚷1185**

To establish prima facie case of hostile work environment sexual harassment, employee must prove (1) he is member of protected group, (2) he was subjected to unwelcome sexual harassment, (3) harassment was based on sex, and (4) harassment affected term, condition, or privilege of his employment. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

**4. Civil Rights ⚷1185**

To meet burden on fourth element of hostile work environment sexual harassment prima facie case, employee must demonstrate that unwelcome harassment was sufficiently severe or pervasive as to affect term, condition, or privilege of em-

ployment by creating objectively hostile or abusive environment. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

5. **Civil Rights ⟾1147**

Court considers totality of the circumstances to determine whether work environment is hostile or abusive, and looks to number of factors, including frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating or mere offensive utterance, and whether it unreasonably interferes with employee's work performance. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e–2(a)(1).

6. **Civil Rights ⟾1185**

Employee failed to establish prima facie case of sexually hostile work environment under Title VII or Missouri Human Rights Act (MHRA), absent showing that harassment affected term, condition or privilege of his employment; while harasser's actions, admitted and alleged, ranged from crass to churlish and were manifestly inappropriate, three isolated incidents over nine-month period were not so severe or pervasive as to poison employee's work environment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; V.A.M.S. § 213.010 et seq.

---

Christopher B. Bent, argued, Hazelwood, MO, for appellant.

Robert J. Tomaso, argued, St. Louis, MO (Errin R. Braddock, on the brief), for appellee.

Before RILEY, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

RILEY, Circuit Judge.

Rodrick LeGrand (LeGrand) appeals the district court's[1] grant of summary judgment in favor of Area Resources for Community and Human Services (ARCHS) on LeGrand's sexual harassment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17, and the Missouri Human Rights Act (MHRA), Mo. Rev.Stat. §§ 213.010–213.137. We affirm.

## I. BACKGROUND

ARCHS, a non-profit organization, implemented the Sustainable Neighborhood Initiative (Initiative), which sought to revitalize local communities through citizen and neighborhood-driven planning. LeGrand worked for ARCHS as a neighborhood facilitator, and he served the Covenant–Blu, Grand Center, and Vandeventer, Missouri communities. As a neighborhood facilitator, LeGrand worked with residents and community leaders to plan development of the community. LeGrand's responsibilities included organizing a Neighborhood Leadership Team, which generated ideas to improve the neighborhood and provided direction to LeGrand to facilitate such ideas.

LeGrand's direct supervisors were Initiative Coordinators Lisa Potts (Potts) and Lucille Walton (Walton). The Initiative's program included a Personnel Committee, which utilized community members to evaluate ARCHS's employees' performance. The Personnel Committee advised Potts and Walton regarding employment matters, but Potts and Walton had the final authority to hire, fire, and discipline ARCHS's employees.

Father Maurice Nutt's (Father Nutt) parish was located within the Covenant–

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.



Blu, Grand Center, and Vandeventer communities. Father Nutt was an ARCHS board member and a co-chair of the Initiative. As an ARCHS board member, Father Nutt consulted and advised Potts and Walton on neighborhood issues. However, Father Nutt was not a member of the Personnel Committee, and he did not make any decisions or any recommendations regarding employment matters.

LeGrand alleges Father Nutt made unwelcome sexual advances toward him on three separate occasions. The first incident allegedly occurred on March 22, 2001, when LeGrand visited Father Nutt's church to give Father Nutt a community update. After Father Nutt gave LeGrand a tour of the facilities and introduced LeGrand to some of the church's staff members, LeGrand claims Father Nutt asked LeGrand to watch pornographic movies with him and "to jerk off with him" to relieve stress. LeGrand responded, "No, I'm not interested. I'm not gay. I'm married. I [don't] get down like that." In April, LeGrand reported the incident to Potts and Walton, who told LeGrand to document the incident in writing, which LeGrand did. A few weeks later, Potts and Walton suggested LeGrand seek counseling through ARCHS's Employee Assistance Program (EAP). LeGrand met with an EAP counselor in May 2001.

After the first incident, LeGrand tried to avoid Father Nutt. However, in November, LeGrand encountered Father Nutt at the ARCHS office after Father Nutt had a meeting with Potts and Walton. LeGrand contends Father Nutt (1) mentioned the pornographic movies again; (2) suggested LeGrand would advance in the company, if he watched "these flicks" and "jerk[ed Father Nutt's] dick off"; (3) "kissed [LeGrand] in the mouth"; (4) grabbed LeGrand's buttocks; and (5) "reached for [LeGrand's] genitals." LeGrand pushed Father Nutt in the chest and said, "You motherfucker." Father Nutt later admitted hugging and kissing LeGrand, but Father Nutt believed the "peck on the lips" was "mutual." Father Nutt also admitted to "brush[ing LeGrand's] crotch with the back of my hand [, ... b]ecause it seemed that [LeGrand] was stimulated by the hug." The third incident allegedly occurred in December, when Father Nutt briefly gripped LeGrand's thigh while each were seated at a table during a meeting at the ARCHS office.

ARCHS maintains a sexual harassment policy, which is contained in its employee handbook. When LeGrand was employed by ARCHS, he received a copy of the employee handbook and was aware of the policy. The handbook's "No-Harassment Policy" states an employee should complain to his immediate supervisor, and if the employee is not satisfied with the supervisor's response, the employee should contact the Human Resources Manager. LeGrand did not contact the Human Resources Manager regarding his allegations against Father Nutt.

On December 21, LeGrand filed a sexual harassment charge against ARCHS with the Equal Employment Opportunity Commission (EEOC). After filing his EEOC charge, LeGrand visited an EAP counselor five times over the following six months. In January 2002, LeGrand took medical leave from ARCHS. While LeGrand was on medical leave, ARCHS eliminated all neighborhood facilitator positions, including LeGrand's position, due to a lack of funding. In August, ARCHS offered LeGrand the opportunity to interview for the Community Development Coordinator position, which LeGrand declined because he had accepted a position with more pay at another organization.

In February 2002, after the EEOC investigated LeGrand's harassment charge, ARCHS requested and received Father

Nutt's resignation from its Board of Directors. ARCHS also disciplined both Potts and Walton for not following ARCHS's "No Harassment Policy."

LeGrand later sued ARCHS in federal court, claiming Father Nutt's sexual advances constituted *quid pro quo* sexual harassment and created a hostile work environment. The district court ruled LeGrand's *quid pro quo* sexual harassment claim failed, because LeGrand did not establish he was subjected to tangible employment action resulting from his refusal to submit to Father Nutt's advances. The district court also rejected LeGrand's hostile work environment claim, because (1) Father Nutt was not LeGrand's supervisor; (2) Father Nutt was not LeGrand's co-worker; and (3) the harassment "was not so severe or pervasive as to alter a term, condition, or privilege of LeGrand's employment."

On appeal, LeGrand challenges the district court's conclusion that (1) Father Nutt was not LeGrand's supervisor, and (2) Father Nutt's conduct was not so severe or pervasive as to constitute actionable sexual harassment. LeGrand does not appeal the district court's grant of summary judgment on his *quid pro quo* sexual harassment claim.

## II. DISCUSSION

[1, 2] We review de novo a district court's grant of summary judgment. *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 728 (8th Cir.2002). When considering a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Fed.R.Civ.P. 56(c). We analyze LeGrand's hostile work environment claims under both Title VII and the MHRA in the same manner. *Weyers v. Lear Operations Corp.*, 359 F.3d 1049, 1056 n. 6 (8th Cir.2004).

In granting summary judgment to ARCHS, the district court determined Father Nutt was neither LeGrand's supervisor nor LeGrand's co-worker. Because we conclude LeGrand failed to establish a prima facie case of hostile work environment sexual harassment, we do not address whether Father Nutt was LeGrand's supervisor or co-worker.

[3, 4] To establish a prima facie case of hostile work environment sexual harassment, LeGrand must prove (1) he is a member of a protected group, (2) he was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, and (4) the harassment affected a term, condition, or privilege of his employment. *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir.2003) (citing *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002)). Assuming LeGrand established the first three elements, we will focus only on the fourth element. To meet his burden on the fourth element, LeGrand "must demonstrate the unwelcome harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment by creating an objectively hostile or abusive environment." *Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir.2003).

[5] "Sexual harassment 'standards are demanding-to be actionable, conduct must be extreme and not merely rude or unpleasant.'" *Tuggle*, 348 F.3d at 720 (quoting *Alagna v. Smithville R–II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir.2003)). "'More than a few isolated incidents are required,' and the alleged harassment must be 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Id.* (quoting *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir.1999)). LeGrand must prove his workplace was "permeated

with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). We consider the "totality of the circumstances" to determine whether a work environment is hostile or abusive. *Baker v. John Morrell & Co.*, 382 F.3d 816, 828 (8th Cir.2004). We look to a number of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367.

[6] Compared to other cases in which the Supreme Court and our circuit have found the harassing conduct did not constitute sexual harassment, we believe the harassment alleged in this case did not create an actionable hostile work environment. In *Duncan*, we determined the plaintiff failed to show the harassing conduct was "sufficiently severe or pervasive so as to alter the conditions of her employment, a failure that dooms [her] hostile work environment claim." *Duncan*, 300 F.3d at 935. In *Duncan*, we considered five harassing incidents: a proposition for a relationship; improper touching of the plaintiff's hand on multiple occasions; a request the plaintiff sketch a sexually objectionable planter; the posting of a "Man Hater's Club" poster; and a request the plaintiff "type the He–Men Women Haters beliefs." *Id.* at 933–34. The alleged harasser also had in his office a child's pacifier in the shape of a penis and a computer screen saver with a picture of a naked woman. *Id.* at 931. While the harassment made the plaintiff uncomfortable and was "boorish, chauvinistic, and decidedly immature," we held it did not meet the standard necessary to be actionable. *Id.* at 935. Thus, in overturning a jury verdict and concluding the district court improperly denied the defendant's post-trial motion for judgment as a matter of law, we held the plaintiff did not show a sufficiently hostile work environment. *Id.*

Following *Duncan*, we have found summary judgment proper in several cases, due to the plaintiff's failure to meet the fourth element of a hostile environment sexual harassment claim. *See, e.g., Tuggle*, 348 F.3d at 714, 722 (holding while the plaintiff "was clearly subjected to harassing conduct," it was not "actionable conduct" where a co-worker made a number of comments based on the plaintiff's sex and posted a photograph showing the plaintiff's "clothed rear end"); *Ottman v. City of Independence*, 341 F.3d 751, 760 (8th Cir.2003) (concluding the district court erred in finding a triable issue for the jury where the conduct consisted of belittling and sexist remarks on almost a daily basis); *Meriwether*, 326 F.3d at 993 (holding sexual harassment claim failed where a co-worker grabbed the plaintiff's buttock and then confronted her about it the next day); *Alagna*, 324 F.3d at 977–78, 980 (concluding the co-worker's conduct was inappropriate, but not sufficiently severe or pervasive where it included calls to the plaintiff's home, frequent visits to her office, discussions about relationships (not including sexual details) with his wife and other women, touching the plaintiff's arm, saying he "loved" her and she was "very special," placing romance novels in her faculty mailbox, and invading her personal space).

Viewing LeGrand's claim in light of the demanding standard set by the Supreme Court and by *Duncan* and its progeny, Father Nutt's behavior did not rise to the level of actionable hostile work environment sexual harassment. None of the incidents was physically violent or overtly threatening. There can be no doubt Father Nutt's actions, admitted and alleged, ranged from crass to churlish and were manifestly inappropriate; however, the



three isolated incidents, which occurred over a nine-month period, were not so severe or pervasive as to poison LeGrand's work environment. Therefore, we hold LeGrand failed to establish the existence of a trial-worthy question of fact on his hostile work environment claim.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of ARCHS.




**UNITED STATES of America, Appellee,**

**v.**

**Tammy J. PETERS, Appellant.**

**No. 04-2081.**

United States Court of Appeals, Eighth Circuit.

Submitted: Nov. 18, 2004.

Filed: Jan. 24, 2005.

**Background:** Defendant pled guilty in the United States District Court for the Northern District of Iowa, Linda R. Reade, J., to distribution of methamphetamine. Defendant appealed.

**Holdings:** The Court of Appeals, J. Leon Holmes, District Judge, sitting by designation held that:

(1) defendant's failure to appear at revocation hearing did not support two-level enhancement for obstruction for justice, and

(2) defendant's failure to provide two urine specimens was not of sufficient egregious nature to support two-level enhancement for obstruction of justice.

Reversed and remanded.

**1. Criminal Law ⚷1139, 1158(1)**

The Court of Appeals reviews a district court's factual findings underlying an obstruction of justice enhancement for clear error and its construction and application of the guidelines de novo. U.S.S.G. § 3C1.1, 18 U.S.C.A.

**2. Sentencing and Punishment ⚷761**

Defendant's failure to appear at probation revocation hearing did not support two-level enhancement for obstruction for justice, where initial hearing had been scheduled on short notice, defendant had contacted her attorney prior to hearing and informed him that she would not be able to make it, hearing was continued until two days later, and defendant voluntarily attended rescheduled hearing. U.S.S.G. § 3C1.1, 18 U.S.C.A.

**3. Sentencing and Punishment ⚷761**

Defendant's failure to provide two urine specimens and failure to appear for presentence investigation interview were not of sufficiently egregious nature to support two-level enhancement for obstruction of justice. U.S.S.G. § 3C1.1, 18 U.S.C.A.

---

David E. Mullin, argued, Cedar Rapids, IA, for appellant.

Assistant U.S. Atty., Charles J. Williams, argued, Cedar Rapids, IA, for appellee.

Before WOLLMAN and HEANEY, Circuit Judges, and HOLMES,[1] District Judge.

1. The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, sitting by designation.