340 F.3d 510 Page 5
(Cite as: 340 F.3d 510, *514, 2003 WL 21919572, **2 (8th Cir.(Minn.)))

appointments during her work hours. Melhus met with Burchett on a regular basis during this period to discuss performance issues and how she could improve.

From June through August 2000, Burchett continued to apply for other nonexecutive positions at Target. She took the applications to Melhus who supported them by forwarding them with her endorsement. Burchett also went to see Marvin to ask for a transfer, but Marvin told her it might be hard to move while working only part time. Marvin then wrote to Melhus suggesting they discuss other job options for Burchett because she seemed unhappy with her job. On August 7, Burchett sent an e-mail to Melhus informing her that she could start working three quarter time starting the next week and that her doctor thought she could be back to full time by the end of September.

**3 Melhus believed Burchett's performance problems were not improving as she neared her mid year review. Melhus asked her to prepare a prereview statement, and Burchett submitted a document discussing her leave and hour restrictions instead of the standard review statement *515 expected by Target. Melhus told her that more information was required and that Burchett should include a statement about her accomplishments, challenges, and opportunity areas. Melhus also decided that Burchett was not responding to the weekly performance counseling she had undertaken and that she needed more formal counseling. On August 8, Melhus delivered a verbal reprimand to Burchett at a meeting she scheduled with her. At the meeting Melhus discussed with Burchett specific performance deficiencies and provided examples. The reprimand focused especially on Burchett's need to prioritize her tasks, to work only on assigned tasks, and to check with a supervisor before implementing any decision. Melhus told Burchett that she needed to improve or she would be subject to further discipline.

After communicating the reprimand, Melhus became concerned that she could no longer recommend Burchett for transfers within the company. She discussed her concern with Bryan Baker who had human resource responsibilities for the distribution department. He told Melhus that Target did not transfer an employee from one manager to another if the employee was experiencing significant performance problems. After talking to Baker in early September, Melhus informed Burchett that she could not forward her applications to other departments until she improved her performance in her current position. Burchett then called Baker to request a transfer to the imports department. She told him that she had a disability and could not perform at her prior level in her current job. She also told him that Melhus was hostile toward her. Baker responded that while she had previously performed well, her current performance was not satisfactory and she could not be recommended for other positions within Target until the situation improved. He also told her that she should look outside of Target if she thought she needed a different job.

On September 12, 2000, Burchett requested that Melhus forward her application for transfer to the imports department. Melhus responded that she could not endorse an application for transfer unless Burchett improved her performance. Burchett became very upset, gathered her belongings, and immediately left the workplace. Two days later Burchett sent an e-mail to all employees in the distribution department thanking them for their support and directing criticism at Melhus. Burchett never returned to work, and she was placed on a leave of absence. She is now on long term disability leave from Target.

Burchett filed this action in the district court on June 7, 2001, alleging that Target had discriminated against her based on an actual and perceived disability under the ADA and the MHRA. She claimed that Target discriminated against her by refusing to transfer her to a new department, which she contended was evidence of both disparate treatment and discrimination based on failure to accommodate. She also alleged a hostile work environment and retaliation for exercising her statutory rights. Target moved for summary judgment.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




**\*\*4** The motion was granted after the court concluded that Burchett had not established that she was disabled within the meaning of the law because she did "not create a question of fact on the issue of whether her cognitive abilities and capacity for concentration are significantly limited as compared to the abilities of an average person in the general population." Furthermore, "[e]ven assuming" that Burchett could show Target "regarded her as disabled," she had not established the second element of her prima facie case requiring *516 her to show a genuine issue of material fact as to whether Target had failed to provide reasonable accommodations that would enable her to perform the essential functions of her position. The court also ruled that her claims for hostile work environment or retaliation were unsupported.

II.

Burchett appeals from the judgment. She contends that she made out a prima facie case of discrimination by showing that she was actually disabled by depression or that Target regarded her as disabled within the meaning of the ADA and MHRA; that she was qualified to perform the essential functions of her job if transferred to a new department and that Target failed to make reasonable accommodations for her; that Target took adverse action against her by disciplining her without following its formal policy [FN2] and then denying her a transfer; and that Target's proffered explanation for its adverse employment action was a pretext for discrimination. On her appeal Burchett does not raise any issues with regard to the dismissal of her claims for hostile work environment and retaliation.

> FN2. Burchett claims that Target had a discipline policy requiring use of a particular form for a verbal reprimand but that Melhus used other paper providing more space to detail Burchett's problems. Burchett argues that this created an inference that the reprimand was based on personal animus rather than her performance.

Target responds that Burchett did not establish a prima facie case of disability discrimination and that the district court correctly concluded that Target had reasonably accommodated her by following all of her doctor's requests for leave and for restructured hours. Moreover, argues Target, there are other grounds for affirmance, see *ACT, Inc. v. Sylvan Learning Sys., Inc.*, 296 F.3d 657, 663 n. 3 (8th Cir.2002), for it did not regard Burchett as disabled and she did not suffer an adverse employment action or show a causal connection between her alleged disability and any employment action she attacks.

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *See Viking Supply v. Nat'l Cart Co., Inc.*, 310 F.3d 1092, 1095-96 (8th Cir.2002). Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the "nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir.1998). Summary judgment is appropriate in a disability discrimination case if a plaintiff cannot make an evidentiary showing to support each element of a prima facie case. *See Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir.1998). We may affirm the judgement on any grounds supported by the record. *Land v. Washington County, Minnesota*, 243 F.3d 1093, 1095-96 (8th Cir.2001).

**\*\*5** [1][2][3] The burden shifting formula in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is used to evaluate claims under both the ADA and the MHRA. *See Wilking*, 153 F.3d at 872. Under this formula a plaintiff must first establish a prima facie case of discrimination by demonstrating 1) that she has a disability within the meaning of the ADA or the MHRA (or that her employer thinks she does); 2) that she is qualified to perform the essential functions of her job, with or without reasonable accommodation; and 3) that she has suffered an adverse employment action as a result of her disability. *Id.* If the plaintiff establishes a prima facie case, then the burden

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



340 F.3d 510 Page 7
(Cite as: 340 F.3d 510, *517, 2003 WL 21919572, **5 (8th Cir.(Minn.)))

*517 shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 872-73.

[4][5] Assuming without deciding that Burchett was either disabled or regarded as having a disability, the second element of a prima facie case required her to show that she was qualified to perform the job. The determination of whether an employee is qualified to perform the essential functions of a job involves a two step inquiry. *Land,* 243 F.3d at 1095. First the employee must show that she meets the necessary prerequisites for the job, and then she must demonstrate that she can perform the essential functions, with or without reasonable accommodation. *Id.* If the employee establishes that she cannot perform the essential functions of the job without accommodation, she must also make a facial showing that reasonable accommodation is possible and that the accommodation will allow her to perform the essential functions of the job. *See Cravens v. Blue Cross & Blue Shield of Kansas City,* 214 F.3d 1011, 1016 (8th Cir.2000). If the requested accommodation is a transfer, she must also demonstrate that she cannot be accommodated in her current position because reassignment is " 'an option to be considered only after other efforts at accommodation have failed.' " *Id.* at 1019 (quoting *Aka v. Washington Hosp. Center,* 156 F.3d 1284, 1301 (D.C.Cir.1998)).

[6][7][8] Under the ADA and the MHRA, an employer must reasonably accommodate an employee's disability and engage in an interactive process to identify potential accommodations that could overcome her limitations. *See Ballard v. Rubin,* 284 F.3d 957, 960 (8th Cir.2002). If the employee makes a showing that reasonable accommodation is possible, the burden of production then shifts to the employer to show that it had a legitimate nondiscriminatory reason not to provide the accommodation, *see Cravens,* 214 F.3d at 1020 (employer is not "required to transfer a disabled employee if such a reassignment would violate ... a legitimate, nondiscriminatory policy of the employer.") (internal citations omitted). The ultimate question of whether the employer discriminated by failing to provide the accommodation is then for the fact finder to determine. *See Land,* 243 F.3d at 1096; *Cravens,* 214 F.3d at 1016. While reassignment to a vacant position can be a reasonable accommodation under the ADA, it is not necessarily required. *See* 42 U.S.C. § 12111(9); *see also Cravens,* 214 F.3d at 1017. An employer need not reassign an employee unless accommodation within her current position would impose an undue hardship on her. *See Cravens,* 214 F.3d at 1019.

**6 Burchett contends that she was unable to perform her job in the distribution department because of her disability and that Target should have given her a transfer. That was the only accommodation which would have allowed her to continue working she says, because the stress level at her position had exacerbated her depression and could not be reduced by working fewer hours or on different projects. She contends that there were open positions for which she was qualified in September 2000.

Target asserts that it engaged in an interactive process with Burchett and accommodated her by restructuring her work load, by allowing her to work diminished hours, and by providing flexibility in her schedule for medical appointments and other scheduled meetings. It argues that it was not required to transfer Burchett because she could perform her current job with the reasonable accommodations it was providing. It points to evidence in Burchett's deposition and on medical forms filled out by her doctor which it says establish that she was able to perform in her *518 position, subject to the hour restrictions which Target had been following.

After thoroughly examining the record, we conclude that Burchett did not establish a genuine issue of material fact as to whether Target failed to accommodate her by not granting her a transfer to a different department. Burchett did not show that with the accommodations Target had provided she was unable to perform the duties of her position because of her depression.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




340 F.3d 510 Page 8
(Cite as: 340 F.3d 510, *518, 2003 WL 21919572, **6 (8th Cir.(Minn.)))

[9] Although Burchett testified that she had been assigned a new set of unfamiliar duties after her leave which took all her energy to learn, her deposition undercut her assertion that she was unable to do her job with the limitations given by her doctor. Burchett admitted in her deposition that she was able to do her new duties adequately even though it was "very tough to do [an] above average or outstanding job" because of lack of support, training, and an adequate job description. She testified that "I can do the job, yes, but the surrounding circumstances were not conducive to doing the job." She also stated in her deposition that in June 2000 she "was able to perform as a transportation analyst, do my previous responsibilities as I knew them. I was making a fine recovery." According to her own statement, the "only limitation [she recalled was] the doctor's orders to start as part-time and then move on to full-time. That was a very temporary situation."

Not only did Burchett admit in her deposition that she could perform the functions of her position with the accommodations Target was providing, the record also shows that her doctor thought she could perform her job and in fact was expanding her hours and recommending that she return to full time in September. There is no dispute that Target made accommodations after being told that Burchett suffered from depression. It restructured her work load and reduced her work hours in accordance with her doctor's orders. "[R]eassignment is an accommodation of last resort," which does not become necessary unless it is the only accommodation that will enable an employee to continue working for the employer. *Cravens,* 214 F.3d at 1019. We conclude that Burchett failed to make an evidentiary showing that Target was obligated to transfer her. She did not show that "accommodation within [her] current position would pose an undue hardship" so Target was not required to consider a transfer. *Id.* (quoting 29 C.F.R. § 1603.2(*o*)). She thus has not established a genuine issue of material fact concerning her claim that Target failed to provide reasonable accommodation for her disability.

**7 [10] Burchett failed also to establish a genuine issue of material fact as to whether she suffered an adverse employment action because of her disability, the third element of a prima facie case. To establish "an adverse employment action an employee must show a 'tangible change in duties or working conditions that constituted a material employment disadvantage.' " *Moisant v. Air Midwest, Inc.,* 291 F.3d 1028, 1031 (8th Cir.2002) (quoting *Manning v. Metropolitan Life Ins. Co.,* 127 F.3d 686, 692 (8th Cir.1997)). Burchett contends that Target took adverse action against her by disciplining her by means of the verbal reprimand and then using it to deny her a transfer.

[11] A negative performance review is not in itself an adverse employment action, however, and it is actionable only if the employer subsequently uses that review to alter the terms or conditions of employment to the detriment of the employee. *See Spears v. Missouri Dep't of Corr. & Human Res.,* 210 F.3d 850, 854 (8th Cir.*519 2000). Burchett has not established that the verbal reprimand was motivated by intentional discrimination rather than her actual work performance or that it was used in order to alter the terms and conditions of her employment. Target presented evidence that both the reprimand and the subsequent refusal to transfer Burchett were based on her performance problems, and Burchett has not produced sufficient evidence, as opposed to mere allegations, to raise a genuine issue for trial. Although Burchett alleges that the reprimand was based on her disability and that it was the only factor Target used to deny her a transfer, she did not present sufficient evidence to support her argument. Burchett acknowledged that her performance level was lower than it ever had been before and she bears the burden to establish that Target's explanation for her reprimand and the refusal to forward her transfer application was pretextual and based on intentional discrimination, *Wilking,* 153 F.3d at 874. We conclude that she did not meet that burden.

[12] Even if Target's refusal to transfer Burchett to a lower ranking job were viewed

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




340 F.3d 510                                                                                                    Page   9
(Cite as: 340 F.3d 510, *519 , 2003 WL 21919572, **7 (8th Cir.(Minn.)))

as an actionable adverse employment action, she has failed to establish a causal connection between that refusal and her disability as required in the prima facie case. *See Lowery v. Hazelwood Sch. Dist.,* 244 F.3d 654, 657-58 (8th Cir.2001). Burchett argues that Target's refusal to transfer her was based on disability because it did not have a written policy precluding the transfer. Target did have a job posting policy, however, which required that a manager state on a transfer application whether she believes her employee is qualified for the new position. Baker and Melhus testified in their depositions that it was Target's policy not to transfer an unsatisfactory employee to another manager. Burchett contends that this policy was shown to be pretextual by evidence that Hugh Heidt, a nondisabled coworker, was transferred to a lower level position within the distribution department when he was having trouble performing all the essential functions of his job. Heidt's transfer was different from Burchett's situation, however, for he remained at all times in the same department under Melhus' supervision. Heidt's reassignment was thus not inconsistent with Target's stated policy of not transferring an employee with performance problems to another manager, and it does not give rise to an inference of pretext.

**\*\*8** Burchett also claims that an inference of discrimination arises from Melhus' refusal to forward her transfer application. She says Target's job posting policy only requires a manager to state whether or not the employee is qualified for the new position. The application form includes a space for the supervisor to indicate either that the employee is qualified or that she wishes to discuss the employee's qualifications with human resources. Melhus testified that she became concerned that she could no longer forward Burchett's applications with an indication she was qualified because her performance problems were of a type that would continue to occur. She therefore went to human resources to discuss Burchett's performance, and Baker told her that it was Target's policy not to forward applications if an employee was not performing well in her current position and that forwarding an application was an indication of approval.

Burchett has not shown that Melhus's conduct in respect to her application was inconsistent with Target's application requirements or any other evidence to suggest that Target's refusal to transfer her was based on her disability. We conclude that she did not make a sufficient showing on the third element of her prima facie *520 case to survive the summary judgment motion.

III.

Because Burchett has not shown that she could not perform her current job with the reasonable accommodations Target was already providing, we conclude that she has not established a genuine issue of material fact on the second element of her prima facie case. She has also not met her burden as to the third element because she has not put forth evidence to demonstrate that she suffered an adverse employment action because of her disability. The district court did not therefore err in granting summary judgment.

The judgment of the district court is affirmed.

340 F.3d 510, 2003 WL 21919572 (8th Cir.(Minn.)), 14 A.D. Cases 1296, 26 NDLR P 179

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




338 F.3d 9 Page 1
92 Fair Empl.Prac.Cas. (BNA) 752, 84 Empl. Prac. Dec. P 41,450
(Cite as: 338 F.3d 9)
<KeyCite Citations>

United States Court of Appeals,
First Circuit.

Raul RIVERA-APONTE, et al., Plaintiff, Appellant,
v.
RESTAURANT METROPOL # 3, INC. d/b/a Restaurant Metropol, Defendant, Appellee.

No. 02-1923.

Heard March 4, 2003.
Decided July 28, 2003.

Following termination of employment, former employee brought age discrimination claim against employer under the Age Discrimination in Employment Act (ADEA). The United States District Court for the District of Puerto Rico, Salvador E. Casellas, J., granted employer's motion for summary judgment, and employee appealed. The Court of Appeals, Torruella, Circuit Judge, held that employer's proffered nondiscriminatory reason for terminating employee was not pretext for age discrimination.

Affirmed.

West Headnotes

[1] Civil Rights ⚖ 1204
78k1204 Most Cited Cases
   (Formerly 78k170)

In an ADEA wrongful discharge case, the plaintiff must prove that he would not have been fired but for his age. Age Discrimination in Employment Act of 1967, § 4(a)(1), 29 U.S.C.A. § 623(a)(1).

[2] Civil Rights ⚖ 1204
78k1204 Most Cited Cases
   (Formerly 78k170)

A plaintiff makes a prima facie case of discrimination under *McDonnell Douglas* by showing that (1) he was at least forty years old; (2) he met the employer's legitimate job expectations; (3) he was fired; and (4) the employer did not treat age neutrally. Age Discrimination in Employment Act of 1967, § 4(a)(1), 29 U.S.C.A. § 623(a)(1).

[3] Civil Rights ⚖ 1209
78k1209 Most Cited Cases
   (Formerly 78k170)

Employer's proffered nondiscriminatory reason for terminating employee, namely that employee was the aggressor in an altercation with co-worker, was not pretext for age discrimination, for purposes of suit brought pursuant to ADEA: investigation of incident included an interview and co-worker's actual injuries which included lacerations requiring 12 stitches; though employee contended that employer referred to older employees as "imbeciles" or "corpses", such remarks were insufficient to establish discriminatory animus; and though other employees were involved in altercations at work but not fired, those incidents were unknown to supervisors and none of the incidents resulted in personal injuries requiring medical treatment. Age Discrimination in Employment Act of 1967, § 2 et seq, 29 U.S.C.A. § 621 et seq.

*10 William Santiago-Sastre, with whom Melendez, Perez, Moran & Santiago, LLP were on brief, for appellants.

Guillermo J. Ramos-Luina, with whom Rivera, Tulla & Ferrer, were on brief, for appellee.

Before TORRUELLA, SELYA and LIPEZ, Circuit Judges.

TORRUELLA, Circuit Judge.

Appellant Raul Rivera Aponte [FN1] ("Rivera") challenges the district court's entry of summary judgment in favor of his former employer, appellee Restaurant Metropol # 3, Inc. ("Metropol"), on Rivera's age discrimination claim. We find that Rivera has failed to demonstrate a trial worthy issue of discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and affirm the district court's decision.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




FN1. Additional appellants are Rivera's wife and children.

## I. Standard of Review

We review the district court's grant of summary judgment de novo, construing the record in the light most favorable to the non-moving party, and granting all reasonable inferences in his favor. *Rosenberg v. City of Everett*, 328 F.3d 12, 17 (1st Cir.2003). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2003). A "genuine issue" as to a "material fact" must be supported by "such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (quotation omitted). We will affirm the district court's grant of summary judgment in favor of the employer unless there is "evidence sufficient for a factfinder to reasonably conclude that [the employer's] decision to terminate was driven by a discriminatory animus." *Mulero-Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir.1996). Finally, we may affirm the decision on any grounds apparent in the record. *Rosenberg*, 328 F.3d at 17.

## II. Background

Before Metropol opened on June 29, 1998, Rivera and Alberto Nogueras, a busboy at the restaurant, had an altercation, during which Rivera threw or accidentally dropped a tray full of drinking glasses on Nogueras. Nogueras was cut by the glasses and received twelve stitches at the hospital. The manager of the restaurant interviewed employees regarding the incident; after determining that Rivera was the aggressor, the manager fired Rivera later that day.

At the time of his discharge, Rivera was fifty-five years old and had been a waiter at Metropol for eight or nine years.

Rivera filed suit in June 1999, alleging age discrimination under the ADEA and similar Puerto Rican statutes. On June 3, 2002, the district court granted summary judgment for Metropol on the federal ADEA claim, and dismissed Rivera's commonwealth claims without prejudice. This appeal of the ADEA claim followed.

## III. Discussion

[1] The ADEA makes it unlawful for an employer to "discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1) (2003). In an ADEA wrongful discharge case, the plaintiff must *11 prove that he would not have been fired but for his age. *Serrano-Cruz v. DFI P.R., Inc.*, 109 F.3d 23, 25 (1st Cir.1997). Where, as here, there is no evidence of direct discrimination, the familiar *McDonnell Douglas* burden-shifting framework governs. *Id.*; see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[2] A plaintiff makes a prima facie case of discrimination under *McDonnell Douglas* by showing that (1) he was at least forty years old; (2) he met the employer's legitimate job expectations; (3) he was fired; and (4) the employer did not treat age neutrally. *Pages-Cahue v. Iberia Lineas Aereas de Espana*, 82 F.3d 533, 536 (1st Cir.1996). The fourth element requires the plaintiff to produce "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quotation omitted).

The initial prima facie case is not burdensome and raises a rebuttable presumption of unlawful discrimination. *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995). The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991). If the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



employer makes this showing, the presumption of discrimination disappears, and the burden shifts back to the employee. *Id.* The plaintiff must then show, without resort to the presumption created by the prima facie case, that the employer's explanation is a pretext for age discrimination. *Id.*

A. Legitimate, Non-discriminatory Reason

We assume arguendo that Rivera can establish a prima facie case. Metropol offers a legitimate, non-discriminatory reason for discharging Rivera: Rivera assaulted and injured another employee while at work. Rivera had received a copy of Metropol's employment manual, which warns that an employee's attack, aggression, assault, or threat of aggression against a supervisor or fellow employee justifies Metropol's immediate termination of that employee. Rivera's behavior violated Metropol's rules of conduct, and the restaurant took swift disciplinary action. The restaurant has met its burden of production and the ultimate burden now rests with Rivera to prove his discharge was motivated by discriminatory animus. *See Mesnick,* 950 F.2d at 823.

B. Evidence of Discrimination

Now that the burden has shifted back to Rivera, he must come forward with sufficient evidence to permit a reasonable fact-finder to conclude that his employer's stated reason for discharge was a pretext for age discrimination. After considering his arguments and reviewing the record, we find that he has not shown that a genuine issue exists as to the reason for his termination.

[3] First, Rivera asserts that the pre-termination investigation was cursory--evidenced by the fact that Rivera was never allowed to explain his side of the story--and therefore Metropol's reason for terminating him was pretextual. Metropol responds that it determined, based on one interview and Nogueras' actual (and undisputed) injuries, that Rivera was the aggressor, and it sought to take swift action to deter further workplace violence. Whether a termination decision was wise or done in haste is irrelevant, so long as the decision was not made with discriminatory animus. *Gray v. New Eng. Tel. & Tel. Co.,* 792 F.2d 251, 255 (1st Cir.1986). *12 Rivera's bare assertion that Metropol's reason for terminating him was pretext is insufficient: the restaurant's reason was compelling, and our thorough review of the record reveals that Rivera lacks any evidence that the real reason for his termination was age discrimination. *See Ruiz v. Posadas de San Juan Assocs.,* 124 F.3d 243, 248 (1st Cir.1997) ("[Plaintiff] must do more than cast doubt on the rationale proffered by the employer, ... the evidence must be of such strength and quality as to permit a reasonable finding that the termination was obviously or manifestly unsupported.").

Second, Rivera contends Metropol discriminated against older workers, sometimes referring to employees as "imbeciles" or "corpses." Such "stray workplace remarks" are generally insufficient, standing on their own, to establish discriminatory animus. *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 69 (1st Cir.2002). Rivera does not specify who made these comments, when they were made, or to whom they were directed. The lack of a direct connection between the words and the employment action significantly weakens their probative value. *Schuster v. Lucent Techs., Inc.,* 327 F.3d 569, 576 (7th Cir.2003). Given Metropol's compelling stated reason for Rivera's termination, these stray remarks do not permit the inference that the real reason for Rivera's termination was age discrimination. *See Williams v. Raytheon Co.,* 220 F.3d 16, 20 (1st Cir.2000).

Rivera also offers the affidavit of a former employee who worked at Metropol for three years, beginning at age sixty, then left and later sought re-employment at age sixty-three or sixty-four. The owner told him "we are too old for this," and he was not rehired. We do not think this evidence reveals age-based animus. The owner's statement uses "we," which is different than saying "you are too old for the job;" such ambiguity weakens Rivera's claim that the statement reveals age animus. *See Gonzalez,* 304 F.3d at 70. Also, the fact the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




338 F.3d 9                                                                                 Page 4
(Cite as: 338 F.3d 9, *12)

employee was hired for the first time at age sixty demonstrates Metropol's willingness to have older employees on its staff. Metropol introduced evidence that more than two-thirds of its male employees are over forty-five. This is not the hallmark of an employer who discriminates against older workers.

Finally, Rivera alleges that other employees were involved in altercations at work but not fired. Metropol counters that some of those incidents were unknown to supervisors, and none of the other incidents resulted in personal injuries requiring medical treatment. After reviewing the record, we agree that the incidents proffered by Rivera are of a significantly less severe nature (a few punches without injury exchanged in one incident, obscene words and shoving in another, and a piece of silverware thrown in a third); therefore, these examples fail to show disparate treatment. *See Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 21 (1st Cir.1999) ("[A] claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in all material respects.") (quotation omitted).

### IV. Conclusion

After reviewing the record, we find that Rivera has failed to demonstrate sufficient evidence to permit a reasonable fact-finder to conclude that his termination was a pretext for age discrimination. The district court's decision is affirmed.

*Affirmed.*

338 F.3d 9, 92 Fair Empl.Prac.Cas. (BNA) 752, 84 Empl. Prac. Dec. P 41,450

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




2003 U.S. Dist. LEXIS 8175, *

LEXSEE 2003 U.S. DIST. LEXIS 8175

**ISMAEL BAILEY, Plaintiff, -against- COLGATE-PALMOLIVE CO, Defendant.**

**99 Civ. 3228 (CBM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 8175*

**May 13, 2003, Decided
May 14, 2003, Filed**

**SUBSEQUENT HISTORY:** Affirmed by *Bailey v. Colgate-Palmolive Co., 2004 U.S. App. LEXIS 6106 (2d Cir. N.Y., Apr. 1, 2004)*

**DISPOSITION:** [*1] Defendant's motion for summary judgment GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee filed suit against defendant former employer alleging claims of race discrimination, retaliation, race-based hostile work environment, and age discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621-634 et seq., 42 U.S.C.S. § 1981, and N.Y. Exec. Law § 296 et seq. The employer moved for summary judgment.

**OVERVIEW:** The employer asserted that the employee's allegations were wholly unrelated to its decision to terminate his employment and indeed, to any decisions related to his employment. Moreover, the employer contended that the court could forego consideration of the substance of most of the employee's claims inasmuch as they were procedurally flawed. First, the court found that the employee's Title VII and ADEA claims arising more than 300 days before he filed his charge were time-barred and must be dismissed. The court reasoned that because the employee did not present any evidence which might connect seemingly episodic occurrences and actions by different individuals to a controlling policy or practice, he could not avail himself of the continuing violation doctrine. With regard to the timely ADEA discrimination claims, the court found that no reasonable jury could find that the employer was motivated, in whole or in part, by the employee's age. With regard to the timely race discrimination claims, the court found that the employee came forward with no evidence that the decision to demote him was motivated by negative feelings vis-a-vis his racial identity.

**OUTCOME:** The employer's motion for summary judgment was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN1] According to Fed. R. Civ. P. 56(c), summary judgment shall be rendered forthwith if it is shown that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, while materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN2] On a motion for summary judgment, in order to prove that a genuine issue of material fact exists, a plaintiff may not rest upon the mere allegations or denials of the pleadings, but must by affidavit or otherwise set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). In this vein, the Second Circuit has noted that conclusory statements, conjecture

or speculation by the party resisting the motion will not defeat summary judgment. Of course, this standard applies with equal force in discrimination cases as it would in any other case in federal court. Thus, courts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where plaintiff has offered little or no evidence of discrimination.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN3] On a motion for summary judgment, in assessing the record to determine whether genuine issues of material fact are in dispute, courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. However, if the moving party meets its initial burden, the non-moving party may not rely on conclusory allegations or speculation to create factual disputes. Instead, the non-moving party must produce specific facts indicating that a genuine issue of fact exists. If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.

*Civil Procedure > Summary Judgment > Standards > General Overview*
*Evidence > Inferences & Presumptions > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN4] In the employment discrimination context, courts must be sensitive to the fact that evidence of discrimination is generally not overt: employers are rarely so cooperative as to include a notation in the personnel file that the adverse employment action is for a reason expressly forbidden by law. Courts must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances. Furthermore, when the case involves a claim of discrimination, the court should view the record in its totality, rather than in a piecemeal fashion. The Second Circuit has directed that trial courts be especially cautious in deciding whether to grant this drastic provisional remedy in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Discrimination > Age Discrimination > Federal & State Interrelationships*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations > General Overview*
[HN5] In New York, Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 621 et seq., claims must be filed with the EEOC or the NYSDHR within 300 days of the alleged discriminatory act. 42 U.S.C.S. § 2000e-5(e)(1).

*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations > Continuing Violations*
[HN6] According to the continuing violation doctrine, if a plaintiff files an EEOC charge that is timely as to any incident of discrimination that is in furtherance of an ongoing policy of discrimination, all claims of discrimination under that policy will be timely.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Discrimination > Actionable Discrimination*
[HN7] Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment action constitutes a separate actionable unlawful employment practice. A plaintiff can only file a charge to cover acts that "occurred" within the appropriate time period. All prior discrete discriminatory acts are untimely filed and no longer actionable.

*Governments > Legislation > Statutes of Limitations > Extension & Revival*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN8] Alleged failures to compensate adequately, transfers, job assignments, and promotions cannot form the basis for a continuing violation claim.

*Governments > Legislation > Statutes of Limitations >*

*Time Limitations*
*Labor & Employment Law > Discrimination > Actionable Discrimination*
[HN9] The continuing violation doctrine generally has been limited to situations where a specific discriminatory policy or mechanism has been alleged. Thus, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.

*Civil Rights Law > Practice & Procedure > Civil Rights Commissions > Complaints*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN10] Under the N.Y. Exec. Law § 296 et seq., an individual who files a complaint with the NYSDHR is barred from filing a lawsuit for the same cause of action. N.Y. Exec. Law § 297(9).

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > General Overview*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN11] The very filing of a complaint with the NYSDHR, even without any action on the part of the agency, constitutes a binding election of remedies which precludes a plaintiff from commencing any action in court based on the same incident, unless the complaint is dismissed on the grounds of administrative convenience.

*Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Protected Parties*
*Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Protected Rights*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN12] 42 U.S.C.S. § 1981 provides, in part, that all persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts as is enjoyed by white citizens. Since § 1981 does not have a statute of limitations, courts considering claims under the statute have historically applied the personal injury statute of limitations of the forum state.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN13] See 28 U.S.C.S. § 1658.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN14] When an Act of Congress passed after December 1, 1990, amends a statute existing before that date, as opposed to creating a new law without reference to previously existing statutory language, all claims accruing after passage of the amendment arise under an Act of Congress enacted before December 1, 1990, without regard to whether an identical claim arising earlier could have been successfully pursued under the prior statute.

*Civil Procedure > Justiciability > Exhaustion of Remedies > Administrative Remedies*
*Civil Procedure > Justiciability > Exhaustion of Remedies > Failure to Exhaust*
*Civil Rights Law > Practice & Procedure > Exhaustion*
[HN15] Before commencing a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., action, a plaintiff must exhaust his administrative remedies. Failure to exhaust administrative remedies defeats the purpose of the statutory notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance. Courts may only hear claims that were raised in the underlying administrative charge. Thus, courts routinely dismiss claims of discrimination when the exhaustion requirement is not satisfied.

*Civil Procedure > Equity > General Overview*
*Labor & Employment Law > Discrimination > Retaliation > Remedies > General Overview*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > General Overview*
[HN16] Whereas Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., filing requirements are not jurisdictional prerequisites, they may be waived in certain situations where equity requires. Under some circumstances, courts may hear claims "reasonably related" to, but not expressly alleged in, the underlying administrative charge. The Second Circuit recognized three situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action. First, a claim in a judicial action may be "reasonably related" to a claim in an EEOC charge where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of