Case 3:00-cv-01124-WIG    Document 147-14    Filed 08/08/2006    Page 1 of 11

Page 5
2003 U.S. Dist. LEXIS 8175, *

discrimination. Second, an unasserted claim is "reasonably related" to an EEOC charge if the claim is one alleging retaliation by an employer against an employee for filing the underlying charge. Third, an unasserted claim may be raised for the first time in court where the claim alleges further incidents of discrimination carried out in precisely the same manner alleged in the underlying charge.

***Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > General Overview***
[HN17] Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, courts have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

***Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > General Overview***
[HN18] A claim not included in an EEOC charge will usually not be seen as reasonably related where the facts in the original EEOC charge do not sufficiently apprise the EEOC that another type of discrimination claim lurks in the background. Accordingly, in order to determine if a claim satisfies this test, a court must consider whether the allegations in the EEOC charge, as a whole, would reasonably lead the agency to investigate both grounds.

***Civil Procedure > Justiciability > Exhaustion of Remedies > General Overview***
***Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > General Overview***
[HN19] In the context of exhaustion of remedies, it is well settled that a court should not look merely to the four corners of the often inarticulately framed charge, but must consider the possible scope of any investigation reasonably flowing from the charge. Thus, it is the substance of the charge and not its label that controls.

***Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities***
***Labor & Employment Law > Discrimination >***

***Retaliation > General Overview***
[HN20] To state a claim for retaliation, a plaintiff must show participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action.

***Civil Procedure > Pleading & Practice > Pleadings > General Overview***
***Governments > Legislation > Statutes of Limitations > Time Limitations***
***Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations > General Overview***
[HN21] N.Y. Exec. Law § 296 et seq. has been governed by the three-year statute of limitations and plaintiff is barred, therefore, from asserting any claims prior to three years ago.

***Labor & Employment Law > Discrimination > Age Discrimination > Employment Practices > Discharges & Failures to Hire***
***Labor & Employment Law > Discrimination > Age Discrimination > Federal & State Interrelationships***
***Labor & Employment Law > Discrimination > Age Discrimination > Proof > Burdens of Proof***
[HN22] Under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 et seq., it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C.S. § 623(a)(1). The framework for establishing a prima facie case of age discrimination under the ADEA is the same as that for establishing a prima facie case of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. Thus, in determining whether a complainant has made out a prima facie case under Title VII, district courts must apply the McDonnell Douglas burden-shifting analysis. In addition, analysis of age discrimination claims under the NYSHRL is identical to analysis under the ADEA.

***Evidence > Procedural Considerations > Exclusion & Preservation by Prosecutor***
***Evidence > Procedural Considerations > Burdens of Proof > Allocation***
***Evidence > Procedural Considerations > Burdens of Proof > Burden Shifting***
[HN23] Under the McDonnell Douglas analysis, if the

Case 3:00-cv-01124-WIG   Document 147-14   Filed 08/08/2006   Page 2 of 11

Page 6
2003 U.S. Dist. LEXIS 8175, *

plaintiff establishes a prima facie case, the burden of production shifts to the defendant, who must then proffer a legitimate, non-discriminatory reason as to why the plaintiff was rejected, or someone else was preferred. The defendant does not need to show that the articulated reason was the true motivation behind the decision; rather, it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff. Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case. The defendant can dispose of this burden by advancing admissible evidence in support of a nondiscriminatory basis for its actions. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview***
***Civil Procedure > Summary Judgment > Evidence***
***Evidence > Procedural Considerations > Burdens of Proof > Ultimate Burden of Persuasion***
[HN24] Under the McDonnell Douglas analysis, once the defendant articulates a neutral reason for his actions, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. At this stage of the inquiry, the plaintiff must also satisfy the ultimate burden in the case: the burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. See Of course, at the summary judgment stage, the plaintiff does not need to prove intentional discrimination; rather, plaintiff may preclude summary judgment by producing evidence from which the trier of fact reasonably could draw an inference of discrimination.

***Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview***
***Evidence > Procedural Considerations > Burdens of Proof > Ultimate Burden of Persuasion***
***Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview***
[HN25] A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. Importantly, however, such a showing is by no means always adequate to survive summary judgment because proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that plaintiff's proffered reason is correct. The court must examine the entire record in each case to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. Showing that the employer's proffered explanation for termination is not worthy of belief is one form of circumstantial evidence that is probative of intentional discrimination, and it may or may not be sufficiently persuasive to preclude summary judgment depending upon the specific facts of each individual case.

***Labor & Employment Law > Discrimination > Age Discrimination > Proof > Burdens of Proof***
[HN26] In order to establish a prima facie case of age discrimination under the McDonnell Douglas standard, a plaintiff must demonstrate (i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that plaintiff was replaced by someone 'substantially younger. The burden on the plaintiff of presenting a prima facie case of discrimination under McDonnell Douglas is minimal.

***Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview***
***Labor & Employment Law > Discrimination > Age Discrimination > Defenses & Exceptions > Good Cause Discharges***
***Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview***
[HN27] A plaintiff's conclusory identification of age discrimination as a but-for cause of his termination and the paltry evidence which he presents in furtherance of that claim are insufficient to defeat a motion for summary judgment.

***Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview***
[HN28] It is well-settled under the McDonnell Douglas standard that a plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors. Similarly, under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., a plaintiff does not need to prove that age was the only or even the principal factor in the adverse employment action, but only that age was at least one of

Case 3:00-cv-01124-WIG   Document 147-14   Filed 08/08/2006   Page 3 of 11

Page 7
2003 U.S. Dist. LEXIS 8175, *

the motivating factors in the decision.

*Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions*
*Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Employee Burdens*
[HN29] Courts apply the McDonnell Douglas burden shifting analysis to claims of racial discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. Thus, in order to make a prima facie case of race discrimination, a plaintiff must show that (i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

*Environmental Law > Environmental Justice*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN30] A Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., hostile environment claim will succeed only if the conduct at issue is so severe or pervasive as to create an objectively hostile or abusive work environment, and where the victim subjectively perceives the environment to be abusive.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN31] In order to avoid summary judgement on a hostile work environment claim, a plaintiff must establish that (1) he was subjected to harassment that was so severe and pervasive as to alter the conditions of his employment; and (2) there is a specific basis for imputing the conduct. A plaintiff must produce evidence that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment. The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.

*Environmental Law > Environmental Justice*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN32] Hostile environment claims are different in kind from claims alleging discrete acts inasmuch as they involve repeated conduct. A hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice. The timely filing provision only requires that a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN33] Courts examining hostile work environment claims look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. A plaintiff must demonstrate that a series of incidents allegedly constituting a hostile work environment were sufficiently continuous and concerted to alter the conditions of his or her working environment.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN34] Courts should consider "all the circumstances" relevant to a hostile work environment claim and such claims can be based on the cumulative effects of individual acts which might not be independently actionable.

*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN35] Mere utterances of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title

Case 3:00-cv-01124-WIG   Document 147-14   Filed 08/08/2006   Page 4 of 11

Page 8
2003 U.S. Dist. LEXIS 8175, *

VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq.

*Environmental Law > Environmental Justice*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN36] Use of the word "nigger" in the workplace legitimately evinces racial hostility. The question, then -- if a claim were deemed to be timely -- would be whether the existence of this manual, and plaintiff's alleged references to it, constitute an environment of hostility that was sufficiently severe or pervasive to alter the conditions of plaintiff's employment. Although isolated, minor episodes of harassment do not merit relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., even a single episode of harassment, if severe enough, can establish a hostile work environment. This is so even if the plaintiff was not physically threatened or assaulted. Perhaps no single act can more quickly alter the conditions of employment than the use of an unambiguously racial epithet such as "nigger" by a supervisor in the presence of his subordinates.

**COUNSEL:** For Plaintiff: Manuel del Valle, AmeriChoice Corporation, New York, NY.

For Defendant: Darrell S. Gay, Sonya D. Johnson, Antoinette W. Blanchette, Gay & Hardaway, New York, NY.

**JUDGES:** CONSTANCE BAKER MOTLEY, United States District Court.

**OPINIONBY:** CONSTANCE BAKER MOTLEY

**OPINION: MOTLEY, J.**

### INTRODUCTION

Plaintiff Ismael Bailey ("plaintiff"), a former employee of Colgate-Palmolive Co., brings this action alleging claims of race discrimination, retaliation, and race-based hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e through 2000e-17* ("Title VII"); age discrimination pursuant to the Age Discrimination in Employment Act of 1967, *29 U.S.C. §§ 621-634* (the "ADEA"); race discrimination and retaliation pursuant to *42 U.S.C. § 1981* ("*Section 1981*"); and race discrimination, age discrimination, and retaliation pursuant to *N.Y. Exec. Law § 296* ("NYSHRL"). n1

n1 Plaintiff began this action on March 9, 1999, asserting claims of race discrimination and race-based hostile work environment under Title VII and age discrimination under the ADEA. It was not until he filed the Amended Complaint that plaintiff asserted claims for retaliation or claims pursuant to *Section 1981* or the NYSHRL.

[*2]

Defendant Colgate-Palmolive Co. ("defendant" or "Colgate") now moves this court for an order granting summary judgment pursuant to *Fed. R. Civ. P. 56(c)*. Defendant asserts that plaintiff's allegations of race and age discrimination and retaliation are wholly unrelated to its decision to terminate his employment and indeed, to any decisions related to his employment at Colgate. Moreover, Colgate contends that the court can forego consideration of the substance of most of plaintiff's claims inasmuch as they are procedurally flawed.

For the reasons set forth below, defendant's motion for summary judgment is hereby **GRANTED**.

### BACKGROUND

**A. Plaintiff's Employment History at Colgate**

The following facts are taken from the Amended Complaint, the parties' memoranda of law and Local *Rule 56.1* statements, and relevant deposition testimony.

Plaintiff, an African American male, began working for Colgate in September 1985 as what is referred to as a Grade 12 Staff Auditor in the company's Corporate Auditing Department. During his tenure of employment at Colgate, plaintiff's work performance was periodically evaluated by supervisors, presumably pursuant to a formal protocol. Since Mr. [*3] Bailey's record of performance at Colgate is a matter of dispute between the parties, the court will briefly comment on portions of the performance evaluations completed by his supervisors.

Francine Nielson, an African American Colgate employee who supervised plaintiff during the period spanning from 1985 to 1986 rated his overall work performance as "Competent," notwithstanding plaintiff's weakness with respect to certain technical skills.

In 1988, plaintiff was promoted to a Grade 13 position as a Treasury Analyst in Colgate's New York Treasury Department. In his performance appraisal for the period of January 16, 1988 to December 1, 1988, plaintiff's supervisor, Andris Anuzis, rated his overall performance as "Commendable." Mr. Anuzis noted that plaintiff needed to "continue his technical development." He moreover commented that "[plaintiff] needs more financial education in the form of Graduate courses,

2003 U.S. Dist. LEXIS 8175, *

additional analytical projects and writing." See Gay Aff. Exhibit L.

In March 1989, plaintiff was promoted to a Grade 14 Financial Manager position for Colgate's Far East Division. Plaintiff's supervisors in this capacity were David Murray and Jack Robinson, who is African [*4] American. Mr. Murray rated plaintiff's overall performance as "Standard" in his appraisal for the period of January 1, 1989 to December 31, 1989. Mr. Murray rated plaintiff's overall performance for the period of January 1, 1989 to December 31, 1989 as "Standard." Mr. Murray commented on the evaluation form that plaintiff is "more adept and more comfortable in a special projects mode than financial analysis." See Gay aff. Exhibit M.

In an August 20, 1990 memorandum which was labeled "Personal and Confidential," Jack Robinson addressed what he characterized as "[Plaintiff's] UNSATISFACTORY PERFORMANCE." See Gay Aff. Exhibit N (capitalization in original). In this memorandum, Mr. Robinson commented, *inter alia,* that plaintiff "DOES NOT RECONCILE AND PICK UP ON DISCREPANCIES WITHOUT SUPERVISION AND THEN DOES NOT RELIABLY MAKE CORRECTIONS." Id. (capitalization in original).

In a September 7, 1990 memorandum addressed to plaintiff, Mr. Robinson noted:

> THE AREAS IN WHICH YOUR PERFORMANCE IS BELOW REQUIREMENTS ARE: [i] FINANCIAL REPORTING: KNOWLEDGE AND ACCURACY ARE INADEQUATE ... [ii] JUDGEMENT AND PERSPECTIVE: YOU HAVE LIMITED KNOWLEDGE OF HOW TO SUMMARIZE [*5] AND COMMUNICATE KEY FINANCIAL INFORMATION TO MANAGEMENT CAUSING EITHER MISCONCEPTIONS OR INACCURATE PORTRAYAL OF DIVISION FINANCIAL PERFORMANCE ... [iii] ANALYTICAL SKILLS: YOU HAVE NOT DEMONSTRATED CONSISTENT ABILITY TO REVIEW, ANALYZE, AND SUMMARIZE THE RESULTS OF OPERATIONS WITHOUT VERY CLOSE SUPERVISION." Gay Aff. Exhibit O (capitalization in original).

In his performance appraisal for the period of January 1, 1990 to November 30, 1990, Mr. Robinson rated plaintiff's overall performance as "Below Standard," noting, *inter alia,* that plaintiff "needs courses, training in how to interpret and present accurate financial information to senior management" and "needs to learn about managing change v. 'using the way it is' as an excuse for unsatisfactory practices and systems." Gay Aff. Exhibit P.

In 1991, plaintiff was assigned to the Integrated Financial Systems for Colgate's United States operations. Plaintiff was supervised by Doug Presley. For the periods of February 1, 1991 to June 1, 1991 and June 1, 1991 to December 1, 1991, plaintiff received performance ratings of "Standard" and "Above Standard" respectively. Gay Aff. Exhibits Q and R.

In September 1992, plaintiff [*6] was assigned to the position of Distribution Services Financial Manager in the Finance Department in Atlanta, GA. Plaintiff's supervisor, Alfred J. Lee, who is African American, gave plaintiff an overall performance rating of "Above Standard" for the period of August 1, 1992 to November 30, 1992. In his evaluation of plaintiff's performance for the period of December 1, 1992 to November 15, 1993, Mr. Lee noted that plaintiff's "technical skills do not meet the minimum requirements for a senior position in Finance. After review and evaluation, it is evident that he requires training and education in basic accounting fundamentals." Gay Aff. Exhibit T. In addition, Mr. Lee noted that

> a significant part of [plaintiff's] role is to review the work of Analysts. This has not been sufficiently performed. During the first quarter, a significant cost of sales error was noted by the Marketing Controller. The cause was an incorrect rate for copacking SKU in the cost of goods sold report. During the first and second quarters, a series of journal entries were made incorrectly, causing freight exposure being understated by $ 600,000.

Id.

Mr. Lee gave plaintiff a "Below [*7] Standard" rating in his performance appraisal for this period. Id.

In March 1994, plaintiff and other Colgate employees were assigned to install the so-called Ross System General Ledger, Accounts Payable and Purchasing Program ("Ross") in Puerto Rico. Plaintiff received a letter dated January 10, 1995 from the

Comptroller of Puerto Rico which praised plaintiff and his co-workers for their successful implementation of the relevant software. See Exhibit 8, Letter from William Sibaja. Plaintiff claims that although Colgate's policy manual dictates that employees receive yearly performance appraisals, he did not receive one for his work on the Ross system in Puerto Rico.

Plaintiff returned to New York in 1995 after the completion of the Ross installation in Puerto Rico. According to the Amended Complaint, unlike Carol Smith and Greg Cucco, two of plaintiff's co-workers on the ROSS project, plaintiff was not assigned to work on the so-called SAP project in New Jersey upon his return from the installation project. Pursuant to his discrimination claims, plaintiff asserts that Ms. Smith and Mr. Cucco are both white and younger than plaintiff. Colgate contends that Mr. Cucco is in [*8] fact one year older than plaintiff; Ms. Smith is less than five years younger than plaintiff. See Tr. at 21.

Thereafter, in March 1995, plaintiff applied for a Grade 15 Special Packaging Manager position in Colgate's U.S. Materials Management Unit. Plaintiff claims that Dennis Hickey, the Executive Vice President and Chief Financial Officer of Colgate North America, did not allow plaintiff to interview for this position. Plaintiff suggests that Mr. Hickey prevented him from pursuing the position for at least two reasons: (1) because of his disapproval of plaintiff's "activities with the African American Forum," an organization which ostensibly was organized to address issues of race-based discrimination at Colgate; and (2) because of Mr. Bailey's "history of complaints regarding matters of race [at Colgate]." See Am. Comp., P 67. Colgate denies that Mr. Bailey's race or his membership in the African American Forum had anything to do with the company's employment decisions with respect to Mr. Bailey. Rather, Colgate asserts that Mr. Bailey was objectively unqualified for the Special Packaging Manager position.

In April 1995, at a meeting held by Michele Mayes, Colgate's [*9] Vice President of Human Resources for the U.S. Company, and Mr. Hickey, plaintiff was offered a severance package in exchange for his resignation. Plaintiff rejected this offer.

At a May 23, 1995 meeting, Ms. Mayes and Mr. Hickey informed plaintiff that they did not think that he was qualified for Grade 14 employment with Colgate. They offered him a Grade 12 Staff Accountant position without any reduction from his Grade 14 salary. Plaintiff rejected this offer, too. Colgate claims that in light of Mr. Bailey's intransigence with respect to the issue of his placement in a Grade 14 level position, the company then terminated his employment.

### B. Plaintiff's Allegations of Discrimination

With respect to the facts summarized above in this Opinion, plaintiff claims that because of his *race* (1) he was not assigned to work on the SAP project in New Jersey. Am. Compl. P 66; (2) he was prevented from interviewing for a Grade 15 position in March 1995. Am. Compl. P 67; (3) he was offered what he considers to be an inferior position during the May 23, 1995 meeting with Ms. Mayes and Mr. Hickey. Am. Compl. P 69; and (4) he was terminated on May 23, 1995. Am. Compl. P 77.

Plaintiff [*10] claims that because of his *age* he was not assigned to work on the new SAP project in New Jersey and was terminated on May 23, 1995.

### C. Plaintiff's Allegations of Racially Hostile Work Environment

Plaintiff alleges that he was subjected to a litany of racially-insensitive incidents during his tenure at Colgate which cumulatively fostered and were constitutive of a hostile work environment. See Am. Compl. P 12. According to plaintiff,

> this environment was created and/or condoned by the Defendant's employees and by the Defendant's use of racially, [sic] derogatory terms, images and materials. Even after [plaintiff] brought these matters to defendant's attention, Defendant failed to act up to and including the date of [plaintiff's] termination. Id.

In particular, plaintiff claims that: (1) in New York in 1985, plaintiff viewed, in an accounting department manual (which plaintiff was required to use in the course of his employment) the term "Nigger Soap" used with reference to soap residue. Mr. Bailey asserts that the term "Nigger Soap" describes a soap or residue of inferior quality. This use of the word "nigger" to denote a quality of inferiority, [*11] Mr. Bailey claims, was offensive and contributed to a hostile work environment; (2) during an audit in Kansas City in 1986, a co-worker named Robert "Bob" Proctor introduced himself as the Grand Wizard of the Ku Klux Klan and repeatedly used the word "nigger" in the presence of Mr. Bailey. During oral argument on the pending motion for summary judgment, defendant asserted that it cannot find any record of a person named Bob Proctor being employed at Colgate at

that time; (3) during an audit in France in 1987, plaintiff viewed a sign that referred to black soap residue as "Nigger Soap"; (4) at a meeting in Texas in February 1989, he overheard a co-worker use the offensive Afrikaner word *Kaffa* n2 with reference to blacks; (5) in June 1990, during a budget review, plaintiff prepared "budget templates and graphics which depicted a logo of a smiley, black face, black top-hatted, bright-eyed minstrel for Defendant's 'Darkie Toothpaste.'" Am. Compl. P 28. Darkie Toothpaste is a product manufactured by a company which Colgate acquired and which was marketed only in Asia. Plaintiff perceived the logo to be racially insensitive and offensive; (6) in New York in 1990, a co-worker referred [*12] to plaintiff as "one big nigger." Bailey Tr. at 382-84; (7) in Puerto Rico in 1994, n3 plaintiff heard a co-worker, Carol Smith, tell a racially insensitive joke about Puerto Ricans, which plaintiff perceived to be tasteless and offensive; and (8) in 1995, after he was informed of his termination, plaintiff overheard a conversation in a bathroom at Colgate in which an employee said, presumably with reference to Mr. Bailey: "We got another one. These niggers don't get it. We decide who comes and goes at Colgate." Am. Compl. P 72. See generally Am. Compl. PP 13, 19, 28, 32, 33, 47, 60, 72.

> n2 The word Kaffir, or Kafir, is a derogatory slang term in the South African lexicon which is used with reference to black people and negative qualities, including unreliability. See, e.g., Oxford English Dictionary.
>
> n3 In the Amended Complaint, plaintiff alleges that this incident took place in 1994. See Am. Complt. P 60. By contrast in his supplemental memorandum of law addressing the effect of Morgan on the hostile work environment claim, plaintiff claims that the incident took place on January 14, 1995. Pl.'s Supp. Br. at 3.

[*13]

### D. Plaintiff's Allegations of Retaliation

Plaintiff alleges that as a result of his role in the organizing of, and his participation in, the African American Forum at Colgate in 1992 and 1993, Colgate retaliated against him by: (1) giving him a below-standard performance evaluation in 1993. See Am. Compl. P 100; (2) transferring him from Atlanta to Puerto Rico in 1994. See Am. Compl. P 55; (3) not allowing plaintiff to interview for a Grade 15 position in March 1995. See Am. Compl. P 67; and (4) terminating plaintiff's employment on May 23, 1995. See Am. Compl. P 100.

Under the heading of "Racially Hostile Environment" in the Amended Complaint, but seemingly with relation to the foregoing issues of retaliation and discrimination, plaintiff claims that from April 1993 to the first quarter of 1994, Stan Brothers, who was the Manager of Colgate's Atlanta operation, maintained his own separate file on Mr. Bailey. Plaintiff claims that these files included performance appraisals and letters to and from Mr. Bailey during his period of service in Atlanta. Plaintiff claims that this file and the materials therein mysteriously disappeared from Mr. Brothers' files [*14] in 2000 or 2001.

Plaintiff claims that his supervisor, Al Lee, told him that he would receive an "above average" rating for the period of December 1, 1992 to October 31, 1993. Plaintiff claims that Mr. Brothers met with Mr. Lee and directed him to "change the language of [plaintiff's] performance appraisal." Moreover, plaintiff asserts that "Stan Brothers identified language Al Lee was to use in the performance appraisal." Am. Compl., P 51. Plaintiff claims that as a result of this manipulation by Mr. Brothers, he received a "below standard" performance appraisal for the period of December 1, 1992 to November 15, 1993. Id., P 52.

In addition, with respect to claims of retaliation, plaintiff notes that employees in Atlanta under the supervision of Al Lee filed sexual harassment charges against Mr. Lee in 1993. Plaintiff was interviewed pursuant to Colgate's investigation of this matter. Am. Compl. P 54. The Amended Complaint notes that "Al Lee knew of the [sic] Ismael Bailey's cooperation with the investigation; Al Lee also knew that Ismael Bailey opposed discriminatory practices at Defendant's place of employment." Id., P 54. It appears that plaintiff wishes to raise [*15] an inference of retaliation for his involvement in this investigation and "opposition" to discriminatory practices.

It is apparent that Mr. Bailey believes that he was the victim of retaliation because of his involvement in the African American Forum, a group which "raised issues of equal employment." Am. Compl. P 100. Plaintiff alleges that Colgate was aware of his creation of and participation in the Forum. n4 He alleges that his affiliation with the Forum contributed to his receipt of below standard performance reviews, his denial of an opportunity to interview for a Grade 15 position, and the ultimate termination of his employment with Colgate. Id.

> n4 In his deposition testimony, Alfred J. Lee stated that the plaintiff did not create and was

never the head of the African American Forum. See Gay Aff. Exhibit AA.

### III. SUMMARY JUDGMENT STANDARD

[HN1] According to *Fed. R. Civ. P. 56(c)*, summary judgment "shall be rendered forthwith" if it is shown that "there is no genuine issue of material fact [*16] and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett, 477 U.S. 317, 323 n.4, 106 S. Ct. 2548, 2552 n. 4, 91 L. Ed. 2d 265 (1986).* "Genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 5 (2d Cir. 1999)* (internal quotations and citations omitted).

[HN2] In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*. In this vein, the Second Circuit has noted that "conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).* Of course, this standard applies with equal force in discrimination cases as it [*17] would in any other case in federal court. See *Ashton v. Pall Corp., 32 F. Supp. 2d 82, 87 (E.D.N.Y. 1999)* ("'the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to commercial or other areas of litigation'"). Thus, courts within the Second Circuit "have not hesitated to grant defendants summary judgment in such cases where ... plaintiff has offered little or no evidence of discrimination." *Scaria v. Rubin*, 1996 U.S. Dist. LEXIS 9659, at *14 (S.D.N.Y. 1996) (Peck, M.J.), aff'd, *117 F.3d 652 (2d Cir. 1997).*

[HN3] In assessing the record to determine whether genuine issues of material fact are in dispute, courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. See *Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).* The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. See *Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).* However, if the moving party meets its initial burden, [*18] the non-moving party may not rely on conclusory allegations or speculation to create factual disputes. Instead, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto Almenas, 143 F.3d 105, 114 (2d Cir. 1998)* (internal quotations and citations omitted) (alteration in original).

[HN4] In the employment discrimination context, courts must be sensitive to the fact that evidence of discrimination is generally not overt: "employers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law." *Bickerstaff v. Vassar College, 196 F.3d 435, 447 (2d Cir. 1999)* (internal quotations omitted). Courts must also "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture ... Thus, the question is whether the evidence can *reasonably* and *logically* give rise to an inference of discrimination [*19] under all of the circumstances." *Id.* (emphasis added). Furthermore, when the case involves a claim of discrimination, the court should view the record in its totality, rather than in a piecemeal fashion. *Fitzgerald v. Henderson, 251 F.3d 345, 360 (2d Cir. 2001), cert. denied sub nom Potter v. Fitzgerald, 536 U.S. 922, 122 S. Ct. 2586, 153 L. Ed. 2d 776 (2002).*

The Second Circuit has directed that trial courts "be especially cautious in deciding whether to grant this drastic provisional remedy in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999)*; see also *Gallo v. Prudential Residential Services, 22 F.3d 1219, 1223 (2d Cir. 1994)* ("Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate records, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination").

In its motion, defendant argues that [*20] it is entitled to judgment as a matter of law on both procedural and substantive grounds.

### IV. Time bar: Title VII and the ADEA

Colgate argues that almost all of plaintiff's claims are time barred and cannot be saved by the continuing violation doctrine. The court will address this argument with respect to each relevant claims.

Case 3:00-cv-01124-WIG   Document 147-14   Filed 08/08/2006   Page 9 of 11

Page 13
2003 U.S. Dist. LEXIS 8175, *

First, defendant argues that plaintiff's Title VII and ADEA discrimination claims regarding all events prior to April 15, 1995 are time-barred. [HN5] In New York, Title VII and ADEA claims must be filed with the EEOC or the NYSDHR within 300 days of the alleged discriminatory act. See *42 U.S.C. § 2000e-5(e)(1)* ("in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... [a] charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful practice occurred"); *29 U.S.C. § 626(d)(2)* ("no civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful [*21] discrimination has been filed with the Secretary. Such a charge shall be filed ... within 300 days after the alleged unlawful practice occurred." See also *Butts v. New York City Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1400 (2d Cir. 1993) superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care, 163 F.3d 684, 692-93 (2d Cir. 1998)* (noting that many of the plaintiff's "allegations were time-barred, since they occurred ... outside the 300-day limitations period for filing EEOC charges applicable to claims arising in New York").

Plaintiff filed a charge alleging age and race discrimination with the NYSDHR on February 8, 1996. Unless there is an exception to the application of the limitations period for filing, plaintiff's Title VII and ADEA claims arising more than 300 days before he filed his charge -- i.e., claims arising before April 15, 1995 -- are time-barred and must be dismissed.

***Continuing Violation Doctrine***

[HN6] According to the continuing violation doctrine, if a plaintiff files an EEOC charge that is timely as to *any* incident of discrimination that is in furtherance of an ongoing policy [*22] of discrimination, all claims of discrimination under that policy will be timely. See *Burrowes v. Brookdale Hospital and Medical Center, 66 Fed. Appx. 229, 2003 U.S. App. LEXIS 4933, 2003 WL 1240609 at *2 (2d Cir. March 18, 2003)* (citing *Van Zant v. KLM Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996)*.

As an initial matter, it is unclear how, if at all, the Supreme Court's decision in *National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 153 L. Ed. 2d 106, 122 S. Ct. 2061 (2002)* (hereinafter "Morgan") has affected the vitality of the continuing violation doctrine in this Circuit. See *Burrowes, 2003 U.S. App. LEXIS 4933, 2003 WL 1240609 at *2* ("Our court has not yet had occasion to rule on what, if anything, of the continuing violation doctrine may survive the Supreme Court's decision in [Morgan]"). In Morgan, the Supreme Court held that Title VII precludes recovery for discrete acts of discrimination that occur outside the statutory time period, even if the acts are related to acts alleged in timely filed charges. *Id. at 2072*. Writing for the 5-4 majority, Justice Thomas explained that "each discrete discriminatory act starts a new clock for filing charges alleging that act."*Id.* The Court further [*23] explained that

> [HN7] discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment action constitutes a separate actionable "unlawful employment practice." [Plaintiff] can only file a charge to cover acts that "occurred" within the appropriate time period ... All prior discrete discriminatory acts are untimely filed and no longer actionable.

*Id. at 2073*.

Some courts in this district have interpreted Morgan to have sounded the death knell of the continuing violation doctrine. See, e.g., *Coffey v. Cushman & Wakefield, Inc., 2002 U.S. Dist. LEXIS 13226, 2002 WL 1610913 *2 (S.D.N.Y. July 22, 2002)* (Koeltl, J.) ("Contrary to the prior rule in this Circuit, the statute of limitations thus bars relief for such acts even if they are related to other actionable conduct that is not time-barred and might otherwise be considered part of a continuing violation") (citing *Morgan at 2070-73*). It is not necessary for the court to weigh in on this debate to decide this case. As Judge Scheindlin observes in *Gross v. National Broadcasting Company, Inc., 232 F. Supp. 2d 58, 2002 WL 1482621* [*24] *(S.D.N.Y. 2002)*, the holding in Morgan is in accord with Second Circuit law "which states that [HN8] alleged failures to compensate adequately, transfers, job assignments, and promotions cannot form the basis for a continuing violation claim" (citing, inter alia, *Pollis v. New York Sch. For Social Research, 132 F.3d 115, 119 (2d Cir. 1997))*. See also *Crosland v. City of New York, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001)* ("It is well-settled that transfers, demotions, failure to compensate adequately, and failure to promote are discrete acts which do not constitute a continuing violation").

[HN9] The continuing violation doctrine generally has been limited to situations where a specific discriminatory policy or mechanism has been alleged. See *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). See also *Crosland v. City of New York*, 140 F. Supp. 2d 300, 307 (S.D.N.Y. 2001) (doctrine generally "limited to situations where there are specific policies or mechanisms, such as discriminatory seniority lists or employment tests"). Thus, "'multiple incidents of discrimination, even similar ones, [*25] that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation'" *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46 at 53).

While plaintiff alleges that there is a general history of race-related hostility and discrimination at Colgate, he does not identify a specific discriminatory policy or mechanism. The Amended Complaint describes a number of seemingly disconnected episodes and occurrences with respect to this plaintiff, alleging, *inter alia*, that in 1985 in New York, plaintiff saw in an accounting department instruction guide the term "nigger soap" used with reference to black soap residue; during an audit in 1986 in Kansas City, a co-worker referred to himself as the Grand Wizard of the Ku Klux Klan and made racist epithets; during an audit in 1987 in France, plaintiff saw a sign on defendant's property that referred to black soap residue as "nigger soap"; at a meeting in February 1989 in Texas, plaintiff overheard a co-worker use racially insensitive and derogatory Afrikaner word; in June 1990, while engaging in employment-related activities, plaintiff viewed [*26] what he perceived to be a racist logo, depicting a minstrel-like visage, for a product called Darkie Toothpaste; in January 1990 in New York, a co-worker referred to plaintiff as "one big nigger"; in 1994 in Puerto Rico, plaintiff overheard a co-worker tell a derogatory joke about Puerto Ricans; in 1995, Colgate terminated plaintiff's employment; and in 1995, after he was informed of his termination, plaintiff overheard a conversation in an office bathroom during which an employee used the term "nigger," ostensibly with reference to plaintiff.

Whereas plaintiff is unable to frame these occurrences vis-a-vis a constitutive policy or practice, the Amended Complaint's litany of discrete allegations fails to establish a continuing violation. See, e.g., *Page v. New York City Off-Track Betting Inc.*, 1993 U.S. Dist. LEXIS 14756 at *10 (S.D.N.Y. Oct 21, 1993) ("Since [plaintiff] has alleged only discriminatory treatment ... and not discrimination though a discriminatory policy or mechanism, she may not avoid the 300 day limitations period") (internal citation omitted). Indeed, the temporal discontinuity between the incidents alleged by Mr. Bailey is fatal to a continuing [*27] violation claim. See, e.g., *Quinn v. Greentree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998) (holding that gaps of one or more years between alleged incidents break "the asserted continuum of discrimination" and preclude finding of continuous violation). Moreover, the alleged incidents, in addition to being episodic and involving discrete and unrelated occurrences, involved different co-workers and managers in different locations.

In conclusion, and inasmuch as plaintiff does not present any evidence which might connect seemingly episodic occurrences and actions by different individuals to a controlling policy or practice, he cannot avail himself of the continuing violation doctrine. See *Crosland*, 140 F. Supp. 2d at 308 (continuing violation doctrine inapplicable where "the [alleged] retaliatory acts were taken by different supervisors in different departments"). Plaintiff filed a charge alleging age and race discrimination with the NYSDHR on February 8, 1996. Thus, plaintiff's Title VII and ADEA claims arising more than 300 days before he filed his charge -- i.e., claims arising before April 15, 1995 -- are time-barred and must be dismissed. Defendant's [*28] motion for summary judgment with respect to these claims is **GRANTED.**

## V. NYSHRL *Claims and Election of Remedies*

[HN10] Under the NYSHRL, an individual who files a complaint with the NYSDHR is barred from filing a lawsuit for the same cause of action. See *N.Y. Exec. Law § 297(9)* ("any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages ... unless such person has filed a complaint hereunder [with the NYSDHR] or with any local commission on human rights"). See also *Wiley v. Citibank, N.A.*, 2000 U.S. Dist. LEXIS 799, at *9 (S.D.N.Y. Jan. 28, 2000) (Batts, J.) ("Because plaintiff elected to pursue her Executive Law and Administrative Code claims before the NYSDHR and the subsequent dismissal of her action was not a dismissal for administrative convenience, the court is without jurisdiction to hear such claims").

In the instant case, plaintiff filed a charge alleging race and age discrimination with the NYSDHR on February 8, 1996. Plaintiff does not dispute that he filed a complaint with the NYSDHR or that the NYSDHR issued a Determination and Order finding [*29] No Probable Cause to believe that Colgate had engaged in any discriminatory practices.

Plaintiff claims that since he did not receive a copy of the NYSDHR administrative finding, "there are questions of material fact related to its issuance and receipt." See Opp. Brief at 18. Plaintiff's claim of ignorance concerning the NYSDHR decision is of no legal consequence. See, e.g., *Kirkland v. City of Peekskill*, 651 F. Supp. 1225, 1231 n.2 (S.D.N.Y. 1987) (citation omitted) ("The New York State Court of Appeals has ... held that [HN11] the very filing of a complaint with the NYSDHR, even without any action on the part of the agency, constitutes a binding election of remedies which precludes the plaintiff from commencing any action in court based on the same incident, unless the complaint is dismissed on the grounds of administrative convenience. Hence, the NYSDHR's dismissal ... was final and entitled to preclusive effect.") *aff'd*, 828 F.2d 104 (2d. Cir. 1987) (internal quotation and citation omitted).

In light of the foregoing, plaintiff's age and race claims filed with the NYSDHR are dismissed pursuant to the election of remedies doctrine. Defendant's motion [*30] for summary judgment with respect to these claims is hereby **GRANTED**.

## VI. *Time Bar: Section 1981 Discrimination and Retaliation Claims*

Plaintiff brings claims of race discrimination and retaliation pursuant to *42 U.S.C. § 1981*. [HN12] *Section 1981* provides, in pertinent part, that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." Since *Section 1981* does not have a statute of limitations, courts considering claims under the statute have historically applied the personal injury statute of limitations of the forum state. Defendant argues that in New York, *Section 1981* claims are subject to a three-year statute of limitations. See, e.g., *Wilson v. Fairchild Republic Co., Inc.*, 143 F.3d 733, 738 n. 5 (2d Cir. 1998) (statute of limitations of federal civil rights cases is three years, including *Section 1981* claims). Accordingly, defendant argues that plaintiff's *Section 1981* claims must be dismissed as time-barred.

Plaintiff first alleged his *Section 1981* claims in the Amended Complaint, which was filed on [*31] October 9, 2001. In light of the putatively applicable statute of limitations, plaintiff urges the court to adopt a four-year limitations period pursuant to the 'catch-all' statute of limitations period provided by Congress's enactment on December 1, 1990 of *28 U.S.C. § 1658* ("*Section 1658*"). *Section 1658* provides in relevant part: [HN13] "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of this section may not be commenced later than 4 years after the cause of action accrues." *28 U.S.C. § 1658(a)*. Plaintiff cites the outlier case of *Turner v. National R.R. Passenger Corp.*, 181 F. Supp. 2d 122, 2002 WL 92862 (N.D.N.Y. 2002) in support of the proposition that a four-year statute of limitations ought to apply to the *Section 1981* claims rather than the three-year period applied in this Circuit.

Plaintiff's position is contrary to the decisions of a majority of district courts which have addressed this issue, as well as decisions of the Third and Seventh Circuits. See, e.g., *Zubi v. AT&T Corp.*, 219 F.3d 220 (3d Cir. 2000); *Jones v. R.R. Donnelley & Sons Company*, 305 F.3d 717, 2002 WL 31050947 (7th Cir. 2002); [*32] But see *Harris v. Allstate Insurance Co.*, 300 F.3d 1183 (10th Cir. 2002) (applying four-year statute of limitations).

Since the Court of Appeals in this Circuit has not yet ruled definitively on the issue of the effect of *Section 1658* on the applicable limitations period, this court looks to other circuit courts and courts in this district for guidance. Courts in the Southern District have generally assumed that the three-year statute of limitations still applies. See, e.g., *Powell v. Consolidated Edison Co. of New York, Inc.*, 2001 U.S. Dist. LEXIS 2706, 2001 WL 262583 (S.D.N.Y. March 13, 2001) (Lynch, J.). This court agrees with the careful reasoning of the Third and Seventh Circuits on the issue and thus concludes that *Section 1658* does not apply to plaintiff's claims. This interpretation is, in the words of a sister circuit, "most consonant with the purpose of § 1658 and the balance struck by Congress between the need for uniformity and the need to preserve settled expectations." See *Jones*, 305 F.3d 717, 2002 WL 31050947 at *8. Under this formulation,

> [HN14] when an Act of Congress passed after December 1, 1990, amends a statute existing before that date, as opposed [*33] to creating a new law without reference to previously existing statutory language, all claims accruing after passage of the amendment arise under an Act of Congress enacted before December 1, 1990, without regard to whether an identical claim arising earlier could have been successfully pursued under the prior statute.