*Zubi*, 219 F.3d at 222. Thus, it is "only when Congress establishes a new cause of action without reference to preexisting law that § 1658 applies." *Id. at 225.*

Accordingly, plaintiff's discrimination and retaliation claims brought pursuant to *Section 1981* are time barred. Defendant's motion for summary judgment with respect to these claims is hereby **GRANTED**.

### VII. *Exhaustion of Administrative Remedies:* Title VII Retaliation Claim

Defendant argues that plaintiff's Title VII retaliation claim must be dismissed because he failed to assert a retaliation claim in either his NYSDHR Charge or his EEOC Affidavit.

[HN15] Before commencing a Title VII action, a plaintiff must exhaust his administrative remedies. See *Butts, 990 F.2d at 1401* ("when a plaintiff fails to file a timely charge with the EEOC, the [*34] claim is time-barred ... This exhaustion requirement is an essential element of Title VII's statutory scheme"). Failure to exhaust administrative remedies defeats the purpose of the statutory notice provision, which is "'to encourage settlement of discrimination disputes through conciliation and voluntary compliance.'" *Butts, 990 F.2d at 1401* (quoting *Miller v. Int'l Tel. & Tel., 755 F.2d 20, 26 (2d Cir. 1985))*. Courts may only hear claims that were raised in the underlying administrative charge. See *Kelly v. American Museum of Natural History*, 1999 U.S. Dist LEXIS 15363 at *6 (S.D.N.Y. Sept. 30, 1999). Thus, "courts in this district routinely dismiss claims of discrimination when the exhaustion requirement is not satisfied." *Connelly v. West*, 2001 U.S. Dist. LEXIS 957, 2001 WL 102350 at *5 (S.D.N.Y. Feb 7, 2001) (listing cases). See also *Waterman v. New York Tel. Co.*, 1984 U.S. Dist. LEXIS 19093 at *15-16 (S.D.N.Y. Feb. 28, 1984).

[HN16] Whereas Title VII's filing requirements are not jurisdictional prerequisites, they may be waived in certain situations where equity requires. See *Snell v. Suffolk County, 782 F.2d 1094, 1101 (2d Cir. 1986)* [*35] (citing *Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 397-98, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982); (Adames v. Mitsubishi Bank, Ltd., 751 F. Supp. 1565, 1570 (E.D.N.Y. 1990))*. Under some circumstances, courts may hear claims "reasonably related" to, but not expressly alleged in, the underlying administrative charge. In Butts, the Second Circuit recognized three situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge "that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." *Little v. National Broadcasting Company, 210 F. Supp. 2d 330, 373 (S.D.N.Y. 2002)*. First, a claim in a judicial action may be "reasonably related" to a claim in an EEOC charge "where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Butts, 990 F.2d at 1402* (quoting *Smith v. American President Lines, Ltd., 571 F.2d 102, 107 n.10 (2d Cir. 1978))*. Second, an unasserted claim is "reasonably related" to an EEOC charge if the [*36] "claim is one alleging retaliation by an employer against an employee for filing ... [the underlying] charge." *Butts, 990 F.2d at 1402*. Third, an unasserted claim may be raised for the first time in court where the claim alleges further incidents of discrimination "carried out in precisely the same manner alleged in the ... [underlying] charge." *Butts, 990 F.2d at 1402-03*.

The first category of "reasonably related" claims is "essentially an allowance of loose pleading." *Id.* As the Second Circuit explained:

> [HN17] Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, we have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Id.* (internal citations omitted).

[HN18] The claim not included in the EEOC charge will usually not be seen as reasonably related "where the facts in the original EEOC [*37] charge do not sufficiently apprise the EEOC that another type of discrimination claim lurks in the background." *Alonzo v. Chase Manhattan Bank, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998)*. See *Morris v. Northrop Gunman Corp., 37 F. Supp. 2d 556, 1999 WL 79666 at *18-19 (E.D.N.Y.1999)* ("the relevant inquiry ... is whether the EEOC could reasonably be expected to investigate [plaintiff's claims] based on the allegations contained in his charge"). Accordingly, in order to determine if a claim satisfies this test, a court must consider "whether the allegations in the EEOC charge, as a whole, would reasonably lead the agency to investigate both grounds." *Little, 210 F. Supp. 2d at 373*.

Case 3:00-cv-01124-WIG    Document 147-15    Filed 08/08/2006    Page 2 of 9

Page 17
2003 U.S. Dist. LEXIS 8175, *

It is true that plaintiff failed to make explicit reference to retaliatory conduct on the part of Colgate in his NYSDHR and EEOC charges. Of course, this alone does not defeat the contention that plaintiff's Title VII retaliation claim is reasonably related to the claims brought in his administrative charge. Indeed, [HN19] "it is well settled that the court should not look 'merely to the four corners of the often inarticulately framed charge,' but must consider the possible [*38] scope of any investigation reasonably flowing from the charge." Melendez v. Int'l Svc. Sys., Inc., 1999 U.S. Dist. LEXIS 4317, 1999 WL 187071, at *6 (S.D.N.Y. Apr. 6, 1999) (quoting *Dargento v. Bally's Holiday Fitness Ctrs., 990 F. Supp. 186, 193 (W.D.N.Y. 1997)*. Thus, "it is the substance of the charge and not its label that controls." *Alonzo, 25 F. Supp. 2d at 458*.

Notwithstanding this generous standard of pleading, the court, cognizant that this is a close issue, finds that plaintiff's Title VII retaliation claim is not reasonably related to the allegations in the underlying administrative charge. See, e.g., Melendez v. Int'l Serv. Sys., 1999 U.S. Dist. LEXIS 4317, 1999 WL 187071 (S.D.N.Y. Apr. 1, 1999) (Batts, J.) (dismissing retaliation claim not included in pro se administrative complaint, noting that "the retaliation claim is based on a 'wholly different' type of discrimination that would not reasonably fall within the scope of the EEOC investigation"). Plaintiff's EEOC charge, in addition to making no reference to retaliatory conduct on the part of defendant, is bereft of any "factual allegation from which one could infer that plaintiff is asserting retaliation. [*39] " Melendez, 1999 U.S. Dist. LEXIS 4317, 1999 WL 187071 [WL] at *7. Plaintiff made no allegation that he had engaged in any kind of protected activity which was met by retaliatory activity on the part of his employer. See *Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1997)* ([HN20] to state a claim for retaliation, plaintiff must show participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action). n5 Rather, alleging that Colgate has historically cultivated and maintained a culture which is hostile to black employees, plaintiff ultimately notes in his EEOC charge that he "believes that [he] was terminated from [his] position because of [his] race ... and [his] age ...." See Bailey EEOC Aff. at 2. Plaintiff's own submissions appear to confirm that his administrative filings were not suggestive of claims of retaliation. See Pl.'s Opp. Br. at 1, 2 ("Ismail Bailey charged defendant with an unlawful discriminatory act related to employment on the basis of Age and Race ....").

n5 The court notes that plaintiff would probably fail to make out a *prima facie* case for retaliation insofar as he appears to be unable to articulate a non-conclusory nexus between a protected activity and an adverse employment action. Whereas the court does not ultimately need to reach the merits of this issue, though, it does not.

[*40]

Plaintiff's claim is not salvaged by either of the two remaining exceptions to the Title VII exhaustion requirement, which are inapposite here. Accordingly, defendant's motion for summary judgment with respect to plaintiff's Title VII retaliation claim in hereby **GRANTED.**

### VIII. *Time Bar:* **NYSHRL** *Retaliation Claim*

Defendant argues that plaintiff's complaint fails to allege a single incident of retaliation within three years of filing his complaint. Thus, defendant argues, plaintiff's claim is time-barred and defendant ought to be granted judgment as a matter of law. Plaintiff does not respond to this assertion. n6

n6 The court notes that there are a number of glaring holes in plaintiff's submissions which reflected a substandard level of representation by plaintiff's counsel. In light of the significance of the allegations, the court carefully endeavored to follow plaintiff's arguments and the inferences they raised, the quality of their expression notwithstanding.

Plaintiff elected to pursue [*41] his NYSHRL race and age discrimination claims before the NYSDHR. He did not, as the court observed above, pursue a retaliation claim before the NYSDHR. Plaintiff may properly assert a NYSHRL retaliation claim in this action only to the extent that it is not barred by the applicable three-year statute of limitations. See *Patrowich v. Chemical Bank, 98 A.D.2d 318, 324, 470 N.Y.S. 2d 599, 604 (1st Dep't 1984)* [HN21] ("The [NYSHRL] has been governed by the three-year statute of limitations and plaintiff is barred, therefore, from asserting any claims ... prior to [three years ago]").

The court finds that plaintiff's NYSHRL retaliation claim is time-barred. Plaintiff first alleged his NYSHRL retaliation claim in his Amended Complaint on October

Case 3:00-cv-01124-WIG    Document 147-15    Filed 08/08/2006    Page 3 of 9

Page 18
2003 U.S. Dist. LEXIS 8175, *

9, 2001. See Am. Compl. PP 105-06. However, the Amended Complaint fails to allge an incident of retaliation within three years of the filing. n7 Accordingly, defendant's motion for summary judgment with respect to plaintiff's NYSHRL retaliation claim is hereby **GRANTED.**

> n7 Defendant notes that even if the limitations period is calculated from March 9, 1999, the date that plaintiff filed his original *pro se* complaint, the claim would still be time-barred, as the *pro se* complaint is likewise devoid of allegations regarding incidents within the limitations period.

[*42]

### IX. *Timely* Title VII *and* ADEA *Discrimination Claims*

#### A. Age Discrimination Claims

[HN22] Under the Age Discrimination in Employment Act ("ADEA"), it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *29 U.S.C. § 623(a)(1)*. The framework for establishing a *prima facie* case of age discrimination under the ADEA is the same as that for establishing a prima facie case of discrimination under Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e et. seq.* See *Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001)*. Thus, in determining whether a complainant has made out a *prima facie case* under Title VII, district courts must apply the burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)* (hereinafter "McDonnell Douglas"). In addition, analysis of age discrimination claims under the NYSHRL is identical to analysis under the ADEA. [*43] See, e.g., *Wanamaker v. Columbian Rope Co., 108 F.3d 462, 467 (2d Cir. 1997)*. Thus, if Bailey's claims under the NYHRL survived, they would "rise or fall with the federal ADEA claim." *Ferrell v. Leake & Watts Services, Inc., 2002 U.S. Dist. LEXIS 24458, 2002 WL 31856816 (S.D.N.Y. Dec. 20, 2002)*. See also *Wanamaker, 108 F.3d at 467* ("a district court may dismiss claims brought under the *New York State Human Rights Law*, on the ground that the plaintiff failed to establish a claim under the ADEA").

[HN23] Under the familiar analysis, if the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant, who must then proffer a legitimate, non-discriminatory reason as to why "the plaintiff was rejected, or someone else was preferred." *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105* (internal quotations omitted). The defendant does not need to show that the articulated reason was the true motivation behind the decision; rather, "it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff." *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255, 67 L. Ed. 2d 207, 101 S. Ct. 1089.* [*44] "Any legitimate, non-discriminatory reason will rebut the presumption triggered by the *prima facie* case." *Fisher v. Vassar College, 114 F.3d 1332, 1334-36*. The defendant can dispose of this burden by advancing admissible evidence in support of a nondiscriminatory basis for its actions. See *Burdine, 450 U.S. at 255*; *Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995)*. "If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Burdine, 450 U.S. at 255*.

[HN24] Once the defendant articulates a neutral reason for his actions, the plaintiff must prove by a preponderance of the evidence that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves, 530 U.S. at 143, 120 S. Ct. at 2106* (internal quotations omitted). At this stage of the inquiry, the plaintiff must also satisfy the ultimate burden in the case: the burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. See *Fisher, 114 F.3d at 1336.* [*45] Of course, at the summary judgment stage, the plaintiff does not need to prove intentional discrimination; rather, "plaintiff may preclude summary judgment by producing evidence from which the trier of fact reasonably could draw an inference of discrimination." *Sorlucco v. New York City Police Dep't, 888 F.2d 4, 7 (2d Cir. 1989)*.

[HN25] "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves, 530 U.S. at 148*. Importantly, however, such a showing is by no means always adequate to survive summary judgment because "proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that plaintiff's proffered reason ... is correct." *Id.* After Reeves, the court must examine the entire record in each case to "determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."

*Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000). [*46] Showing that the employer's proffered explanation for termination is not worthy of belief is one form of circumstantial evidence that is probative of intentional discrimination, and it may or may not be sufficiently persuasive to preclude summary judgment depending upon the specific facts of each individual case.

1. *Prima facie* case

[HN26] In order to establish a *prima facie* case of age discrimination under McDonnell Douglas, a plaintiff must demonstrate (i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, "such as the fact that plaintiff was replaced by someone 'substantially younger.'" *Roge, 257 F.3d at 168* (citing *O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313, 134 L. Ed. 2d 433, 116 S. Ct. 1307 (1996))*. The burden on the plaintiff of presenting a *prima facie* case of discrimination under McDonnell Douglas is "minimal." *James v. New York Racing Ass'n, 233 F.3d 149 at 153* (internal quotations omitted).

However, Mr. Bailey has [*47] difficulty meeting this modest burden. Plaintiff alleges that he was discriminated on the basis of age when he was not assigned to work on the new SAP project in New Jersey and was terminated on May 23, 1995. According to plaintiff, "the fact that Defendant continued to employ Carol Smith and Greg Cucco, both of whom had worked with [plaintiff] on the Ross Project in Puerto Rico, and both being white and younger than Plaintiff, suggests that race and age were motivating factors in Plaintiff losing his job." See Opp. Mem. at 10. First, it is unclear whether plaintiff was, in fact, qualified for the job in question. Mr. Bailey claims that he was; Colgate claims that he was not. Both parties refer to plaintiff's job performance evaluations pursuant to their positions. Plaintiff has failed to explain how the skills, knowledge, and experience that he gained throughout his tenure at Colgate prepared him for the duties of personnel assigned to the SAP project. He has failed to suggest how, for example, his seemingly successful experience with the Ross project could lead the court to infer that he was qualified for the SAP, other Grade 14 positions, or a Grade 15 position. The court [*48] pauses, however, to consider whether a job performance evaluation of Mr. Bailey's work on the Ross might give rise to such an inference. This begs the question, then, of why no such performance evaluation was ever taken. This is an interesting question.

Without more, however, the employment decisions to which plaintiff refers do not necessarily give rise to the inference embraced by the plaintiff. Mr. Bailey fails to provide any evidence whatsoever which might give rise to this inference. Indeed, Mr. Bailey disavowed having any knowledge of Mr. Cucco's and Ms. Smith's ages, job qualifications, or performance evaluations. See Bailey Tr. at 65, 125, 478. In fact, the record shows that Mr. Cucco is actually older than Bailey. Plaintiff fails to show that he and Mr. Cucco and Ms. Smith were similarly situated. Plaintiff can point to no conversations with his employers or any significant decision makers at Colgate, or any other evidence, that suggests that consideration of his age entered into the calculus when the relevant parties (1) offered him a Grade 12 position and, when he subsequently refused that offer, (2) terminated his employment at Colgate.

[HN27] Plaintiff's conclusory identification [*49] of age discrimination as a but-for cause of his termination and the paltry evidence which he presents in furtherance of that claim are insufficient to defeat a motion for summary judgment. See *Tappe v. Alliance Capital Mgmt., L.P., 177 F. Supp. 2d 176, 185 (S.D.N.Y. 2001)* ("To hold that [plaintiff] has stated a claim by simply alleging that he was fired (and other employees were not) would render the first step of the test established by McDonnell Douglas nothing more than a formality and, in effect, shift the burden to the employer to give a non-discriminatory reason every time an employee's job was terminated").

2. *Defendant's Presentation of a Non-Discriminatory Motive*

Assuming, quite charitably, that Bailey were deemed, however tenuously, to have met the minimal burden and to have pleaded a *prima facie* case, the burden would shift to the defendant to present a non-discriminatory reason for the adverse employment action. *Roge, 257 F.3d at 168*. Defendant has done so, claiming that plaintiff was simply incapable of satisfactorily discharging his duties at the Grade 14 level. The burden thus shifts again.

3. *Plaintiff's* [*50] *Presentation of a Discriminatory Motive*

Whereas Colgate has articulated a permissible, age-independent motivation for what the court will assume to have been an adverse employment actions of demoting and ultimately terminating Mr. Bailey, the presumption of discrimination vanishes, and the burden shifts back to the plaintiff to prove that the "legitimate reasons offered by the defendant were not its true reasons, but were a

pretext for discrimination." *Roge, 257 F.3d at 168.* [HN28] It is well-settled under McDonnell Douglas that "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 78 (2d Cir. 2001)* (citations omitted). Similarly, under the ADEA a plaintiff does not need to "prove that age was the only or even the principal factor in the adverse employment action, but only that age was at least one of the motivating factors in the decision." *Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000)*; [*51] see also *Ferrell v. Leake & Watts Services, Inc., 2002 U.S. Dist. LEXIS 24458, 2002 WL 31856816 at *6 (S.D.N.Y. Dec. 20, 2002)* (quoting Carlton).

This, however, the plaintiff cannot, or simply does not do.

Plaintiff makes no meaningful attempt to establish through the evidence that age was at least one of the motivating factors in Colgate's decisions with respect to his employment. He is unable to refute Colgate's legitimate, non-discriminatory reason for its employment decisions -i.e., that Colgate determined that plaintiff was not qualified to work at a Grade 14 level and that he had rejected an offer to work at a Grade 12 level as a Staff Accountant. Plaintiff offers no evidence to support a conclusion that Colagate's proffered motivation was pretextual. Plaintiff does not even take the time to present evidence concerning the ages or other relevant characteristics of Mr. Cucco or Ms. Smith.

Conscious of the fact that Mr. Bailey is relying in good faith upon the efforts and abilities of counsel, the court has very closely and carefully examined all of the evidence presented by Bailey, including lengthy deposition transcripts, evaluations of his work over the course of his employment at [*52] Colgate, and the circumstances of his dismissal. After careful consideration, the court concludes that no reasonable jury could find that Colgate was motivated, in whole or in part, by Bailey's age. Accordingly, defendant's motion for summary judgement on this issue is **GRANTED.**

### B. Race Discrimination Claims

Mr. Bailey alleges that he was discriminated against on the basis of race when the relevant parties at Colgate did not allow him to apply for a Grade 15 position at the company; when they offered him a Grade 12 position, which is of a lower grade than the Grade 13 position which he then held; and when they ultimately terminated his employment. Mr. Bailey brings these race discrimination claims under Title VII.

### 1. *Prima facie* Case

[HN29] Courts apply the same McDonnell Douglas burden shifting analysis to claims of racial discrimination brought under Title VII. See, e.g., *Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714-15 (2d Cir. 1996).* Thus, in order to make a *prima facie* case of race discrimination, Mr. Bailey must show that "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was [*53] qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination ...." *Roge, 257 F.3d at 168.*

While it appears that Colgate concedes that Mr. Bailey is a member of a protected class, the defendant again challenges Mr. Bailey's ability to satisfy the other elements of a *prima facie* case. As the discussion above indicates, plaintiff has not gone very far to establish that he was qualified for a Grade 15, Grade 14, or even a Grade 13 finance-related position at Colgate. For example, the job evaluation excerpts provided above reflect plaintiff's weakness, detected by different supervisors, with respect to work duties related to finance and financial analysis. In any event, plaintiff does not explain why any success that he enjoyed in Grade 13 positions might have prepared or qualified him for a Grade 15 position. Just about all that plaintiff does is point to his evaluations and assert that he is qualified.

More importantly, plaintiff fails to show that any adverse employment actions occurred under circumstances giving rise to an inference [*54] of discrimination. Plaintiff fails, for example, to establish that those who made decisions with respect to his employment at Colgate knew of his involvement in the African American Forum. He fails to establish that those who made decisions with respect to his employment at Colgate evinced any hostility toward black employees or toward him because of his race. He concludes, in light of his disagreement with Colgate's decisions with respect to his employment, that those decisions were predicated upon, motivated by, or related to his racial identity. But he presents no evidence in furtherance of this conclusion.

### 2. *Defendant's Presentation of a Non-Discriminatory Motive*

Again, even assuming, quite charitably, that Bailey were deemed, however tenuously, to have met the minimal burden and to have pleaded a *prima facie* case, the burden would shift to the defendant to present a non-discriminatory reason for the adverse employment action.

Case 3:00-cv-01124-WIG    Document 147-15    Filed 08/08/2006    Page 6 of 9

2003 U.S. Dist. LEXIS 8175, *                                    Page 21

*Roge, 257 F.3d at 168*. Defendant has done so, credibly claiming that plaintiff was simply incapable of satisfactorily discharging his duties at the Grade 14 level. The burden thus shifts again.

### 3. Plaintiff's [*55] *Presentation of a Discriminatory Motive*

Here again Mr. Bailey fails to meet his burden. Mr. Bailey fails to present evidence that the decision to effectively demote him was based on his race. He has failed to present evidence that any of his negative performance evaluations, some of which were completed by African American superiors at Colgate, were tainted by some vulgar consideration of his race. He has failed to sufficiently establish a connection between his level of professional skill and knowledge and the duties which inhere in a Grade 15 position at Colgate, or any position for that matter. He has failed to demonstrate or cite any racist utterances, attitudes, or tendencies in those individuals who were responsible for making decisions related to his employment at Colgate, or in those people who may have influenced their decisions. Mr. Bailey's superiors at Colgate felt that he wasn't performing with sufficient success in a Grade 14 finance-related capacity. Mr. Bailey presents no evidence giving rise to an inference that its decision to demote him was motivated by race, racism, prejudice, or discrimination of any kind. When Mr. Bailey refused to accept the firm's offer [*56] of a Grade 12 position, without an immediate drop in salary, Colgate terminated his employment. Mr. Bailey comes forward with no evidence that this decision was motivated by negative feelings vis-a-vis his racial identity. His claim of race-based discrimination must be dismissed. Colgate's motion for summary judgment on this issue is **GRANTED.**

### X. Race-Based Hostile Work Environment.

Defendant insists that plaintiff has timely raised only one hostile work environment claim: that in 1995, after he was notified of his termination, Mr. Bailey overheard a co-worker use the word "nigger" during a conversation in an office bathroom.

In *Harris v. Forklift Systems, 510 U.S. 17, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)*, a sexual harassment case, the Supreme Court held [HN30] that a Title VII hostile environment claim will succeed only if the conduct at issue is so "severe or pervasive" as to create an "'objectively' hostile or abusive work environment," and where the victim "subjectively perceive[s] the environment to be abusive." *Id. at 21-22*. There is no dispute that Bailey subjectively perceived the environment at Colgate to be hostile to him as a [*57] black person. If there is a timely claim to consider, the question is whether the environment at Colgate was "objectively" hostile. Bailey's allegations "should thus be evaluated to determine whether a reasonable person who is the target of discrimination would find the working conditions so severe as to alter the terms and conditions of employment for the worse." *Richardson v. New York State Dep't of Correctional Service, 180 F.3d 426, 436 (2d Cir. 1999)* (citing *Harris at 21*). [HN31] In order to avoid summary judgement on a hostile work environment claim, a plaintiff must establish that (1) he was subjected to harassment that was so severe and pervasive as to alter the conditions of his employment; and (2) there is a specific basis for imputing the conduct to Colgate. See *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62-63 (2d Cir. 1992)*. A plaintiff must produce evidence that "the workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult,' that [was] 'sufficiently severe or pervasive to alter the conditions of the victim's employment." *Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)* [*58] (quoting *Harris, 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)* (internal citations omitted)); *Morgan at 2074* (same). "The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Carrero v. New York City Hous. Auth., 890 F.2d 569, 577 (2d Cir. 1989)* (internal citation omitted).

Subsequent to this matter being fully briefed, the Supreme Court issued an opinion in *National Railroad Passenger Corp. v. Morgan, 122 S. Ct. 2061 (2002)*, addressing hostile work environment claims under Title VII. Whereas plaintiff asserted at the hearing on this matter that this case was dispositive of his hostile work environment claims against Colgate, the court allowed the parties the opportunity to brief this discrete issue.

In Morgan, in an opinion by Justice Thomas, the Court acknowledged that [HN32] hostile environment claims are different in kind from claims alleging discrete acts inasmuch as they involve repeated conduct. *Morgan, 122 S. Ct. at 2073*. A hostile work environment claim is comprised of a series of separate acts that collectively constitute [*59] one 'unlawful employment practice.'" *Morgan at 2074* (citing *42 U.S.C. § 2000e-5(e)(1)*). The timely filing provision, according to the Court,

> only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside

the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.*

[HN33] Courts examining hostile work environment claims look to "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morgan* at 2074 (quoting *Harris, 510 U.S. at 23*). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms [*60] and conditions of employment.'" *Clark County School District v. Breeden, 532 U.S. 268, 270, 149 L. Ed. 2d 509, 121 S. Ct. 1508 (2001)*. "A plaintiff must demonstrate that a series of incidents allegedly constituting a hostile work environment were 'sufficiently continuous and concerted' to alter the conditions of his or her working environment." *Costanzo v. United States Postal Service, 2003 U.S. Dist. LEXIS 4911, 2003 WL 1701998 *6 (S.D.N.Y. March 31, 2003)* (citing *Cruz, 202 F.3d at 570*).

Plaintiff alleges a number of incidents spanning over more than ten years which, he claims, constitutes an actionable hostile work environment claim under Title VII. Defendant argues that plaintiff has alleged only one incident within the applicable 300-day limitations period. Mr. Bailey alleges that in 1995, after he was informed of his termination he overheard a conversation in an office bathroom during which an employee said "these niggers just don't get it. We decide who comes and goes at Colgate Palmolive." Under the applicable standard, this timely allegation alone, without more, would be insufficient to establish a hostile work environment pursuant to Title VII.

Notwithstanding [*61] this, plaintiff argues that he has alleged at least three acts within the 300-day period that constitute part of a single actionable employment practice. Plaintiff argues that the other incidents, which occurred outside of the applicable 300-day period, are "sufficiently related" to enable the court to consider them as part of one unlawful employment practice. In his supplemental brief arguing that Morgan supports his hostile work environment claim, plaintiff asserts that the record discloses three acts which fall within the 300-day period: (1) on January 14, 1995, while working in Puerto Rico, Carol Smith told a racially offensive joke about Puerto Ricans in Bailey's presence; (2) in 1995, while working in Puerto Rico, Mr. Bailey consulted Colgate's accounting Department Instructions and the Cost Accounting Manual, in which he found references to "Nigger Soap." Mr. Bailey claims that he had first seen this use of the word "nigger" while using the manual during the course of his employment in 1985. He claims that he brought these offensive references to the attention of Harold Lange and Peter Panbakker, presumably management personnel at Colgate; he claims that no corrective or [*62] responsive action was taken; (3) on May 23, 1995, after he was notified of his termination, Mr. Bailey overheard the conversation in the bathroom during which a co-worker, implicitly with reference to Mr. Bailey and his termination, used the phrase "these niggers."

The court notes that there is a discrepancy between the timeline presented in plaintiff's supplemental brief and the Amended Complaint. In the Amended Complaint, plaintiff alleges that Carol Smith made an offensive joke while working in Puerto Rico in 1994, not, as plaintiff claims in his supplemental brief, on January 14, 1995. Plaintiff's feeble attempt to somehow prove that the incident occurred on January 14, 1995 consists of his submission, with his supplemental brief, of an expense report for the week ending "1-14-95" which lists, under "place and nature of entertainment," the names Carol Smith and Ismael Bailey. Plaintiff has never asked the court for leave to amend the complaint to reflect that the incident occurred on January 14, 1995 rather than in 1994. This incident was alleged in the Amended Complaint to have occurred in 1994, outside of the 300-day filing period.

The court further notes that in the Amended [*63] Complaint, Mr. Bailey did claim that he "had to use [the offensive accounting manual] during the course of his employment until his termination in 1995." Am. Complt. P 15. Under the forgiving standard of pleading embraced by the federal courts, this allegation, which makes reference to his termination in 1995, which occurred on May 23, 1995, could conceivably be sufficient to timely allege an incident which contributes to a racially hostile employment practice under Title VII. The court is baffled that plaintiff did not flesh out the issue of the timeliness of this allegation in its reply to Colgate's motion for summary judgment. Nowhere in its reply papers does plaintiff make reference, for example, to using the offensive manual while working on the Ross project in Puerto Rico.

Even assuming that this allegation is timely, the

Case 3:00-cv-01124-WIG    Document 147-15    Filed 08/08/2006    Page 8 of 9

Page 23
2003 U.S. Dist. LEXIS 8175, *

court is not convinced that it, or the alleged remark in the bathroom, or the two together, are sufficient to establish a hostile work environment. As the court has discussed, however, plaintiff also alleges an array of miscellaneous acts and incidents involving a variety of people during various stages of Mr. Bailey's career at Colgate which, he claims, [*64] sufficiently form an actionable hostile environment. To repeat, these include allegations that (1) in New York in 1985, plaintiff viewed, in an accounting department manual (which plaintiff was required to use in the course of his employment) the term "Nigger Soap" used with reference to soap residue. Mr. Bailey asserts that the term "Nigger Soap" describes a soap or residue of inferior quality. This use of the word "nigger" to denote a quality of inferiority, Mr. Bailey claims, was offensive and contributed to a hostile work environment; (2) during an audit in Kansas City in 1986, a co-worker named Robert "Bob" Proctor introduced himself as the Grand Wizard of the Ku Klux Klan and repeatedly used the word "nigger" in the presence of Mr. Bailey. During oral argument on the pending motion for summary judgment, defendant asserted that it cannot find any record of a person named Bob Proctor being employed at Colgate at that time; (3) during an audit in France in 1987, plaintiff viewed a sign that referred to black soap residue as "Nigger Soap"; (4) at a meeting in Texas in February 1989, he overheard a co-worker use the offensive Afrikaner word *Kaffa* with reference to blacks; (5) [*65] in June 1990, during a budget review, plaintiff prepared "budget templates and graphics which depicted a logo of a smiley, black face, black top-hatted, bright-eyed minstrel for Defendant's 'Darkie Toothpaste.'" See Am. Compl. P 28. (6) in New York in 1990, a co-worker referred to plaintiff as "one big nigger." See Bailey Tr. at 382-84.

These claims, as well as the timely claims, all involve different co-workers. All occurred in different geographical locations, including France and at least two states within the United States. These alleged incidents appear to have been episodic and unrelated. They were not "sufficiently continuous and concerted in order to be deemed pervasive." *Carrero, 890 F.2d at 577.* In addition, plaintiff offers no evidence probative of, e.g., the existence of a sign which says "Nigger Soap" at a Colgate facility in France. Moreover, the record indicates that Colgate was not unresponsive to plaintiff's complaints concerning the offensive Darkie Toothpaste brand name and logo. In a letter to Bailey dated March 30, 1990, Reuban Mark stated that the Darkie toothpaste name and package design were "totally unacceptable." Bailey Aff. at 32. [*66] Mr. Mark explained that the product's new name, "Darlie," would be phased in on a country-by-country basis and that the offensive package design would be changed. Id.

The court is mindful that [HN34] courts should consider "all the circumstances" relevant to a hostile work environment claim and that such claims can be based on the cumulative effects of individual acts which might not be independently actionable. See *Morgan at 2073.* However, the record simply does not establish any link between the acts allegedly occurring within the limitations period and any of the alleged incidents predating that period "such as would warrant a finding of any actionable hostile work environment straddling the cut-off date." Costanzo, 2003 U.S. Dist. LEXIS 4911, 2003 WL 701998 [WL] at *10. See also *Stembridge v. City of New York, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000)* (finding use of epithets such as "uppity nigger" and "boy" in isolated incidents over the course of three years not sufficient to create a hostile work environment. "Overall, seven instances over three years does not create a work environment permeated with racial hostility").

Finally, even if considered to have be timely, the court does not believe that [*67] plaintiff's allegations with respect to the accounting manual can constitute a hostile work environment. Plaintiff provides a copy of a page entitled "Accounting Dept. Instructions," dated "4/15/69," which includes the following: "6.0243 Degrading Variances. Degrading variances usually occur in kettle soaps where Nigger Soaps are transferred from the originating kettle to a kettle soap of inferior quality." See Bailey Aff. at 31. Plaintiff claims that he had to refer to this manual and be exposed to the word "nigger" in a document disseminated by Colgate during the course of his employment, through his termination in 1995. Plaintiff does not, however, provide any evidence which might suggest that the manual was in regular usage as a part of his job at Colgate. He fails to explain how often he had to use it. He does not explain how often he encountered the offensive content when he found it expedient to consult the manual or how it altered the course of his employment. "[HN35] Mere utterances of an ... epithet which engenders offensive feelings in an employee ... does not sufficiently affect the conditions of employment to implicate Title VII." *Harris, 510 U.S. at 20.* [*68]

As this court has observed, [HN36] use of the word "nigger" in the workplace "legitimately [evinces] racial hostility." *Stembridge, 88 F. Supp. 2d at 286.* The question, then -- if the claim were deemed to be timely -- would be whether the existence of this manual, and plaintiff's alleged references to it, constitute an environment of hostility that was sufficiently severe or pervasive to alter the conditions of plaintiff's employment. See *Richardson, 180 F.3d at 440* ("a work

environment may be actionable if the conduct there is *either* so severe *or* so pervasive as to alter the working conditions of a reasonable employee." (citing *Harris, at 23*). Although isolated, minor episodes of harassment do not merit relief under Title VII," *Torres v. Pisano, 116 F.3d 625 at 631*, "even a single episode of harassment, if severe enough, can establish a hostile work environment," id. n. 4. This is so even if the plaintiff was not physically threatened or assaulted. See *Richardson at 440*. As the Seventh Circuit noted in *Rodgers v. Western-Southern Life Ins. Company, 12 F.3d 668, 675 (1993)*, "perhaps no single act can more quickly 'alter the [*69] conditions of employment' than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." Is the mere existence of such a manual, which was apparently made in 1969, tantamount to such circumstances? The court thinks not. Plaintiff fails to explicate the extent of the severity of the putatively hostile work environment caused by the reference to "Nigger Soap" in this manual.

Based on the record presented, a factfinder could not conclude that the existence and alleged use of this manual was so objectionable as to alter negatively the terms and conditions of a reasonable person's employment. Defendant's motion for summary judgment is **GRANTED**.

**SO ORDERED.**

Date: May 13, 2003

CONSTANCE BAKER MOTLEY

United States District Court