## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DENISE EVARTS, | : | CIVIL ACTION NO. |
| | : | 3:00CV1124 (WIG) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| THE SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY, | : | |
| | : | |
| *Defendant.* | : | MAY 10, 2007 |

### JOINT TRIAL MEMORANDUM

Pursuant to the Joint Trial Memorandum Order of William I. Garfinkel, United States Magistrate Judge, the Form 26(f) Report of Parties' Planning Meeting, and the Local Rules of Civil Procedure, the parties Denise Evarts and The Southern New England Telephone Company ("SNET") submit their Joint Trial Memorandum.

1.    **Trial Counsel**

**Counsel for Plaintiff:**
Karen Torre, Esquire
Federal Bar No. ct 01707
Law Offices of Karen Lee Torre
51 Elm Street, Suite 307
New Haven, Connecticut  06510
Telephone: (203) 865-5541
Facsimile: (203) 865-4844
E-mail:  ktorre@choiceonemail.com

**Counsel for Defendant:**
Lori B. Alexander, Esquire
Federal Bar No. ct08970
Deborah D. Cannavino, Esquire
Federal Bar No. ct08144
Littler Mendelson, P.C.
110 Washington Avenue
North Haven, CT 06473
Tel. (203) 234-6344
Fax: (203) 234-6345
E-mail: lalexander@littler.com
            dcannavino@littler.com

## 2.    Jurisdiction

Subject matter jurisdiction is invoked pursuant to Title VII of the 1964 Civil Rights Act, 28 U.S.C. §1343(4) and 42 U.S.C. §2000e-(5).

## 3.    Jury

The plaintiff has demanded a jury trial.

## 4.    Nature of Case

The plaintiff's claim is a hostile work environment based on sex pursuant to Title VII of the 1964 Civil Rights Act, 28 U.S.C. §1343(4) and 42 U.S.C. §2000e-(5).    As part of the Title VII claim, plaintiff also claims that she was constructively discharged from employment.

Seeking as relief: (a) back pay and benefits; (b) compensatory damages; (c) punitive damages; (d) costs of the action, including reasonable attorney's fees, and interest; and (e) such other, further relief as the Court may find just and proper.

<u>Defendant brings four affirmative defenses:</u>

1.  The plaintiff failed to take advantage of SNET's complaint procedures and/or failed to otherwise avail herself of corrective or preventative measures reasonably available to her. <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998).

2.  The plaintiff failed to exhaust her administrative remedies as to some or all of her claims. 42 U.S.C. § 2000e-5(c), (f); Conn. Gen. Stat. § 46a-100.

3.  Some or all of the plaintiff's claims are barred by the applicable statute of limitations. 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 255(a); Conn. Gen. Stat. § 46a-82.

4.  The plaintiff failed to use reasonable efforts to mitigate her damages.

**5.      Stipulations of Fact and Law**

The parties stipulate to the following facts:

1.  During the relevant time, SNET was a regional provider of telecommunications services to businesses and private residences in Connecticut.

2.  Plaintiff was employed as part of SNET's New Haven Payphone Services Installation and Repair group, also referred to a "Payphone Services" or the "Coin Group," which installed and repaired pay telephones. She worked out of the SNET garage in New Haven.

3.  During the relevant time, plaintiff lived in Chester, Connecticut.

4.  Plaintiff was initially hired in 1987 as a repair service clerk and was promoted to service technician in 1989. As a service technician, plaintiff installed, repaired, and maintained coin-operated telephones and associated network facilities.

5.  Plaintiff received regular pay increases and remained in that position until she resigned in May 1997.

6.  Plaintiff, like other technicians, was at all times a member of a Union called the Connecticut Union of Telephone Workers.

7.  Matt Cordner transferred into plaintiff's work group in July, 1996 and became her supervisor.

8. On May 16, 1997, plaintiff submitted a letter of resignation to SNET. Her last day of employment was two weeks later, on May 30, 1997.

## 6.    Plaintiff's Contentions

Plaintiff Evarts worked at defendant SNET from January, 1987, until May 30, 1997. From 1989 until her discharge, Evarts worked as a Services Technician in the Payphone Services Department. The position of Services Technician is male-dominated. Plaintiff Evarts discharged her duties well, earned the respect of her co-workers and received favorable job evaluations. In July, 1996, Matthew Cordner became Supervisor of Consumer Services. Along with Edward Dillman, the manager of Payphone Services, Installation and Repair, Cordner assumed responsibility as Evarts' supervisor. Cordner had spoken openly to one of Evarts' co-workers, David Ianiello, about his belief that Evarts held a job that should be the exclusive purview of men. As a supervisor, he immediately set about to harass Evarts by subjecting her to a series of unbearable and humiliating changes in the conditions of her employment, including revoking approval for Evarts' requested transfer to a location nearer to her home, a request typically granted for men as a matter of course; assigning new vehicles to men, although Evarts had the greater need for such an upgrade; subjecting her to so-called "ride along" exercises, in which the supervisor goes with the technician to observe his or her handling of job calls, a level of supervision never before imposed on Evarts and never imposed on Evarts' male co-workers by Cordner; papering her file with disciplinary notices for alleged violations of the rules that never occurred or were of such a minor nature that male workers never were written up by Cordner even though they had engaged in the very same allegedly improper conduct; to note a few of Cordner's antagonistic acts toward Evarts arising out of his animus toward women workers like Evarts.

As a result of Cordner's sustained and deliberate attempt to make life miserable for Evarts, the work environment at SNET became hostile, if not downright toxic for her. She was, in effect, constructively discharged and she left the employ of SNET on or about May 30, 1997.

Because of the discriminatory and hostile acts of the defendant through its agents, Evarts suffered financial damages, severe emotional distress and other non-economic injury and physical upset.

**Objection: Defendant SNET objects to this statement being read to the jury, as it is an inaccurate characterization of the facts and should not be read to the jury by the presiding judge.**

## 7.    Defendant's Contentions

1.    Denise Evarts was not subjected to a hostile work environment while she worked at SNET, and she was not constructively discharged. Matt Cordner became a new supervisor in July, 1996. At that point, plaintiff was depressed and angry over the loss of her sister. After she

returned from her medical leave of absence, she did not want to take direction from Mr. Cordner and would not follow the rules or do what Mr. Cordner expected her and the other technicians to do. In addition, plaintiff was tired of her job as technician and had already asked to be laid off or to transfer to other jobs at the company but was unable to pass the tests. She resigned voluntarily from her job at SNET. Mr. Cordner, who encouraged her not to resign when her sister became ill, tried to support her during a difficult period but also was responsible for enforcing the rules of the company.

2.     The actions claimed by the plaintiff as contributing to a hostile work environment either did not occur as alleged or were not related to her gender, were carried out for legitimate business reasons, and were appropriate actions in response to plaintiff's work performance.

3.  Plaintiff failed to take advantage of SNET's internal complaint procedure prior to resigning from the company and therefore her claims of discrimination are barred.

**8.     Legal Issues**

1.     Did SNET subject the plaintiff to a hostile work environment because of her gender as defined by Title VII of the Civil Rights Act of 1964?

2.     Has the defendant satisfied the affirmative defense to liability for any such hostile work environment under <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998)? (This issue is submitted by the defendant; plaintiff does not agree that it is a properly stated issue.)

3.  Was plaintiff constructively discharged from employment with SNET?

4.     Are some or all of the plaintiff's claims barred by the applicable statute of limitations? (This issue is submitted by the defendant; plaintiff does not believe this is a proper issue for trial.)

**9.     Voir Dire Questions**

*Proposed by Both Parties:*

1.     The following witnesses may testify in this case: [to be designated at the pretrial conference]. Do you know any of these people?

2.     Do you feel, for any reason, that you could not fairly decide this case?

3.     Have you or any member of your family ever served as a juror in any case? If so, where, when and what type of case (civil or criminal)?

4.     Are you or any members of your family related to any of the parties to this action or the lawyers representing them?

5.     Do you know any of the lawyers in this action:  Karen Torre, Lori Alexander, Deborah Cannavino, or any lawyer affiliated with the firm called Littler Mendelson or the Law Offices of Karen Lee Torre?

6.     The plaintiff in this case is Denise Evarts of Chester, Connecticut.  She is also currently an attorney practicing in Chester.  To the best of your knowledge, are you or any member of your family acquainted with Ms. Evarts or any relative of Ms. Evarts in any way?

***Proposed by Plaintiff:***

The plaintiff, Denise Evarts, by and through her undersigned counsel, respectfully requests this Court to propound the following questions to prospective jurors in this action after advising them that the scope of the questions shall include immediate and extended family members, whether related by blood or marriage, as well as close friends.

1.     Has anyone here ever been employed by SBC, also known as SBC, Inc., SBC Corporation or  SBC Communications, provided any services to SBC as a vendor or an independent  contractor?

2.     Has anyone here ever been employed by AT&T, also known as AT&T, Inc., AT&T Corporation or AT&T Communications, provided any services to AT&T as a vendor or an independent  contractor?

3.     Has anyone here ever been employed by Southern New England Telephone Company, otherwise known as SNET, provided any services to SNET as a vendor or an independent  contractor?

4.     Has anyone here ever been employed in any capacity by any company which has a contractual relationship with SBC, AT&T and/or SNET or otherwise provides services as an independent contractor or vendor to any of these companies or any subsidiary companies or others affiliated with  it?

5.     Has anyone here ever been represented by or had any business or other relationship with the law firm of Tyler, Cooper & Alcorn?

6.     Has anyone here ever been represented by or had any business or other relationship with the law firm of Littler Mendelson?

7.     Has anyone here been employed as a manager, supervisor or in any other human resources or personnel capacity which involves participating in hiring, discipline or termination employees?

6

8.    Has anyone here been employed by an insurance company as an adjuster or claims representative  involved in the assessment, adjustment or the defense of employee claims, personal injury claims or any other legal claims?  Been employed or involved in any way in educating and/or instructing employers, corporations or other companies on how to prevent or defeat a claim of illegal employment practices?

9.    Has anyone here been a defendant in any civil lawsuit whether it was withdrawn, settled or tried to conclusion?

10.    Has anyone here had any personal experience which is similar to the plaintiff's allegations in this case as they have described them to you?

11.    Does anyone have any particular views or strong feelings one way or the other about sex discrimination complaints, employment litigation, gender harassment suits or any personal experience that would impair his/her ability to be impartial and decide this case on the evidence and based upon the law as the court instructs?

12.    Is anyone here a member of any organization, a purpose of which is to lobby in favor of or against any changes in state or federal laws applicable to employment or other general issues  relating to our court and jury system?

13.    Do you have any particular experience, views or opinions regarding the issue of gender discrimination in the workplace that you feel may impact on your ability to decide this case?

**_Proposed by Defendant:_**

The defendant, SNET, hereby requests that the following voir dire questions be propounded to the panel of potential jurors in this action:

1.    SNET, the local phone company, is the defendant in this case.  Have you ever been employed by SNET, SBC or AT&T?  If so, what was your experience as an employee of that company?

2.    Have you ever been employed by any telephone or telecommunications company?

3.    Have any of your family members or acquaintances ever been employed by SNET, SBC, AT&T, or any communications company?  If so, as far as you know, what was his/her experience as an employee of that company?

4.    Do you have any feelings about SNET, i.e., the telephone company, or AT&T, positive or negative?

7

5.     Do you have any preconceived notions about whether there is discrimination based on sex in telecommunications companies in general, or at SNET in particular?

6.     Could you be impartial in a dispute between a company and an individual?

7.     Is there any reason you could not be impartial in a dispute between SNET and one of SNET's employees?

8.     Have you or any of your family members or acquaintances ever felt harassed or subjected to a hostile work environment by co-workers or bosses at work?

9.     Have you or any of your family members or acquaintances ever felt you were treated unfairly by your employer, your supervisors, or your co-workers because of your sex or for any other reason?

10.     Have you ever changed jobs or asked to be transferred to a different location because you felt you were being treated unfairly or in a hostile way?

11.     Have you ever made a complaint of discrimination or harassment in the workplace either to your employer or outside the organization?

12.     Have you ever been an employer or a supervisor in the workplace?

13.     Has anyone ever accused you or a family member or acquaintance of harassing or discriminating against another person in the workplace?

14.     Has anyone ever made a legal claim against you or one of your family members, or have you ever made a legal claim against anyone else?

15.     Have you ever been out of work on a medical leave of absence?  How long was the leave and for what purpose?

16.     Have you ever had trouble getting along with a manager or supervisor at work? What was the problem?

17.     Do you have any notion that just because SNET is being sued, it must have done something wrong?

18.     Do have any preconceived notion that if a female employee is the only woman in a particular job for an employer, then she is likely to be discriminated against because of her sex?

19.     Do you have any concern that you might have a problem being a juror in an employment case, or that you might be anything but impartial in weighing the evidence as it is presented to you?

8

20.    Would you be able to put aside sympathy in this case and decide the case on the facts and the law as presented to you by the Court?

21.    Have you or anyone close to you ever been diagnosed with cancer? I'm sorry to ask this question, and don't mean to pry, but could you please explain what occurred?

21.    Please describe any engineering experience that you have or experience working as a technician of any sort.

22.    Have you ever been disciplined or received any kind of formal warning in connection with your work?

**10.    List of Witnesses**

*Plaintiff's Fact Witnesses:*

1.    Plaintiff Denise Evarts will testify regarding all aspects of the allegations in this case as well as her damages, including non-economic damages, emotional distress, anguish, upset, fear and temporary incapacity.

2.    Edward Dillman, of SNET, will testify with respect to his knowledge of the plaintiff's employment at SNET, his interactions and communications with Matthew Cordner, his direct participation in the discriminatory acts complained of, his knowledge of SNET policies regarding harassment and his own views and treatment of female SNET employees.

3.    David Ianiello, formerly of SNET, will testify with respect to comments made by Matthew Cordner concerning the fitness (or lack of fitness) of women, especially plaintiff Evarts, for the work Evarts handled at SNET. He will also testify with respect to the workplace environment at SNET for women, especially as it relates to the environment for Evarts during the time period that Matthew Cordner was her supervisor, interactions he had with Cordner and manager Edward Dillman in respect to enforcement of workplace policies and standards, Cordner's retaliatory animus, Dillman's deferential attitude toward Cordner and these managers' discriminatory treatment and discipline of Evarts.

4.    Matthew  Cordner of SNET will testify regarding his alleged animus toward women working at SNET, the period of his supervision of the plaintiff, the records he generated regarding the plaintiff's performance, criticisms, counseling and disciplinary acts taken against plaintiff, and his alleged disparate and more favorable treatment of plaintiff's male crew members.

5.    Constance Rogers, formerly of SNET, will testify with respect to SNET's employment policies and practices during the period of Evarts' employment, the plaintiff's

9

resignation, all aspects of her role as investigator of Evarts' claim of discriminatory treatment by Matthew Cordner and Edward Dillman, and her knowledge of appropriate employer responses to evidence of gender discrimination in the workplace.

6.    Sandra Rhodes, M.S., M.S.W., may be called regarding her professional treatment of Evarts and her knowledge of the emotional distress suffered by Evarts as a result of her treatment by the defendant through its agents and employees, depending on the extent of defendant's use of Rhodes's treatment and other records or Rhodes' deposition testimony.

7.    Deborah MacDonald of SNET may be called to testify regarding SNET policies and procedures, the applicable collective bargaining agreement, terms and conditions of Evarts' employment, and SNET's wage rates and benefits.

8.    Deborah Guarnieri will be called to testify regarding her role as Evarts' union representative, her participation in meetings between plaintiff and management, her interactions and communications with management regarding its treatment of Evarts, and Evarts' state of emotional upset over the treatment she received from Matthew Cordner and Edward Dillman.

9.    Frederick Evarts, plaintiff's husband, will testify regarding his personal observations of plaintiff's emotional state during the period she worked under Matthew Cordner, her state of mind at the time of her decision to leave SNET as well as his observations and conversations with her relative to her decision to leave SNET.

10.    Donna Jordan, plaintiff's mother, will testify regarding her personal observations of plaintiff's emotional state during the period she worked under Matthew Cordner, her state of mind at the time of her decision to leave SNET as well as her observations and conversations with her relative to her decision to leave SNET.

11.    Thomas Taft of SNET, will testify with respect to the alleged destruction of electronic and other records and evidence at SNET that relate to plaintiff's allegations of discriminatory treatment in respect to time-keeping records.

SNET objects to any testimony by Thomas Taft, inasmuch as Mr. Taft never worked with plaintiff and has no knowledge of any of the events underlying this case. Having learned only the day before the Joint Trial Memorandum was due that plaintiff intended to call Mr. Taft at trial, SNET wishes to reserve the right to file a separate pleading addressed to this issue.

**Plaintiff reserves the right to call additional witnesses identified on defendant's witness list as well as rebuttal witnesses.**

10

***Defendant's Fact Witnesses***:

1.     Matthew Cordner

Anticipated testimony:  Mr. Cordner, who was the plaintiff's supervisor in the Coin Services group, will testify about events during the plaintiff's employment in his work group and incidents alleged by the plaintiff to have occurred involving him.  His testimony will include his supervisory decisions concerning the plaintiff, as well as the events plaintiff claims constituted unlawful discrimination.  Mr. Cordner will also testify concerning his employment history, management style, and his treatment of male employees in the same work group.  He will also testify concerning his treatment of plaintiff during her sister's illness and at other times during her employment in his group.

2.     Ed Dillman

Anticipated testimony:  Mr. Dillman, who was the manager of the Payphone Services group, will testify concerning SNET's policies and expectations, the company's treatment of Ms. Evarts, and Ms. Evarts' performance.  Ms. Dillman will also testify concerning his interactions with Ms. Evarts and his observations concerning Matt Cordner's management style.

3.     Pat Kinsella

Anticipated testimony:  Mr. Kinsella will testify in response to plaintiff's claims concerning a satellite office in North Madison and will testify concerning his supervision of plaintiff while at SNET.

4.     Wanda Lewis

Anticipated testimony:  Ms. Lewis will testify concerning her supervision of plaintiff.

5.     Deborah MacDonald

Anticipated testimony:  Ms. MacDonald will testify concerning SNET's policies and procedures.

6.     Deborah Guarnieri

Anticipated testimony:  Ms. Guaranieri, plaintiff's Union steward during the relevant time, will testify about her participation in a May 2, 1997 meeting concerning plaintiff's timesheets, SNET's policies and procedures, and her reactions to the timesheet issue.

7.     Marianne Esposito

Anticipated testimony:  Ms. Esposito will testify concerning SNET's policies and procedures and the work environment in Network Services.

8.     Sally Sanderson

Anticipated testimony:   Ms. Sanderson will testify concerning her interactions with Matt Cordner.

9.      Sandra Rhodes

Anticipated testimony:  Ms. Rhodes will testify concerning her treatment of Ms. Evarts at approximately the time of her resignation and the stressors that caused Ms. Evarts emotional distress during the relevant time.

10.      Robert Bock

Anticipated testimony:  Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

11.      Steven Boisvert

Anticipated testimony:  Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

12.      William Fairbrother

Anticipated testimony:  Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

13.      Oswald Gardner

Anticipated testimony:  Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

14.      David Kapral

Anticipated testimony:  Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

15.      Lou Marino

Anticipated testimony:  Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

16.      Robert Reiss

Anticipated testimony:  Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

17.      Michael Tobin

Anticipated testimony:  Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

18.      Mark Richardson

Anticipated testimony:  Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

19.      James Verrastro

Anticipated testimony:  Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

20.    Robert Brothers

Anticipated testimony:  Attorney Brothers, an employee of the Connecticut Commission on Human Rights and Opportunities, will testify concerning the work performance of Richard Gordon and the reasons for his termination.  Mr. Brothers will not be called as a witness to testify if the CHRO fact-finding document related to plaintiff discrimination claim is not introduced as evidence at trial.

21.    Art Swanson

Anticipated testimony:  Mr. Swanson may testify concerning plaintiff's claims that she was entitled to a new vehicle shortly before the time she resigned from the company, as well as SNET's policies and procedures with respect to assignment of SNET vehicles.

**Defendant reserves the right to call additional witnesses identified on plaintiff's witness list as well as rebuttal witnesses.**

**11.          Exhibits**

**(Pursuant to the telephonic conference today with Court staff, both plaintiff and defendant will file objections to the exhibits set forth in this section within 5 days of the parties' exchange of copies of exhibits pursuant to the Trial Memorandum Order.)**

*Plaintiff's exhibits:*

1.    Matthew Cordner's personnel file notes regarding the plaintiff dated 11-7-96, 11-8-96, 11-11-96 and 11-12-96.

2.    Matthew Cordner's personnel file notes regarding the plaintiff dated 11-15-96.

3.    SNET's record of riding exercises for the year 1995.

4.    SNET's record of riding exercises for the year 1996.

5.    SNET's record of riding exercises for the year 1997.

6.    Plaintiff's application for Family Medical leave approved by SNET's Employee Benefit Committee.

7.    Certification from Debra Evart's oncologist submitted by plaintiff to SNET's Employee Benefit Committee.

8.    3-17-97 documented verbal warning issued by Matthew Cordner.

9.    Matthew Cordner's personnel file notes regarding plaintiff dated 3-17-97 and 3-18-97.

10.    Matthew Cordner's personnel file dated 4-25-97 setting forth comparisons and analyses of plaintiff's time records.

11.    Matthew Cordner's personnel file dated 4-29-97 setting forth comparisons and analyses of plaintiff's time records.

12.    Matthew Cordner's personnel file notes regarding plaintiff's dated 4-30-97.

13.    Edward Dillman's personnel file notes regarding meeting with plaintiff of 5-2-97.

14.    Matthew Cordner's personnel file notes regarding plaintiff dated 5-2-97.

15.    Matthew Cordner's personnel file notes regarding plaintiff dated 5-5-97 and 5-6-97.

16.    Matthew Cordner's personnel file notes regarding plaintiff dated 5-8-97 and 5-9-97.

17.    5-19-97 record documented verbal warning given to David Ianiello.

18.    SNET Motor Vehicle Trouble Report dated 3-17-97.

19.    SNET record of employee vehicles recommended for replacement in 1996-97.

20.    Sample DCWS record.

21.    Sample of crew time sheets.

22.    SNET's Exhibit D submitted to CHRO.

23.    Excerpt of SNET's December 28, 1998 submission to CHRO (Plaintiff's Exhibit 1 submitted in Volume III of Plaintiff's Exhibits in Opposition to Motion for Summary Judgment dated September 19, 2005).

24.    Excerpt of SNET's January 12, 1999 submission to CHRO (Plaintiff's Exhibit 2 submitted in Volume III of Plaintiff's Exhibits in Opposition to Motion for Summary Judgment dated September 19, 2005).

14

25.    SNET counsel's objection to Plaintiff's Request for Production (Plaintiff's Exhibit 3 submitted in Volume III of Plaintiff's Exhibits in Opposition to Motion for Summary Judgment dated September 19, 2005).

26.    Matthew Cordner's Work Reference Report regarding plaintiff dated 5/30/97.

27.    Relevant portion of applicable Collective Bargaining Agreement setting forth plaintiff's rates of compensation/benefits.

28.    SNET's UC notice of unemployment.

Plaintiff reserves the right to introduce any number of exhibits on defendant's list of exhibits which are not introduced by defendant at trial and to offer additional exhibits in rebuttal.

### *Defendant's exhibits:*

501.    Evarts resume

502.    Evarts Education and Training Profile

503.    SNET Sexual Harassment Policy

504.    Objectives from Public Communications Services Guidelines

505.    SNET Guideline re Vehicle Security

506.    SNET publication, Safeguarding Procedures for Services Technicians and Public Services Assistants

507.    SNET's EEO policies

508.    SNET Guideline re Failure to Meet Employer Expectations

509.    Evarts Employee Transfer Requests

510.    Nov. 4, 1996 Transfer Status Report

511.    Evarts 1996 Absence and Tardiness Record

512.    Evarts 1997 Absence and Tardiness Record

513.    Evarts April 25, 1997 Daily Time Report

514.    Evarts April 29, 1997 Daily Time Report

515.   Bargaining Unit Employee Request for Leave of Absence

516.   Memo dated June 14, 1996 from Denise Evarts to Ed Dillman

517.   June 4, 1996 memo from P. Kinsella to Ed Dillman

518.   June 21, 1996 memo from Rick Campanelli re Denise Evarts

519.   June 17, 1988 personnel document regarding Denise Evarts by former supervisor, Wanda Lewis

520.   November 15, 1996 memo to Evarts personnel file

521.   Public Communications Services/Our Responsibilities:  Supervisor's Guidelines

522.   March 17, 1997 Documented Verbal Warning re Denise Evarts

523.   April 10, 1997 memo from Dawn Szczynski to Edward Dillman

524.   Ed Dillman note of April 25, 1997 meeting

525.   April 30, 1997 memo to file re Denise Evarts

526.   May 2, 1997 memo to file

527.   May 5- 6 1997 memo to file

528.   Safety Knowledge Review/Work Observation/Inspection Cards for Denise Evarts

529.   Cordner 1996 Performance Appraisal

530.   Cordner 1997 Performance Appraisal

531.   Evarts riding exercise documentation

532.   May 16, 1997 memo from Denise Evarts to Matt Cordner

533.   Misc Special Payment Input Form dated May 21, 1997

534.   Evarts Personnel Information Profile

535.   Evarts EAP Case Summary List

536.   Disciplinary documents re improper time reporting involving male technicians

537.   1995 Labor Agreement between Connecticut Union of Telephone Workers and Southern New England Telecommunications

538.   Progressive Discipline Guidelines

539.   Map of SNET Public Services offices

540.   Tuition Assistance Plan documents

541.   Selected Evarts timesheets

542.   1996 Tech./P.S.A. Cellular Usage chart

543.   1997 Tech./P.S.A. Cellular Usage chart

544.   February 6, 1997 Public Services Riding Exercise document re Denise Evarts

545.   1995 Riding Exercise chart

546.   1996 Riding Exercise chart

547.   1997 Riding Exercise chart

548.   Documentation of May 15, 1998 Riding Exercise with Joe Camarato

549.   Safety Knowledge Review/Work Observations for other technicians

550.   Investigative documents re Evarts complaint to internal EEO office at SNET

551.   September 15, 1997 letter from Sally Sanderson to Ed Dillman

552.   August 27, 1996 Notice of Reportable Action re Oswald Gardner

553.   February 10, 1997 Notice of Reportable Action re David Ianiello

554.   May 19, 1997 Documented Verbal Warning re David Ianiello

555.   June 30, 1997 Notice of Reportable Action re David Ianiello

556.   October 1, 1997 Quality Inspection re David Ianiello

557.   October 6, 1997 Notice of Reportable Action re David Ianiello

558.    December 19, 1997 Step 1 Grievance of David Ianiello

559.    Record of counseling and discipline re David Ianiello

560.    October 29, 1998 Notice of Reportable Action re David Ianiello

561.    November 17, 1998 Notice of Reportable Action re David Ianiello

562.    Step 1 Grievance of David Ianiello

563.    NLRB Charge Against SNET by David Ianiello for allegedly unfair treatment by Cordner

564.    November 21, 1997 Notice of Reportable Action re Richard DellaVolpe

565.    December 10, 1997 Notice of Reportable Action re Richard DellaVolpe

566.    July 28, 1993 Verbal Warning re Oswald Gardner

567.    July 23, 1998 Notice of Reportable Action re Oswald Gardner

568.    August 27, 1996 Notice of Reportable Action re Oswald Gardner

569.    October 6, 1997 Notice of Reportable Action re Mark Richard

570.    August 14, 1997 Notice of Reportable Action re Joseph Regina

571.    November 18, 1992 Notice of Reportable Action re Robert Dwilis

572.    SNET active vehicles scheduled for replacement

573.    Plaintiff's October 30, 2001 Responses to Defendant's Requests to Admit

574.    Plaintiff's October 31, 2001 Responses to Defendant's Requests to Admit

575.    July 12, 1996 Notice of Verbal Warning re David Ianiello

576.    Sandra Rhodes ADE Activity Form, Billing Form, and Progress Notes and correspondence from Ms. Rhodes re same.

577.    Handwritten note by Denise Evarts (calendar entry disclosed by plaintiff in discovery)

578.    Denise Evarts tax returns

579.    Vehicle records for Payphone Services group

580.    Connecticut Law Tribune Article re Denise Evarts

581.    May, 1997 Note of meeting by Debbie Guarnieri

582.    Complaint in Richard Gordon litigation

583.    Robert Brothers Affidavit and pleadings in Richard Gordon case

**\* Defendant wishes to reserve the right to use any of the plaintiff's listed exhibits and to introduce additional exhibits as rebuttal documents, at the time of the trial of this matter.**

## 12.    Deposition Testimony

Defendant may introduce the deposition testimony of Sandra M. Rhodes, LICSW, who treated plaintiff for emotional issues at the time she resigned from SNET. Ms. Rhodes resides in Orleans, Massachusetts.

Defendant may introduce the deposition testimony of Connie Rogers, former EEO officer for SNET concerning the investigation of plaintiff's claims.

## 13.    Jury Instructions

See Proposed Jury Instructions, attached hereto as Exhibit A. Also, please see Proposed Jury Verdict Form attached hereto as Exhibit B and Proposed Jury Interrogatories attached hereto as Exhibit C.

## 14.    Anticipated Evidentiary Problems

The parties will file objections and will be prepared to discuss objections to each other's exhibits at the pretrial conference. The parties have listed their objections to each other's witnesses above. Pursuant to the Court's Trial Memorandum Order, the parties are filing on this same date any motions in limine as to both testimony and exhibits, for which they seek orders of the Court prior to trial.

## 15.    Proposed Findings and Conclusions

N/A [non-jury cases only]

16.    **Trial Time**

The parties estimate eight to twelve trial days will be needed.

17.    **Further Proceedings Prior to Trial**

1.    The parties' motions in limine filed on this same date will require rulings by the Court.

2.    The defendant will file a motion related to discovery concerning damages, inasmuch as its efforts to obtain updated damages information from the plaintiff have been unsuccessful.

**18.    Election for Trial by Magistrate**

The parties have agreed the trial of this matter will be conducted by The Honorable William I. Garfinkel, United States Magistrate Judge.

THE PLAINTIFF,
DENISE EVARTS


By: _____
    Karen Torre, Esquire
    Federal Bar No. ct 01707
    Law Offices of Karen Lee Torre
    51 Elm Street, Suite 307
    New Haven, Connecticut 06510
    Telephone: (203) 865-5541
    Facsimile: (203) 865-4844
    E-mail: ktorre@choiceonemail.com


THE DEFENDANT,
SOUTHERN NEW ENGLAND TELEPHONE
COMPANY


By: _____
    Lori B. Alexander, Esquire
    Federal Bar No. ct08970
    Deborah D. Cannavino, Esquire
    Federal Bar No. ct08144
    Littler Mendelson, P.C.
    110 Washington Avenue
    North Haven, CT 06473
    Tel. (203) 234-6344
    Fax: (203) 234-6345
    E-mail: lalexander@littler.com
    dcannavino@littler.com

20

# EXHIBIT A