**Tab C**

**1**

```
 1              SEALED CONFIDENTIAL
 2
 3            UNITED STATES DISTRICT COURT
 4              DISTRICT OF CONNECTICUT
 5
 6  --------------------------------------X
 7  DENISE EVARTS
 8
 9  VS                    3:00CV1124(JCH)
10
11  THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY
12  --------------------------------------X
13
14          Deposition of David Iannielo taken in
15  accordance with the Connecticut Practice Book at the
16  law offices of Tyler Cooper & Alcorn, 205 Church
17  Street, New Haven, Connecticut, Before Holly M.
18  Murphy, a Licensed Shorthand Reporter and Notary
19  Public, in and for the State of Connecticut at 1:00 PM
20  on September 10, 2003.
21
22        Holly Murphy, License No. 177
          DEL VECCHIO REPORTING SERVICES
23       PROFESSIONAL SHORTHAND REPORTERS
    117 RANDI DRIVE        100 PEARL ST., 14TH FLOOR
24  MADISON, CT  06443     HARTFORD, CT  06103-4506
    203 245-9583           800 839-6867
25            FAX 203 245-2760
```

**2**

```
 1  A P P E A R A N C E S:
    ON BEHALF OF THE PLAINTIFF:
 2  KAREN TORRE, ESQ.
    LAW OFFICES OF KAREN LEE TORRE
 3  51 ELM STREET
    SUITE 307
 4  NEW HAVEN, CT  06510
 5  ON BEHALF OF THE DEFENDANT:
    LORI B. ALEXANDER, ESQ.
 6  TYLER COOPER & ALCORN
    205 CHURCH STREET
 7  NEW HAVEN, CT  06509-1910
 8  ALSO PRESENT:
    DENISE EVARTS
 9  MATT CORDNER
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**3**

```
 1              S T I P U L A T I O N S
 2
 3      IT IS HEREBY STIPULATED AND AGREED by and
 4  between counsel representing the parties that each
 5  party reserves the right to make specific objections
 6  at the trial of the case to each and every question
 7  asked of and the answers given thereto by the
 8  deponent, reserving the right to move to strike out
 9  where applicable, except as to such objections as are
10  direct to the form of the question.
11      IT IS FURTHER STIPULATED AND AGREED by and
12  between counsel representing the respective parties
13  that proof of the official authority of the
14  Commissioner of Deeds before whom this deposition is
15  taken is waived.
16      IT IS FURTHER STIPULATED AND AGREED by and
17  between counsel representing the respective parties
18  that the reading and signing of the deposition by the
19  deponent is
20      IT IS FURTHER STIPULATED AND AGREED by and
21  between counsel representing parties that all defects,
22  if any, as to the notice of the taking of the
23  deposition are waived.
24      Filing of the Notice of Deposition with the
25  original transcript is waived.
```

**4**

```
 1          SEALED  CONFIDENTIAL TRANSCRIPT
 2
 3          D A V I D   I A N N I E L O
 4  Address 43 Basset Road, North Haven, Connecticut,
 5  having been duly sworn, was deposed and testified as
 6  follows:
 7
 8      MS. ALEXANDER:  For the record, you have
 9  indicated, Mr. Iannielo, that you would like to read
10  and sign the transcript of this deposition?
11      THE WITNESS: Yes.
12
13          DIRECT EXAMINATION
14  BY MS. ALEXANDER:
15      Q.    Mr. Iannielo, my name is Lori Alexander.  I
16  represent Southern New England Telephone Company in an
17  action that has been brought by Denise Evarts.
18      Are you familiar with the fact that there is
19  litigation by Denise Evarts?
20      A.    Yes.
21      Q.    You came her in response to a subpoena?
22      A.    Yes.
23          (Whereupon, Defendant's Exhibit No. 1 was
24  marked for identification.)
25      Q.    Mr. Iannielo, is that a copy of the
```

The timestamps on page 4 left margin: 13:20:22 (15), 13:20:24 (16), 13:20:28 (17), 13:20:29 (18), 13:20:31 (19), 13:20:33 (20), 13:20:33 (21), 13:20:36 (22), 13:20:36 (23), 13:21:21 (24), 13:21:21 (25)

87

15:21:20 1  clear about this. Did he say it once or more than
15:21:22 2  once?
15:21:23 3       A.    More than once, I would say. Yes.
15:21:25 4       Q.    What year did he say it?
15:21:27 5       A.    I don't know. I can't exactly pinpoint
15:21:32 6  when it was. Maybe from that time, there was that
15:21:34 7  small period of time he was the supervisor there. It
15:21:36 8  was in that period of time while he was the supervisor
15:21:39 9  there.
15:21:40 10      Q.    Who was present?
15:21:44 11      A.    I can't recall who was present.
15:21:47 12      Q.    Think about it for the minute?
15:21:48 13      A.    I mean, I thought about it. Believe me. I
15:21:50 14 can't recollect.
15:21:52 15      Q.    So you don't know who was present. You
15:21:54 16 don't know when the conversation occurred?
15:21:58 17           MS. TORRE: Objection to the form. He told
15:21:59 18 you when it occurred.
15:22:00 19           MS. ALEXANDER: Other than it was while he
15:22:02 20 was the supervisor.
15:22:03 21      A.    Right. No.
15:22:05 22      Q.    You testified at the beginning that you
15:22:08 23 were in the garage with the other technicians early in
15:22:11 24 the morning?
15:22:12 25      A.    Right.

86

15:20:14 1  I was told my van was unlocked. It better not happen
15:20:17 2  again.
15:20:18 3       Q.    In terms of the riding exercise, if Mr.
15:20:22 4  Cordner did one riding exercise with Miss Evarts then
15:20:29 5  you testified that that in itself is not what you
15:20:32 6  consider discriminatory; right?
15:20:34 7       A.    No. If he did one exercise, like I said,
15:20:38 8  if he did one riding exercise with one individual, no.
15:20:41 9  I wouldn't consider that harassment.
15:20:44 10      Q.    The other thing that you said was the
15:20:46 11 comment, I think you said that you heard Matt say or I
15:20:51 12 don't know if you said you heard, but you said Matt
15:20:53 13 said many times he believed women don't belong in the
15:20:56 14 field?
15:20:57 15      A.    Yes.
15:20:58 16      Q.    When you say in the field, you mean
15:20:59 17 technicians?
15:21:00 18      A.    Working outside, yes.
15:21:02 19      Q.    When did he say that?
15:21:03 20      A.    He said it. I mean, it was on more than
15:21:06 21 one occasion. To give you an actual date and time, I
15:21:11 22 cannot. I can't, no. It's like you're there talking.
15:21:12 23 There was other girls who worked in the garage, I
15:21:15 24 mean.
15:21:17 25      Q.    Wait a minute. You've got to be really

88

15:22:13 1       Q.    Is it your testimony that this occurred at
15:22:15 2  one of the technician meetings?
15:22:19 3       A.    No. I can't recollect. My testimony is
15:22:22 4  that I can't recollect when.
15:22:27 5       Q.    You said something about the other girls in
15:22:29 6  the office?
15:22:30 7       A.    Well you know, I can't remember the context
15:22:38 8  and what it was in. You know, I can't. I can't. I
15:22:41 9  don't know. I don't know exactly when and where and
15:22:42 10 what context it was said. But I know it was said.
15:22:47 11      Q.    It's very important that you recall the
15:22:49 12 exact language that you're claiming Mr. Cordner said.
15:22:53 13 If you recall now?
15:22:54 14      A.    Women don't belong out in the field.
15:23:00 15      Q.    Who else is a witness to this beside you?
15:23:03 16      A.    That's it. I don't know if anyone was
15:23:07 17 beside me.
15:23:09 18      Q.    You say he said that in front of the other
15:23:12 19 women or no?
15:23:13 20      A.    No, no.
15:23:14 21      Q.    Why did you bring up the other women?
15:23:16 22      A.    I don't know if there was like, it comes to
15:23:19 23 me like there was someone else that was there, like it
15:23:23 24 was women in other crews and stuff.
15:23:28 25           I just can't exactly remember what. Because

Case Compress

89

1  I'm thinking there was another girl from another crew
2  was like in the garage, you know. That came up. I
3  can't remember exactly how it came up. So I mean.
4      Q.  Was it Mr. Cordner or someone else?
5      A.  That?
6      Q.  That said that?
7      A.  Mr. Cordner.
8      Q.  Now, how many years later, six or seven
9  years later you recall precisely the words?
10     A.  Yes.  Because of all this that went on with
11 Denise.  That's why I remember it so clearly.
12     Q.  You don't recall what you were talking
13 about?
14     A.  No, no.
15     Q.  What did you say in response?
16     A.  I don't think I had any response.  I don't
17 remember responding any way to it.
18     Q.  Who was he talking to?  What women was he
19 talking about?
20     A.  I don't recall.
21     Q.  There were not any other women in the crew;
22 were there?
23     A.  In our crew, no.  There was other women in
24 other crews in the garage.  Some were in cable repair.
25 Some business techs that were women.

107

16:02:00 1    A.    Not that I recall, no.
16:02:02 2    Q.    So your testimony sitting here today is
16:02:04 3  that he just came up to you and said, "Women shouldn't
16:02:08 4  be working in the field?"
16:02:09 5        MS. TORRE:  Objection to the form.  That
16:02:11 6  wasn't his testimony.
16:02:12 7        MS. ALEXANDER:  You can answer.
16:02:13 8    A.    I never like -- what's the question here
16:02:16 9  please?
16:02:16 10   Q.    So is it your testimony that he just said
16:02:18 11 to you, you're not sure whether it's privately or not,
16:02:23 12 women shouldn't be working in the field?
16:02:26 13       MS. TORRE:  Objection.  That wasn't his
16:02:27 14 testimony.
16:02:27 15       MS. ALEXANDER:  You can answer.
16:02:30 16       MS. TORRE:  Women don't belong in the
16:02:32 17 fields was his testimony.
16:02:34 18   A.    It wasn't like he just walked up to me,
16:02:39 19 came up and said, "Hey, Dave.  Women don't belong in
16:02:39 20 the field."
16:02:40 21       It was during like a conversation, you know.
16:02:43 22 I can't recall the complete conversation we had.
16:02:46 23   Q.    Can you recall any of the conversation
16:02:49 24 other than those purported words that you're claiming
16:02:52 25 he said?

108

16:02:53 1    A.    No.
16:02:54 2    Q.    So you can't remember anything except those
16:02:57 3  particular words; is that your testimony?
16:02:59 4    A.    Yes.  Those words stood out very
16:03:02 5  distinctly.
16:03:03 6    Q.    You don't remember who was there, when it
16:03:11 7  happened, where you were?
16:03:11 8    A.    We were in -- I know we were in the
16:03:11 9  reporting area.  I don't think there was anyone there.
16:03:12 10 We were in our area like where we are when it was
16:03:15 11 said.
16:03:15 12   Q.    You mean you were in the New Haven garage?
16:03:18 13   A.    Right.
16:03:18 14   Q.    Where the technicians met?
16:03:20 15   A.    Right in the reporting area.
16:03:24 16   Q.    But no one else was there, just the two of
16:03:24 17 you?
16:03:25 18   A.    I don't recall anyone else being there.
16:03:27 19   Q.    What time of day was it?
16:03:28 20   A.    I don't know.
16:03:29 21       MS. TORRE:  Objection to the form.  He
16:03:30 22 testified the remark was made on more than one
16:03:34 23 occasion.
16:03:34 24 BY MS. ALEXANDER:
16:03:34 25   Q.    Do you remember the time it occurred any

16:03:35 1  time?

16:03:36 2      A.    No.

16:03:37 3      Q.    Do you remember --

16:03:38 4      A.    Exact dates and times, no.

16:03:39 5      Q.    Well, even an estimate?

16:03:46 6      A.    I mean, I can put it in the time frame when

16:03:48 7  he was supervisor.

16:03:49 8      Q.    I saying what time of day?

16:03:51 9      A.    No, no.

16:03:54 10     Q.    If there was more than one time it was

16:03:55 11 said, you don't remember the context of any of the

16:03:58 12 times it was said?

16:03:59 13     A.    No.

16:04:07 14     Q.    We talked about locking vehicles and you

16:04:14 15 don't dispute, do you, that the technicians are

16:04:16 16 supposed to lock their vehicles in the garage?

16:04:20 17     A.    No.

16:04:21 18     Q.    Mr. Cordner had group meetings at which

16:04:25 19 that was discussed among all of you; right?

16:04:28 20     A.    I don't recollect that at all.

16:04:30 21     Q.    Do you remember group meetings?

16:04:32 22     A.    Yeah.  In the mornings usually we were all

16:04:36 23 in the area.  I stated that earlier.  I indicated work

16:04:38 24 plus discuss issues.

16:04:40 25     Q.    You talked about various things that

**Tab D**

115 Fed. Appx. 484, *; 2004 U.S. App. LEXIS 23354, **

LEXSEE



Cited
As of: May 08, 2007

**Ike Nweze, Plaintiff-Appellant, -v.- New York City Transit Authority,
Defendant-Appellee.**

**No. 03-9279-cv**

**UNITED STATES COURT OF APPEALS FOR THE SECOND
CIRCUIT**

**115 Fed. Appx. 484; 2004 U.S. App. LEXIS 23354**

**November 8, 2004, Decided**

**NOTICE:** [**1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION
TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES
COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from a judgment of the United States District Court for the Eastern District of
New York (Donald E. Walter, Judge*).

> * Judge of the United States District Court for the Eastern District of Louisiana, sitting by
> designation.

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sought review of a decision of the United States
District Court for the Eastern District of New York, which granted the motion filed by defendant former
employer for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, after the employee presented his
case in chief at a jury trial. The employee had alleged discrimination by reason of a hostile work
environment and intentional discrimination.

**OVERVIEW:** The court determined that the district court's grant of judgment as a matter of law was
proper. The employee failed to establish that his supervisor's yelling and requests for errands was based
upon race. Even if the conduct was racially motivated, the circumstances, taken as a whole did not establish
that the employee's workplace was permeated with discriminatory intimidation, ridicule, and insult, or that
the conduct altered the employee's condition of employment. The employee had not shown an actionable
claim for disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000e to
2000e-17, because there was insufficient evidence to support the inference that the employee was
terminated because of his race. There was no evidence that the supervisor, who allegedly made one racist
comment, recommended the employee's discharge. Even if the supervisor had been the one to recommend
the employee's termination, there was no showing that such a decision was motivated by racial animus
because the racist remark was made some 19 months before the termination event.

**OUTCOME:** The court affirmed the decision of the district court.

115 Fed. Appx. 484, *; 2004 U.S. App. LEXIS 23354, **

**CORE TERMS:** hostile work environment, disparate treatment, quotation, matter of law, recommended, altered, severe, insufficient to support, terminated

**LexisNexis(R) Headnotes**

*Civil Procedure > Trials > Judgment as Matter of Law > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN1] The United States Court of Appeals for the Second Circuit reviews the grant of a Fed. R. Civ. P. 50 motion de novo. The motion may be granted only if there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against the moving party.

*Labor & Employment Law > Discrimination > Actionable Discrimination*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment*
[HN2] A plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of the working environment. To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency and degree of the abuse.

*Labor & Employment Law > Discrimination > Actionable Discrimination*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burdens of Proof*
[HN3] To prevail on a disparate treatment claim, a plaintiff asserting a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000e-2000e-17, is required to prove that the defendant had a discriminatory intent or motive. A plaintiff makes out a prima facie claim of discrimination by establishing that 1) he was a member of a protected class; 2) he was qualified for the position; 3) an adverse employment decision took place; and 4) the decision occurred under circumstances giving rise to an inference of discrimination.

**COUNSEL:** APPEARING FOR APPELLANT: Ike Nweze, Pro se, Corona, New York.

APPEARING FOR APPELLEE: Michael Pappas, Littler Mendelson P.C. (Domenique Camacho-Moran, of counsel), New York, New York.

**JUDGES:** PRESENT: HON. JAMES L. OAKES, HON. ROBERT D. SACK, HON. BARRINGTON D. PARKER, JR., Circuit Judges.

**OPINION:** [*485] SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

We consider whether the district court properly granted the defendant's motion for judgment as a matter of law, following the presentation of plaintiff's case-in-chief, in a jury trial of Nweze's action asserting hostile work environment and intentional discrimination claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e [**2] to 2000e-17.

[HN1] This Court reviews the grant of a Rule 50 motion de novo. See Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000). The motion may be granted "only if there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and

115 Fed. Appx. 484, *; 2004 U.S. App. LEXIS 23354, **

conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against the moving party." Id. (internal quotation marks omitted) (alteration in original).

[HN2] A plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [the] working environment." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotations omitted) (Title VII case). "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency and degree of the abuse." Id.

Nweze failed to establish that his supervisor David [**3] Foell's yelling and requests for errands were based on race. See id. However, even if this conduct was racially motivated, the circumstances, taken as a whole, do not establish that Nweze's workplace was "permeated with discriminatory intimidation, ridicule, and insult," or that the conduct altered the conditions of Nweze's employment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993) (internal quotation marks omitted); see also Alfano, 294 F.3d at 376-81. And the single March 1995 remark does not satisfy the "so severe or pervasive" standard required of a Title VII plaintiff alleging a hostile work environment. See Harris, 510 U.S. at 21-22.

[HN3] To prevail on a disparate treatment claim, a Title VII "plaintiff is required to prove that the defendant had a discriminatory intent or motive." Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986, 101 L. Ed. 2d 827, 108 S. Ct. 2777 (1988). A plaintiff makes out a prima facie claim of discrimination by establishing that 1) he was a member of a protected class; 2) he was qualified for the position; 3) an adverse employment decision took place; and [*486] 4) the decision occurred [**4] under circumstances giving rise to an inference of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973).

Nweze failed to establish a prima facie case of discrimination. The evidence, taken as a whole, is insufficient to support the inference that Nweze was terminated because of his race.

Because Nweze provided no evidence that Foell, who allegedly made the racist comment, recommended Nweze's discharge, the alleged comment cannot support a finding that the discharge decision was based on Nweze's race. See McLee v. Chrysler Corp., 109 F.3d 130, 137 (2d Cir. 1997).

Even if Foell had recommended that Nweze be terminated, moreover, the evidence is insufficient to support a finding that the decision was motivated by racial animus. Foell's alleged remark was made nineteen months before Nweze's discharge and was not shown to have any connection to the decision to terminate Nweze. Nweze has pointed to no other evidence of disparate treatment or racial discrimination in the trial record. Accordingly, the district court's judgment as a matter of law dismissing the disparate treatment claim should be affirmed.

The judgment [**5] of the district court is therefore hereby AFFIRMED.

**Tab E**

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;
70 Fair Empl. Prac. Cas. (BNA) 719

LEXSEE


Analysis
As of: May 08, 2007

**PAMELA R. WILLIAMS, Plaintiff, v. HERMAN GOELITZ CANDY
COMPANY, et al., Defendants.**

**NO. CIV. S-94-1226 -WBS PAN**

**UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF CALIFORNIA**

**1995 U.S. Dist. LEXIS 22198; 152 L.R.R.M. 2030; 70 Fair Empl.
Prac. Cas. (BNA) 719**

**November 16, 1995, Decided
November 17, 1995, Filed**

**DISPOSITION:**  [*1]  Defendants' motion for summary judgment on all remaining causes of action in plaintiff's First Amended Complaint GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The defendants, union and employer, filed a motion for summary judgment under Fed. R. Civ. P. 56 in the plaintiff employee's first amended complaint alleging race discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), Fair Employment and Housing Act (FEHA), and 42 U.S.C.S. § 1981, sex discrimination and harassment under Title VII and FEHA, wrongful termination, breach of contract, and breach of duty of fair representation.

**OVERVIEW:** The employee was terminated from her position for leaving her workstation unattended. She filed a lawsuit against the employer and the union alleging discrimination and the union's failure to represent her. The union and the employer filed a motion for summary judgment on the employee's amended complaint. The court found that the employee was a satisfactory worker, that her suspension and termination qualified as adverse employment actions, and member of a protected class. The evidence showed that the employer had disciplined or terminated non-protected employees for the same kind of conduct, and inferred that the employer's actions were unrelated to race and sex. The court found that the employee was not promoted because another employee was more qualified and there was no evidence to suggest that the reason was pretext. The employee's allegation of retaliation for union activities was preempted by the National Labor Relations Act. The court found that the scope of the EEOC investigation included allegations of sexual harassment, the employee's claim was based on a hostile work environment theory, and that the evidence was insufficient to establish a hostile environment claim.

**OUTCOME:** The union and employer's motion for summary judgment on all remaining causes of action in the employee's first amended complaint were granted.

**CORE TERMS:** prima facie case, cause of action, termination, sexual harassment, co-worker, summary judgment, sex, candy, suspension, supervisor, terminated, discharged, suspended, sex discrimination, deposition, drawing, bathroom, woman, entitled to summary judgment, hostile work environment, offensive, hostile, disparate treatment, union activity, white male, retaliation, male, sexual harassment claim, similarly situated, direct evidence

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;
70 Fair Empl. Prac. Cas. (BNA) 719

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN1] Summary judgment is appropriate if the record, read in the light most favorable to a non-moving party, demonstrates no genuine issue of material fact. Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. At the summary judgment stage the question before a court is whether there are genuine issues for trial. A court does not weigh evidence or assess credibility.

*Evidence > Procedural Considerations > Burdens of Proof > Ultimate Burden of Persuasion*
*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
[HN2] Disparate treatment involves intentional discrimination. In every disparate treatment case, a plaintiff bears the ultimate burden of persuading a trier of fact that he has been the victim of intentional discrimination.

*Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Proof of Discrimination*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Disparate Treatment > Statutory Application > Reconstruction Statutes (secs. 1981, 1983 & 1985)*
[HN3] When a court is faced with a summary judgment motion in a disparate treatment case under Title VII of the Civil Rights Act of 1964, it must apply the McDonnell Douglas three-part burden shifting analysis. A plaintiff must first establish a prima facie case of discrimination. The burden of production then shifts to a defendant to articulate a legitimate nondiscriminatory reason for an adverse employment decision. If a defendant carries its burden, a plaintiff is afforded an opportunity to demonstrate that the assigned reason was a pretext or discriminatory in its application. The McDonnell Douglas analysis applies equally to claims brought under California's Fair Employment and Housing Act, Cal. Gov't. Code § 12900 et. seq., and to claims brought under 42 U.S.C.S. § 1981.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Evidence > Inferences & Presumptions > Presumptions*
*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > Adverse Employment Actions > Discharges & Failures to Hire*
[HN4] To make out a prima facie case of disparate treatment, a plaintiff may either submit direct evidence of discriminatory intent, or rely on a presumption such as that set forth in McDonnell Douglas. Under the McDonnell Douglas presumption, a terminated employee may make out a prima facie case by showing (I) she is a member of a protected class; (ii) she performed her job satisfactorily; (iii) she suffered an adverse employment action; and (iv) her employer treated similarly situated employees outside her class more favorably. The requisite degree of proof necessary to establish a prima facie case on summary judgment is minimal and does not even have to rise to the level of a preponderance of the evidence.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
[HN5] A defendant is entitled to summary judgment where a plaintiff cannot prove that whites under similar circumstances are treated more leniently than the plaintiff.

*Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions*

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;
70 Fair Empl. Prac. Cas. (BNA) 719

[HN6] To establish a prima facie case that a plaintiff was denied a transfer to another position because of her race, a plaintiff must show, inter alia, that she was qualified for the position.


*Labor & Employment Law > Collective Bargaining & Labor Relations > Federal Preemption*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Protected Activities*
*Labor & Employment Law > Wrongful Termination > General Overview*
[HN7] When an activity is arguably subject to § 7 or § 8 of the National Labor Relations Act, the states as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board. Any federal or state claim for wrongful discharge based on union activity is preempted by National Labor Relations Act §§ 7, 8.


*Labor & Employment Law > Collective Bargaining & Labor Relations > Federal Preemption*
*Labor & Employment Law > Wrongful Termination > Defenses > Employee Misconduct*
[HN8] There is an exception to preemption by the National Labor Relations Board where the regulated conduct touches interests so deeply rooted in local feeling and responsibility that, in the absence of compelling direction, it cannot be inferred that Congress had deprived the states of power to act, as in a case where there was violence in retaliation to union activity.


*Civil Rights Law > Practice & Procedure > Exhaustion*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement > Reasonable Cause & Conciliation*
[HN9] A plaintiff's discrimination claim is limited by the allegations contained in the Equal Employment Opportunity Commission (EEOC) charge. The purpose of the exhaustion requirement is to enable the EEOC to encourage informal conciliation of employment discrimination claims and foster voluntary compliance with Title VII of the Civil Rights Act of 1964. However, the primary function of an EEOC charge is to instigate EEOC investigation and conciliation, not to serve as a pleading giving notice to the employer. Hence, claims not specifically enumerated in the EEOC charge are not to be mechanically barred. When an employee seeks judicial relief for incidents not listed in an original charge to an administrative agency, a judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of an agency charge, including new acts occurring during the pendency of the charge before an administrative agency.


*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement > Investigative Authority*
[HN10] Whether an allegation under Title VII of the Civil Rights Act of 1964 is "like or reasonably related" to allegations contained in a previous Equal Employment Opportunity Commission (EEOC) charge depends upon the scope of both the EEOC charge and the EEOC investigation. Thus, a court must examine the proceedings before the EEOC and must inquire whether the original EEOC investigation would have encompassed the additional charges made in the court complaint but not included in the EEOC charge itself.


*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement > Investigative Authority*
[HN11] Allegations outside the body of the Equal Employment Opportunity Commission charge may be considered when it is clear that a charging party intended the agency to investigate the allegations.


*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;
70 Fair Empl. Prac. Cas. (BNA) 719

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Burdens of Proof >
Employee Burdens*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Burdens of Proof >
Severe & Pervasive Standards*
[HN12] In order to survive a defendants' motion for summary judgment on a complaint for sexual
harassment based on a hostile work environment, a plaintiff must show that there are genuine factual
disputes as to (1) whether a reasonable woman would find the challenged conduct "sufficiently severe or
pervasive to alter the conditions of employment and create an abusive working environment," and (2)
whether the employer, once apprised of the challenged behavior, failed to take adequate remedial and
disciplinary action.

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work
Environment*
[HN13] Offensive bathroom graffiti that supervisors promptly removed and that a plaintiff did not see does
not amount to pervasive harassment so as to create an objectively hostile work environment. A co-worker's
occasional annoying or "merely offensive" comments do not constitute sexual harassment.

**COUNSEL:** For PAMELA R WILLIAMS, plaintiff: William B Phillips, Law Offices of William B
Phillips, Healdsburg, CA.

For PAMELA R WILLIAMS, plaintiff: Linda S Mitlyng, Law Offices of Linda S Mitlyng, Anacortes, WA.

For HERMAN GOELITE CANDY COMPANY, defendant: D Gregory Valenza, Jackson Lewis Schnitzler
and Krupman, San Francisco, CA.

For BAKERS CONFECTIONERY AND TOBACCO WORKERS INTERNATIONAL UNION LOCAL
125, JOSE MORENO, defendants: David A Rosenfeld, Van Bourg, Weinberg Roger and Rosenfeld,
Oakland, CA.

**JUDGES:** WILLIAM B. SHUBB, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** WILLIAM B. SHUBB

**OPINION:**

MEMORANDUM AND ORDER

Pursuant to Fed. R. Civ. P. 56, defendants have moved for summary judgment on all of the claims in
plaintiff's First Amended Complaint.

**BACKGROUND**

Plaintiff, an African-American woman, was terminated from her position as a candy-maker by her
employer, defendant Herman Goelitz Candy Company ("Goelitz"), in November 1993. Plaintiff was
discharged for leaving her work station where approximately 1400 lbs. of fragile candy was left unattended.
Defendants [*2] later agreed after mediation to allow plaintiff to return to work upon certain conditions,
but plaintiff found these conditions unacceptable and has not returned to work. Prior to her discharge,
plaintiff had been suspended on three separate occasions for either leaving her work station without
authorization or for going to the restroom prior to signing out for lunch. Also prior to her discharge,
plaintiff had been denied a transfer to the position of Shipping and Receiving Clerk (Helper) after her
employer concluded that another employee was more qualified for the position.

In July 1994 plaintiff filed a sixty-seven page complaint in this court alleging twenty-two different
causes of action. The essence of plaintiff's claims is that the above employment actions were the result of
discrimination by Goelitz and that the union did not fairly represent her interests in addressing these
matters. Plaintiff's original complaint named as defendants the Goelitz Candy Co., nine individuals, and her
union. In an October 12, 1994 Order, this court dismissed (1) seven of plaintiff's state law claims, n1 (2) her

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;<br>
70 Fair Empl. Prac. Cas. (BNA) 719

claim under the National Labor Relations Act, n2 (3) her civil rights claims under [*3] §§ 1985, 1986 and 1988, n3 and (4) her Title VII claims against the individual defendants and the union. n4

> n1 These claims were for (a) wrongful termination, (b) breach of the implied covenant of good faith and fair dealing, (c) breach of employment contract, (d) negligent misrepresentation, (e) negligent infliction of emotional distress, (f) negligent retention, and (g) tortious interference with contractual relations. These causes of action were numbered twelve, thirteen, fourteen, seventeen, nineteen, twenty-one, and twenty-two, respectively.

> n2 This was the seventh cause of action in plaintiff's original complaint.

> n3 These were claims five and six.

> n4 These were claims one, two and three. Plaintiff maintains these claims against the Goelitz Candy Co.

Thereafter, on December 28, 1994, plaintiff filed her First Amended Complaint, voluntarily dismissing her claims for (1) FEHA against the individual defendants, (2) defamation, (3) fraud, and (4) violation of right to privacy. Plaintiff inadvertently [*4] omitted her eighteenth cause of action for intentional infliction of emotional distress, and on October 24, 1995, this court issued on order denying her motion to modify the Pretrial Scheduling Order so as to allow her to amend her complaint to include this cause of action. Also, on October 19, 1995, the parties lodged a stipulation with the court dismissing all of plaintiff's claims against eight of the nine individual defendants. n5 Finally, in her opposition papers plaintiff states that she does not oppose defendants' motion as against her claim for invasion of privacy.

> n5 The dismissed defendants are Robert L. Moody, Larry A. Dyer, Bill Jannisse, Kevin J. Dolan, Ray Rocker, Vernon Fair, Keith Lansdowne, and Eleazar Quinonez. The remaining named defendants are the Goelitz Candy Co., the Bakers Confectionery & Tobacco Workers International Union, AFL-CIO, Local No. 125, and Jose Moreno.

By this motion, defendants seek summary judgment on the remaining claims in plaintiff's First Amended Complaint: (1) race [*5] discrimination under Title VII and FEHA (first cause of action) and 42 U.S.C. § 1981 (fourth cause of action); (2) sex discrimination under Title VII and FEHA (second cause of action); (3) sex harassment under Title VII and FEHA (third cause of action); and (4) wrongful termination in violation of public policy (eleventh cause of action); (5) breach of contract (ninth cause of action); and (6) breach of duty of fair representation (tenth cause of action). Each of plaintiff's claims will be considered in turn. n6

> n6 Because the court has not considered plaintiff's admissions in reviewing this motion, plaintiff's request for relief from the admissions is moot.

**STANDARD OF REVIEW**

[HN1] Summary judgment is appropriate if the record, read in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Material facts are those necessary to the proof or [*6] defense of a claim, and are determined by reference to the substantive law. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). At the summary judgment stage the question before the court is whether there are genuine issues for trial. The court does not weigh evidence or assess credibility. Id.

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;
70 Fair Empl. Prac. Cas. (BNA) 719

**A. Discrimination Claims Against Goelitz Under Title VII, FEHA, § 1981, and California Common Law**

Plaintiff brings a number of causes of action for race and sex discrimination against her employer. She claims that she was (1) suspended, (2) discharged, and (3) denied transfer, all on account of her race and sex. Because each of these claims allege disparate treatment pursuant to plaintiff's Title VII, FEHA and § 1981 causes of actions, the court will consider these claims in a single analysis.

Stated most plainly, [HN2] "disparate treatment involves intentional discrimination." Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir. 1991). In every disparate treatment case, the plaintiff bears the "'ultimate burden of persuading the [trier of fact] that [he] has been the victim [*7] of intentional discrimination.'" St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 2748, 125 L. Ed. 2d 407 (1993), quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 67 L. Ed 2d 207, 101 S. Ct. 1089 (1981).

[HN3] When the court is faced with a summary judgment motion in a disparate treatment case under Title VII of the Civil Rights Act of 1964, it must apply the three-part burden shifting analysis first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), and refined by the federal courts over the following two decades.

> [A] plaintiff must first establish a prima facie case of discrimination. The burden of production then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment decision. If the defendant carries its burden, the plaintiff is afforded an opportunity to demonstrate that the "'assigned reason' was 'a pretext or discriminatory in its application.'"

Diaz v. American Tel. & Tel., 752 F.2d 1356, 1358-59 (9th Cir. 1985) (quoting McDonnell Douglas, 411 U.S. at 807); [*8] Burdine, 450 U.S. at 252-53. The McDonnell Douglas analysis applies equally to claims brought under California's Fair Employment and Housing Act, Cal. Gov't. Code § 12900 et. seq. ("FEHA"), see Levy v. Regents of University of California, 199 Cal. App. 3d 1334, 1343, 245 Cal. Rptr. 576 (1988), and to claims brought under 42 U.S.C. § 1981. Williams v. Edward Apffels Coffee Co., 792 F.2d 1482, 1484 (9th Cir. 1986).

**1. Prima Facie Case**

[HN4] To make out a prima facie case, plaintiff may either submit direct evidence of discriminatory intent, or rely on a presumption such as that set forth in McDonnell Douglas. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994). Under the McDonnell Douglas presumption, a terminated employee may make out a prima facie case by showing (I) she is a member of a protected class; (ii) she performed her job satisfactorily; (iii) she suffered an adverse employment action; and (iv) her employer treated similarly situated employees outside her class more favorably. See McDonnell Douglas, 411 U.S. at 807; Wallis, 26 F.3d at 891; [*9] Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1993). The requisite degree of proof necessary to establish a prima facie case on summary judgment is minimal and does not even have to rise to the level of a preponderance of the evidence. See Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987).

Plaintiff points to no direct evidence of discriminatory intent in regard to either the suspension, her termination, or the denial of her application for transfer. Thus, the court turns to the question of whether she has pointed to sufficient evidence to establish the McDonnell Douglas prima facie case on any of these three adverse actions.

**a) Suspension and Termination**

Because the gravamen of plaintiff's claims for suspension and termination are essentially the same, i.e., that she was unfairly singled out because of her race and sex for harsh enforcement of rules governing when employees could leave their work stations, the court will consider the suspension and termination claims together. Plaintiff's theory of the case is that women and African-Americans were "systematically and consistently . . . disciplined more harshly than [male [*10] and] non African-American employees for the same or similar violations." First Amended Complaint P 83(c).

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;
70 Fair Empl. Prac. Cas. (BNA) 719

Plaintiff easily satisfies the first and third elements of her prima facie case. As a woman and as an African American she is a member of a protected class, and her suspension and termination both qualify as adverse employment actions.

Plaintiff also satisfies the second element. Numerous witnesses testify that she was a good-to-excellent panner. Dyer Dep. 31:16-32-23; Aguiar Dep. 75:15-76:24; Chambers Dep. 51:15-52:14. Furthermore, plaintiff states in her declaration that in her approximately seven years with Goelitz, she "never received any criticism of [her] competency as a pan operator . . . [and was never] responsible for improperly processed candy." Plaintiff also submits an April 6, 1993, performance evaluation conducted by her then supervisor, Ray Rocker. On a scale from -2 through 7, plaintiff was rated a 5 for quality of work, a 4 for quantity of work, and a 0 for dependability. n7 Plaintiff was given positive comments for neatness, timeliness, and quality of production. Her work attitude was good and she was noted to have followed instructions well. Although evidence [*11] exists that plaintiff did not get along well with her co-workers, and that she tended to leave her station without notifying her group leader, Williams Dep., Ex. 44, these alleged shortcomings are insufficient to overcome plaintiff's evidence that she was a satisfactory worker.

n7 Under the scale, -2 to -1 is unsatisfactory, 0-1 is minimally acceptable, 2-3 is average, 4-5 is good, 5 1/2 to 6 is excellent and 6 1/2 to 7 is outstanding.

Plaintiff fails, however, to satisfy the fourth element of her prima facie case. With respect to her termination, plaintiff points to no evidence that similarly situated non-protected employees engaged in conduct of comparable seriousness to hers. See e.g., Lanear v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir. 1988) (plaintiff must prove that he and the white employee were similarly situated in all respects and that the other employee's acts were of comparable seriousness to his own); Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) [*12] (same). Thus, she is unable to establish that others were treated more leniently than she for conduct which resulted in her termination. Plaintiff was discharged for leaving potentially at-risk candy unattended. However, the record is clear that she is the only person to have been found to have engaged in such conduct. Williams Dep., pp. 442:25-443:1; Moody Decl. P 27.

Moreover, plaintiff has provided no admissible evidence that others who have engaged in conduct similar to that for which she was suspended were treated more leniently than she. In her affidavit filed with the EEOC, plaintiff states that she knows of five male pan operators (four Caucasians, one Hispanic) who have gone to the bathroom prior to signing out for lunch. Williams Dep., Vol. III, Ex. 41. In addition to providing absolutely no factual support for this conclusory assertion, plaintiff offers no evidence-that (1) Goelitz knew of the alleged conduct, (2) Goelitz knew of the alleged conduct and took no action, or (3) Goelitz knew of the alleged conduct and took no action because of the five employees' race or gender.

To the contrary, it is undisputed that Goelitz has disciplined or terminated non-protected employees [*13] who have engaged in conduct similar to plaintiff's. For example, T.G., a white male, was discharged for habitual lateness from breaks and lunch. UF # 130. Similarly, M.P., a white male, was discharged for repeatedly straying from his work area. Id. Finally, Larry Orr, also a white male, was suspended when he became insubordinate after being counseled for leaving his work station without permission. UF # 133.

The only inference that may be drawn from the record is that plaintiff was terminated and suspended for reasons unrelated to her race and sex. Accordingly, plaintiff has failed to satisfy the fourth element of her prima facie case, and defendants are entitled to summary judgment as to plaintiff's termination and suspension claims. n8 See Fong v. American Airlines, Inc., 626 F.2d 759, 762 (9th Cir. 1980) ( [HN5] defense entitled to summary judgment where plaintiff cannot prove that whites under similar circumstances were treated more leniently than plaintiff).

n8 It may be that plaintiff is also attempting to establish with direct evidence that her employer intentionally discriminated against her because of her sex. Plaintiff asserts that her employer discriminately enforced the "restroom rule" against women which resulted in her termination and suspensions. Here, however, there is no admissible evidence that her employer discriminately enforced this rule against women. See Pl.'s Stmt. Disputed Facts, # 40.

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;
70 Fair Empl. Prac. Cas. (BNA) 719

[*14]

b) Transfer

Plaintiff's discrimination claims are also based on allegations that she was denied a transfer to the position of Shipping and Receiving Clerk (Helper) because of her race and/or sex. [HN6] To establish her prima facie case, plaintiff must show, inter alia, that she was qualified for the position. McDonnell Douglas, 411 U.S. at 802. In reviewing Goelitz's decision not to transfer plaintiff, the question of "whether defendant [employer] made the correct or even the most logical decision is not at issue. 'The question,' the Ninth Circuit has written, 'is whether the other candidates are more qualified with respect to the criteria that [the defendant/employer] actually employs.'" Chaffin v. Textron Inc., 861 F. Supp. 972, 977 (E.D. Cal., 1994) (quoting Cotton v. City of Alameda, 812 F.2d 1245, 1249 (9th Cir. 1987). Using criteria enunciated in a memorandum announcing the position, Goelitz concluded that candidate Richard Roberts, a white male, was more qualified for the position than plaintiff. As a result, Roberts was awarded the position. UF # # 58 and 61. Plaintiff points to no evidence which disputes this fact [*15] or to suggest that it is pretextual.

**B. Termination In Violation Of Public Policy**

In her eleventh cause of action, plaintiff alleges that she was wrongfully terminated in violation of public policy because her termination was the result of (1) race and sex discrimination, (2) retaliation for her filing an EEOC complaint, and (3) retaliation for her engaging in union activity. However, plaintiff has presented no evidence to dispute defendants' evidence that she was terminated for legitimate employment reasons, i.e., that she violated company policy, or to suggest that such reasons were pretextual. See Pl. Counter Stmt. # # 28, 34, 40, 95-99, 75, 77, 78, 87. Thus, no triable issue of fact has been raised as to these claims.

In addition, plaintiff's claim that she was terminated in retaliation for participating in union activity is preempted by the National Labor Relations Act ("NLRA"). 29 U.S.C. §§ 157, 158(a). Plaintiff's alleged activities fall within those defined in § 7 and protected in § 8 of the NLRA, and therefore precludes this court from entertaining her claim. See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959) [*16] [HN7] ("when an activity is arguably subject to § 7 or § 8 of the Act, the states as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board . . . "); see also Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1061 (9th Cir. 1989) ("any federal or state claim for wrongful discharge based on union activity is preempted by NLRA §§ 7 and 8").

Plaintiff is correct that Garmon left open [HN8] an exception to preemption "where the regulated conduct touches interests so deeply rooted in local feeling and responsibility that, in the absence of compelling direction, [it cannot be inferred] that Congress had deprived the States of power to act." 359 U.S. at 244. Cf. Hayden v. Reickerd, 957 F.2d 1506, 1512 (9th Cir. 1991) (exception provided for violence in retaliation to union activity). However, plaintiff has provided no evidence that such an exception applies here. Thus, plaintiff's allegation of retaliatory termination of employment is preempted.

**C. Sexual Harassment Under Title VII and FEHA**

Plaintiff failed to file a sexual harassment charge with the EEOC prior to bringing this suit. Not one of the three [*17] charges filed by plaintiff with the EEOC alleges sexual harassment or mentions any incidents of sexual harassment. Williams Dep., Exs. 16, 17, 19. n9

n9 Plaintiff's first charge, filed on November 4, 1993, alleged that she had been suspended for using the bathroom on company time, and that these suspensions were the result of race and sex discrimination. Williams Dep., Ex. 17. Her second charge, filed on November 9, 1993, alleged that she was discharged on account of race and sex. Williams Dep., Ex. 16. Her third charge, filed on January 26, 1994, alleged that she had been denied a transfer on account of her race and sex.

It is generally the rule that [HN9] a plaintiff's discrimination claim is limited by the allegations contained in the EEOC charge. Brown v. Puget Sound Elec. App. & Train. Trust, 732 F.2d 726, 729-730 (9th Cir. 1984). The purpose of the exhaustion requirement is to enable the EEOC to "encourage[] informal

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;
70 Fair Empl. Prac. Cas. (BNA) 719

conciliation of employment discrimination claims and foster[] voluntary [*18] compliance with Title VII." Id. at 730. However, the primary function of an EEOC charge is to instigate EEOC investigation and conciliation, not to serve as "a pleading giving notice to the employer." Albano v. Schering-Plough Corp., 912 F.2d 384, 388 (9th Cir. 1990). Hence, claims not specifically enumerated in the EEOC charge are not to be mechanically barred. "When an employee seeks judicial relief for incidents not listed in his original charge to the [administrative agency], the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the [agency] charge, including new acts occurring during the pendency of the charge before the [administrative agency]." Ong v. Cleland, 642 F.2d 316, 318 (9th Cir. 1981).

[HN10] Whether an allegation under Title VII is "like or reasonably related" to allegations contained in a previous EEOC charge "depends upon the scope of both the EEOC charge and the EEOC investigation." Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990). Thus, the court must "examine [the] proceedings before the EEOC" and "must inquire 'whether the [*19] original EEOC investigation would have encompassed the additional charges' made in the court complaint but not included in the EEOC charge itself." Id. quoting Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1476 (9th Cir. 1989).

Plaintiff testified in her deposition that she provided the EEOC with details about incidents which she believed might amount to sexual discrimination. Specifically, she gave the EEOC a copy of a letter sent by her to management on January 26, 1993. In the letter, Williams alleges that Keith Lansdowne, a department leader, approached Don Mayo, a co-worker of Williams, and jokingly inquired as to whether Mayo and Williams were "sleeping together." Williams Decl., Ex. 2. Plaintiff also provided the EEOC with a letter from DeVon Greer, then her Shop Steward, who stated that people at the plant were "drawing obscene pictures of her [Williams] and making racial (sic) inappropriate disgusting images of her out of dark chocolate." Phillips Decl. Ex. 21. Thus, plaintiff argues, the EEOC was on notice that potential instances of harassment may have occurred. Moreover, plaintiff testified that the representative from the EEOC [*20] who handled her claim instructed her not to include sexual harassment on her charge at that point, but that instead, she should wait until after the EEOC had time to conduct an investigation. Williams Dep. 484:12-485:6. Inasmuch as these facts are undisputed, the court concludes that the scope of the EEOC's investigation included plaintiff's allegations of sexual harassment. [HN11] "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 502 (7th Cir. 1994).

Nevertheless, defendants are entitled to summary judgment on plaintiff's claim for sexual harassment. Plaintiff's sexual harassment claim is based on a "hostile work environment" theory of liability. n10 See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1462 (9th Cir. 1994), cert denied 513 U.S. 1082, 115 S. Ct. 733, 130 L. Ed. 2d 636 (1995). [HN12] In order to survive defendants' motion for summary judgment plaintiff must show that there are genuine factual disputes as to (1) whether a reasonable woman would find the challenged conduct [*21] "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and (2) whether Goelitz, once apprised of the challenged behavior, failed to take adequate remedial and disciplinary action. 25 F.3d at 1461, quoting Ellison v. Brady, 924 F.2d 872, 879, 881-83 (9th Cir. 1991).

> n10 To the extent plaintiff may be attempting to also assert a claim for hostile work environment based on race, she has failed to provide sufficient evidence of conduct sever or pervasive enough to alter the conditions of her work environment. Plaintiff points only to an isolated incident of racially offensive behavior (a coworker made a facsimile of plaintiff's head from chocolate and placed it on top of a chocolate melter, Greer Dep. p. 24:6-11.) which, by itself, did not negatively affect the conditions of her employment. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993); Schutt v. County of Napa, 1995 U.S. Dist. LEXIS 12033 (WL 494588 (N.D.Cal.)). Accordingly, plaintiff's are entitled to summary judgment on this claim.

[*22]

Plaintiff offers the following evidence, much of which is inadmissable, in support of her claim:

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;
70 Fair Empl. Prac. Cas. (BNA) 719

(1) The deposition of Patrick Chambers in which he testifies

(a) that for a two to three week period there was graffiti in a stall in the men's bathroom which read, "Pamela and Sylvia are lovers,"

(b) that male co-workers would occasionally approach him and engage in banter of a sexual nature about the plaintiff, n11 and

(c) that on one occasion he witnessed Billy Joe Calloway, a male co-worker, approach plaintiff and say, "Mmmm-Mmmm. I could be your sugerdaddy. Come on, girl. Come on." n12 Chambers Dep. 45:25-26.

n11 Chambers could recall three specific individuals who made sexual comments about plaintiff, each apparently under the mistaken (according to Chambers) impression that Chambers and plaintiff were involved in a sexual relationship. He recalls two such conversations in his deposition. In one case, the co-worker is alleged to have said, "Oooh, that Pamela. Oooh, she's so fine. Oh, man, just look at that butt, look at that ass." In the other, the co-worker allegedly stated, "Oooh, that Pamela. Oooh, she's just fine. Oooh, it's good. It's good, huh?" However, plaintiff was not present during any of these conversations and there is no evidence that she was aware that they took place, Chambers Dep. 42:8-43:8, this testimony will not support a hostile environment claim. See Bradshaw v. Golden Road Motor Inn, 885 F. Supp. 1370, 1381 (D.Nev. 1995) ("to show that he or she perceive the environment as hostile, [plaintiff] must at least have been aware of these comments, even if the person making them did not make them directly to the plaintiff").

[*23]

n12 In his deposition, Chambers also notes several instances which he did not witness, but which were supposedly related to him by plaintiff. For example, Chambers testified plaintiff told him that Ray Rocker, plaintiff's supervisor, wanted plaintiff to be his personal secretary and his girlfriend, and that he would often comment on how nice plaintiff looked. Chambers Dep. 44:23-26. Chambers also testified plaintiff complained of Rocker treating her unfairly. Id. 45:6-10. Finally, Chambers also testifies that plaintiff complained of an instance where Frank Martinez, a coworker, was laying on a pallet of suger with his legs spread and making suggestive comments to plaintiff. Id. 46:19-47:2. Plaintiff fails to point to anything in her deposition or declaration which recounts this testimony. Thus, while otherwise helpful to plaintiff, all of this evidence is hearsay and the court will not consider it.

(2) The deposition testimony of Devon Greer in which he testifies that Frank Martinez drew a picture which resembled a "Mr. Potato Head" and was captioned "Pamela." Greer Dep. 26:25-26. He [*24] also testifies that co-workers would sometimes inflate a rubber glove, draw a face on it, and caption it, "Pam." n13 Id. 30:17-18.

n13 The most this evidence provides is that there may have been personal animosity or a fued between plaintiff and her co-workers. It does not, however, support a claim for sex discrimination. See Bradshaw, 885 F. Supp. at 1380; McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986).

(3) The deposition testimony of Richard Luna in which he testifies that a drawing of a nude lady was placed on a bank of candy pans. n14 He also testified that a drawing "exposing a lady bent over" was placed in a desk drawer in the panning department. Luna Dep. 95:10-96:11.

1995 U.S. Dist. LEXIS 22198, *; 152 L.R.R.M. 2030;
70 Fair Empl. Prac. Cas. (BNA) 719

n14 There is no evidence that plaintiff was aware of this drawing. Therefore, this testimony will not support a hostile environment claim. See Bradshaw, 885 F. Supp. At 1381.

[*25]

Considering the admissible evidence, only three instances of sexually suggestive conduct have been established. First, graffiti was painted in a bathroom stall which stated that plaintiff and another woman are lovers. Second, Calloway approached plaintiff with an unwelcome proposition. Third, a drawing of a lady bent over was placed in a desk drawer in the panning department. Viewing these instances from the perspective of the reasonable woman, they are insufficient, as a matter of law, to establish a sexual harassment or hostile environment claim.

While the [HN13] bathroom graffiti may be utterly offensive, considering the fact that plaintiff's supervisors took prompt steps to remove it as soon as it was brought to management's attention, and the fact that there is no evidence that plaintiff ever saw it, it did not amount to pervasive harassment so as to create an objectively hostile work environment. Courts have found far more offensive and humiliating conduct not actionable. See e.g., Weiss v. Coca-Cola Bottling Co. of Chicago, 990 F.2d 333, 337 (7th Cir. 1993) (evidence that plaintiff's supervisor called her a "dumb blond", touched her on her shoulder and attempted [*26] to kiss her on more than one occasion was insufficient to survive summary judgment); Saxton v. AT & T, 10 F.3d 526, 534 (7th Cir. 1993) (supervisor's repeated unwelcome advances toward plaintiff did not support sexual harassment claim); Lefevre v. Design Professional Insurance, 1994 U.S. Dist. LEXIS 20978 (1994 WL 514020) (N.D.Cal.)) (supervisor's repeated handshakes and hugs at business meetings and references to plaintiff as "babe" did not create an objectively hostile work environment). As for Calloway's proposal to plaintiff, the Supreme Court has held that a co-worker's occasional annoying or "merely offensive" comments do not constitute sexual harassment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993). In sum, plaintiff has not presented evidence of sufficiently sever conduct to avoid summary judgment on her sexual harassment claim.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment on all remaining causes of action in plaintiff's First Amended Complaint be, and the same hereby is, GRANTED.

DATED: November 16, 1995

WILLIAM B. SHUBB

UNITED STATES DISTRICT JUDGE

JUDGMENT IN A CIVIL [*27] CASE

**Decision by the Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

**THAT JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THE COURT'S ORDER OF NOVEMBER 17, 199.**

ENTERED: November 17, 1995