**Tab F**

54 Fed. Appx. 236, *; 2002 U.S. App. LEXIS 26503, **

LEXSEE



Analysis
As of: May 08, 2007

**DOROTHY TURNER, Plaintiff-Appellant, v. HONEYWELL, MICRO SWITCH DIVISION, Defendant-Appellee.**

**No. 01-1347**

**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

**54 Fed. Appx. 236; 2002 U.S. App. LEXIS 26503**

**December 12, 2002 *, Submitted**

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2).

**December 20, 2002, Decided**

**NOTICE:** [**1] RULES OF THE SEVENTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Northern District of Illinois, Western Division. No. 98 C 50276. Philip G. Reinhard, Judge.   Turner v. Micro Switch, 2001 U.S. Dist. LEXIS 63.

**DISPOSITION:** Judgment of the district court affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant, her employer, alleging failure to promote, racial harassment, and retaliation in violation of Title VII, 42 U.S.C.S. § 2000e. The employer filed a motion for summary judgment which the United States District Court for the Northern District of Illinois, Western Division, granted. The employee appealed.

**OVERVIEW:** The employee argued that the court erred in finding that she had not produced evidence that the employer's stated rationale for hiring someone else--seniority-- was pretextual. She maintained specifically that the employer did not use seniority in two other decisions. The court found that the employer did not consider seniority in the two other cases because the people hired were better qualified than the employee. The only evidence to the contrary was the employee's self-serving claim that she was as qualified as the others, and a plaintiff's subjective assessment of her abilities was insufficient to establish pretext. Given the totality of the circumstances, second-hand reports that racial slurs were overheard in the workplace were insufficient in this case to support a harassment claim. Without establishing a causal connection between her co-workers' accusations and her administrative complaints, the employee was unable to sustain a retaliation claim.

**OUTCOME:** The judgment was affirmed.

54 Fed. Appx. 236, *; 2002 U.S. App. LEXIS 26503, **

**CORE TERMS:** co-workers, harassment, seniority, retaliation, accusations, nigger, supervisor, promoted, causal connection, summary judgment, hostile work environment, new position, white male, time card, time-barred, resentment, falsifying, eliminated, violating, hostility, promotion, assembly, pretext, causal, layoffs, staff, slur

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
[HN1] A plaintiff's subjective assessment of her abilities is insufficient to establish pretext.

**COUNSEL:** DOROTHY TURNER, Plaintiff-Appellant, Pro se, Freeport, IL.

For HONEYWELL, MICRO SWITCH DIVISION, Defendant-Appellee: Brad A. Elward, HEYL, ROYSTER, VOELKER & ALLEN, Peoria, IL USA.

**JUDGES:** Before Hon. WILLIAM J. BAUER, Circuit Judge, Hon. RICHARD A. POSNER, Circuit Judge, Hon. DIANE P. WOOD, Circuit Judge.

**OPINION:**

[*237] ORDER

Dorothy Turner, an African American, sued her employer Micro Switch, alleging failure to promote, racial harassment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e. Micro Switch filed a motion for summary judgment which the district court granted. Turner appeals, and we affirm.

Turner began working for Micro Switch in 1971 as an assembly worker. In 1984 Micro Switch promoted Turner to a Group Leader position in Department 280, where assembly workers place resistors and conductors on ceramic capacitors [**2] through thick-film printing. Turner worked as a Group Leader until 1995 when Micro Switch eliminated all Group Leader positions. At the time that it eliminated the Group Leader position, Micro Switch created a new position called Technical Associate. This new position encompassed many of the Group Leader's responsibilities but required a higher level of technical expertise. Employees who had been Group Leaders were given the first opportunity to apply for the new Technical Associate positions.

Turner applied for a Technical Associate position as did Fred Balles, a white male who had also worked as a Group Leader. Turner and Balles were the only candidates for the position. Micro Switch chose Balles over Turner for the slot, and Turner became an FN4 Team Member, a position below Technical Associate. Several months later, the Technical Associate position reopened. Turner again applied, but Micro Switch instead selected Cathy Wilson, a white female. According to Micro Switch, first Balles and later Wilson were promoted because they had higher technical skills than Turner.

Turner had been working on the second shift and wanted to transfer to the first shift. In March 1997 Micro Switch [**3] placed her in a first-shift FN3 Team Member position, a step below her former FN4 position. In July 1997 Turner applied for [*238] an FN4 Team Member position on the first shift but was passed over in favor of John Ginger, a white male. According to Micro Switch, Turner and Ginger were equally qualified for the position, and Ginger was selected because he had more seniority. In August 1997 Turner filed a complaint with the United States Department of Labor, Office of Federal Contract Compliance Programs ("OFCCP"), alleging that Micro Switch had declined to promote her several times because of her race. After filing the complaint, Turner continued to work as an FN3 Team Member until November 1997. On November 14, Turner was promoted to a first shift FN4 Team Member position with back pay from March 1997.

According to Turner, she became the target of racial harassment after transferring to the first shift. First, Turner claimed that Charmaine Munz, the first shift supervisor, repeatedly mentioned at staff meetings that the department was overstaffed and that layoffs could follow. Turner understood Munz to be

54 Fed. Appx. 236, *; 2002 U.S. App. LEXIS 26503, **

suggesting that Turner's transfer to the first shift created the overstaffing problem [**4] and would be the cause of any layoffs. Subsequently, some of Turner's co-workers accused her of falsifying her time card, violating company procedures, and failing to perform her job competently; Turner attributes their antagonism to resentment sparked by Munz's comments. Further, Turner says that some of her co-workers informed her that the word "nigger" was frequently used in Department 280, though she concedes that she never heard the slur herself.

After filing a complaint with the Equal Employment Opportunity Commission, Turner filed this suit against Micro Switch in August 1998, alleging failure to promote because of race, racial harassment, and retaliation. The district court granted summary judgment in favor of Micro Switch. First the court found that any claims based on the decisions made in 1995 and 1996 not to promote Turner to Technical Associate were time-barred. Regarding the 1997 decision to promote Ginger over Turner, the court found that Micro Switch had articulated a legitimate, non-discriminatory reason for its selection-- Ginger's seniority--and Turner had failed to produce evidence from which a factfinder could infer pretext. As for Turner's harassment claim, the [**5] court found that, because Turner herself had never heard her co-workers use the racial slur, she could not establish an objectively hostile work environment. Moreover, the court concluded, Turner had not established a causal link between Munz's comments at staff meetings and the unfriendly treatment that she perceived from co-workers. And even if Munz's comments *did* stir up hostility against Turner, the court added, the basis for this hostility was not racial animus, but resentment related to Turner's transfer. Finally, regarding Turner's retaliation claim, the court found that she had not established a causal link between her filings with the OFCCP in August 1997 and the EEOC in March 1998 and any of Micro Switch's decisions to pass her over for promotion.

On appeal Turner does not contest the district court's conclusion that any claims based on Micro Switch's failure to promote her to Technical Associate in 1995 and 1996 are time-barred. What Turner does argue is that the court erred in finding that she had not produced evidence that Micro Switch's stated rationale for hiring Ginger--seniority-- was pretextual; Turner maintains, specifically, that Micro Switch did not use seniority [**6] in its decisions to pass her over in favor of Fred Balles and Cathy Wilson when it filled the Technical Associate positions. But Micro Switch did not consider seniority in these cases because Balles and Wilson were better qualified than Turner. The only evidence to the contrary is Turner's self-serving claim that she was as qualified as Balles and Wilson, and [HN1] a plaintiff's subjective assessment of her abilities is insufficient to establish pretext. *See Johnson v. Nordstrom, Inc., 260 F.3d 727, 733 (7th Cir. 2001); Jordan v. Summers, 205 F.3d 337, 344 n.9 (7th Cir. 2000).* Turner also points to positive job evaluations she received throughout the years from her Micro Switch supervisors. But by themselves these evaluations prove only that Turner's supervisors were satisfied with the work she did in the position she held, not that she was deserving of a promotion.

Turner next argues that the district court erred in granting summary judgment on her racial harassment claim because her co-workers' use of the term "nigger" created a hostile work environment. But Turner herself did not hear any of her co-workers say "nigger." Given the totality of the circumstances, [**7] second-hand reports that racial slurs were overheard in the workplace are insufficient in this case to support a harassment claim. *See Ngeunjuntr v. Metropolitan Life Ins. Co., 146 F.3d 464, 467 (7th Cir. 1998).* Turner also argues that the court should have allowed her harassment claim to move forward based on her co-workers' accusations that she violated company policies. But these accusations do not rise to the level of severe or pervasive harassment and therefore cannot support a racial harassment claim. *See Cerros v. Steel Techs. Inc., 288 F.3d 1040, 1045 (7th Cir. 2002).* Moreover, the only evidence that Turner has produced to demonstrate that her co-workers were motivated by racial prejudice is her unsupported assertion that two employees who accused her of policy violations were also employees who, Turner had been told, used the word "nigger." Turner has not established that her co-workers made accusations against her because she is African American and not for some other reason.

Turner also challenges the court's finding that she could not establish a causal connection between her co-workers' behavior and the charges she filed with the OFCCP [**8] and the EEOC. Turner argues that she was transferred to the FN4 position with back pay in exchange for dropping her OFCCP complaint, that Munz and her co-workers knew this, and that their anger over Turner's charges motivated them to accuse her of falsifying her time card and violating company policies and procedures. But Turner points us to no evidence that this behavior was linked specifically to Turner's discrimination charges. Without establishing

54 Fed. Appx. 236, *; 2002 U.S. App. LEXIS 26503, **

a causal connection between her co-workers' accusations and her administrative complaints, Turner cannot sustain a retaliation claim. *See* *Bell v. EPA*, 232 F.3d 546, 554 (7th Cir. 2000).

The judgment of the district court is AFFIRMED.

**Tab G**

2007 U.S. Dist. LEXIS 26631, *

LEXSEE

**THERESA BENALLY, Plaintiff, vs. KENNECOTT UTAH COPPER
CORPORATION, Defendant.**

**Case No. 2:06CV00509**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
UTAH, CENTRAL DIVISION**

**2007 U.S. Dist. LEXIS 26631**

**April 9, 2007, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** After plaintiff, one of a few female employees, and a coworker were fired
for committing a safety violation, she brought suit under Title VII of the Civil Rights Act of 1964, 42
U.S.C.S. 2000e et seq., asserting claims for sex-based gender discrimination, hostile work environment,
and retaliatory discharge. Defendant moved to dismiss in part and for summary judgment.

**OVERVIEW:** Plaintiff's claim of hostile work environment failed on two elements. First, any exclusion
from meetings or requirements that she work alone were not frequent, severe, or pervasive enough to be
objectively offensive. Second, she presented no admissible evidence of any overt discriminatory behavior
that supported a showing of gender animus. Her supervisor's infrequent actions and comments were not
pervasive or severe enough to be objectively hostile or create an inference of gender animus or affect her
ability to work. Plaintiff's claim of disparate treatment fared no better because she neither showed gender
animus nor rebutted defendant's reason for termination. Plaintiff and her male coworker were fired
immediately after violating a safety requirement. The court assumed, in the interest of judicial economy,
that plaintiff exhausted her claim for retaliation and that it was properly pled. However, the claim failed on
three points: (i) plaintiff failed to show that she engaged in protected activity, (ii) she failed to establish a
causal connection, and (iii) even if she had presented a prima facie case, she did not show that defendant's
reason for termination was pretext.

**OUTCOME:** The court denied defendant's motion to dismiss and granted summary judgment for
defendant on all counts.

**CORE TERMS:** termination, gender, prima facie case, hostile work environment, co-worker, animus,
adverse action, retaliation, protected activity, male, proffered reason, pretext, severe, discriminatory,
summary judgment, causal connection, objectively, probation, hostile, fired, disparate treatment, significant
change, offensive, probationary status, conveyor belt, supervisor, terminated, training, protected conduct,
employment status

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Scintilla Rule*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
[HN1] Summary judgment should be granted when there is no genuine issue as to any material fact and the
moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts must view the

2007 U.S. Dist. LEXIS 26631, *

evidence in the light most favorable to the nonmoving party. The moving party must first show there is no genuine issue of fact and that there is an absence of evidence supporting the nonmovant's case. The nonmovant may not rely solely on pleadings or a mere scintilla of evidence. Evidence on which a jury could reasonably find for the nonmovant is required.

*Civil Procedure > Dismissals > Involuntary Dismissals > General Overview*
[HN2] Whenever a court lacks jurisdiction, the court shall dismiss the action. Fed. R. Civ. P. 12(h)(3).

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Employer Liability > Supervisors*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment*
[HN3] An employer is vicariously liable for a hostile environment created by a supervisor. A hostile work environment fosters (1) subjectively unwelcome conduct and (2) objectively offensive conduct that (3) is motivated by the race or gender of the victim.

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment*
[HN4] Conduct is objectively offensive when it is so severe or pervasive as to unreasonably interfere with an individual's work performance or create an intimidating hostile, or offensive working environment. It is a question of fact, weighed in the totality of the circumstances. The factors to consider include: frequency, severity, whether conduct is physically threatening or humiliating, and the environmental context. Neither is discourtesy, rudeness, or lack of sensitivity. Also, speech that might be unacceptable in some scenes is tolerated in other work environments.

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment*
[HN5] Facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim, if it is viewed in the context of other overtly gender discriminatory conduct. Conclusions of improper motivation without evidence is insufficient.

*Labor & Employment Law > Discrimination > Disparate Impact > General Overview*
*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
[HN6] The United States Supreme Court recognizes two theories to prove employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq.: disparate treatment or disparate impact.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Circumstantial & Direct Evidence*
[HN7] A plaintiff can prove disparate treatment in two ways. First, she can produce direct evidence that gender, played a motivating part in an employment decision. Then the burden shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination. Alternatively, the plaintiff can proceed under the three-stage, burden-shifting standard set forth in McDonnell Douglas Corp. v. Green. Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. If the employer succeeds, the presumption disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination.

2007 U.S. Dist. LEXIS 26631, *

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
[HN8] Although evidentiary burdens shift back and forth under the McDonnell Douglas evidentiary framework, the ultimate burden of persuasion remains at all times with the plaintiff.

*Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Proof > Burdens of Proof > Employee Burdens*
[HN9] To establish a prima facie case for discrimination, a plaintiff must show: (1) the plaintiff was a member of a protected class; (2) the plaintiff suffered an adverse employment action; (3) the plaintiff was qualified for the position; and (4) she was treated less favorably than others not in the protected class.

*Labor & Employment Law > Discrimination > Disparate Treatment > Employment Practices > Adverse Employment Actions > General Overview*
[HN10] An adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
[HN11] Under the McDonnell Douglas framework, to articulate legitimate non-discriminatory reasons for terminating an employee's employment, a defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the adverse action. The defendant does not have to prove the reason by a preponderance of the evidence.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burdens of Proof*
[HN12] While instances of disparate treatment may support an inference of pretext, to prove disparate treatment, a plaintiff must show that he or she was similarly situated in all relevant respects to a non-member of the protected class who was more favorably treated.

*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > Filing of Charges*
[HN13] Although exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., the U.S. Court of Appeals for the Tenth Circuit has said, when an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge.

*Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN14] Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., protects individuals who have made a charge, testified, assisted, or participated in any investigation, proceeding, or hearing from adverse employment action. 42 U.S.C.S. § 2000e-3(a). To establish a prima facie case, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered a materially adverse employment action, and (3) there is a causal connection between the protected conduct and the adverse action.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Retaliation > Burdens of Proof*
[HN15] If a prima facie case of retaliation is established, the burden shifts to the employer to articulate some legitimate non-discriminatory reason for its actions. If the employer does so, the burden shifts back to the plaintiff to demonstrate the pretextual nature of the employer's proffered reason for its actions.

2007 U.S. Dist. LEXIS 26631, *

*Labor & Employment Law > Discrimination > Retaliation > Elements > Protected Activities*
[HN16] The protection against retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., applies if an individual communicates to his or her employer a belief that its activity constitutes a form of employment discrimination. In order for an internal complaint to count, it must be reasonable for the employer to believe that what is being complained about is actually discriminatory-alleging unfair treatment is not enough.

*Labor & Employment Law > Discrimination > Retaliation > Elements > Causal Link*
[HN17] If there is no direct evidence that an adverse employment action is the result of protected activity, a causal connection can be inferred where the (1) employer knew about the protected activity and (2) there was temporal proximity between the protected activity and the adverse action. Temporal proximity must be "very close." For example, the U.S. Court of Appeals for the Tenth Circuit has held that a three month period between the protected activity and the adverse action to be too long. The U.S. Supreme Court has said that action taken months later suggests, by itself, no causality at all.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Retaliation > Burdens of Proof*
[HN18] In order to survive summary judgment on a claim of retaliatory discharge, a plaintiff must present evidence sufficient to lead a rational jury to find that the defendant's reasons for termination are unworthy of credence. Mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.

**COUNSEL:** [*1] For Theresa Benally, Plaintiff: Russell T. Monahan, LEAD ATTORNEY, COOK & ASSOCIATES, SALT LAKE CITY, UT.

For Kennecott Copper Corporation, Defendant: Martha Jean Amundsen, LEAD ATTORNEY, Rebekah Elisabeth Meier, LEAD ATTORNEY, KENNECOTT UTAH COPPER CORP, MAGNA, UT; Stanton M. Huntington, KENNECOTT COPPER, SALT LAKE CITY, UT.

**JUDGES:** J. THOMAS GREENE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** J. THOMAS GREENE

**OPINION:**

### MEMORANDUM DECISION AND ORDER

This matter is before the Court on defendants' Motion to Dismiss in Part and for Summary Judgment pursuant to Rule 12(h)(3), 56(c). Fed. R. Civ. P. Plaintiff is represented by Russell T. Monahan of the law firm, Cook & Associates, P.C., and defendant is represented by Martha J. Amundsen and Rebekah E. Meier of Kennecott Utah Copper Corporation. Defendant's motion was fully briefed and the Court heard oral argument on February 28, 2007. Following oral argument, the Court took the matter under advisement.

### I. FACTUAL BACKGROUND

Defendant, Kennecott Utah Copper Corporation ("Kennecott"), employed Plaintiff, Theresa Benally, from July 1994 to September 2004. From 2001 to 2004, Benally was the only female employee under Supervisor Ron Ricks. [*2] Benally and Ricks had an uneasy relationship. Although Ricks never made gender-related comments to Benally, she heard that he said "women don't belong working here" and "men do a better job than women." This made her feel unwanted and miserable at work.

Benally also claims that Ricks repeatedly excluded her from safety training meetings, left her to work alone often, was verbally rude to her in evaluations, and intentionally stepped on her foot. Kennecott asserts that Ricks provided one-on-one training to Benally outside of training meetings, that it is common for a

2007 U.S. Dist. LEXIS 26631, *

Slag Mill operator to work alone, that Ricks provided favorable written evaluations and was not excessively harsh in oral evaluations, and that Ricks did not intentionally step on her foot.

In January 2003, Benally complained to Superintendent, Rick Morrell. However, in her deposition or elsewhere in the record, she does not state what she told him. Morrell states that Benally expressed her objections to discipline she received due to her attendance record and did not mention discrimination. Subsequently, Benally complained to Kennecott's Human Resource Department ("HR") after Ricks noticed a large bruise on her neck [*3] and asked if she had been hit by a tennis ball. Kennecott reviewed the complaint and found no discriminatory behavior. Still, Kennecott required Ricks to complete online harassment prevention training.

In May 2003, Kennecott put Benally on probation, citing one safety violation and three unexcused absences. Benally disputes these reasons, saying her co-worker solely committed the safety violation and that Ricks marred her attendance record by mis-coding her FMLA leave. In the summer of 2003, Benally responded to a call for voluntary lay-off, but Kennecott denied her request and that of one male employee as neither of them qualified based on their combined years of service and retirement age. Benally claims she was denied because of her gender.

When Benally returned from FMLA and personal leave in January 2004, she claims Ricks made an insensitive comment regarding her deceased mother. Ricks denies the incident. Benally claims she contacted Morrell and HR, but has brought no evidence on that point. Neither Morrell nor HR have recollection or record of this complaint.

On September 22, 2004, Benally and her white male co-worker failed to lock out a machine in the Slag Mill before maintenance. [*4] Kennecott had sufficiently trained Benally regarding the lockout/tagout procedure. Benally's co-workers state that the procedure is usually discretionary; it's necessary when someone is standing on the conveyor belt. Benally's co-worker was standing on the conveyor belt. However, Benally claims she could not see him. Ricks witnessed the incident and terminated both employees immediately. In the formal termination letter to Benally, Kennecott cites the September 2004 incident and Benally's probationary status as reasons for her termination. Yet, Benally asserts she was fired because of her gender.

## II. STANDARD OF REVIEW

[HN1] Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FRCP 56(c). Courts must view the evidence in the light most favorable to the nonmoving party. Gross v. Burggraf Const. Co., 53 F.3d 1531, 1536-37 (10th Cir. 1995). The moving party must first show there is no genuine issue of fact and that there is an absence of evidence supporting the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). [*5] The nonmovant may not rely solely on pleadings or a mere scintilla of evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Evidence on which a jury could reasonably find for the plaintiff is required. Id. at 252.

Regarding the motion to dismiss, [HN2] whenever a court lacks jurisdiction, "the court shall dismiss the action." FRCP 12(h)(3).

## III. ANALYSIS

Defendant requests summary judgment on Plaintiff's hostile work environment and discrimination claims. Defendant also moves to dismiss Plaintiff's retaliation claim for lack of jurisdiction. The Court denies defendant's motion to dismiss, and grants summary judgement for the defendant on all counts.

## A. Hostile Work Environment

The Court finds Ricks' infrequent actions did not create a hostile work environment as they were not pervasive or severe enough to be objectively hostile or create an inference of gender animus. [HN3] An employer is vicariously liable for a hostile environment created by a supervisor. A hostile work environment fosters (1) subjectively unwelcome conduct and (2) objectively offensive conduct that (3) is motivated by the [*6] race or gender of the victim. Harris Forklift Systems, 510 U.S. 17, 17, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

2007 U.S. Dist. LEXIS 26631, *

*1. Ricks' comments were not objectively offensive as they were not frequent or severe enough to affect Benally's work performance.*

Ricks' comments to and treatment of Benally did not affect her work performance because she carried out her duties and received favorable evaluations. [HN4] Conduct is objectively offensive when it is "so severe or pervasive" as to "unreasonably interfer[e] with an individual's work performance or creat[e] an intimidating hostile, or offensive working environment." Meritor Sav. Bank, F.S.B v. Vinson, 477 U.S. 57, 65, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). It is a question of fact, weighed in the totality of the circumstances. Breeden, 532 U.S. at 270.

The factors to consider include: frequency, severity, whether conduct is physically threatening or humiliating, and the environmental context. O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093, 1098 (10th Cir. 1999); Gross, 53 F.3d at 1538. Single or isolated references are [*7] not enough. Daniels v. Essex Group, Inc., 937 F.2d. 1264, 1270 (7th Cir. 1991) Neither is discourtesy, rudeness, or lack of sensitivity. Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998). Also, speech that might be unacceptable in some scenes is tolerated in other work environments. Gross, 53 F.3d at 1538 (tolerating some off color jokes in a blue-collar working environment).

Kennecott's memorandum to its motion lists several cases with facts that did not meet the legal standard of hostile work environment, but included substantially worse conduct than seen here. For example in Penry v. Federal Home Loan Bank of Topeka, the employer (1) touched and grabbed the plaintiffs on many occasions, (2) commented on their underwear, bras, and his "wet dreams", (3) tried to look down their shirts; (4) followed them to the restroom; (5) made various sexual innuendoes; and (6) insisted that they work in his hotel room despite their protests. 155 F.3d 1257, 1260-61 (10th Cir. 1998).

Benally was quick to assert that the unwelcome conduct was not sexual, but still gender-based. As most gender-based claims deal with sexuality, [*8] Benally might be more comfortable comparing age-based claims that do not involve sexual conduct. In Crawford v. Medina General Hosp., the employee pointed to several old age remarks by her supervisor, including "I don't think women over 55 should be working" and "older people should be seen and not heard." The supervisor also made fun of older employees' hearing and false teeth. Further, colleagues would equate being old with being stupid, useless, and dumb. Older employees were excluded from parties and office information. In affirming summary judgement for the employer, the court noted that the incidents "indicate[d] hostility between coworkers rather than an age-related hostile environment." 96 F.3d 830, 833 (6th Cir. 1996).

If all Benally's claims are true, the situation is comparable to Crawford and does not rise to the level of a hostile work environment. In Crawford, as in the Benally case, suspect comments were not frequent, as they happened less than a handful of times over the years. Ricks was inconsiderate during evaluations and at most made two gender-related comments to other employees, not Benally. These incidents were not severe enough to [*9] interfere with the Benally's work. Benally, like Crawford, was able to perform her functions well. She received good written evaluations. Exclusion from parties or meetings was not often or severe, especially when Benally admits Ricks personally trained her each time she missed a meeting. A one-time insensitive comment about Benally's mother's death is not severely humiliating. There were no physical threats in either case. Benally claims that Ricks once purposefully stepped on her toe. This one-time incident did not cause her pain or severe humiliation. As stated above, discourtesy or rudeness is not sufficient. Therefore, the Court finds that Kennecott did not subject Benally to a legally cognizable hostile work environment.

*2. Benally provided insufficient evidence that the complained of conduct was motivated by gender animus.*

The Court finds Benally's claim that Ricks excluded her from safety meetings, denied her voluntary layoff, and her conjectures that he made two gender-based comments is insufficient to show that conduct was motivated by gender animus. [HN5] Facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment [*10] claim, if it is viewed in the context of other overtly gender discriminatory conduct. O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1097 (1999). Conclusions of improper motivation without evidence is insufficient. Crawford 96 F.3d at 836 (two comments indicative of age-based animus was not sufficient to create an issue of fact for jury as to whether hostility was based on age).

2007 U.S. Dist. LEXIS 26631, *

Although there is some suggestion of facially neutral differing conditions between the way Ricks treated Benally as opposed to male employees (she was required to work alone, excluded from training, and was required to give frequent FMLA updates), Benally has provided no evidence of any overtly gender-related discriminatory conduct. Benally claims that Ricks commented that "women don't belong working here" or that "men do a better job than women," but does not even know when or to whom he made those comments. Even if those statements were admissible, alone, they are insufficient to show that Ricks' conduct was motivated by gender animus.

Benally specifically cites <u>Harsco v. Renner, 475 F.3d. 1179 (10th Cir. 2007)</u> to support her argument that facially [*11] neutral conduct can be hostile. The Court recognizes, as noted above, that facially neutral conduct can provide evidence of a hostile environment when accompanied by overtly gender-related conduct. In <u>Renner</u>, neutral acts such as spitting tobacco on the employee's car were considered in the totality of the circumstances only after hearing direct evidence of several incidences of incredibly vulgar sexually-related comments. Benally's case is different in that she hinted toward only two comments that someone said a supervisor said about gender in her workplace.

The Court finds that Benally's claim of hostile work environment fails on two elements. First, any exclusion from meetings or requirements that she work alone were not frequent, severe, or pervasive enough to be objectively offensive. Second, Benally has presented no admissible evidence of any overt discriminatory behavior that could support a showing of gender animus.

**B. Discrimination**

The Court finds that Benally's claim of disparate treatment cannot survive summary judgment as she has not shown gender animus or rebutted Kennecott's reason for termination. Benally contends that Kennecott discriminated against [*12] her because of her gender n1 in violation of <u>42 U.S.C. § 2000e et seq.</u> [HN6] The United States Supreme Court recognizes two theories to prove employment discrimination under Title VII: disparate treatment or disparate impact. See <u>International Bhd. of Teamsters v. United States, 431 U.S. 324, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)</u>. Here, Benally has asserted only the former.

      n1 Benally initially claimed discrimination based on ethnicity also, but withdrew that claim during oral argument.

[HN7] A plaintiff can prove disparate treatment in two ways. First, she can produce direct evidence that gender, "played a motivating part in [an] employment decision." <u>Price Waterhouse v. Hopkins, 490 U.S. 228, 258, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)</u>. Then the burden shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination. Id. Alternatively, the plaintiff can proceed under the three-stage, burden-shifting standard set forth [*13] in <u>McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)</u>. Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. If the employer succeeds, the presumption disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination. <u>Texas Dept. of Comm Aff. v. Burdine, 450 U.S. 248, 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)</u>.

*1. Gender as a Motivating Factor*

Benally asserts she was set-up to be terminated because of gender animus. However, she presented no overt evidence of gender motivation. Benally claims only that Ricks commented, "women don't belong working here" or "men do a better job than women," but does not know when or to whom he made those comments. As a result, the Court sees no admissible evidence that gender was an overtly motivating factor.

*2. McDonnell Douglas Analysis*

[HN8] Although evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuasion [*14] . . . remains at all times with the plaintiff." <u>Id. at 253</u>. This Court finds that Benally has

2007 U.S. Dist. LEXIS 26631, *

failed to establish a prima facie case; further, she has provided no evidence to rebut Kennecott's proffered reason for termination.

i. Benally has failed to establish the prima facie case, as she has not shown that similarly situated male employees were treated differently.

[HN9] To establish a prima facie case for discrimination, plaintiff must show: (1) plaintiff was a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified for the position; and (4) she was treated less favorably than others not in the protected class. Sanchez v. Denver Public Schools, 164 F.3d 527, 531 (10th Cir. 1998). Benally has satisfied parts (1) and (3) by establishing that she is female and capable of performing her job.

Regarding part (2), [HN10] an adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). [*15] Benally has established that she was denied voluntary layoff, placed on probation, and was fired. Because denial of the voluntary layoff and probation status did not cause a significant change in Benally's employment status, as her job continued without interruption and benefits did not change, those actions cannot be considered a significant change in employment status. Therefore, the only significant change in employment status suffered by Plaintiff was the termination of her employment.

Benally has shown no evidence that Kennecott treated her differently than any similarly-situated male employee (one with her years of experience, knowledge and probationary status). Benally has failed to produce any evidence that men who fail to follow lockout/tagout procedures are not subject to discipline. On the contrary, her male co-worker was fired simultaneously in connection with the September 22, 2004 incident. Because Benally has not differentiated herself from similarly situated male employees, the Court finds she has failed to show a prima facie case.

ii. Kennecott produced legitimate non-discriminatory reasons for terminating Benally.

Even though Benally has not proven a prima [*16] facie case, Kennecott still [HN11] articulated legitimate non-discriminatory reasons for terminating her employment. To accomplish this part, the defendant must clearly set forth, "through the introduction of admissible evidence, the reasons for the [adverse action]." McDonnell Douglas, 411 U.S. at 802. The defendant does not have to prove the reason by a preponderance of the evidence. Burdine, 450 U.S. at 248.

Kennecott asserts that it fired Benally for a safety violation that occurred on September 22, 2004. It cites this reason in the letter of termination issued to Benally. Her probationary status, resulting from four previous disciplinary actions, contributed to the termination decision. Kennecott has provided documentation of these other incidents and Benally's probation. By providing this information, Kennecott has fulfilled their part of the burden-shifting analysis.

iii. Benally did not produce any evidence that Kennecott's proffered reason was merely a pretext for discrimination.

The issue here is whether Benally has produced evidence that could lead a reasonable jury to believe that her termination was not really due to her violations [*17] of company policy, as Kennecott contends, but was instead due to her gender. [HN12] While instances of disparate treatment may support an inference of pretext, to prove disparate treatment, the plaintiff must show that he or she was "similarly situated in all relevant respects to a non-member of the protected class who was more favorably treated." Cronquist v. City of Minneapolis, 237 F.3d 920, 927 (8th Cir. 2001).

Benally responds to Kennecott's accusation by saying that she did not personally commit the safety violation. The evidence she provides from her co-workers shows that if someone is standing on the conveyor belt, the lockout procedure should be used. Her co-worker was standing on the conveyor belt and the machine was not locked out. Even if Benally was not standing on the conveyor belt herself and could not see her co-worker doing so, she was still clearly involved in the incident. Kennecott strictly applied its

2007 U.S. Dist. LEXIS 26631, *

policy. Benally has not shown that a male with her skills, tenure, and probationary status would not have been terminated given similar circumstances.

Benally failed to make any connection between her termination and gender animus. In addition, she failed [*18] to establish her prima facie case because she did not provide any evidence that she was treated differently than a similar situated employee. In fact, her male co-worker at the time of the September 22, 2004 incident was also terminated. Further, Kennecott pointed to Benally's probationary status and fifth policy violation as reason for her termination. Benally contends, without support, that this reason was pretextual. Therefore, Kennecott's motion for summary judgment is granted.

## C. Retaliation

Because Benally's EEOC complaint did not include a retaliation claim, Kennecott argues that this Court has no jurisdiction to hear it. [HN13] Although exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII, the Tenth Circuit has stated, "when an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." Zinke v. Slater. 34 Fed. Appx. 667, 672 (10th Cir. 2002) (internal citation omitted).

Benally's claim of retaliation, though not mentioned in her original EEOC complaint, [*19] is substantially related to the discrimination and hostile work environment claims for which she sought administrative remedies, as the fact base for each claim is the same. In light of the Tenth Circuit's view and for the sake of judicial efficiency, this Court should review the merits of Benally's retaliation claim as if it were properly plead.

Nevertheless, the Court holds that Benally's retaliation claim fails as a matter of law because she both failed to prove the prima facie case and to prove Kennecott's reason for its action was pretext. [HN14] Title VII protects individuals who have "made a charge, testified, assisted, or participated in any investigation, proceeding, or hearing" from adverse employment action. 42 U.S.C.A. 2000e-3(a). To establish a prima facie case, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered a materially adverse employment action, and (3) there is a causal connection between the protected conduct and the adverse action. Argo v. Blue Cross and Blue Shield of Kansas. Inc., 452 F.3d 1193, 1202 (10th Cir. 2006).

[HN15] If a prima facie case is established, the burden shifts to the employer to [*20] articulate some legitimate non-discriminatory reason for its actions. If the employer does so, the burden shifts back to the plaintiff to demonstrate the pretextual nature of the employer's proffered reason for its actions. McDonnell Douglas. 411 U.S. at 802. Benally's claim fails on three points: (i) she has provided no evidence that she engaged in a protected activity, (ii) even if she has included discrimination in her complaints, the adverse action was not close enough in time to show a causal connection, and (iii) even if she presented a prima facie case, she has not provided evidence to show that Kennecott's reason for termination was pretext.

*1. Benally has failed to prove a prima facie case because she has presented no evidence that she complained of discrimination prior to termination.*

Benally failed to prove her prima facie case because she has not provided evidence that she engaged in protected conduct prior to the adverse action. [HN16] The protection applies if an individual communicates to his or her employer a belief that its activity constitutes a form of employment discrimination. McMillin v. Foodbrands Supply Chain Servs.. Inc., 272 F. Supp. 2d 1211, 1219. [*21] In order for an internal complaint to count, it must be reasonable for the employer to believe that what is being complained about is actually discriminatory-alleging unfair treatment is not enough. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001); See, e.g., Barber v. CSX Distrib. Services, 68 F.3d 694 (3d Cir. 1995). In Barber, a letter to the human resources department did not constitute protected conduct because the letter did not explicitly or implicitly allege that age was the reason for the unfairness. 68 F.3d at 702.

Similarly, Benally claims to have complained of unfairness to Superintendent Morrell and HR during her employment. First, she complained to Morrell in January 2003 and/or 2004. Although her complaint alleges that she complained of discriminatory treatment, Benally offers no evidence regarding what she told

2007 U.S. Dist. LEXIS 26631, *

Morrell. Benally does not even offer an affirmative statement in her deposition or a line in any court-submitted document that says she told Morrell about a specific discriminatory instance. Even her Memo in Opposition to Summary Judgement, simply states that in January 2004 she "made informal [*22] complaints to Rick Morrell." Page 24.

In Morrell's affidavit, he says that when Benally complained in January 2003, she did not state anything about discrimination. Morrell Affidavit, paragraphs 13-15, 17. Instead, their conversation focused on the discipline she received due to her attendance record and FMLA leave. Id. Further, co-worker John Martinez says that Benally complained to Morrell about safety, not discrimination, issues. Therefore, there is no *evidence* that Morrell had reasonable notice of Benally's discrimination concerns. Morrell does not provide any information about a conversation in January 2004.

Second, Benally complained to HR. In January 2003, Ricks asked Benally whether a tennis ball had caused a certain bruise on her neck. Ricks Affidavit, paragraph 33. n2 In response, HR reviewed the matter and found no discriminatory or inappropriate behavior on the part of Ricks. Heal Affidavit, paragraph 4. Still, HR required Ricks to participate in an online harrassment prevention tutorial. Heal Affidavit, paragraph 4; see also email from D. Drorbaugh (showing Ricks completed the course). As there was nothing objectively discriminatory about [*23] the incident and because there is no evidence that Benally suggested this incident was actually discriminatory, there was no reason for Kennecott to believe anything discriminatory was going on.

    n2 Benally did not comment upon this incident anywhere in the record.

Benally claims that she submitted a formal complaint to HR in January 2004, following Ricks' insensitive comment about her mother. However, Benally does not provide evidence that she complained of or alluded to discrimination in her communication with HR. Kennecott has no record of this complaint. Because there is no evidence that either Benally's complaints to Morrell or to HR alleged any discriminatory conduct, Benally has failed to prove an essential element of the prima facie case, that she participated in a protected activity.

*2. Benally also fails to prove the causal connection piece of the prima facie case because even if one of the above complaints could be found to be a protected activity, it was not temporally proximate to her termination.* [*24]

Even if a complaint to Morrell or HR in early 2003 or January 2004 had mentioned discrimination, it was too far removed in time from her termination in September 2004 to infer a causal connection. [HN17] If there is no direct evidence that the adverse action is the result of the protected activity, a causal connection can be inferred where the (1) employer knew about the protected activity and (2) there was temporal proximity between the protected activity and the adverse action. Breeden, 532 U.S. at 273. Temporal proximity must be "very close." Id. For example, the Tenth Circuit held a three month period between the protected activity and the adverse action to be too long. See Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997). After citing the Tenth Circuit's Richmond decision, the Supreme Court said, "[a]ction taken . . . months later suggests, by itself, no causality at all." Breeden, 532 U.S. at 274.

If we consider Benally's claims to be true, her January 2003 complaint was 20 months prior to her termination. Even the most generous scenario puts her last complaint at January 2004. The adverse action followed in [*25] September 2004-eight full months later. Given the Tenth Circuit's position that a three month period is insufficient, this Court finds an eight month lapse is too tenuous to establish a causal connection.

*3. Benally has failed to produce any evidence that Kennecott's proffered reason is pretextual.*

Benally has offered no evidence that could render Kennecott's legitimate reason for termination unworthy of belief. [HN18] In order to survive summary judgement, Plaintiff must present evidence sufficient to lead a rational jury to find that Defendant's reasons for termination are "unworthy of credence." Burdine, 450 U.S. at 256. "Mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River

2007 U.S. Dist. LEXIS 26631, *

Coal Co., 853 F.2d 768, 772 (10th Cir.1988). Kennecott claims it terminated Benally's employment because of her violation of a safety standard while on probation for four previous policy violations. Aside from stating (1) her belief they fired her because she was a woman and fired her white male co-worker to cover it up, and (2) that she disagreed with [*26] being placed on probation, (neither of which address Kennecott's proffered reason for termination) Benally has not presented any evidence on the issue of pretext. Therefore, the claim fails.

Benally has failed to present any evidence that she notified Morrell or HR about the alleged discrimination prior to her termination. Therefore, she did not engage in any protected activity, which is required to establish a prima facie case of retaliation. Further her prima facie case fails because, according to Tenth Circuit and Supreme Court standards, even if her complaints count as protected activities, they are clearly not temporally proximate to the adverse action. Finally, even if Benally established a prima facie case, she presented no evidence to rebut Kennecott's proffered reason for termination. As a result, the Court grants judgment to Kennecott as a matter of law.

IV. Conclusion

The Court denies Kennecott's motion to dismiss Benally's retaliation claim on the basis of jurisdiction. However, after considering the merits of the retaliation claim, as discussed above, the court grants judgment as a matter of law for the defendant. In addition, looking at the case in the light most favorable [*27] to Benally, she has failed to sufficiently establish an inference of the existence of each element essential for her hostile work environment and discrimination claims.

Accordingly, Kennecott's motion for summary judgment on those issues is GRANTED and the case is CLOSED.

DATED this 9th day of April, 2007.

J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE

**Tab H**

Get a Document by Citation - 96 Fair Empl. Prac. Cas. (BNA) 1011    Page 1 of 5

Case 3:00-cv-04124-WHC    Document 174-3    Filed 05/11/2007    Page 19 of 23

*2005 U.S. Dist. LEXIS 19796, *; 96 Fair Empl. Prac. Cas. (BNA) 1011*

NEVILLE EVANS, Plaintiff, -against- THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant.

02 Civ. 3482 (LAK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 19796; 96 Fair Empl. Prac. Cas. (BNA) 1011

September 13, 2005, Decided

**SUBSEQUENT HISTORY:** Adhered to, On reconsideration by Evans v. Port Auth., 2005 U.S. Dist. LEXIS 22049 (S.D.N.Y., Sept. 30, 2005)

**PRIOR HISTORY:** Evans v. Port Auth., 2004 U.S. Dist. LEXIS 19055 (S.D.N.Y., Sept. 24, 2004)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee brought discrimination and retaliation claims against defendant port authority. The court previously granted a partial summary judgment in favor of the authority, but hostile work environment (HWE) and retaliation claims remained. Pending before the court was the authority's motion in limine.

**OVERVIEW:** The authority sought to preclude the employee from offering evidence that the authority had a custom and practice of creating a HWE. The court noted that because the employee's retaliation claims were weak, the court would bifurcate the trial to try first the retaliation and HWE claims, together with factual issues bearing on whether responsible actors were policy making officials. In the event that the employee proved retaliation or HWE but failed to prove that actors were policy makers, the court would proceed to try the Monell issue separately. On the basis of issue and claim preclusion, the court further found that the employee could not relitigate issues and claims that he was subjected to an HWE and that he was passed over for promotion during the period covered by a previous case. Thus, exhibits pertaining to those claims were excluded. The court established a date by which the employee was to provide requested medical authorizations and to submit to an independent medical examination. Finally, absent evidence of prejudice, the court refused to exclude witnesses that were present or former employees of the authority even though the employee failed to disclose them.

**OUTCOME:** The court granted the authority's motion in limine to the extent that it severed the trial, that certain exhibits of the employee were excluded, and that the employee was to provide the authority with requested medical authorizations and was to submit to an independent medical examination. The court otherwise denied the motion.

**COUNSEL:** **[*1]** For Neville Evans, Plaintiff: Stephen Theodore Mitchell, The Law Firm of Stephen T. Mitchell, New York, NY.

For The Port Authority of New York & New Jersey, Defendant: Megan Lee, Milton H. Pachter, New York, NY.

**JUDGES:** Lewis A. Kaplan, United States District Judge.

Get a Document by Citation 96 Fair Empl. Prac. Cas. (BNA) 1013

Case 3:00-cv-01124-WIG    Document 174-3    Filed 05/11/2007    Page 20 of 23    Page 2 of 5

**OPINION BY:** Lewis A. Kaplan

**OPINION: ORDER**

LEWIS A. KAPLAN, *District Judge.*

The complicated history of the disputes between these parties is summed up in decisions in the prior action between them n1 and the Court's decision granting partial summary judgment of dismissal in this action, n2 familiarity with which is assumed. What remains are plaintiff's claims that he was retaliated against and subjected to a hostile work environment ("HWE") in that he was (1) placed on AWOL status in May 2002, and (2) excluded in 2003 from consideration for specific four job assignments in the defendants Tunnels, Bridges & Tolls Department. The matter now is before the Court on defendant's motion *in limine.*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 No. 00 Civ. 5753 (LAK).

n2 *Evans v. Port Auth. of. N.Y. & N.J.,* 2004 U.S. Dist. LEXIS 19055, No. 02 Civ. 3482 (LAK), 2004 WL 2137347 (S.D.N.Y. Sept. 24, 2004, as amended Apr. 25, 2005).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*2]**

1. Defendant first moves to preclude plaintiff from offering evidence that the Port Authority has a custom and practice of creating an HWE by retaliating against African-American employees who complain about racial discrimination. It argues that the evidence is not relevant, that it would be unfairly prejudicial, and that it would result in needless confusion and prolongation of the trial.

Plaintiff acknowledges that the Court's summary judgment ruling limited his claim to the specific matters referred to above. He nevertheless argues that custom and practice evidence is necessary or, at least, relevant to demonstrating that any retaliation against him in the instances referred to above is attributable to the Port Authority under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 661 n.2, 690-91, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), and its progeny.

Plaintiff is correct in asserting that the defendant may not be held liable for any violation of 42 U.S.C. §§ 1981, 1983, on the basis of *respondeat superior.* "In order to cast a municipality in damages for a Section 1983 violation by one of its agents, the plaintiff must plead and prove that the injury complained **[*3]** of was the consequence 'of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. . . .'" *Blasetti v. Pietropolo,* 213 F. Supp. 2d 425, 430 (S.D.N.Y.2002) (quoting *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 694 (1978)). Thus, while a plaintiff sometimes may satisfy *Monell* circumstantially, by demonstrating official indifference to repeated similar discriminatory acts, that is not the only possible route. A ready alternative may be proof that the conduct complained of was committed by a municipal employee whose actions constitute official policy. *See, e.g., Rookard v. Health and Hosps. Corp.,* 710 F.2d 41, 45 (2d Cir. 1983).

In order to prevail on his retaliation claim here, plaintiff first will have to prove that the actions complained of occurred and that the actors responsible were motivated, at least in part, by a desire to retaliate against him for his prior lawsuit. If he fails to do both, any

Get a Document by Citation - 96 Fair Empl. Prac. Cas. (BNA) 1015    Page 21 of 23    Page 3 of 5

Case 1:04-cv-04124-WCG   Document 44-3   Filed 05/11/2007   Page 21 of 23

question of Port Authority liability would be eliminated. Even if he proves both, he may succeed in establishing that the responsible actors **[*4]** were policy making officials in the sense relevant under *Monell.*

As the Court noted previously, plaintiff's retaliation claims are weak. The *Monell* issue therefore may prove to be entirely academic. The evidence of alleged retaliatory incidents involving others threatens undue prejudice that should be avoided, at least unless it is necessary to decide the case. Accordingly, the Court will further divide the trial. n3 It will try the retaliation and HWE claims, together with any factual issues bearing on whether the responsible actors were policy making officials, first. During that proceeding, evidence of any alleged custom and practice will not be received. In the event plaintiff succeeds in proving retaliation or HWE, but fails to prove that the responsible actors were policy makers, it will proceed to try the circumstantial *Monell* issue and damages separately in an order yet to be determined. The Court reserves any ruling on the scope of the circumstantial proof on the *Monell* issue.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 It already has bifurcated liability from damages. 2004 U.S. Dist. LEXIS 19055, 2004 WL 21376347, at *5.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*5]**

2. Defendant next seeks to preclude plaintiff from relitigating issues raised in his prior action.

In *Evans v. Port Authority of New York and New Jersey,* 2004 U.S. Dist. LEXIS 19055, 02 Civ. 3482 (LAK) *("Evans I"),* plaintiff claimed that he repeatedly was passed over for promotion and subjected to an HWE on the basis of his race and that he was retaliated against on two occasions for complaining about alleged discrimination at the Authority. In an opinion reported at 192 F. Supp. 2d 247 (S.D.N.Y. 2002), the Court granted summary judgment dismissing all of these claims save for Title VII and Section 1981 claims based on four of a larger number of alleged failures to promote the plaintiff. One of the surviving failures to promote involving claims of disparate treatment and retaliation, but the other retaliation claim was dismissed for failure of proof. The HWE claim was dismissed on the basis of plaintiff's having failed to adduce evidence sufficient to go to the jury. Following a trial on the remaining claims, the jury found for the defendants on all claims.

The judgment in *Evans I* has two effects. First, the principle of claim preclusion forecloses all claims that were or might have **[*6]** been raised in that action. Thus, plaintiff may not in this action obtain any relief in respect of claims that he asserted or could have asserted in *Evans I.* Second, issue preclusion bars plaintiff from relitigating any issue that was actually litigated and necessarily decided in the prior action. These principles guide the disposition of this branch of the motion.

*Evans I* actually and necessarily decided that plaintiff was not subjected to an HWE and that he was not passed over for promotion on the basis of race during the period covered by that case. It similarly determined that he was not passed over for promotion in the two incidents in question for complaining about discrimination. Accordingly, plaintiff may not relitigate those issues. Plaintiffs proposed exhibits 42 to 59 appear to relate only to those issues and are excluded. It seems likely also that much other evidence that plaintiff proposes to offer must be excluded under issue or claim preclusion principles and/or Rule 403, but the motion papers now before the Court are insufficiently specific to permit detailed determinations. The parties shall meet and confer in an effort to narrow the issues, failing which **[*7]** the defendant may make a more detailed motion *in limine* with respect to any evidentiary

Get a Document by Citation - 96 Fair Empl. Prac. Cas. (BNA) 1011    Page 22 of 23

Case 3:06-cv-01124-WIG   Document 17-3   Filed 05/11/2007   Page 4 of 5

questions that remain in dispute.

3. Defendant next moves to preclude plaintiff from calling his health care providers as witnesses on the ground that plaintiff never responded to interrogatories seeking expert disclosure, never provided authorizations to obtain his medical records from two of the three witnesses, and never appeared for an independent medical examination.

As this case is not ready for trial, plaintiff shall provide the defendant with all requested medical authorizations no later than September 27, 2005. He shall submit to independent medical examination no later than October 31, 2005.

4. Defendant seeks to preclude plaintiff from calling Sandra Mitchell, Linda Kochenberger, Joseph Seymour, Cedric Fulton, Joanne McPherson and Joanne Cocozzielo as witnesses, essentially on the grounds that plaintiff failed to disclose them as persons with knowledge, that they have no relevant information or both.

All of these witnesses are present or former employees of defendant. Absent evidence that defendant has been prejudiced because they for some reason are not available to it for **[*8]** interview, the Court will not exclude them, at least at this point.

For the foregoing reasons, the motion *in limine* is granted to the extent that the trial is severed as indicated above, Plaintiffs Exhibits 42-59 are excluded, plaintiff shall provide the defendant with all requested medical authorizations no later than September 27, 2005 and shall submit to independent medical examination no later than October 31, 2005, and otherwise denied. Following further discussions between the parties, defendant may renew its *in limine* motion on a more specific showing. The parties are further cautioned that the issues remaining to be tried in this case are few and narrow. If they are unable to give assurance that the case will be tried in a period consistent with that fact, the Court will impose time limits on their presentations at trial.

SO ORDERED.

Dated: September 13, 2005

Lewis A. Kaplan

United States District Judge

Service: **Get by LEXSEE®**
Citation: **96 Fair Empl. Prac. Cas. (BNA) 1011**
View: Full
Date/Time: Wednesday, May 9, 2007 - 3:08 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed by first-class mail, postage prepaid to all counsel and *pro se* parties of record on this 10th day of May, 2007, as follows: Karen Torre, Esquire, Law Offices of Karen Lee Torre, 51 Elm Street, Suite 307, New Haven, Connecticut 06510.

_____
Lori B. Alexander
Federal Bar No. CT08970