UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DENISE EVARTS, | : | CIVIL ACTION NO. |
| | : | 3:00CV1124 (WIG) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| THE SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY, | : | |
| | : | |
| *Defendant.* | : | MAY 30, 2007 |

**DEFENDANT'S SUPPLEMENT TO JOINT TRIAL MEMORANDUM**

The defendant, the Southern New England Telephone Company, hereby files its supplement to the Joint Trial Memorandum in this case. The Supplement is being filed because these sections were inadvertently omitted from the Joint Trial Memorandum previously filed by the parties.

**Plaintiff's Objections to Defendant's Witnesses[1]**

*Defendant's Fact Witnesses*:

1.  Matthew Cordner

Anticipated testimony: Mr. Cordner, who was the plaintiff's supervisor in the Coin Services group, will testify about events during the plaintiff's employment in his work group and incidents alleged by the plaintiff to have occurred involving him. His testimony will include his supervisory decisions concerning the plaintiff, as well as the events plaintiff claims constituted unlawful discrimination. Mr. Cordner will also testify concerning his employment history, management style, and his treatment of male employees in the same work group. He will also testify concerning his treatment of plaintiff during her sister's illness and at other times during her employment in his group.

2.  Ed Dillman

---

[1] While defendant's witnesses were included, plaintiff's objections to the witnesses were not.

1

Anticipated testimony: Mr. Dillman, who was the manager of the Payphone Services group, will testify concerning SNET's policies and expectations, the company's treatment of Ms. Evarts, and Ms. Evarts' performance. Ms. Dillman will also testify concerning his interactions with Ms. Evarts and his observations concerning Matt Cordner's management style.

    3.    Pat Kinsella

Anticipated testimony: Mr. Kinsella will testify in response to plaintiff's claims concerning a satellite office in North Madison and will testify concerning his supervision of plaintiff while at SNET.

**PARTIAL OBJECTION:**

Plaintiff does not object to testimony from Mr. Kinsella concerning the issue of a North Madison satellite office. Plaintiff does object, on the ground of relevance, to testimony "concerning his supervision of plaintiff while at SNET." The issue in this case is Mr. Cordner's and Mr. Dillman's treatment of Evarts.

    4.    Wanda Lewis

Anticipated testimony: Ms. Lewis will testify concerning her supervision of plaintiff.

**OBJECTION:**

SNET's description of the anticipated testimony of this witness is woefully inadequate and does not sufficiently apprise the plaintiff or the court of the nature of the testimony. Plaintiff otherwise objects to any testimony from Ms. Lewis as irrelevant to the issue of whether plaintiff suffered an unlawful hostile working environment while under the management of Messrs. Cordner and Dillman. Ms. Lewis was a former supervisor of the plaintiff and her supervision of plaintiff would be wholly irrelevant to the issue before the jury.

    5.    Deborah MacDonald

Anticipated testimony: Ms. MacDonald will testify concerning SNET's policies and procedures.

    6.    Deborah Guarnieri

Anticipated testimony: Ms. Guaranieri, plaintiff's Union steward during the relevant time, will testify about her participation in a May 2, 1997 meeting concerning plaintiff's timesheets, SNET's policies and procedures, and her reactions to the timesheet issue.

    7.    Marianne Esposito

Anticipated testimony: Ms. Esposito will testify concerning SNET's policies and procedures and the work environment in Network Services.

**OBJECTION:**

SNET's description of the anticipated testimony of Ms. Esposito is inadequate. Plaintiff further objects to any testimony by Ms. Esposito as irrelevant to the issue before the jury. Ms. Esposito's own experience with her work environment in Network Services is irrelevant to the issue of whether the plaintiff was subjected to a hostile work environment.

8.  Sally Sanderson

Anticipated testimony: Ms. Sanderson will testify concerning her interactions with Matt Cordner.

**OBJECTION:**

SNET's description of the anticipated testimony of Ms. Sanderson is inadequate. Plaintiff further objects to any testimony by Ms. Esposito as irrelevant to the issue before the jury. Ms. Sanderson's own experience with her work environment in Network Services is irrelevant to the issue of whether the plaintiff was subjected to a hostile work environment.

9.  Sandra Rhodes

Anticipated testimony: Ms. Rhodes will testify concerning her treatment of Ms. Evarts at approximately the time of her resignation and the stressors that caused Ms. Evarts emotional distress during the relevant time.

10. Connie Rogers

Anticipated testimony: Ms. Rogers will testify concerning her internal investigation of plaintiff's complaint after plaintiff resigned from SNET.

11. Robert Bock

Anticipated testimony: Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

12. Steven Boisvert

Anticipated testimony: Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

13. William Fairbrother

Anticipated testimony: Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

14. Oswald Gardner

Anticipated testimony: Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

15.  David Kapral

Anticipated testimony: Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

16.  Lou Marino

Anticipated testimony: Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

17.  Robert Reiss

Anticipated testimony: Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

18.  Michael Tobin

Anticipated testimony: Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

19.  Mark Richardson

Anticipated testimony: Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

20.  James Verrastro

Anticipated testimony: Will testify concerning plaintiff's claims, interactions with plaintiff, and the work environment in Payphone Services in 1996-1997.

**Expert Witnesses**

*Plaintiff's Expert Witnesses*

None.

*Defendant's Expert Witnesses*

Stuart Sachnin, vocational economist, will testify as an expert witness for SNET on the issue of plaintiff's failure to mitigate her damages. Mr. Sachnin's opinion will be in accordance with his expert report dated November 9, 2001 (attached). The materials on which he intends to rely and his curriculum vitae are also attached.

**DEFENDANT'S EXHIBITS**

584     Evarts statement to Unemployment

585        List of Payphone Services employees submitted to CHRO

586        Job description submitted to CHRO

(Copies of the above exhibits were provided to plaintiff's counsel with SNET's other exhibits on May 24, 2007.)

   Dated at North Haven, Connecticut this 30th day of May, 2007.

                               THE DEFENDANT,

                               SOUTHERN NEW ENGLAND
                               TELEPHONE COMPANY

By: _____
             Lori B. Alexander, Esquire
             Federal Bar No. ct08970
             Deborah D. Cannavino, Esquire
             Federal Bar No. ct08144
             Littler Mendelson, P.C.
             110 Washington Avenue
             North Haven, CT 06473
             Tel. (203) 234-6344
             Fax: (203) 234-6345
             E-mail: lalexander@littler.com
             lalexander@littler.com
             dcannavino@littler.com



**Tyler Cooper
& Alcorn,** LLP

*Counsellors at Law*

Lori B. Alexander
203.784.8270
Fax: 203.789.2133
alexander@tylercooper.com

205 Church Street
P.O. Box 1936
New Haven, CT
06509-1910
203.784.8200

New Haven
Hartford
Stamford
Madison

November 9, 2001

Karen L. Torre, Esquire
Law Office of Karen Lee Torre
51 Elm Street, #307
New Haven, Connecticut 06510

*Re:* *Denise Evarts v. The Southern New England Telephone Company*

Dear Attorney Torre:

    Pursuant to Rule 26 of the Federal Rules of Civil Procedure, SNET hereby discloses Stuart W. Sachnin, M.S., M.B.A., C.R.C., as an expert witness to testify on its behalf in this case. He will testify in accordance with his written report enclosed herein.

                            Very truly yours,

                            Lori B. Alexander

LBA:mjd
Enclosures

cc:    Carole Wilder, Esquire

OFFICES IN MOST
U.S. METROPOLITAN AREAS
NATIONAL HEADQUARTERS
502-589-0995

# VOCATIONAL ECONOMICS, INC.

110 WILLIAM STREET
31ST FLOOR
NEW YORK, NY 10038

212-732-5188
FAX: 212-964-7418

WWW.VOCECON.COM

November 9, 2001

Ms. Lori Alexander
Attorney at Law
Tyler Cooper & Alcorn
205 Church Street
P.O. Box 1936
New Haven, CT 06509-1910

RE: Denise Evarts

Dear Ms. Alexander:

Upon your request, an assessment was made of Denise Evarts' capacity to perform work and earn money as of June 1, 1997. A future stream of earnings was projected based upon her expected date of graduation from Quinnipiac Law School in May of 2002. In conducting the assessment, information provided by your office was reviewed as well as projections and statistics from the U.S. Department of Labor and the Connecticut Department of Labor.

**Information Reviewed:**

Plaintiff's Complaint – 6/16/00;
Plaintiff's Damages Analysis Through April 2001 – 5/4/01
Deposition of Denise Evarts – 6/13/01;
Deposition of Denise Evarts – 9/14/01;
Deposition of Frederick Evarts – 9/26/01;
America's Career InfoNet @ http//www.acinet.org – Website presenting compiled statistics for Employment & Occupational Data on 11/6/01, from the:
    U.S. Bureau of Labor Statistics;
    Occupational Employment Statistics Survey;
    Office of Employment Projections.
    Connecticut Department of Labor, Labor Market Information:
- *Fastest Growing Occupations – Requiring Post-Secondary Training or an Associate's Degree – Connecticut, 1998 to 2008;*
- *Fastest Growing Occupations — Requiring a Bachelor's Degree or Higher – Connecticut, 1998 to 2008;*
- *Occupations with the Most Openings – Requiring a Bachelor's Degree or Higher – Connecticut,* based on 1998 employment;
- *Occupations with the Most Openings - Requiring Post-Secondary Training or an Associate's Degree – Connecticut,* based on 1998 employment.

THE MISSION OF VEI IS TO IMPARTIALLY QUANTIFY MONETARY DAMAGES INCURRED BY PERSONS WRONGFULLY DISABLED OR OTHERWISE VICTIMIZED BY A TORT.

Occupation Reports on Wages and Trends (based on 1998 median hourly and annual earnings along with Midrange, 1998 hourly and annual earnings) for the following occupations:
- Station Installers and Repairers, Telephone;
- Job Search Results for Telecommunications Equipment Installers/Repairers;
- Computer Support Specialists;
- General Managers and Top Executives.
- Lawyers:
    - Detailed Wages – Comparing earnings in five local areas within Connecticut: Bridgeport, Danbury, Hartford, New Haven-Meriden, and Waterbury.

**Comments:**

The information reviewed reveals Denise Evarts to be a married, 37.4-year-old (DOB: May 22, 1964), mother of three children, Kyle, age six (June 27, 1995), and twins Dylan and Sarah born in March of 2001.

Ms. Evarts' deposition testimony reveals that she received an Associate's Degree in Computer Programming in 1984 and received a Bachelors of Science Degree in Business Management in May 1997. As of August 1998, she has been attending Quinnipiac Law School and is scheduled to graduate in May of 2002.

In January of 1987, Ms. Evarts became employed by SNET as a Repair Service Clerk. During the summer of 1989 she received a promotion to the position of a Service Technician in the Payphone Services Department, where she installed and repaired payphones. She remained in this position until May 30, 1997. Ms. Evarts submitted her resignation on May 16, 1997, to be effective as of May 30, 1997. At the time her son Kyle was approaching his 2nd birthday.

According to her husband, Frederick Evarts, the couple had made a mutual decision that Ms. Evarts would stay at home in 1997 after she left SNET.

Since resigning from SNET, Ms. Evarts has worked very little. She functioned as a babysitter from May 1998 through August 1998 claiming to work forty hours per week, earning $135 per week stated in terms of 1998 dollars.

During 1998, Ms. Evarts claims she decided to apply to law school and took the LSAT. She started Law School at Quinnipiac College in August 1998 as a part-time student. The program was set up to accommodate students who work full-time during the day, and was therefore an evening program.

From May 1999 to December 2000, Capusta & Otsel employed Ms. Evarts part-time as a Title Searcher and paid her $50 per search. Ms. Evarts claims that her hours varied according to the amount of work available. In March of 2001, she gave birth to the twins. Ms. Evarts has not worked since December 2000. During law school, she has not attempted to obtain any position as a summer associate or clerk at a law firm.

Ms. Lori Alexander
November 9, 2001
Page 3

Ms. Evarts stated in her deposition dated September 14, 2001 that during the summer of 1997 she had applied for three or four jobs similar to her position at SNET. She reported that she responded to ads but did not go on any interviews. She has made no attempt since to seek or find work even though she had recently received a Bachelor's Degree in Business Management in May of 1997, the last month of her employment at SNET. The plaintiff claims that her 1997 base compensation at SNET was $48,056 stated in terms of 1997 dollars.

Upon request, we have been asked to provide a reasonable projection of the plaintiff's earning capacity at the time of her resignation and project her future stream of earnings as a lawyer as of May 2002. In addition, we have projected the plaintiff's earning capacity based on a full worklife to age 67.

As previously mentioned, the plaintiff received a Bachelors of Science degree in Business Management in May 1997. The occupation that is ranked first among "Occupations with the Most Openings in the State of Connecticut" is that of General Managers & Top Executives. The job description is as follows:

> "Top and middle managers whose duties and responsibilities are too diverse in nature to be classified in any functional or line area of management and administration. These managers generally work through departmental or subordinate executives."

Based on plaintiff's background and qualifications, it is my opinion that she was qualified for such business-related managerial jobs. Had the plaintiff made a reasonable and good-faith effort, she would, without a doubt, have found her way into a management position or training program. In 1998, the median annual salary in the State of Connecticut was equal to $74,800, stated in terms of 1998 dollars. The midrange is from $44,900 to $122,300 per annum. Once again, we used the low end of the midrange to reflect her entry-level salary for this group of occupations, or $43,592 per annum, stated in terms of 1997 dollars. A 3% wage growth rate is added annually, up to the time that she would be able to enter the labor market as an Attorney.

We also considered the "Fastest Growing Occupations" and the "Occupations with the Most Openings" in the State of Connecticut, for individuals with post-secondary training or an Associate's degree. As previously mentioned, the plaintiff received an Associate's degree in Computer Programming in 1984. The occupation that is ranked first among the Fastest Growing and ranked 2nd amongst Occupations with the Most Openings is that of Computer Support Specialist. The job description is as follows:

> "Provide technical assistance and training to computer system users. Investigate and resolve computer software and hardware problems of users. Answer clients' inquiries in person and via telephone concerning the use of computer hardware and software, including printing, word processing, programming languages, electronic mail, and operating systems."

Based on plaintiff's background and qualifications, it is my opinion that she was qualified for such a position as computer support specialist in 1997 and today. The median earnings for Computer Support Specialists in the state of Connecticut are $44,400 per annum. She was also qualified to perform entry level computer programming tasks which were in high demand in light of Y2K issues.

Finally, we have projected her future stream of earnings as an Attorney, starting in September of 2002. Due the nature of the occupation, a 4.8% growth rate is used to reflect annual increases in salary or earnings. Attorneys practicing in the New Haven-Meriden labor market earned an annual median wage of $82,600, stated in term of 1998 dollars. The midrange is from $47,800 to $121,000 per annum. The lowest for earners at the 25th percentile for the five geographic areas including Bridgeport, Danbury, Hartford, and Waterbury is $47,800. This figure was grown to reflect the equivalent amount in 2002 dollars, or $56,763 per annum, as an entry level starting salary.

The "Midrange" is the range of wages for the middle 50% of the occupation; 25% of workers in the occupation earn less then the lower midrange estimate; and 25% of the workers in the occupation earn more than the higher midrange estimate.

In terms of her future earnings potential, plaintiff has an earning potential of $3,449,719.39, which is significantly more than would be anticipated if she had remained a Services Technician for SNET.

When consideration is given to Ms. Evarts age, education, and previous work experience, it is my professional opinion that the plaintiff has the capacity to perform a large number of occupations within several occupational groups. The client is qualified to perform numerous jobs that fall within the following major job groups: Management Occupations; Office & Administrative Support Occupations; Personal Care & Service Occupations; Sales & Related Occupations; Installation, Maintenance, and Repair Occupations; Computer & Mathematical Occupations; and Community and Social Service Occupations. As of May 2002 she will be qualified to perform various types of Legal Occupations.

Therefore it is my opinion that if she so desired Ms. Evarts would have had little or no difficulty whatsoever in obtaining employment from the time of her resignation to the present.

My opinions are based upon the review of the information provided, the job descriptions and wage and trend analysis as reflected in the documents based on Federal and State labor department information provided through America's Career InfoNet

The billing for the assessment provided is based upon an hourly rate of $175. Actual time for testimony provided at depositions and at trial is billed at the rate of $350 per hour.

Ms. Lori Alexander
November 9, 2001
Page 5

Please advise if we can be of any further assistance.

Sincerely,
VOCATIONAL ECONOMICS, INC.

For the Firm

Stuart W. Sachnin MS, MBA, CRC

For the Firm

Andrew Gluck, EdD, CRC

# WAGE ANALYSIS: WORKING LIFE OF DENISE EVARTS

| Year | Age | Bus. Mgr. Potential |
|---|---|---|
| 6/97 to 12/97 | 33 | $ 21,796.12 |
| 1998 | 34 | $ 44,900.00 |
| 1999 | 35 | $ 46,247.00 |
| 2000 | 36 | $ 47,634.41 |
| 2001 | 37 | $ 49,063.44 |

**$209,640.97** Past Earning Capacity, With Effort to Mitigate Damages

| Year | Age | Bus. Mgr. Potential | Attorney Potential |
|---|---|---|---|
| 2002 | 38 | $ 33,858.68 | $ 17,921.00 |
| 2003 | 39 | | $ 56,344.18 |
| 2004 | 40 | | $ 59,048.70 |
| 2005 | 41 | | $ 61,883.04 |
| 2006 | 42 | | $ 64,853.42 |
| 2007 | 43 | | $ 67,966.39 |
| 2008 | 44 | | $ 71,228.77 |
| 2009 | 45 | | $ 74,647.76 |
| 2010 | 46 | | $ 78,230.85 |
| 2011 | 47 | | $ 81,985.83 |
| 2012 | 48 | | $ 85,921.25 |
| 2013 | 49 | | $ 90,045.47 |
| 2014 | 50 | | $ 94,367.66 |
| 2015 | 51 | | $ 98,897.30 |
| 2016 | 52 | | $ 103,644.37 |
| 2017 | 53 | | $ 108,619.30 |
| 2018 | 54 | | $ 113,833.03 |
| 2019 | 55 | | $ 119,297.02 |
| 2020 | 56 | | $ 125,023.27 |
| 2021 | 57 | | $ 131,024.39 |
| 2022 | 58 | | $ 137,313.56 |
| 2023 | 59 | | $ 143,904.61 |
| 2024 | 60 | | $ 150,812.03 |
| 2025 | 61 | | $ 158,051.01 |
| 2026 | 62 | | $ 165,637.48 |
| 2027 | 63 | | $ 173,588.06 |
| 2028 | 64 | | $ 181,920.28 |
| 2029 | 65 | | $ 190,652.46 |
| 2030 | 66 | | $ 199,803.76 |
| 2031 | 67 | | $ 209,394.36 |

**$ 3,449,719.39** Projected Future Income

## Curriculum Vitae

### Stuart W. Sachnin, MS.Ed., M.B.A., CRC

| | |
|---|---|
| **BUSINESS ADDRESS:** | Vocational Economics, Inc.<br>110 William St 31st Floor<br>New York, NY 10038-4401<br>(212) 732-5188 |
| **DATE OF BIRTH:** | October 17, 1950 |

**EDUCATION:**

| | |
|---|---|
| August 1994 | University of Nevada at Las Vegas, Las Vegas, Nevada<br>Department of Economics<br>    *Finance for Vocational Rehabilitation Professionals* |
| January 1994 | University of Nevada at Las Vegas, Las Vegas, Nevada<br>Department of Economics<br>    *Postgraduate study in Principles of Economics for Professionals* |
| Summer 1993 | University of Nevada at Las Vegas, Las Vegas, Nevada<br>Department of Economics<br>    *Postgraduate study in Labor Economics* |
| 9/76 to 12/79 | Iona College, New Rochelle, New York<br>    *M.B.A.* |
| 9/72 to 5/74 | Hunter College, CUNY, New York, New York<br>    *MS.Ed.: Rehabilitation Counseling* |
| 9/68 to 5/72 | Herbert H. Lehman College, CUNY, Bronx, New York<br>    *B.A.: Liberal Arts*<br>    *Major: Psychology*<br>    *Minor: Economics* |

**WORK EXPERIENCE:**

| | |
|---|---|
| 9/93 to Present | Vocational Economic Analyst, Vocational Economics, Inc., New York, New York<br>    *Supervise and conduct assessments to analyze earning capacity in cases of injury, death or discrimination. Provide vocational rehabilitation counseling, assessment, consultation to adult disabled and nondisabled clients.* |

| | |
|---|---|
| 5/97 to 5/98 | *Review cases and interview clients for the Disability Claims Units covering New York & Mid-Atlantic Regions. Define the occupation and determine employability through use of interviews, Transferable Skills Analysis & Labor Market Surveys. Develop and coordinate a rehabilitation plan. Software used includes Job Analyzer and Oasys.* |
| 6/95 to 5/97 | Economic Research Analysis for the Federal Reserve Board, National Opinion Research Center, University of Chicago, Illinois<br>*Conducting on-going research for "Study of Consumer Finances;" results impact National Economic Policy.* |
| 7/91 to 2/94 | Vocational Coordinator, Project Contact of the Educational Alliance, New York, New York<br>*Supervise counseling staff and provide direct client services for four NYS funded substance abuse treatment programs in the areas of vocational and educational counseling and placement of recovering disabled clients.* |
| 9/90 to 2/91 | Rehabilitation Supervisor/Social Services Consultant, B.R.C. Human Services Corporation and Catholic Archdiocese of New York, New York, New York<br>*Supervised staff in the delivery of case management services to an adult MICA (mentally ill, chemically addicted) population in a supported single room occupancy residence (SRO) owned by the Catholic Archdiocese. Coordinated intake procedures under the NY/NY agreement dealing with single homeless adults with a psychiatric diagnosis.* |
| 9/88 to 6/90 | Financial Consultant/Sales Representative, the New York Life Insurance Company, New York, New York<br>*Specialized in sale of financial products to individual, small to medium sized businesses as well as group health/life and benefit plans. Involved with continuation of benefits interpretation of COBRA.* |
| 9/87 to 6/88 | Legal Recruiter, The R. J. Lipton Management Company, New York, New York<br>*Recruited and placed associates and partners in the major New York law firms. Screened, evaluated, counseled, referred, negotiated, and placed.* |
| 9/86 to 8/87 | Financial Manager, SWS, Inc., Tarrytown, New York<br>*Managed personal financial investments through computerized analysis of market conditions.* |
| 9/79 to 8/86 | Consultant/Marketing Representative, Plastic Box Corporation, Woodridge, New Jersey<br>*Coordinated the development and production of clear plastic packaging for major companies in the* |

|  |  |
|---|---|
|  | *industries. Assisted product line executives in design development and production. Instrumental in the software design and computerization of office functions while increasing efficiency of production and manufacturing processes.* |
| 11/74 to 9/79 | Director, Vocational Rehabilitation, New York City Health and Hospitals Corporation, Van Etten Hospital, Comprehensive Alcoholism Treatment Unit, Bronx, New York<br>*Supervised counseling staff and provided direct client services in the area of vocational and educational counseling to an adult population in an inpatient and outpatient program. Developed vocational opportunities, referred for training, and placed recovering alcoholics, many with physical disabilities.* |
| 2/73 to 5/74 | Vocational Rehabilitation Counseling Intern, Bronx Municipal Hospital Center, New York City Health and Hospitals Corporation, Physical Medicine Rehabilitation Unit.<br>*Provided direct client services in the area of vocational/educational counseling and referral of disabled clients.* |
| 2/73 to 5/74 | Group Leader, The New York Light House for the Blind, New York, New York<br>*Supervised recreational activities in a weekend recreational program for physically disabled blind adolescents.* |

## PRESENTATIONS AND PUBLICATIONS:

Sachnin, S. W., R. S. David-Harris, and A. L. Gluck. "The Impact of Reduced Worklife Expectancy on Lifetime Loss of Earnings by Disabled Persons." *Trial Lawyers Quarterly*, Spring 1999, published by the New York State Trial Lawyers Institute.

Sachnin, S.W. "Review & Analysis of CPLR 50A & 50B." Presented at conference on Traumatic Brain Injury held at the New York Athletic Club, December 1993.

Sachnin, S.W. "Assessment of Economic Damages in Partial Disability Cases." Present seminars for New York City Trial Lawyers, 1994 through present.

Sachnin, S.W. "Assessment of Economic Damages in Partial Disability Cases." Presented at University of Nevada for Vocational Economic Analysts, August 1994.

Sachnin, S.W. "Outline of 5 Step Process in Assessment of Economic Damages," Brooklyn Trial Lawyers Association, March 1995.

Sachnin, S.W. "The Role of the Vocational Economic Analyst in Employment Discrimination & Wrongful Termination Cases." Presented fro NELA (Nat'l Employment Lawyers Association New York Chapter), March 1997.

Sachnin, S.W. "The Role and Methodology used by the Vocational Economic Analyst In the Assessment of Economic Damages". Presented for the Albany Capital Trial Lawyers Association, March 1997.

## SOCIO-ECONOMIC RESEARCH:

6/95 to 5/97   Research, NORC, University of Chicago, Lake Park Chicago, Illinois
Economic Research
Political Science
> *Conducted field survey that laid the groundwork for the "National Issues Convention." January 1996 Austin, Texas*

Health Cost Services and Utilization Study, The National Institute of Mental Health and The Rand Corporation
> *Examining the care and costs that HIV positive individuals are receiving across the nation.*

## PROFESSIONAL ASSOCIATIONS:
National Association of Forensic Economists
New York Academy of Sciences
Commission on Rehabilitation Counseling
Certified Rehabilitation Counselor CRC (10/92)
American Rehabilitation Counseling Association
Association of Vocational Rehabilitation Advocates
Association of Vocational Rehabilitation Advocates for Substance Abusers (AVRASA)

## SERVICE:

| | |
|---|---|
| 9/91 to 2/94 | Third Chair Member of AVRASA Executive Committee |
| 9/91 to 2/94 | Member of Committee on Funding Streams |
| 9/91 to 2/94 | Member of Job Bank Committee |
| 9/71 to 5/72 | President of Herbert H. Lehman Chapter of PSI-CHI National Honor Society of Psychology |
| 9/68 to 6/68 | Vice President of Senior Class-James Monroe High School, Bronx, New York |
| 9/67 to 6/68 | Member of Executive Committee-James Monroe High School, Bronx, New York |
| 6/68 | American Legion Award |

Revised August 2000

# WAGE ANALYSIS: WORKING LIFE OF DENISE EVARTS

| Year | Age | Bus. Mgr. Potential | |
|---|---|---|---|
| 6/97 to 12/97 | 33 | $ 21,796.12 | |
| 1998 | 34 | $ 44,900.00 | |
| 1999 | 35 | $ 46,247.00 | |
| 2000 | 36 | $ 47,634.41 | |
| 2001 | 37 | $ 49,063.44 | |

$209,640.97 Past Earning Capacity, With Effort to Mitigate Damages

| Year | Age | Bus. Mgr. Potential | Attorney Potential |
|---|---|---|---|
| 2002 | 38 | $ 33,858.68 | $ 17,921.00 |
| 2003 | 39 | | $ 56,344.18 |
| 2004 | 40 | | $ 59,048.70 |
| 2005 | 41 | | $ 61,883.04 |
| 2006 | 42 | | $ 64,853.42 |
| 2007 | 43 | | $ 67,966.39 |
| 2008 | 44 | | $ 71,228.77 |
| 2009 | 45 | | $ 74,647.76 |
| 2010 | 46 | | $ 78,230.85 |
| 2011 | 47 | | $ 81,985.83 |
| 2012 | 48 | | $ 85,921.25 |
| 2013 | 49 | | $ 90,045.47 |
| 2014 | 50 | | $ 94,367.66 |
| 2015 | 51 | | $ 98,897.30 |
| 2016 | 52 | | $ 103,644.37 |
| 2017 | 53 | | $ 108,619.30 |
| 2018 | 54 | | $ 113,833.03 |
| 2019 | 55 | | $ 119,297.02 |
| 2020 | 56 | | $ 125,023.27 |
| 2021 | 57 | | $ 131,024.39 |
| 2022 | 58 | | $ 137,313.56 |
| 2023 | 59 | | $ 143,904.61 |
| 2024 | 60 | | $ 150,812.03 |
| 2025 | 61 | | $ 158,051.01 |
| 2026 | 62 | | $ 165,637.48 |
| 2027 | 63 | | $ 173,588.06 |
| 2028 | 64 | | $ 181,920.28 |
| 2029 | 65 | | $ 190,652.46 |
| 2030 | 66 | | $ 199,803.76 |
| 2031 | 67 | | $ 209,394.36 |

$ 3,449,719.39 Projected Future Income

## Curriculum Vitae

### Stuart W. Sachnin, MS.Ed., M.B.A., CRC

**BUSINESS ADDRESS:** Vocational Economics, Inc.
110 William St 31st Floor
New York, NY 10038-4401
(212) 732-5188

**DATE OF BIRTH:** October 17, 1950

**EDUCATION:**

| | |
|---|---|
| August 1994 | University of Nevada at Las Vegas, Las Vegas, Nevada<br>Department of Economics<br>*Finance for Vocational Rehabilitation Professionals* |
| January 1994 | University of Nevada at Las Vegas, Las Vegas, Nevada<br>Department of Economics<br>*Postgraduate study in Principles of Economics for Professionals* |
| Summer 1993 | University of Nevada at Las Vegas, Las Vegas, Nevada<br>Department of Economics<br>*Postgraduate study in Labor Economics* |
| 9/76 to 12/79 | Iona College, New Rochelle, New York<br>*M.B.A.* |
| 9/72 to 5/74 | Hunter College, CUNY, New York, New York<br>*MS.Ed.: Rehabilitation Counseling* |
| 9/68 to 5/72 | Herbert H. Lehman College, CUNY, Bronx, New York<br>*B.A.: Liberal Arts*<br>*Major: Psychology*<br>*Minor: Economics* |

**WORK EXPERIENCE:**

9/93 to Present — Vocational Economic Analyst, Vocational Economics, Inc., New York, New York
*Supervise and conduct assessments to analyze earning capacity in cases of injury, death or discrimination. Provide vocational rehabilitation counseling, assessment, consultation to adult disabled and nondisabled clients.*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed by first-class mail, postage prepaid to all counsel and *pro se* parties of record on this 30th day of May, 2007, as follows: Karen Torre, Esquire, Law Offices of Karen Lee Torre, 51 Elm Street, Suite 307, New Haven, Connecticut 06510.

*Lori B. Alexander*
Lori B. Alexander
Federal Bar No. CT08970